# Exhibit 4



## SALES MANAGEMENT AGREEMENT

This Agreement is made this 1st day of January 2015 (hereinafter the "**Effective Date**") by and between **Mediterra Inc.,** with a registered address at 20 West 22nd Street, NY, NY 10010 (hereafter called the "**Principal**") and **Next Level Solutions, Centennial, CO**, with a registered address at 6927 S Poplar Way Centennial , CO 80112hereafter called the "**Sales Manager**." Each of the Principal and the Sales Manager hereinafter referred to as a "Party" and collectively the "Parties".

### WITNESSETH:

The Principal hereby retains Sales Manager to support the sales efforts of the Principal in relation to its Products (as defined hereinafter) within the Natural Foods Channels of Distribution, Grocery Channels of Distribution, and Specialty Markets (hereinafter the "Distribution Channels") in the United States of America (hereinafter the Territory") , under the following terms and conditions.

NOW THEREFORE, THE PARTIES MUTUALLY AGREE AS FOLLOWS:

1. Principal hereby appoints Sales Manager as its lead sales representative to manage broker and customer relationships in the Distribution Channels and related activities in the Territory.

2. Sales Manager agrees to use its best efforts to sell and promote the Principal's Products, and in particular the Products mentioned in the Appendix A attached hereto, in accordance to the policies and procedures established by the Principal to all retail and wholesale customers of the Distribution Channels in the Territory. The Sales Manager's responsibilities shall include the following: Broker Management, Sales Forecasting, Promotional Planning, Bi-Monthly Sales Reports and Attend Trade Shows as needed.

3. Principal shall hold harmless and save Sales Manager from and against and indemnify Sales Manager for all liability, loss, costs, expenses or damages howsoever caused by reason of any Product (whether or not defective) or any act of omission of Principal, including but not limited to any injury (whether to body, property or personal or business character or reputation) sustained by any person or to property, and for infringement of any patent rights or the rights of third parties, and for any violation of municipal, state or federal laws or regulations governing the Products or their sale, which may result from the sale or distribution of the products by the Sales Manager. Sales Manager shall indemnify and hold harmless Principal its affiliates, and their respective officers, directors, shareholders, employees and agents and each of their respective successors and assigns, from and against any and all causes of action, losses, liabilities, damages, costs and expenses of any nature whatsoever, whether accrued, absolute, contingent or otherwise, including, without limitation, attorneys' fees and costs (whether or not suit is brought), arising out of or relating to any breach by Sales Manager of any of its representations, warranties or covenants in this Agreement, any negligent act or omission committed by it in the course of its service hereunder or any misrepresentation made by it during the course of its service hereunder. This indemnification obligation shall survive any termination of this Agreement.

4.Principal agrees to pay Sales Manager a monthly compensation of $6,000 during the Term (as defined hereinafter) of this Agreement. The Sales Manager shall also be entitled to the payment of an annual bonus in accordance to the targets and as set out by the Principal and attached hereto in Appendix B.



5.Principal agrees to pay Sales Manager the monthly compensation mentioned in Section 4 above, by the 5th day of each month of the Term.

6.Principal agrees to supply copies of all invoices generated in any given month if so requested by Sales Manager, in order to enable Sales Manager to verify the amounts due by Principal to Sales Manager in relation to the bonus scheme as provided for in Appendix B attached hereto.

7.Principal agrees to pay Sales Manager's out-of-pocket expenses required for the performance of the services hereunder. Expenses of more than $300 (e.g. travel, hotels) must receive prior written approval. For budgeting purposes, a projected 3-month travel expense plan shall be submitted.

8.This Agreement shall become effective on the Effective Date and shall remain in full force and effect until December 31st, 2015 (the "Term"). Either Party may terminate this Agreement for any reason whatsoever at any time prior to its expiration date by providing a thirty (30) Days written notice to the other Party. All monies owed to either Party will be paid within 60 days of termination. The Agreement does not automatically renew from year-to-year.

9.By their signatures below both Parties represent that they have read this Agreement and that each fully understand the facts and has been fully informed as to his or her legal rights and obligations and each is signing the Agreement freely and voluntarily, intending to be bound by it. Each Party understands and agrees that this Agreement constitutes the entire understanding and agreement of the Parties relating to the subject matter hereof. This Agreement supersedes any prior understandings and/or agreements between the Parties hereto relating to the subject matter thereof. There are no representations or warranties other than set forth in herein.

10.Sales Manager shall not have the right to assign this Agreement or any of its rights and privileges hereunder or to delegate the performance of any of its duties hereunder to any other person, firm or corporation without Principal's prior written consent. Any assignment or delegation in violation hereof shall be null and void ab initio. Principal may assign this Agreement without Sales Manager's consent.

11.The Sales Manager agrees not to engage, whether directly or indirectly, in similar activities in the Territory as those contained herein, in relation to or for the benefit of any products that compete with the Products, for a period of two (2) years after either Party terminates this Agreement for any reason whatsoever.



12. During the Term hereof and after termination of this Agreement for any reason, Sales Manager shall not use or disclose to any person any confidential or proprietary information received by the Sales Manager from the Principal. For purposes hereof, the confidential and proprietary information of the Principal shall include, among other things, all information regarding the technical characteristics, operation or ingredients of the Products; all information concerning the identity of the suppliers and customers of the Principal and the nature and extent of their business relationships with the Principal; and all information concerning the Principal or its assets, liabilities, operations, financial conditions, employees, plans, prospects, management, investors, products, strategies and techniques; provided, only, that no such information shall be considered confidential if it is in the public domain. Sales Manager agrees to be responsible vis-à-vis the Principal for any breach of this confidentiality provision by any of its officers, employees and/or staff and the Sales Manager agrees to take, at its sole expense, all necessary measures to restrain its officers, employees and/or staff from prohibited or unauthorized disclosure or use of any confidential or proprietary information of Principal. Upon termination of Sales Manager's engagement in any manner, Sales Manager shall immediately surrender to Principal all writings or other tangible forms of expression embodying or containing any confidential and proprietary information of Principal.

13. Sales Manager is and at all times shall be deemed to be an independent contractor of Principal and neither Sales Manager nor any of its contractors, employees, agents or representatives shall be or be deemed to be employees, agents or representatives of Principal for any purpose, including, without limitation, federal or state tax purposes. Sales Manager hereby agrees to be fully responsible for, and indemnify Principal against, any and all withholding taxes related to the provision of the services required by this Agreement. Neither Sales Manager nor Principal shall act as agent for the other, and neither Sales Manager nor Principal shall guarantee the obligations of the other or in any way become obligated for the debts or expenses of the other unless expressly agreed in writing. This Agreement may not be construed as creating a partnership or a joint venture between the Parties. This Agreement does not constitute Sales Manager as the agent or legal representative of Principal for any purpose whatsoever. Sales Manager is not granted any right or authority to assume or to create any obligation or responsibility, express or implied, on behalf of or in the name of Principal or to bind Principal in any manner or thing whatsoever. Sales Manager shall not collect any monies on account of any sale of the Products, except with the prior written authorization of Principal.

14. This Agreement is to be construed in accordance with the laws of the State of New York without regard to its rules concerning conflicts of law and the Courts sitting in the State of New York shall have jurisdiction in relation to any dispute that may arise herefrom.

PRINCIPAL:

W. PAUL PRUETT, CEO

Name of Officer and Title

1/15/15

Signature and Date

SALES MANAGER:

**Mike O'Connor – President, Next Level Solutions**
Name of Officer and Title

1-15-2015

Signature and Date



PAYMENT REMITTANCE ADDRESS:

**Pay to the Order of Next Level Solutions**
Electronic Payment

**Appendix A – Product**

Mediterra™ Nutrition Bars

**Appendix B - Bonus System**
$25,000 payment for 2014 work to be paid on January 15, 2015

Starting as of January 2015,
Annual Bonus of up to $ 21,600 based on the following breakdown:

Achieving distribution for at least 4 product SKUS during 2015 with the following retail accounts:

| | |
|---|---|
| Kroger | $2,880 |
| Publix | $2,880 |
| Meijer | $2,880 |
| Target | $2,880 |
| WholeFoods Market | $2,880 if distribution is achieved in at least three of the |

following regions: MA, NA, NE, MW, RM, SW, Northern California

A discretionary bonus of $7,200 based on exceeding goals; timely follow up on all matters; professionalism

Any earned bonus amounts according to the above, shall be paid on January 15th 2016. It is agreed between the Parties that in order for the bonus to be earned, this Agreement must have not been terminated by either Party prior to December 31st 2015.