# Exhibit 10

Execution version

INVESTMENT AND SUBSCRIPTION AGREEMENT

dated September 9, 2013

relating to

Mediterra Holdings SA

made by and among

Re Gotham LLC

Demergon Funds on behalf of Demergon Private Equity Fund

Yannis Valambous

David Steinhardt

Ioannis Pipilis

Hellas Geniki Investments SA

and

T & A HOLDINGS LUXEMBOURG SARL

and

Mediterra Holdings SA

1

This investment and subscription agreement ("**Agreement**") is dated September 9, 2013, and entered into by and among

1. **Investors Shareholders**

1.1   Re Gotham LLC
767 Fifth Avenue, 40th floor
c/o Lisa Somar
New York, NY 1015, USA                                          ("**Investor 1**")

1.2   Demergon Funds on behalf of Demergon Private
Equity Fund
28-32, Place de la Gare,
1616 Luxembourg, Grand Duchy of Luxembourg             ("**Investor 2**")

1.3   Yannis Valambous
Flat 9 Greycoat House, 27 Greycoat Street
London SW1P 2QF, UK                                            ("**Investor 3**")

1.4   David Steinhardt
104 Wooster St apt 2s
New York, NY 10012                                             ("**Investor 4**")

1.5   Ioannis Pipilis
8 Hollywood Road
London, SW10 9HY, UK                                           ("**Investor 5**")

1.6   Hellas Geniki Investments SA

c/o Mr. Ricardo A. Durling
Edificio Vallarino
Penthouse
Calle 52 y Elvira Mendez
P.O. Box 0816-06805, Panama, R.P.                             ("**Investor 6**")

(Investor 1, Investor 2, Investor 3, Investor 4, Investor 5 and Investor 6, collectively "**Investors Shareholders**" and individually an "**Investor Shareholder**")

2. **Founder Shareholder**

**T & A HOLDINGS LUXEMBOURG SARL**
9, Place Claire Fontaine
1341 Luxembourg, L                                            ("**Founder Shareholder**")

and

solely in respect of the obligations of the Company under Sections 3(b), 3.1.1(a), 3.1.2, 6, 7.3.3, 7.4, 8, 11 to 13:

## Table of Contents

1.  Definitions .............................................................................................................. 4
2.  Current Equity Structure of the Company ....................................................... 4
3.  Increase of Share Capital ................................................................................... 4
    3.1   Capital Increase / Extraordinary General Meeting of Shareholders ............................. 5
    3.2   Resolutions to be passed by the Board of Directors .................................................. 6
    3.3   Use of proceeds ................................................................................................ 6
4.  Subscription of Preferred A Shares ................................................................. 6
    4.1   Undertaking to Subscribe ................................................................................... 6
    4.2   Cash Contribution ............................................................................................ 7
5.  Ownership Structure after the Capital Increase ............................................. 7
6.  Conduct of Business until Closing .................................................................... 7
7.  Closing ................................................................................................................... 7
    7.1   Place and Date of Closing .................................................................................. 7
    7.2   Conditions Precedent to Closing .......................................................................... 7
    7.3   Closing Actions ................................................................................................ 8
    7.4   Issuance of New Shares and Registration in Share Register ......................................... 9
8.  Termination and Rescission ............................................................................... 9
    8.1   Termination and Rescission by an Investor Shareholder ............................................. 9
    8.2   Termination and Rescission by the Founder ........................................................... 10
9.  Representations and Warranties ...................................................................... 10
    9.1   Representations and Warranties of the Founders ..................................................... 10
    9.2   Representations, Warranties, Covenants and Acknowledgements of Investors Shareholders 10
    9.3   Exclusive Representations and Warranties .............................................................. 10
10. Indemnification; Remedies ................................................................................ 11
    10.1  Time Limitations .............................................................................................. 11
    10.2  Limitations on Liability ..................................................................................... 12
    10.3  Remedies of Founder Shareholder ....................................................................... 13
    10.4  Remedies Exclusive .......................................................................................... 13
11. Shareholder of Founder Shareholder ............................................................. 13
12. Miscellaneous ..................................................................................................... 13
    12.1  Nature of Parties' Rights and Obligations ............................................................. 13
    12.2  Confidentiality ................................................................................................ 14
    12.3  Successors and Assigns ..................................................................................... 15
    12.4  Costs and Expenses, Taxes ................................................................................ 15
    12.5  Notices .......................................................................................................... 15
    12.6  Entire Agreement ............................................................................................. 17
    12.7  Severability ..................................................................................................... 17
    12.8  Survival ......................................................................................................... 17
    12.9  Amendments .................................................................................................... 17
    12.10 Waiver of Rights .............................................................................................. 17
13. Governing Law and Arbitration ....................................................................... 17
    13.1  Governing Law ................................................................................................ 17
    13.2  Arbitration ...................................................................................................... 17

2

3.    Company

**Mediterra Holdings SA**
Rue du Grand-Chêne 2, c/o Olivier Cherpillod
1003 Lausanne
Switzerland                                    ("**Company**")

(Company, Investors Shareholders and Founder Shareholder, collectively "**Parties**" and individually a "**Party**")

4

**Preamble**

A)   The Company is organized in the form of a Swiss stock corporation (*Aktiengesellschaft; société anonyme*) registered with the commercial register of the Canton of Vaud under the number CH-550.1.125.485-5 having its registered office at Lausanne, rue du Grand-Chêne 2, Switzerland.

B)   The Company's core business consists of developing, marketing and distributing nutritional bars, nutritional supplements, health foods and other products related to general health and wellness.

C)   The Company intends to increase its share capital in a first round of financing ("**Financing Round**") by way of issuance of 28,571 Preferred A Shares in the Company with a nominal value of CHF 1.- per Preferred A Share, each to be fully paid-in in cash, thereby increasing the issued share capital of the Company by a nominal amount of CHF 28,571.- from CHF 100,000.- to CHF 128,571.-, ("**Capital Increase**").

D)   The Parties intend to enter, inter alia, into a certain shareholders agreement substantially in the form attached hereto as **Appendix D** ("**Shareholders Agreement**") on or immediately prior to the Closing Date.

E)   The Parties wish to determine in this Agreement their respective rights and obligations in relation to the Investors Shareholders' investment in the Company and the subscription and issuance of new Preferred A Shares in the Company.

**Based on the foregoing**, the Parties agree as follows:

1.   **DEFINITIONS**

For purposes of this Agreement (including the introductory paragraphs and the Appendices), capitalized terms shall have the meanings set forth in **Appendix 1**.

2.   **CURRENT EQUITY STRUCTURE OF THE COMPANY**

As at the date of this Agreement, the Company has an issued statutory share capital in the nominal amount of CHF 100,000.-, divided into 100,000 common shares (*Stammaktien; actions ordinaires*) with a nominal value of CHF 1.- per share, each fully paid-in ("**Existing Shares**"). The Company has no treasury shares.

3.   **INCREASE OF SHARE CAPITAL**

In order to give effect to the Capital Increase and on the terms and subject to the conditions of this Agreement:

(a)   the Investors Shareholders will provide for cash equity funding to the Company in the amount of USD 2,000,000.- at a pre-money valuation of the Company (fully diluted) of USD 7,000,000.- in one share capital increase for purposes of enabling the Company to expand its Business; and

(b)     the Founder Shareholder and the Company hereby undertake to the Investors Shareholders to generally use their powers and take all actions and execute all documents required to effect the transactions contemplated under this Agreement and to consummate the Capital Increase in accordance with the terms and conditions hereof.

## 3.1    Capital Increase / Extraordinary General Meeting of Shareholders

### 3.1.1    Undertakings of Founder Shareholder

The Founder Shareholder and (regarding subsection (a)) the Company hereby undertake to the Investors Shareholders to:

(a)     procure that an extraordinary general meeting of shareholders of the Company ("**Extraordinary General Meeting**") is convened in a timely manner and takes place on the Closing Date;

(b)     approve, or procure that the Proxy Holder approves, the resolutions to be taken by the Extraordinary General Meeting in accordance with Section 3.1.3; and

### 3.1.2    Waiver of Preferential Subscription Rights

The Founder Shareholder hereby unconditionally and irrevocably waives all of its preferential subscription rights (*Bezugsrechte; droits de souscription préférentiels*) in connection with the Capital Increase and hereby agrees that the Company allocates the appropriate number of Preferred A Shares in the Capital Increase exclusively to the Investors Shareholders in accordance with this Agreement and the cap table set forth in **Appendix 5**.

### 3.1.3    Resolutions to be passed by the Extraordinary General Meeting

The following resolutions shall be passed at the Extraordinary General Meeting on the Closing Date:

(a)     to replace the Existing Articles by, and adopt, the Articles substantially in the form attached hereto as **Appendix 3.1.3(a)**;

(b)     to increase the nominal statutory share capital of the Company by the aggregate amount of CHF 28,571.- from CHF 100,000.- to CHF 128,571.- to enable the Capital Increase through the issuance of 28,571 new Preferred A Shares, each at the issue price of USD 70.- ("**Issue Price**"), which constitutes a premium (*Agio; agio*) for each Preferred Share of about CHF 64.-[1], to the Investors Shareholders in accordance with, and at the Subscription Amounts set forth in, Section 4;

---

[1] Amount of share premium in CHF subject to changes based on exchange rates on the closing date

6

### 3.2 Resolutions to be passed by the Board of Directors

The Founder Shareholder undertakes to procure that the Board will approve the registration of the Investors Shareholders as shareholders with voting rights of the relevant number of Preferred A Shares subscribed by the respective Investors Shareholders in the Company's share register in accordance with Section 7.3.1(e).

### 3.3 Use of proceeds

The Company shall use the proceeds of the Capital Increase as working capital in accordance with **Appendix 3.3**.

The Parties are in agreement that the contemplated use of proceeds does not encompass any kind of guarantee or warranty that anticipated sales revenues, earnings or other expectations will actually be achieved

## 4. SUBSCRIPTION OF PREFERRED A SHARES

### 4.1 Undertaking to Subscribe

Subject to the terms and conditions of this Agreement (including, without limitation Section 7.2), the respective Investor Shareholder undertakes to subscribe for Preferred A Shares as follows:

(a)  Investor 1 shall subscribe for 7,143 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 500,000.- (**"Investor 1 Subscription Amount"**);

(b)  Investor 2 shall subscribe for 7,143 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 500,000.- (**"Investor 2 Subscription Amount"**)

(c)  Investor 3 shall subscribe for 5,714 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 400,000.- (**"Investor 3 Subscription Amount"**);

(d)  Investor 4 shall subscribe for 4,286 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 300,000.- (**"Investor 4 Subscription Amount"**);

(e)  Investor 5 shall subscribe for 2,857 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 200,000.- (**"Investor 5 Subscription Amount"**); and

(f)  Investor 6 shall subscribe for 1,429 Preferred A Shares, each at the Issue Price, for an aggregate subscription amount of USD 100,000.- (**"Investor 6 Subscription Amount"**).

For this purpose, each Investor Shareholder hereby undertakes, subject to the conditions precedent set forth in Section 7.2 being satisfied or waived, to execute and deliver to the Company on or prior to the Closing Date a Subscription Form as required by Swiss corporate law substantially in the form attached hereto as **Appendices 4.1 (a) to (f)**.

### 4.2 Cash Contribution

Within five Business Days from the date of this Agreement:

    (a)    Investor 1 shall pay in cash the Investor 1 Subscription Amount;

    (b)    Investor 2 shall pay in cash the Investor 2 Subscription Amount;

    (c)    Investor 3 shall pay in cash the Investor 3 Subscription Amount;

    (d)    Investor 4 shall pay in cash the Investor 4 Subscription Amount;

    (e)    Investor 5 shall pay in cash the Investor 5 Subscription Amount; and

    (f)    Investor 6 shall pay in cash the Investor 6 Subscription Amount;

in each case, with a value date at latest on the fifth Business Day from the date of this Agreement, to the following blocked capital account of the Company (*Kapitaleinzahlungssperrkonto; compte de capital bloqué*):

| | |
|---|---|
| Bank: | UBS SA, Lausanne/Zurich |
| In favour of: | Mediterra Holdings SA |
| Account No: | ███████████ |
| IBAN No: | ███████████ |
| Clearing No: | ███████████ |
| Reference: | Share Capital Increase of Mediterra Holdings SA |

## 5.    OWNERSHIP STRUCTURE AFTER THE CAPITAL INCREASE

After completion of the Capital Increase, the ownership structure of the Company shall be as specified in the cap table set forth in **Appendix 5**.

## 6.    CONDUCT OF BUSINESS UNTIL CLOSING

The Company and the Subsidiary shall, and the Founder Shareholder hereby undertakes to procure that the Company and the Subsidiary will, until Full Consummation of the Capital Increase, operate their business in the ordinary course, being reminded and acknowledged by the Investors Shareholders that both the Company and the Subsidiary have been incorporated in July 2013.

## 7.    CLOSING

### 7.1 Place and Date of Closing

The Closing shall take place on September 18, 2013, at the offices of LexartisAvocats, Lausanne, or such other date or place as the Parties mutually agree (**"Closing Date"**).

### 7.2 Conditions Precedent to Closing

The Closing shall be subject to the prior fulfilment (or waiver by each Investor Shareholder) of each of the following conditions precedent:

8

(a) the execution and delivery of all documents to be exchanged at Closing (other than those to be executed and delivered by the relevant Investor Shareholder) in accordance with Section 7.3;

(b) the absence of any breach by any Party (other than the relevant Investor Shareholder) of any material provision of this Agreement, including, but not limited to, the payment obligations set out in Section 4.2 and the representations and warranties given by any other Party under Section 9;

(c) the absence of a Material Adverse Change with respect to the Company;

(d) the compliance by the Founder Shareholder and the Company with Section 6; and

## 7.3 Closing Actions

7.3.1 At Closing, the relevant Party shall deliver the following documents, duly executed and in form and substance satisfactory to the Parties:

(a) proxies from the Shareholders for the Extraordinary General Meeting authorizing the Proxy Holder to vote on and approve all resolutions set forth in Section 3.1, substantially in the form attached hereto as **Appendix 7.3.1 (a)**;

(b) a duly signed application to the Register of Commerce of the Canton of Vaud regarding: (1) the increase of the share capital to reflect the Capital Increase, (2) the creation of Preferred A Shares (*Vorzugsaktien; actions privilégiées*) as a new class of shares, (3) the adoption of the Articles, substantially in the form attached hereto as **Appendix 7.3.1(b)** ("**Application**");

(c) Shareholders Agreement duly executed by all Parties substantially in the form attached hereto as **Appendix D**;

(d) confirmation from UBS SA evidencing that all Subscription Amounts have been paid in cash and fully credited to the Company's blocked account specified in Section 4.2; and

(e) circular resolutions or minutes evidencing the Board resolution regarding the registration of the Investors Shareholders as owners with voting rights of the relevant number of Preferred A Shares subscribed by the respective Investors Shareholders in the Company's share register upon Full Consummation.

In addition to the above, the Company and the Founder Shareholder undertake to each Investor Shareholder to execute or perform such other documents, instruments, certificates or acts as may be reasonably requested by each Investor Shareholder and/or the Company in order to complete, perfect and consummate the transactions contemplated by this Agreement, including, but not limited to, the increase of the share capital of the Company and the issuance of the respective number of Preferred A Shares to the Investors Shareholders as set forth in this Agreement.

9

7.3.2    Upon the delivery of the documents listed in Section 7.3.1, the following actions shall be performed:

      (a)     The Extraordinary General Meeting shall be held in the presence of a public notary approving: (1) the increase of the share capital (including waivers of preferential subscription rights), (2) the creation of Preferred A Shares as set forth herein, (3) the creation of conditional share capital in the amount of CHF 22'689.00, and (4) the adoption of the Articles.

      (b)     Each Investor Shareholder shall deliver a duly signed original of its Subscription Form in accordance with Section 4.1.

      (c)     The Board shall issue the report of the Board regarding the capital increase (*Kapitalerhöhungsbericht; rapport d'augmentation*) and take the resolutions on the ascertainment and the execution of the Capital Increase (*Feststellungsbeschluss; constatations relatives à l'augmentation du capital*) in the presence of a public notary.

7.3.3    The Company shall file the Application with the Register of Commerce of the Canton of Vaud immediately after receipt of the above documents.

### 7.4    Issuance of New Shares and Registration in Share Register

7.4.1    The Company shall deliver to the Investors Shareholders and to the Founder Shareholder a copy of the updated share register of the Company evidencing each Investor Shareholder and Founder Shareholder as legal and beneficial owner of the appropriate number of Preferred A Shares or Existing Shares immediately upon receipt of the certified extract and/or express confirmation of the Register of Commerce of the Canton of Vaud evidencing the registration of the Capital Increase and the adoption of the Articles.

### 8.    TERMINATION AND RESCISSION

### 8.1    Termination and Rescission by an Investor Shareholder

In case of no Full Consummation of the Capital Increase until the earlier to occur of: 20 Business Days after the Closing or September 30, 2013, then each Investor Shareholder who did not cause such delay by a breach of any of its material obligations under this Agreement , shall have the right (but not the obligation) to terminate and rescind this Agreement, the Shareholders Agreement and any documents, instruments or deeds executed by any such Investor Shareholder (including, but not limited to, the Subscription Forms) with immediate effect by written notice to all other Parties.

In case notice of termination and rescission is made in accordance with the preceding paragraph:

      (a)     each of the Parties acknowledges and agrees that this Agreement (subject to Section 12.8), the Shareholders Agreement (subject to Section 12.8), and any documents, instruments or deeds executed by any of the Investors Shareholders (including, but not limited to, the Subscription Forms) shall be deemed terminated and shall be without any further effect;

(b)    the Founder Shareholder and the Company hereby undertakes to the Investors Shareholders to procure that the application to the Register of Commerce of the Capital Increase (if already filed) shall be withdrawn and that the respective Subscription Amounts paid by the Investors Shareholders for new Preferred A Shares hereunder shall be immediately repaid to each of the Investors Shareholders in cash out of the blocked bank account of the Company.

## 8.2    Termination and Rescission by the Founder

In the event that any of the Investors Shareholders shall not pay the Subscription Amount in accordance to the provisions of section 4.2. and/or does not proceed with the Closing Actions as per Section 7.3., but provided that no other Investor Shareholder has exercised its right of termination and rescission as per the preceding section, then the Founder Shareholder shall have the right (but not the obligation) to terminate and rescind this Agreement, the Shareholders Agreement and any documents, instruments or deeds executed by any such Investor Shareholder (including, but not limited to, the Subscription Forms) with immediate effect by written notice to any such Investor Shareholder; in such an event, the other Parties shall then amend this Agreement, the Shareholders Agreement and any documents, instruments or deeds to the extent necessary to reflect the fact that such Investor Shareholder is not anymore an investor and that the Consummation of the Capital Increase is only partial.

## 9.    REPRESENTATIONS AND WARRANTIES

## 9.1    Representations and Warranties of the Founders

Subject to the limitations set forth in this Section 9 (including **Appendix 9.1**) and Section 10, the Founder Shareholder hereby represents and warrants to each of the Investors Shareholders that the representations and warranties set forth in **Appendix 9.1** are true and accurate in all material respects both as of the date of this Agreement and the Closing Date, except for those representations and warranties which are explicitly made as of a specific date.

## 9.2    Representations, Warranties, Covenants and Acknowledgements of Investors Shareholders

Subject to the limitations set forth in this Section 9 (including **Appendix 9.2**) and Section 10, each of the Investors Shareholders hereby represents and warrants to the Founder Shareholder and the Company that the representations and warranties set forth in **Appendix 9.2** are true and accurate in all material respects both as of the date of this Agreement and the Closing Date, except for those representations and warranties which are explicitly made as of a specific date and the Founder Shareholder and Company are fully entitled and directed to rely thereon .

## 9.3    Exclusive Representations and Warranties

The Parties acknowledge that none of the Parties has made, and none of the Parties has relied upon, any representation or warranty, express or implied, pertaining to the subject matter of this Agreement other than as expressly provided in this Agreement. In particular, and without limiting the generality of the foregoing, each Investor Shareholder acknowledges that the

Founder is not making any representations as to budgets, business plans, forward-looking statements, the future development or success of the Company and its business or other projections of a financial, technical or business nature relating to the business of the Company.

Without prejudice to the foregoing, the Founder Shareholder hereby acknowledges that each Investor Shareholder has entered into this Agreement and will pay the Subscription Amount in reliance on each of the representations and warranties set forth in this Section 9 (including **Appendix 9.1**).

## 10.    INDEMNIFICATION; REMEDIES

### 10.1    Time Limitations

10.1.1   Notice of Breach (*Rügefrist; avis de violation*)

An Investor Shareholder shall deliver to the Company (which shall receive such notice on behalf of the Founder Shareholder) a notice in writing describing the underlying facts of a claim for misrepresentation or breach of warranty in reasonable detail to the extent then known within 60 calendar days after that Investor Shareholder has obtained reasonable knowledge of the circumstances which are likely to give rise to a claim for misrepresentation or breach of warranty under this Agreement.

Failure to provide notice of claim consistent with this Section 10.1.1 shall not relieve the Founder Shareholder of any liability it may have under Section 9.1; provided, however, that the Founder Shareholder shall not be liable for any damage, loss, expense, or cost to the extent that the same is attributable to, or caused or aggravated by, or could not be remedied due to, that Investor Shareholder's failure to timely provide notice in accordance with this Section 10.1.1. The Parties explicitly waive the application of Article 201 CO.

10.1.2   Time Limitations on Claims

Except in the case of gross negligence or willful misconduct, the representations and warranties given by the Founder Shareholder as set forth in Section 9.1 and Appendix 9.1 shall expire, and any claim of an Investor Shareholder for misrepresentation or breach of warranty shall be time barred, forfeited and precluded from being made (*Verjährung; prescription*) as of the expiry of a period of 18 months from the Closing Date.

It is understood and agreed that any notice of claim for misrepresentation or breach of warranty shall be delivered to the Company (which shall receive such notice on behalf of the Founder) on or by the applicable date set forth in the preceding paragraphs, in which case the resolution of such claim may be effected after such date; provided, however, that notwithstanding the foregoing, the Investor Shareholder's claim shall be time-barred, forfeited and precluded from being made (*verjährt; prescrit*) unless the relevant Investor Shareholder initiates proceedings on the claim against the Founder Shareholder in accordance with Section 13 within one year from the date of that Investor Shareholder's notice of claim to the Company.

10.1.3   Remedies for the Investors Shareholders

With respect to a misrepresentation or a breach of warranty notified by an Investor Shareholder to the Company in accordance with Section 10.1, the Founder Shareholders shall have the

right, within a reasonable period of time not exceeding 30 calendar days after receipt of such notice of breach from the Company, to put the Company or that Investor Shareholder at the Investor Shareholder's option (in case the damage, loss, expense, or cost was incurred by that Investor Shareholder and not by the Company), at the Founder Shareholder's own expense, in the position it would have been in had no such misrepresentation or breach of warranty occurred.

If and to the extent the remedy set forth in the preceding paragraph cannot be effected or is not effected within such period of time, then that Investor Shareholder, subject to the exclusions and limitations set forth in this Agreement, shall have the right to claim that the Founder Shareholder pays, and shall be, subject to Section 10.2, liable to that Investor Shareholder to pay, damages to the Company (or, if the damage, loss, expense, or cost is incurred by that Investor Shareholder and that Investor Shareholder so elects, to that Investor Shareholder) in the amount which is necessary to put the Company (or, subject to the foregoing requirements, that Investor Shareholder) in the position it would have been in had no such misrepresentation or breach of warranty occurred. Such damages shall include all duly documented external costs and reasonable expenses of the Company (or, subject to the foregoing requirements, that Investor Shareholder) including reasonable attorneys' fees, but shall exclude lost profits.

## 10.2   Limitations on Liability

Notwithstanding anything contained in this Agreement to the contrary, it is acknowledged and agreed that, except in case of gross negligence or willful misconduct, the liability of the Founder Shareholder towards each Investor Shareholder for misrepresentations or breaches of warranties under this Agreement shall not exceed, in the aggregate, an amount equal to the sum of: (1) 100% percent of that Investor Shareholder's Subscription Amount, and (2) reasonable costs and fees incurred by an Investor Shareholder in connection with the examination of a possible misrepresentation or breach of warranty and any proceedings brought against the Founder Shareholder in connection with any misrepresentation or breach of warranty.

The Founder Shareholder's liability for misrepresentation or breach of warranty under this Agreement shall be excluded or reduced, as the case may be, if and to the extent that:

(a)   the relevant Investor Shareholder has failed to use commercially reasonable best efforts to mitigate its loss or damage in respect thereof;

(b)   the relevant Investor Shareholder or the Company have actually recovered or, using commercially reasonable best efforts, could recover or could have recovered, as the case may be, from any third person, including but not limited to an insurer, any sum in respect of any matter to which a claim made relates, after deduction of all duly documented costs and expenses incurred in making such recovery;

(c)   such liability is attributable to any act, omission, transaction or arrangement of the Investors Shareholders after the signing of this Agreement;

(d)   any tax payable by the Company is reduced as a result of a matter giving rise to a claim for misrepresentation or breach of warranty;

(e)   such claim arises or is increased as a result of any legislation, regulation, rule of law or practice not in force at the date hereof, or as a result of any change

made or introduced on or after the date hereof in any legislation, regulation, rule of law or practice of any relevant authority, whether or not such change purports to be effective retrospectively in whole or part.

### 10.3    Remedies of Founder Shareholder

The provisions of Sections 10.1 and 10.2 shall apply by analogy to any claim by the Founder Shareholder that an Investor Shareholder is liable for any misrepresentation or breach of warranty under Section 9.2 and Appendix 9.2.

### 10.4    Remedies Exclusive

The remedies in this Section 10 for any misrepresentation or breach of warranty under this Agreement shall be in lieu of, and not in addition to, the remedies provided for under statutory law. All other remedies including, without limitation, the right to rescind this Agreement shall, subject to the right of termination and rescission in accordance with Section 8, not apply and are expressly excluded and waived.

## 11.    SHAREHOLDER OF FOUNDER SHAREHOLDER

Dr. Athanasios Lavidas personally owns one hundred percent (100%) of the issued and authorized stock of the Founder Shareholder. No transfer or other disposition of stock of the Founder Shareholder leading to a Change of Control shall occur outside the Lavidas Family Group, without the Investor Shareholders' prior written consent. For the purposes of this Section, "Lavidas Family Group" means Dr. Athanasios Lavidas' spouse and descendants (whether natural or adopted), any trust, family limited partnership or other entity solely for the benefit of Dr. Athanasios Lavidas and/or Dr. Athanasios Lavidas' spouse and/or descendants; "Change of Control" means any transfer or other disposition of stock of the Founder Shareholder in one or a series of related transactions that results in the proposed acquirer (other than the Lavidas Family Group) holding, directly or indirectly, more than 50 percent of the then issued share capital of the Founder Shareholder.

## 12.    MISCELLANEOUS

### 12.1    Nature of Parties' Rights and Obligations

Except as specifically provided otherwise in this Agreement, the rights and obligations of the Parties hereunder shall be several (and not joint). Each of the Investors Shareholder may exercise and enforce its rights hereunder individually in accordance with this Agreement, and the non-performance by the Company or another Shareholder ("**Defaulting Party**") shall neither relieve the Company nor any other Shareholder from performing its obligations under this Agreement, nor shall the Company (provided it is not the Defaulting Party) or any other Shareholder be liable for the non-performance by the Defaulting Party.

The obligations of the Parties hereunder are contractual in nature and the Parties agree that they do not form, and this Agreement shall not be deemed to constitute, a simple partnership (*einfache Gesellschaft; société simple*) pursuant to Art. 530 et seq. CO.

14

## 12.2    Confidentiality

The existence as well as the terms and conditions of this Agreement, and any information exchanged among the Parties (including their respective representatives or advisors) during the negotiation of the definitive agreements for the Financing Round and/or pertaining to the business and the operation of the Company (all such information collectively "**Confidential Information**"), shall be kept strictly confidential by each Party. The Parties shall neither use in any form nor disclose to any third party any Confidential Information unless explicitly authorized by this Agreement. The Parties shall ensure that their employees, directors and any other representatives as well as the advisors of each Party to whom any such Confidential Information is entrusted comply with these restrictions.

Without limiting the generality of the foregoing, the term Confidential Information shall include in particular:

(a)    any information regarding this Agreement, the investments made or to be made by each Investor Shareholder in the Company and the commercial terms and conditions of the investments; and

(b)    any trade secrets, financial or confidential information of the Company or any of the Investors Shareholders.

The term Confidential Information shall not include any information: (1) which as of the time of its disclosure by a Party was already lawfully in the possession of the receiving Party as evidenced by written records, or (2) which at the time of the disclosure was in the public domain, or (3) which after disclosure falls in the public domain through no fault or omission of receiving Party; or (4) the disclosure of which was previously explicitly authorized by the respective Party.

The non-disclosure obligation shall not apply to any disclosure of Confidential Information required by law or regulations. In the event a disclosure of Confidential Information is required by law or regulations (including, without limitation, for tax, audit or regulatory purposes), the disclosing Party shall use all reasonable efforts to arrange for the confidential treatment of the materials and information so disclosed.

Each Party may use any Confidential Information in accordance with this Agreement. But, subject to the terms hereof and the terms of the Shareholders Agreement, each Party acknowledges and agrees that any Confidential Information made available to it (including to any representative or advisor of such Party) by the Company or any other Party (including their representatives or advisors) hereunder shall not be used by such Party other than (1) as permitted under this Agreement and the Shareholders Agreement, (2) for the benefit of the Company, or (3) for the respective Party's assessment of the Company, and shall not be exploited by or for the benefit of such Party or any of its Affiliates or third party.

Finally, it is acknowledged and agreed that each of the Investors Shareholders will report regularly to its investors and/or any of its Affiliates on all information pertaining to the Company and the equity investment made or to be made in the Company in accordance with its reporting obligations under its fund investment documents or to the extent required for legal, tax, audit or regulatory purposes.

No announcement or press releases regarding the matters contemplated by this Agreement shall be made by the Company and/or the Investors Shareholders without the prior written consent of the Board and each Investor Shareholder (such consent of the Investors Shareholder to be given entirely at their discretion).

Nothing herein shall restrict the Company from granting third parties customary due diligence access for purposes of financial, commercial, strategic or similar transactions based on appropriate non-disclosure and non-use agreements.

## 12.3    Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective permitted successors and assigns; provided, however, that no Party shall be entitled to assign or transfer any of the rights or obligations hereunder to any other party except with the prior written consent of each of the other Parties.

## 12.4    Costs and Expenses, Taxes

Subject to the immediately following paragraph, it is agreed that each Party shall bear its own costs and expenses arising out of or incurred, and any taxes imposed on it, in connection with this Agreement and all transactions contemplated hereby.

The Company shall bear all Swiss issuance and stamp taxes arising out of the Financing Round.

## 12.5    Notices

All notices and other communications made or to be made under this Agreement shall be given in writing by fax or courier or mailed by registered or certified mail, return receipt requested to the following addresses:

If to Investor 1:

Re Gotham LLC
767 Fifth Avenue, 40th floor
c/o Lisa Somar
New York, NY 1015, USA

Fax nr [                    ]

If to Investor 2:

Demergon Funds S.A.,
28-32, Place de la Gare,
1616 Luxembourg, Grand Duchy of Luxembourg

Fax nr [                    ]

If to Investor 3:

Yannis Valambous
Flat 9 Greycoat House, 27 Greycoat Street
London SW1P 2QF, UK

Fax nr [                    ]

16

If to Investor 4:

David Steinhardt
104 Wooster St apt 2s
New York, NY 10012

Fax nr [                    ]

If to Investor 5:

Ioannis Pipilis
8 Hollywood Road
London, SW10 9HY, UK

Fax nr [                    ]

If to Investor 6:

Hellas Geniki Investments SA

c/o Mr, Ricardo A. Durling
Edificio Vallarino
Penthouse
Calle 52 y Elvira Mendez
P.O. Box 0816-06805, Panama, R.P.

Fax nr (507) 263-8234

If to Founder Shareholder:

T & A HOLDINGS LUXEMBOURG SARL
9, Place Claire Fontaine
1341 Luxembourg,

[attn. legal department]

Fax nr [                    ]

If to the Company:

Mediterra Holdings SA
Attn. Chairman of the Board
Rue du Grand-Chêne 2
c/o LexartisAvocats
1003 Lausanne

Fax nr +41 21 643 71 01

In case of the delivery of a notice to the Company on behalf of the Founder Shareholder in accordance with this Agreement, receipt by the Company of the notice shall be relevant for the compliance with the applicable deadlines. The Founder Shareholder hereby appoints the Company as receiver of such notices on behalf of it. The Company shall send copies of such notices to the Founder timely upon receipt.

Each Party may change or amend the addresses given above or designate additional addresses for the purposes of this Section 12.5 by giving the other Parties written notice of the new address in the manner set forth in this Section 12.5.

17

### 12.6   Entire Agreement

With the exception of the Shareholders Agreement and of the Articles, this Agreement including its Appendices constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes any agreement or understanding that may have been concluded with respect to the subject matter hereof between any of the Parties prior to the date of this Agreement.

The Parties confirm that in addition to this Agreement, there are no side agreements relating to the subject matter hereof between any of them.

### 12.7   Severability

If at any time any provision of this Agreement or any part thereof is or becomes invalid or unenforceable, then neither the validity nor the enforceability of the remaining provisions or the remaining part of the provision shall in any way be affected or impaired thereby. The Parties agree to replace the invalid or unenforceable provision or part thereof by a valid or enforceable provision which shall best reflect the Parties' original intention and shall to the extent possible achieve the same economic result.

### 12.8   Survival

Notwithstanding any termination and rescission of this Agreement (and the Shareholders Agreement and any documents, instruments or deeds executed by any of the Investors Shareholder including, but not limited to, the Subscription Forms) pursuant to Section 8, it is acknowledged and agreed that Sections 8, 12, and 13 shall survive any such termination and rescission and continue to be effective as if no such termination and rescission had occurred.

### 12.9   Amendments

This Agreement (including this Section 12.9) may be amended only in writing by an instrument signed by all Parties.

### 12.10   Waiver of Rights

No waiver by a Party of a failure of any other Party to perform any provision of this Agreement shall operate or be construed as a waiver in respect of any other or further failure whether of a similar or different character.

## 13.   GOVERNING LAW AND ARBITRATION

### 13.1   Governing Law

THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH MATERIAL SWISS LAW.

### 13.2   Arbitration

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING ITS CONCLUSION, VALIDITY, BINDING EFFECT, AMENDMENT,

18

BREACH, TERMINATION OR RESCISSION SHALL BE RESOLVED DEFINITIVELY BY ARBITRATION IN ACCORDANCE WITH THE SWISS RULES OF INTERNATIONAL ARBITRATION OF THE SWISS CHAMBERS OF COMMERCE IN FORCE ON THE DATE WHEN THE NOTICE OF ARBITRATION IS SUBMITTED IN ACCORDANCE WITH THESE RULES; THE PARTIES WAIVE ALL RIGHTS OF APPEAL, RECOURSE OR ANNULMENT AS PER ARTICLE 192 OF THE FEDERAL STATUE ON PRIVATE INTERNATIONAL LAW. THE NUMBER OF ARBITRATORS SHALL BE THREE. THE SEAT OF THE ARBITRATION SHALL BE GENEVA AND THE ARBITRAL PROCEEDINGS SHALL BE CONDUCTED IN ENGLISH.

* * * * *

[Signature page to follow]

19

**IN WITNESS WHEREOF**, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: Lisa Somar

Titles: President

**Demergon Funds S.A.**

By: _____

Names: _____

Titles: _____

**Yannis Valambous**

_____

**David Steinhardt**

_____

**Ioannis Pipilis**

_____

**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____

**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

19

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: _____

Titles: _____


**Demergon Funds on behalf of
Demergon Private Equity Fund**

By: _____

Names: PANDELI ECONOMO and GEORGE PAPOVTSIS

Titles: DIRECTORS


**Yannis Valambous**

_____


**David Steinhardt**

_____


**Ioannis Pipilis**

_____


**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____


**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: _____

Titles: _____


**Demergon Funds S.A.**

By: _____

Names: _____

Titles: _____


**Yannis Valambous**

_____


**David Steinhardt**

_____


**Ioannis Pilipis**

_____


**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____


**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

19

**IN WITNESS WHEREOF**, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: _____

Titles: _____


**Demergon Funds S.A.**

By: _____

Names: _____

Titles: _____


**Yannis Valambous**

_____


**David Steinhardt**

_____


**Ioannis Pipilis**

_____


**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____


**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

19

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: _____

Titles: _____

**Demergon Funds S.A.**

By: _____

Names: _____

Titles: _____

**Yannis Valambous**

_____

**David Steinhardt**

_____

**Ioannis Pipilis** _____

**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____

**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

19

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By: _____

Names: _____

Titles: _____

**Demergon Funds S.A.**

By: _____

Names: _____

Titles: _____

**Yannis Valambous**

_____

**David Steinhardt**

_____

**Ioannis Pipilis**

_____

**Hellas Geniki Investments SA**

By: _____

Names: _____

Titles: _____

**T & A HOLDINGS LUXEMBOURG SARL**

By: _____

Names: _____

Titles: _____

19

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date first written above

**Re Gotham LLC**

By:    _____

Names: _____

Titles: _____


**Demergon Funds on behalf of
Demergon Private Equity Fund**

By:    _____

Names: _____

Titles: _____


**Yannis Valambous**

_____


**David Steinhardt**

_____


**Ioannis Pipilis**

_____


**Hellas Geniki Investments SA**

By:    _____

Names: _____

Titles: _____


**T & A HOLDINGS LUXEMBOURG SARL**

By:    _____

Names: Telemaque J. Lavidas

Titles: Director

20

solely in respect of the obligations of the Company under Sections 3(b), 3.1.1(a), 3.1.2, 6, 7.3.3, 7.4, 8, 11 to 13:

**Mediterra Holdings SA:**

By: _____

Names: _Telemaque J Lavidas_

Titles: _President_

## List of Appendices

| | |
|---|---|
| Appendix D): | Shareholders Agreement |
| Appendix 1: | Defined Terms |
| Appendix 3.1.3(a): | Articles |
| Appendix 3.3: | Use of proceeds |
| Appendix 4.1(a): | Subscription Form for Investor 1 |
| Appendix 4.1(b): | Subscription Form for Investor 2 |
| Appendix 4.1(c): | Subscription Form for Investor 3 |
| Appendix 4.1(d): | Subscription Form for Investor 4 |
| Appendix 4.1(e): | Subscription Form for Investor 5 |
| Appendix 4.1(f): | Subscription Form for Investor 6 |
| Appendix 5: | Ownership Structure after Completion of Capital Increase (Cap Table) |
| Appendix 7.3.1 (a): | Form of Proxies |
| Appendix 7.3.1(b): | Form of Application to Commercial Register |
| Appendix 7.3.1(e) : | Form of Board Resolutions (Share Register) |
| Appendix 7.3.2(a): | Form of Public Deed of Extraordinary General Meeting of Shareholders |
| Appendix 9.1: | Representations and Warranties of Founder Shareholder |
| Appendix 9.2: | Representations and Warranties of Investors Shareholders |

Appendix 1

## Defined Terms

"**Affiliate**" shall mean any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the person or entity specified and includes funds, investment vehicles or other entities formed or incorporated in any jurisdiction which are managed by any of the Investors Shareholders.

"**Agreement**" shall mean this investment and subscription agreement.

"**Application**" shall have the meaning set forth in Section 7.3.1(f).

"**Articles**" shall mean the articles of association (*Statuten; statuts*) of the Company substantially in the form attached to this Agreement as Appendix 3.1.3(a) and as amended from time to time in accordance with this Agreement and the Shareholders Agreement.

"**Authorizations**" shall mean all official authorizations, orders, permissions, product registrations, certifications, certificates, approvals, notices or consents (including all written amendments, supplements or replacements).

"**Board**" shall mean the board of directors of the Company, as appointed from time to time in accordance with the terms of this Agreement and the Shareholders Agreement.

"**Board Regulations**" shall mean the organisational regulations (*Organisationsreglement; règlement d'organisation*) of the Board that may from time to time be adopted by the Board pursuant to Article 716b CO.

"**Business**" shall have the meaning set forth in Preamble B).

"**Business Day**" shall mean any day other than Saturday or Sunday on which banks are open for business in Lausanne (Switzerland).

"**Business IP**" shall mean all Intellectual Property which is being used, and/or is required, in or in relation to the business operations of the Company.

"**Capital Increase**" shall have the meaning set forth in Preamble C).

"**Claim**" shall mean any claim, legal action, proceeding, suit, litigation, prosecution, investigation, enquiry or arbitration, whether actual or threatened, whether as claimant or as defendant, whether domestic or foreign, whether civil, criminal or administrative.

"**Closing**" shall mean the closing of the Capital Increase as set forth in Section 7.

"**Closing Date**" shall have the meaning set forth in Section 7.1.

"**CO**" shall mean the Swiss Code of Obligations as of March 30, 1911, as amended from time to time.

"**Company**" shall mean Mediterra Holdings SA.

"**Confidential Information**" shall have the meaning set forth in Section 12.2.

"**Defaulting Party**" shall have the meaning set forth in Section 12.1.

"**Encumbrance**" shall mean any claim, charge, pledge, mortgage, security, lien, option, equity, power of sale, hypothecation, usufruct, retention of title, right of pre-emption, right of first refusal or other third party rights or security interest of any kind or an agreement to create any of the foregoing.

"**Existing Articles**" shall mean the existing articles of incorporation (*Statuten; statuts*) of the Company as in effect and in force as per the date of this Agreement.

"**Founder Shareholder**" shall have the meaning set forth on Page 1.

"Existing Shares" shall have the meaning set forth in Section 2.

"Extraordinary General Meeting" shall have the meaning set forth in Section 3.1.1(a).

"Financing Round" shall have the meaning set forth in Preamble C).

"Full Consummation" shall mean that the Preferred A Shares issued in connection with the Capital Increase have been registered in the commercial register in accordance with Section 7.3.3.

"Intellectual Property" shall mean any trademarks, service marks, trade names, domain names, logos, patents, inventions, trade secrets and other rights in know-how, design rights, utility models, copyrights, software, rights in databases and all other similar proprietary rights anywhere in the world, including, where such rights are obtained or enhanced by registration, any registration of such rights and applications and rights to apply for such registrations.

"Investor Shareholder" and "Investors Shareholders" shall have the meaning set forth on Page 1.

"Investor 1 Subscription Amount" shall have the meaning set forth in Section 4.1(a).

"Investor 2 Subscription Amount" shall have the meaning set forth in Section 4.1(a).

"Investor 3 Subscription Amount" shall have the meaning set forth in Section 4.1(a).

"Issue Price" shall have the meaning set forth in Section 3.1.3(b).

"Material Adverse Change" shall mean any adverse change relating to the structure, business, financial condition, prospects, assets and liabilities, or results of operations of or other material adverse effect on the Company that would cause, or is likely to cause, a reasonable investor to abstain from entering into and/or consummating the transactions contemplated under this Agreement.

"Page" shall mean a page of this Agreement.

"Party" and "Parties" shall have the meaning set forth on Page 1.

"Preamble" shall mean a preamble of this Agreement.

"Preferred A Shares" shall mean preferred shares (*Vorzugsaktien; actions privilégiées*) with a nominal value of CHF 1.00 per Preferred A Share, each to be fully paid in in cash pursuant to the terms of this Agreement and having the preferences set forth in the Articles and the Shareholders Agreement.

"Proxy Holder" shall mean the proxy holder whose name is entered in the proxy as the person who is appointed to represent and act for the issuer of the proxy.

"Section" shall mean a section of this Agreement.

"Share Certificates" shall mean all shares and share certificates which as of the date of this Agreement validly represent the Shares.

"Shareholder" shall mean each shareholder of the Company.

"Shareholders Agreement" shall have the meaning set forth in Preamble D).

"Subscription Amount" shall mean the total of the subscription amounts payable by the respective Investor Shareholder for all of its Preferred A Shares in accordance with Section 4.1(a) to (c).

"Subscription Form" shall mean the subscription forms to be executed by the Investors Shareholders in accordance with the terms of this Agreement, substantially in the form attached to this Agreement as Appendices 4.1(a) to (c).

23

"**Subsidiary**" shall mean Mediterra Inc., a corporation organized and existing under the laws of the State of Delaware, incorporated on July 17th, 2013, and which is a fully owned subsidiary of the Company.

APPENDIX 3.1.3 (

# S T A T U T S

### TITRE I : RAISON SOCIALE - SIEGE - BUT - DUREE

### Article 1. **Raison sociale**

Il est formé sous la raison sociale

---- <u>Mediterra Holdings SA</u> ----
---- (<u>Mediterra Holdings AG</u>) ----
---- (<u>Mediterra Holdings Ltd</u>) ----

une société anonyme qui est régie par les présents statuts et par le titre XXVI du Code des obligations.

### Article 2. **Siège**

Le siège de la société est à Lausanne.

### Article 3. **But**

La société a pour but le développement, la promotion et la distribution de barres nutritionnelles, de suppléments nutritionnels, de produits alimentaires sains et d'autres produits touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participation dans des entreprises de toute nature en Suisse et à l'étranger.

La société peut :

- exercer toute activité financière, commerciale et industrielle en rapport direct ou indirect avec son but,
- créer des succursales ou des filiales en Suisse et à l'étranger,
- participer à toutes entreprises ayant un rapport direct ou indirect avec son but,
- accorder des prêts ou des garanties à des actionnaires ou des tiers, si cela favorise ses intérêts,
- détenir et gérer des droits de propriété intellectuelle.

### Article 4. **Durée**

La durée de la société est indéterminée.

## TITRE II : CAPITAL-ACTIONS - ACTIONS

### Article 5. Montant nominal - division - nature des titres

Le capital-actions est fixé à la somme de CHF 128'571.00.

Il est divisé en :

a) 100'000 actions nominatives ordinaires de CHF 1.00, valeur nominale chacune, et

b) 28'571 actions privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00, valeur nominale chacune,

entièrement libéré.

### Article 5bis. Capital-actions conditionnel

Le capital-actions pourra être augmenté à concurrence d'un montant maximum de CHF 22'689.00 par l'émission d'un maximum de 22'689 actions nominatives ordinaires d'une valeur nominale de CHF 1.00 chacune, devant être intégralement libérées, par l'exercice de droits d'option accordés à certains employés, consultants ou administrateurs de la société ou de ses filiales, étant précisé qu'aucun bénéficiaire ne peut se voir attribuer au total plus de 5% du capital-actions de la société.

Le droit de souscription préférentiel des actionnaires sera exclu en ce qui concerne ces actions.

Les conditions d'octroi des options par la société telle que les modalités et le prix d'exercice, la date à compter de laquelle les actions donnent droit au dividende, la nature des apports seront fixés par le conseil d'administration dans le cadre de règles spécifiques (telles que plans d'intéressement). Le prix d'exercice ne pourra pas être inférieur à USD 70.00. Ces actions seront soumises aux restrictions prévues aux articles 7 et 8 ci-dessous.

### Article 6. Actions - certificats - registre des actions

Les actions sont numérotées et signées par un membre du conseil d'administration. –

En lieu et place d'actions, il peut être émis des certificats numérotés représentant une ou plusieurs actions. Le conseil d'administration peut décider de remettre aux actionnaires de simples attestations prouvant leurs droits sociaux au lieu d'émettre des papiers-valeurs.

Les actions nominatives peuvent être converties en actions au porteur et inversement.

La société tient un registre des actions nominatives qui mentionne le nom et l'adresse des propriétaires et des usufruitiers.

### Article 7. Transfert des actions

2

La cession des actions s'opère par voie d'endossement, ou à défaut par une déclaration écrite de cession, et est subordonnée à l'approbation du conseil d'administration et à son inscription au registre des actions. ———————————

Le conseil d'administration peut refuser le transfert en invoquant un juste motif au sens de l'article 685b alinéa 2 CO notamment si le ou les nouveaux acquéreurs du capital-actions mettent en péril le but social ou l'indépendance économique de l'entreprise par le fait qu'ils exercent en tant que membres du conseil d'administration, directeurs ou propriétaires de sociétés ou d'entreprises, une activité concurrente. ———————————

La société peut en outre refuser l'inscription au registre des actions si l'acquéreur n'a pas expressément déclaré qu'il reprenait les actions en son propre nom ou pour son propre compte. ———————————

L'approbation peut aussi être refusée sans indication de motif si le conseil d'administration reprend les actions à leur valeur réelle au moment de la demande d'approbation, pour le compte de la société, d'autres actionnaires ou de tiers. ———

Si les actions ont été acquises par succession, partage successoral, en vertu du régime matrimonial ou dans une procédure d'exécution forcée, la société ne peut refuser son approbation que si elle offre à l'acquéreur de reprendre les actions en cause à leur valeur réelle. ———————————

L'approbation de la cession, son refus ou l'offre de reprise doit être notifié par le conseil d'administration au cédant dans les trois mois dès la réception de la requête. -

Le droit de préemption constitué par l'article 8 ci-après au profit des actionnaires prime le droit du conseil d'administration de reprendre les actions pour le compte de la société ou de tiers. ———————————

La valeur réelle des actions sera déterminée conformément à l'article 8. ———————

Article 8. **Droit de préemption** ———————————

Si un actionnaire se propose de vendre à un tiers tout ou partie de ses actions, il fera parvenir aux autres actionnaires et au conseil d'administration les conditions d'achat arrêtées avec ce tiers. ———————————

Les actionnaires restant auront alors un droit de préemption qui devra s'exercer dans un délai de trente jours dès réception des conditions d'achat, proportionnel au nombre d'actions qu'ils possèdent. Si l'un ou l'autre des actionnaires renonce à son droit, les droits des autres se trouveront augmentés d'autant, proportionnellement au nombre d'actions que chacun possède. L'absence de réponse dans le délai imparti vaut renonciation au droit de préemption. ———————————

En cas de désignation par la société d'un organe de révision, la valeur des actions est fixée par ce dernier. Si l'un ou plusieurs actionnaires contestent le prix fixé par l'organe de révision, le prix des actions sera alors déterminé par une fiduciaire

3

choisie à l'unanimité des actionnaires, laquelle fiduciaire tranchera définitivement. En cas de désaccord des actionnaires quant au choix de la fiduciaire, cette dernière sera désignée par le président du Tribunal de première instance du lieu du siège de la société. ————————————————————————————————————————

Si la société renonce à la désignation d'un organe de révision, la valeur des actions sera déterminée par la fiduciaire désignée conformément à l'alinéa qui précède. ————

Si, dans un délai d'un mois, aucun des actionnaires ne se déclare prêt à acheter les titres aux conditions fixées par l'organe de révision, ou le cas échéant, par une fiduciaire, le cédant pourra, sous réserve du droit de reprise du conseil d'administration, céder les actions à l'acquéreur de son choix. ———————————

## Article 9. Indivisibilité des titres - droits attachés aux actions ——————

Chaque action est indivisible à l'égard de la société, qui ne reconnaît qu'un propriétaire pour une action. ——————————————————————————————

Chaque action donne droit à une part de bénéfice résultant du bilan et du produit de liquidation en proportion des versements opérés au capital-actions. ————————

Les actionnaires ne sont tenus que des prestations statutaires et ne répondent pas personnellement des dettes sociales. ———————————————————————

## Article 10. Augmentation du capital - droit préférentiel de souscription ———

L'augmentation du capital-actions est décidée par l'assemblée générale; elle doit être exécutée par le conseil d'administration dans les trois mois. —————————

Il ne peut être émis de nouvelles actions qui primeraient les actions privilégiées existantes qu'avec l'approbation tant d'une assemblée spéciale des actionnaires atteints que d'une assemblée générale de tous les actionnaires. ——————————

Tout actionnaire a droit à la part d'actions nouvellement émises qui correspond à sa participation antérieure. La décision prise par l'assemblée générale d'augmenter le capital-actions ne peut supprimer ou limiter le droit préférentiel de souscription que pour de justes motifs. ———————————————————————————————

## TITRE III : ASSEMBLEE GENERALE —————————————————————

## Article 11. Décisions —————————————————————————————

L'assemblée générale est le pouvoir suprême de la société. ———————————

Ses décisions sont obligatoires pour tous ses actionnaires, même non présents ou non représentés. ———————————————————————————————

Les décisions de l'assemblée générale qui violent la loi ou les statuts peuvent être attaquées par le conseil d'administration ou chaque actionnaire dans les conditions prévues par les articles 706, 706a et 706b du Code des obligations. ———————

Article 12. **Attributions** ——————————————————————

L'assemblée générale des actionnaires a le droit intransmissible : ——————

1. d'adopter ou de modifier les statuts, ——————————————————
2. de nommer et révoquer les membres du conseil d'administration et l'organe de révision éventuel, ——————————————————————
3. d'approuver le rapport annuel et les comptes consolidés, ——————————
4. d'approuver les comptes annuels et de déterminer l'emploi du bénéfice résultant du bilan, en particulier de fixer le dividende et les tantièmes, ——————
5. de donner décharge aux membres du conseil d'administration, ——————
6. de prendre toutes les décisions qui lui sont réservées par la loi ou les statuts. ——

Article 13. **Réunions** ——————————————————————————

L'assemblée générale se tient au siège social ou en tout autre lieu, en Suisse ou à l'étranger, désigné par l'organe qui convoque. ——————————————

L'assemblée générale ordinaire se réunit chaque année dans les six mois qui suivent la clôture de l'exercice annuel. ——————————————————

Une assemblée générale des actionnaires peut être réunie extraordinairement, aussi souvent qu'il est nécessaire. ——————————————————————

Les dispositions qui suivent s'appliquent aux assemblées générales ordinaires et extraordinaires.——————————————————————————

Article 14. **Convocations** —————————————————————————

L'assemblée générale est convoquée par le conseil d'administration et, au besoin, par les réviseurs. Les liquidateurs et, le cas échéant, les représentants des obligataires ont également le droit de la convoquer. ——————————————

Un ou plusieurs actionnaires, représentant dix pour cent au moins du capital-actions, peuvent aussi requérir la convocation de l'assemblée générale. ——————————

Article 15. **Mode de convocation** ————————————————————

L'assemblée générale est convoquée vingt jours au moins avant la date de sa réunion par une seule notification selon la procédure prévue à l'article 40 des présents statuts. ——————————————————————————

Sont mentionnés dans la convocation de l'assemblée générale les objets portés à l'ordre du jour, ainsi que les propositions du conseil d'administration et des actionnaires qui ont demandé la convocation de l'assemblée ou l'inscription d'un objet à l'ordre du jour. ——————————————————————

Les avis de convocation à l'assemblée générale ordinaire doivent informer les actionnaires que le rapport de gestion et le rapport de révision, pour les sociétés

5

ayant l'obligation de faire contrôler leurs comptes annuels, sont mis à leur disposition au siège de la société et des succursales vingt jours au plus tard avant l'assemblée générale. ————————————————————————————————————————

Aucune décision ne peut être prise sur des objets qui n'ont pas été dûment portés à l'ordre du jour à l'exception des propositions de convoquer une assemblée générale extraordinaire, d'instituer un contrôle spécial ou d'élire un organe de révision. ————

Il n'est pas nécessaire d'annoncer à l'avance les propositions entrant dans le cadre des objets portés à l'ordre du jour, ni les délibérations qui ne doivent pas être suivies d'un vote. ————————————————————————————————————————

## Article 16. **Assemblées universelles** ————————————————————————

Les propriétaires ou les représentants de la totalité des actions peuvent, s'il n'y a pas d'opposition, tenir une assemblée générale sans observer les formes prévues pour sa convocation. ————————————————————————————————————————

Aussi longtemps qu'ils sont tous présents, cette assemblée a le droit de délibérer et de statuer valablement sur tous les objets qui sont du ressort de l'assemblée générale. ————————————————————————————————————————

## Article 17. **Représentation** ————————————————————————————————

Un actionnaire peut faire représenter ses actions par une personne, actionnaire ou non, munie d'un pouvoir écrit. ————————————————————————————————

## Article 18. **Bureau** ————————————————————————————————————

L'assemblée générale est présidée par le président du conseil d'administration ou, à défaut de celui-ci, par un autre membre du conseil désigné par l'assemblée. ————

S'il n'y a aucun membre du conseil d'administration présent, l'assemblée désigne un président du jour. ————————————————————————————————————

Le président désigne le secrétaire et éventuellement un ou plusieurs scrutateurs, qui ne doivent ni l'un ni les autres nécessairement être actionnaires. ————————

## Article 19. **Droit de vote** ————————————————————————————————

Les actionnaires exercent leur droit de vote à l'assemblée générale, proportionnellement à la valeur nominale de toutes les actions qui leur appartiennent.

Chaque actionnaire a droit à une voix au moins, même s'il ne possède qu'une action.

## Article 20. **Délibérations** ————————————————————————————————

L'assemblée générale est valablement constituée quel que soit le nombre des actionnaires présents ou représentés. ————————————————————————————————

6

Elle prend ses décisions et procède aux élections à la majorité absolue des voix attribuées aux actions représentées. ———————————————————————————————

Si un second tour de scrutin est nécessaire, la majorité relative est suffisante. En cas de partage des voix, celle du président est prépondérante lorsqu'il s'agit de décisions. Pour les élections, c'est le sort qui décide. ———————————————————

En général, les votations se font à main levée, les élections au scrutin secret, à moins que l'assemblée n'en décide autrement. —————————————————————————

Une décision de l'assemblée générale recueillant au moins (i) les deux tiers des voix attribuées aux actions représentées, (ii) la majorité absolue des valeurs nominales représentées et (iii) la majorité des voix attribuées aux actions privilégiées quant au produit de liquidation dites de type « A » est nécessaire pour la modification du but social. ——————————————————————————————————————

Une décision de l'assemblée générale recueillant au moins les deux tiers des voix attribuées aux actions représentées et la majorité absolue des valeurs nominales représentées est nécessaire pour : ——————————————————————————

1. l'introduction d'actions à droit de vote privilégié, ————————————————
2. l'introduction, la suppression ou la limitation de la restriction de la transmissibilité des actions nominatives, ————————————————————————————
3. l'augmentation autorisée ou conditionnelle du capital-actions, ————————
4. l'augmentation du capital-actions au moyen des fonds propres, contre apport en nature ou en vue d'une reprise de biens et l'octroi d'avantages particuliers, ————
5. la limitation ou la suppression du droit de souscription préférentiel, —————
6. le transfert du siège de la société, ——————————————————————
7. la dissolution de la société, ———————————————————————————
8. la conversion des actions nominatives en actions au porteur. ————————

La suppression ou la modification des privilèges accordés aux détenteurs d'actions privilégiées ne peuvent pas s'effectuer sans l'accord de tous les actionnaires concernés, les dispositions de l'article 654 du Code des obligations demeurent réservées. ——————————————————————————————————————

<u>Article 21</u>. **Procès-verbaux** ————————————————————————

Il est dressé procès-verbal des séances de l'assemblée générale qui mentionne les indications sur la représentation des actionnaires, les décisions prises, les nominations, les demandes de renseignements et les réponses données de même que les déclarations dont les actionnaires demandent l'inscription. ————————

Le procès-verbal est signé par le président, par le secrétaire et éventuellement par les scrutateurs. ——————————————————————————————————

Les extraits qui en sont délivrés sont certifiés conformes par un membre du conseil d'administration. ————————————————————————————————

Demeure réservée la forme authentique des décisions qui modifient les statuts selon l'article 647 du Code des obligations.

## TITRE IV : LE CONSEIL D'ADMINISTRATION

### Article 22. Composition

La société est administrée par un conseil d'administration composé d'un ou plusieurs membres, nommés par l'assemblée générale.

Les titulaires d'actions privilégiées ont le droit de disposer d'un représentant au conseil d'administration.

### Article 23. Durée des fonctions - organisation

La durée des fonctions des membres du conseil d'administration est d'un an.

Ils sont rééligibles. Le membre nommé en remplacement d'un autre demeure en fonction pour la durée du mandat de son prédécesseur.

En cas de pluralité de membres du conseil d'administration, celui-ci désigne un président et un secrétaire, lequel peut être choisi en dehors de son sein.

### Article 24. Délibérations

Si le conseil d'administration se compose de plusieurs membres, ses décisions sont prises à la majorité des membres présents, pourvu toutefois que ceux-ci forment la majorité du conseil.

En cas de partage égal des voix, celle du président est prépondérante.

Le quorum ci-dessus n'est toutefois pas nécessaire lorsqu'il s'agit de constater la libération ultérieure du capital ou l'exécution d'une augmentation de capital et de décider la modification des statuts en résultant.

Les décisions du conseil d'administration peuvent également être prises en la forme d'une approbation donnée par écrit à une proposition à moins que la discussion ne soit requise par l'un des membres.

### Article 25. Procès-verbal

Il est tenu un procès-verbal des décisions du conseil d'administration, même lorsqu'une seule personne est chargée de l'administration.

En cas de pluralité de membres du conseil d'administration, le procès-verbal de chaque séance est signé par le président et le secrétaire. Il doit mentionner les membres présents et les décisions circulaires.

### Article 26. Convocation - droit aux renseignements

8

Le conseil d'administration siège aussi souvent que les affaires l'exigent, sur convocation de son président. ———————————————————————

Chaque membre du conseil d'administration peut exiger du président, en indiquant les motifs, la convocation immédiate du conseil d'administration à une séance. ———

Chaque membre du conseil d'administration a en plus le droit d'obtenir les renseignements conformément à l'article 715 a du Code des obligations. —————

Article 27. **Pouvoirs** ————————————————————————

Le conseil d'administration a les pouvoirs les plus étendus pour la gestion de la société et représente la société à l'égard des tiers. Il peut prendre des décisions sur toutes les affaires qui ne sont pas attribuées à l'assemblée générale ou aux autres organes sociaux. ————————————————————

Il gère les affaires de la société dans la mesure où il n'en a pas délégué la gestion. —

Il a les attributions intransmissibles et inaliénables suivantes : ——————————

1. exercer la haute direction de la société et établir les instructions nécessaires, ——
2. fixer l'organisation, ——————————————————————
3. fixer les principes de la comptabilité et du contrôle financier ainsi que le plan financier pour autant que celui-ci soit nécessaire à la gestion de la société, ———
4. nommer et révoquer les personnes chargées de la gestion et de la représentation, ——————————————————
5. exercer la haute surveillance sur les personnes chargées de la gestion pour s'assurer notamment qu'elles observent la loi, les statuts, les règlements et les instructions données, ——————————————————
6. établir le rapport de gestion, préparer l'assemblée générale et exécuter ses décisions, ——————————————————
7. informer le juge en cas de surendettement. ————————————

En outre, il prend les décisions concernant l'appel ultérieur d'apports relatifs à des actions non entièrement libérées ainsi que les décisions relatives à la constatation d'augmentations de capital et aux modifications des statuts qui en résultent. ————

Il peut déléguer à certains de ses membres, pris individuellement ou groupés en comités, la charge de préparer et d'exécuter ses décisions ou de surveiller certaines affaires. ———————————————————————

Article 28. **Délégation de la gestion** ————————————————

Le conseil d'administration peut déléguer tout ou partie de la gestion à un ou plusieurs de ses membres (délégués) ou à des tiers (directeurs) conformément au règlement d'organisation qu'il établit. ————————————————

Article 29. **Représentation** ——————————————————

9

Le conseil d'administration peut déléguer le pouvoir de représentation à un ou plusieurs de ses membres (délégués) ou à des tiers (directeurs, fondés de procuration, mandataires commerciaux). ————————————————————

Il fixe le mode de signature. ————————————————————————

La société doit pouvoir être représentée par une personne domiciliée en Suisse, un membre du conseil d'administration ou un directeur doit satisfaire à cette exigence. —

Si la société est représentée par la personne avec laquelle elle conclut un contrat, celui-ci doit être passé en la forme écrite. Cette exigence ne s'applique pas aux opérations courantes pour lesquelles la prestation de la société ne dépasse pas CHF 1'000.00. ————————————————————————

## Article 30. Indemnité ————————————————————————

Chaque membre du conseil d'administration a droit, en sus du remboursement de ses dépenses, à une indemnité fixée par le conseil d'administration en raison de l'activité déployée pour la société. ————————————————————

## TITRE V : ORGANE DE REVISION ————————————————————

## Article 31. Révision ————————————————————————

L'assemblée générale élit un organe de révision. ————————————————————

Elle peut renoncer à l'élection d'un organe de révision lorsque : ————————————

1. la société n'est pas assujettie au contrôle ordinaire; ————————————
2. l'ensemble des actionnaires y consent; et ————————————————————
3. l'effectif de la société ne dépasse pas 10 emplois à plein temps en moyenne annuelle. ————————————————————————

Lorsque les actionnaires ont renoncé au contrôle restreint, cette renonciation est également valable les années qui suivent. Chaque actionnaire a toutefois le droit d'exiger un contrôle restreint et l'élection d'un organe de révision au plus tard 10 jours avant l'assemblée générale. Dans ce cas, l'assemblée générale ne peut prendre les décisions mentionnées à l'art. 12 chi. 3 et 4 qu'une fois que le rapport de révision est disponible. ————————————————————————

Sont tenues de soumettre leurs comptes annuels et, le cas échéant, leurs comptes consolidés au contrôle ordinaire : ————————————————————

1. les sociétés ouvertes au public, soit les sociétés : ————————————————

   a. qui ont des titres de participation côtés en bourse, ————————————
   b. qui sont débitrices d'un emprunt par obligations, ————————————
   c. dont les actifs ou le chiffre d'affaire représentent 20% au moins des actifs ou du chiffre d'affaires des comptes consolidés d'une société au sens des let. a et b; ————————————————————————

10

2.  les sociétés qui, au cours de deux exercices successifs, dépassent deux des valeurs mentionnées à l'article 727, chiffre 2 CO, ⸺⸺⸺⸺⸺

3.  les sociétés qui ont l'obligation d'établir des comptes consolidés. ⸺⸺⸺⸺

Un contrôle ordinaire des comptes est également requis lorsque des actionnaires représentant ensemble au moins 10% du capital-actions l'exigent. ⸺⸺⸺⸺

Article 32. **Exigences relatives à l'organe de révision** ⸺⸺⸺⸺⸺

Sont éligibles comme organe de révision une ou plusieurs personnes physiques ou morales ainsi que les sociétés de personnes. ⸺⸺⸺⸺⸺

Au moins un membre de l'organe de révision doit avoir en Suisse son domicile, son siège ou une succursale inscrite au registre du commerce. Lorsque la société a plusieurs organes de révision, l'un au moins doit satisfaire à cette exigence. ⸺⸺⸺

Lorsque la société est tenue de soumettre ses comptes annuels au contrôle ordinaire d'un organe de révision en vertu de : ⸺⸺⸺⸺⸺

1.  l'art. 727 al. 1 chi. 2 ou chi. 3 ⸺⸺⸺⸺⸺⸺
2.  l'art. 727 al. 2 CO, ⸺⸺⸺⸺⸺⸺⸺

l'assemblée générale élit un expert-réviseur agréé au sens de la loi fédérale sur la surveillance des réviseurs du 16 décembre 2005 comme organe de révision. ⸺⸺⸺

Lorsque la société est tenue de soumettre ses comptes annuels au contrôle restreint d'un organe de révision, l'assemblée générale élit un réviseur agréé au sens de la loi fédérale sur la surveillance des réviseurs du 16 décembre 2005 comme organe de révision. La renonciation à l'élection d'un organe de révision en vertu de l'art. 31 demeure réservée. ⸺⸺⸺⸺⸺

L'organe de révision doit **être** indépendant au sens de l'art. 728 CO en cas de contrôle ordinaire et de l'art. 729 CO en cas de contrôle restreint. ⸺⸺⸺⸺

L'organe de révision est élu pour une durée d'un exercice. Son mandat prend fin avec l'approbation des derniers comptes annuels. Il peut être reconduit dans ses fonctions. L'assemblée générale peut, en tout temps, révoquer l'organe de révision avec effet immédiat. ⸺⸺⸺⸺

Article 33. **Attributions** ⸺⸺⸺⸺⸺⸺

En cas de contrôle ordinaire, l'organe de révision vérifie : ⸺⸺⸺⸺

1.  Si les comptes annuels, le cas échéant, les comptes consolidés sont conformes aux dispositions légales, aux statuts et au cadre de référence choisi. ⸺⸺⸺
2.  Si la proposition du conseil d'administration à l'assemblée générale concernant l'emploi du bénéfice est conforme aux dispositions légales et aux statuts. ⸺⸺⸺
3.  S'il existe un système de contrôle interne. ⸺⸺⸺⸺⸺

11

Il établit à l'intention du conseil d'administration un rapport détaillé conformément à l'article 728b, alinéa 1er du Code des Obligations.

Il établit à l'intention de l'assemblée générale, conformément à l'article 728b, alinéa 2, du Code des Obligations, un rapport écrit sur le résultat de sa vérification et il recommande l'approbation des comptes annuels avec ou sans réserves ou leur refus.

Si l'organe de révision constate des violations de la loi ou des statuts ou d'un éventuel règlement d'organisation, il en avertit par écrit le conseil d'administration. En cas de violation grave de la loi ou des statuts et en cas d'omission du conseil à prendre des mesures adéquates, après un avertissement écrit, l'organe de révision avertit l'assemblée générale.

En cas de surendettement manifeste, il avise le juge, si le conseil d'administration omet de le faire.

L'organe de révision, en cas de contrôle ordinaire, doit être présent à l'assemblée générale ordinaire sauf si celle-ci l'en dispense par une décision unanime.

En cas de contrôle restreint, l'organe de révision vérifie s'il existe des faits dont il résulte que :

1. les comptes annuels ne sont pas conformes aux dispositions légales et aux statuts;
2. la proposition du Conseil d'administration à l'Assemblée générale concernant l'emploi du bénéfice n'est pas conforme aux dispositions légales et aux statuts.

Il établit à l'attention de l'Assemblée générale un rapport écrit qui résume le résultat de la révision conformément à l'article 729b du Code des Obligations.

## TITRE VI : COMPTES ANNUELS - RESERVE - DIVIDENDES

Article 34. **Exercice comptable**

Les exercices comptables sont annuels. Le Conseil d'administration décide de la date du bouclement.

Article 35. **Rapport de gestion**

Il est dressé chaque année, en conformité des articles 957 et suivants du Code des obligations un rapport de gestion qui se compose d'un bilan, d'un compte de résultats de la société, arrêtés à la date décidée par le Conseil d'administration, et d'une annexe selon l'article 959c CO, du rapport annuel ainsi que, lorsque la loi le prescrit, du rapport annuel et des comptes consolidés.

Article 36. **Affectation du bénéfice**

12

Les dispositions impératives de l'article 671 du Code des obligations traitant des versements obligatoires à la réserve générale doivent être respectées. ————————

Le solde du bénéfice résultant du bilan est réparti conformément aux décisions de l'assemblée générale. ————————

<u>Article 37</u>. **Paiement du dividende** ————————

Le paiement du dividende a lieu à l'époque fixée par le conseil d'administration. Tout dividende qui n'a pas été réclamé dans les cinq ans dès son exigibilité est acquis de plein droit à la société. ————————

## TITRE VII : LIQUIDATION ————————

<u>Article 38</u>. **Liquidation** ————————

En cas de dissolution de la société pour d'autres causes que sa faillite ou une décision judiciaire, la liquidation en est opérée par le conseil d'administration, à moins de décision contraire de l'assemblée générale. ————————

L'un au moins des liquidateurs doit être domicilié en Suisse et avoir qualité pour représenter la société. ————————

<u>Article 39</u>. **Pouvoirs des liquidateurs - répartition** ————————

Pendant la liquidation, les pouvoirs des organes sociaux sont restreints aux actes qui sont nécessaires à cette opération et qui, de par leur nature, ne sont point du ressort des liquidateurs. ————————

L'assemblée générale des actionnaires conserve le droit d'approuver les comptes de la liquidation et d'en donner décharge. ————————

Les actions nominatives privilégiées dites de types « A » sont privilégiées quant au produit de liquidation, en ce sens qu'en cas de liquidation, les actionnaires titulaires d'actions nominatives privilégiées dites de types « A » auront droit, préalablement à toute distribution aux autres actionnaires, à une part privilégiée du produit de liquidation équivalent à la totalité des versements opérés par les actionnaires titulaires d'actions nominatives privilégiées dites de types « A » pour la souscription desdites actions, prime d'émission comprise, moins les dividendes perçus. Si des versements ont été effectués en monnaie étrangère, le cours moyen du jour de l'exécution de l'augmentation du capital-actions ayant donné lieu aux présents privilèges sera retenu. L'excédent éventuel du produit de liquidation sera réparti exclusivement entre les actionnaires titulaires d'actions nominatives ordinaires, en proportion du nombre d'actions nominatives ordinaires détenues. ————————

## TITRE VIII : PUBLICATION - FOR ————————

<u>Article 40</u>. **Publications** ————————

13

Les publications de la société sont valablement faites dans la Feuille Officielle Suisse du Commerce. ————— —————— ———————— ——————

Les communications de la société aux actionnaires se font par lettre recommandée, à l'adresse de chacun des actionnaires inscrits sur le registre des actions. —————

Article 41. **For** ————————————————————————

Toutes les contestations qui pourront s'élever pendant la durée de la société ou sa liquidation, soit entre les actionnaires et la société ou les membres du conseil d'administration et réviseurs, soit entre les actionnaires eux-mêmes en raison des affaires de la société, seront soumises aux tribunaux du canton de son siège. ————

STATUTS MODIFIES le ... 2013. ——————————————————

L'atteste :

La traduction anglaise des présents statuts est indicative ; en cas de divergence entre les versions, la version française fait foi. —————————————

# A R T I C L E S

## SECTION I: CORPORATE NAME - HEADQUARTERS - OBJECT - DURATION ——

Article 1. **Corporate name** ——————————————————

A limited company is formed under the following corporate name ——————

---- <u>Mediterra Holdings SA</u> ----
---- (<u>Mediterra Holdings AG</u>) ----
---- (<u>Mediterra Holdings Ltd</u>) ----

It is governed by these articles and by section XXVI of the Code of obligations. ————

Article 2. **Headquarters** ——————————————————

The company's headquarters are at Lausanne. ——————————————

14

Article 3. **Object**

The object of the company shall be the development, marketing and distribution of nutritional bars, nutritional supplements, health foods and other products related to general health and wellness and the acquisition, management and disposal of participations in undertakings of all kinds in Switzerland and abroad.

It may :

- Exercise any financial, commercial and industrial activity in direct or indirect relation with its object;
- Create any branches or subsidiaries in Switzerland or overseas;
- Own holdings in any companies which have a direct or indirect relationship with its object;
- Grant loans or guarantees to shareholders or to third parties, if this is in the company's interest,
- Hold and manage intellectual property rights.

Article 4. **Duration**

The duration of the company is indefinite.

## SECTION II : SHARE CAPITAL - SHARES

Article 5. **Nominal total – division – nature of securities**

The share capital is set at the sum of CHF 128'571.00.

It is divided into :

a)   100'000 ordinary registered shares of CHF 1.00 each, and
b)   28'571 "A" registered shares with liquidation preference of CHF 1.00 each,

wholly paid up.

Article 5bis. **Conditional Capital**

The share capital shall be able to be increased up to a maximum amount of CHF 22'689.00 through the issuance of a maximum of 22'689 ordinary registered shares with a nominal value of CHF 1.00 per share, which must be fully paid up, by the exercise of option rights granted to certain employees, consultants or directors of the company or of its subsidiaries, being specified that no beneficiary shall be granted in the aggregate more than 5% of the Company's share capital.

The preferential right of the shareholders shall be excluded in relation to these shares.

Conditions for the granting of options by the company, such as the method, the strike price, the date from which share give right to a dividend and the nature of contributions shall be established by the Board of Directors within the framework of

15

specific rules (such as profit sharing plans). The strike price shall not be lower than USD 70.00. These shares shall be subject to restrictions of Articles 7 and 8. —————

Article 6. **Shares - certificates - register of shares** ———————————

The shares are numbered and signed by a member of the board of directors. ———

Instead of shares, numbered certificates may be issued representing one or more shares. The Board of Directors may decide to issue to the shareholders, in lieu of securities, simple documentary evidence for their membership. ———————

The nominal shares may be converted into bearer shares and vice versa. ———————

The company keeps a register of the nominal shares which mentions the names and the addresses of the owners and the beneficial owners. ———————

Article 7. **Transfer of shares** ————————————————

The transfer of shares is carried out by means of endorsement, or otherwise by a written declaration of transfer, and is subject to the approval of the board of directors and to the transaction being recorded on the register of shares.———————

The board of directors may refuse the transfer by invoking reasonable grounds under article 685b paragraph 2 CO, in particular if the new owner or owners of the share capital endanger the corporate object or the economic independence of the company due to the fact that they are acting as members of the board of directors, are directors or owners of companies or enterprises which are engaged in a competing activity. ———————

The company may also refuse to record shares on the register if the purchaser has not expressly declared that he or she is taking over the shares in his or her own name or on his or her own behalf. ———————

The approval may also be refused with no grounds being given if the board of directors purchases the shares at their true value at the time of the request for approval, on behalf of the company, other shareholders or third parties. ———————

If the shares have been acquired by succession, the sharing out of a succession, in virtue of the matrimonial system or in a forced execution procedure, the company may only refuse its approval if it offers to buy the shares in question from the purchaser at their true value. ———————

The approval of the transfer, its refusal or the purchase offer must be notified by the board of directors to the transferor within three months from the receipt of the request. ———————

The pre-emptive right constituted by article 8 below in favour of shareholders gives precedence to the right of the board of directors to purchase the shares on behalf of the company or third parties. ———————

16

The true value of the shares shall be determined in accordance with article 8. ———

Article 8. **Pre-emptive right** ————————————————————————

If a shareholder offers to sell all or some of his or her shares to any third party, he shall send the other shareholders and the board of directors the conditions of purchase with this third party. ——————————————————————

The remaining shareholders shall then have a pre-emptive right which must be exercised within a period of thirty days from receipt of the conditions of purchase, proportional to the number of shares which they own. If one or other of the shareholders waives his or her right, the rights of the others shall thus be increased in proportion to the number which each person owns. The lack of a response within the deadline given shall be equivalent to the waiving of the pre-emptive right. ———

The value of the shares is set by the auditors. If one or more shareholders should dispute the price set by the auditors, the price of the shares shall thus be determined by a fiduciary chosen unanimously by the shareholders, this fiduciary shall rule definitively. In the case of any disagreement on the part of the shareholders with regard to the choice of the fiduciary, this latter shall be designated by the president of the civil Court of the district in which the headquarters are located. ———————

If, within a period of one month, none of the shareholders have declared themselves to be ready to purchase the securities under the conditions set by the auditors or, if need be, by a fiduciary, the transferor may, under reservation of the board of directors' right to purchase, transfer the shares to the purchaser of his or her choice. -

Article 9 **Indivisibility of the securities – rights attached to the shares** ————

Each share is indivisible with regard to the company, which only recognises one owner per share. ——————————————————————————

Each share gives the right to a part of the profits resulting from the balance sheet and the liquidation product in proportion to the payments made to the share capital. ———

The shareholders are only bound to the statutory services and are not personally responsible for corporate debts. ——————————————————————

Article 10.  **Increase of capital – preferential subscription right** ——————

Any increase in the share capital shall be decided upon by the general meeting, it must be executed by the board of directors within three months. ———————

It will not be possible to issue new shares which take precedence over existing preference shares except with the approval both of a special meeting of the shareholders affected and of a general meeting of all the shareholders. ——————

Any shareholder has the right to a quota of newly issued shares corresponding to his or her previous holding. Any decision taken by the general meeting to increase the

17

share capital cannot remove or limit the preferential subscription right except for just reasons. ————————————————————————————————————————

## SECTION III: GENERAL MEETING ————————————————————————

### Article 11. Decisions ————————————————————————————————

The general meeting is the company's supreme power. ——————————————

Its decisions are binding for all shareholders, even if they are not present or not represented. ————————————————————————————————————————

Any decisions taken by the general meeting which breach the law or the statutes may be contested by the board of directors or any of the shareholders under the conditions laid down by articles 706, 706a and 706b of the Code of obligations. ———

### Article 12. Allocations ————————————————————————————————

The general shareholders meeting has the inalienable right to do the following : ———

1. To adopt or to modify the statutes. ——— ———————————————————
2. To appoint or remove members of the board of directors and the auditors. ———
3. To approve the annual report and the consolidated accounts. ———————————
4. To approve the annual accounts and to determine the use to be made of the profit resulting from the balance sheet, in particular to set the dividend and the percentages of profits. ————————————————————————————————
5. To discharge members of the board of directors. ————————————————
6. To take any decisions which are reserved to it by law or by the statutes. ————

### Article 13. Meetings ————————————————————————————————

The general meeting is held at the corporate headquarters or in any other place, in Switzerland or overseas, as designated by the body which convenes the meeting. ——

The ordinary general meeting meets every year within the six months following the closure of the financial year. ————————————————————————————

A general shareholders meeting may be convened extraordinarily, as often as may be necessary. ————————————————————————————————————

The provisions which follow apply to both ordinary and extraordinary general meetings. ————————————————————————————————————————

### Article 14. Notice ————————————————————————————————————

The general meeting is convened by the board of directors and, if need be, by the auditors. The liquidators, and, if need be, the representatives of the holders of redeemable shares also have the right to convene. ————————————————————

18

One or more shareholders, representing at least ten per cent of the share capital, may also require the convening of the general meeting. ⸻

<u>Article 15</u>. **Form of notice** ⸻

The General Meeting shall be called subject to at least twenty days' prior notice by a single notification according to the procedure envisaged in article 40 below. ⸻

Notice of the General Meeting shall be accompanied by a list of the items on the agenda and by any proposals by the Board of Directors and any shareholders who asked that the meeting be called or an item be included on the agenda. ⸻

Notice of the ordinary General Meeting must inform shareholders that the annual report and, for companies required to have their annual accounts audited, the auditor's report are being held at their disposal at the head office and branches of the Company twenty days at the latest before the General Meeting. ⸻

No decision can be taken on items not duly placed on the agenda save for proposals to convene an extraordinary General Meeting, to conduct a special audit or to elect auditors. ⸻

Prior notice is not necessary for proposals relating to the items on the agenda, nor for discussions that are not to be followed by a vote. ⸻

<u>Article 16</u>. **Universal meetings** ⸻

The owners or the representatives of all of the shares may, if there is no opposition, hold a general meeting without observing the precise forms for the convening of the latter. ⸻

As long as they are all present, this meeting has the right to deliberate and to validly rule on all items which fall within the competence of the general meeting. ⸻

<u>Article 17</u>. **Representation** ⸻

A shareholder may have his shares represented by a person, who may or may not be a shareholder, provided with a written power of proxy. ⸻

<u>Article 18</u>. **Board** ⸻

The general meeting is chaired by the Chair of the board of directors or, failing this, by another member of the board designated by the meeting. ⸻

If there is no member of the board of directors present, the meeting designates a temporary Chair. ⸻

The Chair designates the secretary and, where applicable, one or more scrutineers, who do not necessarily need to be shareholders. ⸻

<u>Article 19</u>. **Voting rights** ⸻

19

The shareholders exercise their voting rights at the general meeting, in proportion to the nominal value of all of the shares which belong to them. ————————————

Each shareholder has the right to at least one vote, even if he or she only owns one share. ————————————

Article 20. **Discussions** ————————————

The General Meeting shall have a quorum whatever the number of shareholders present or represented. ————————————

It shall adopt its decisions and conduct its elections by an absolute majority of the votes allotted to the shares represented. ————————————

If a second ballot is necessary, a relative majority shall suffice. In the event of a draw, the Chairman shall have the casting vote in the case of decisions. For elections, the decision shall be taken by the drawing of lots. ————————————

In general, voting shall be by a show of hands and elections by secret ballot, unless the Meeting decide otherwise. ————————————

A General Meeting decision by (i) at least two-thirds of the votes allotted to the shares represented, (ii) an absolute majority of the face values represented and (iii) the majority of the votes alloted to "A" registered shares with liquidation preference is necessary to amend the purpose of the Company. ————————————

A General Meeting decision by at least two-thirds of the votes allotted to the shares represented and an absolute majority of the face values represented is necessary to :

1. introduce privileged voting shares, ————————————
2. abolish or limit the restriction on the transmissibility of registered shares, ————
3. effect an authorised or conditional increase in share capital, ————————
4. increase the share capital by means of shareholders' equity, by a contribution in kind or by assuming assets and granting particular advantages, ————————
5. limit or abolish preferential subscription rights, ————————————
6. transfer the registered office of the Company, ————————————
7. wind-up the Company, ————————————
8. convert the registered shares into bearer shares. ————————————

The removal or modification of the privileges afforded to the holders of preference shares cannot take place without the agreement of all the shareholders concerned, without prejudice to the provisions of Article 654 of the Code of Obligations. ————

Article 21. **Minutes** ————————————

Minutes are drawn up for sessions of the general meeting which mention the details on the representation of shareholders, the decisions taken, appointments, requests

20

for information and the answers given and declarations made when shareholders request that they be recorded. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The minutes are signed by the chair, by the secretary and, where applicable, by the scrutineers. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The abstracts issued are certified as accurate by a member of the board of directors.

The authentic form of any decisions which modify the statutes is reserved according to article 647 of the Code of obligations. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

## SECTION IV: THE BOARD OF DIRECTORS ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

### Article 22. Composition ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The Company shall be administered by a Board of Directors comprising one or more members, appointed by the General Meeting. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The holders of preference shares are entitled to have a representative on the board of directors. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

### Article 23. Duration of positions – organisation ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The duration of the positions of the members of the board of directors is one year. ⸺

They can be re-elected. Any member appointed to replace another remains in his position for the length of the mandate of his predecessor. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

In the case of plurality of members of the board of directors, the latter designates a chair and a secretary, who may be chosen from outside the board. ⸺⸺⸺⸺⸺⸺⸺⸺

### Article 24. Deliberations ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

If the board of directors is made up of various members, its decisions are taken by a majority of the members present, provided that these are the majority of the board. ⸺

In the case of a split vote, the chair has the casting vote. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The quorum above is not necessary for the subsequent releasing of the capital or the execution of an increase in capital and deciding on the modification of the statutes resulting from this. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The decisions of the board of directors may also be taken in the form of an approval given in writing to a proposal unless the discussion is required by one of the members. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

### Article 25. Minutes ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

The minutes of the decisions of the board of directors are taken, even if only one person is in charge of the administration. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

In the case of plurality of members of the board of directors, the minutes of each session are signed by the chair and by the secretary. It must mention the members present and any circular decisions. ———————————————————————

Article 26. **Convening – right to information** ———————————————————

The board of directors sits as often as business requires, when convened by its chair.

Each member of the board of directors may require from the chair, by giving his or her reasons, the immediate convening of the board of directors to a session. ————

Each member of the board of directors also has the right to obtain information in accordance with article 715a of the Code of obligations. ——————————————

Article 27. **Prerogatives** ————————————————————————

The Board of Directors shall exercise the fullest powers for the administration of the Company and shall represent the Company in its relations with third parties. It may adopt decisions on all matters not reserved for the General Meeting or the other corporate bodies. ————————————————————————————

It shall administer the business of the Company insofar as it does not delegate the administration. ————————————————————————————

It shall exercise the following non-transmissible and inalienable prerogatives : ————

1. exercise the overall management of the Company and establish any necessary instructions, ————————————————————————————
2. determine the organisation of the Company, ——————————————
3. set the principles of accountancy and financial audit as well as the budget insofar as that be necessary for the management of the Company, ——————————
4. appoint and dismiss the people charged with managing and representing the Company, ————————————————————————————
5. exercise overall supervision of the people responsible for management to ensure in particular that they observe the law, these Articles and any regulations and instructions given, ————————————————————————
6. draft the annual report, prepare the General Meeting and implement its decisions,
7. inform the courts should the Company overextend itself. ——————————

Moreover, it shall take any decisions concerning the calling up of any balances outstanding on partly paid-up shares as well as decisions relating to new capital issues and the consequent amendments to these Articles. ——————————————

It may delegate some of its members, individually or grouped in committees, to prepare and implement its decisions or to supervise certain items of business. ————

Article 28. **Delegation of management** —————————————————————

The board of directors may delegate all or part of the management to one or more of its members (delegates) or to third parties (directors) in accordance with the organisation regulation which it draws up. ————————————————————

Article 29. **Representation** ——————————————————————

The Board of Directors may delegate the power of representation to one or more of its members (managing-directors) or to third parties (managers, authorised clerks, commercial agents). ———————————————————————

It shall determine their signing rights. ————————————————————

The Company must be represented by a person domiciled in Switzerland; a member of the Board of Directors or a manager must satisfy this requirement. ——————

If the Company is represented by a person with whom it concludes a contract, that contract must be set down in writing. This requirement shall not apply to current operations committing the Company for less than CHF 1'000.00. ———————

Article 30. **Indemnity** ——————————————————————————

Each member of the board of directors has the right, in addition to the reimbursement of his or her expenses, to an indemnity set by the board of directors according to the activity carried out for the company. ——————————————————

## SECTION V: AUDITORS ————————————————————————

Article 31. **Audit** ———————————————————————————————

The General Meeting shall elect an external auditor. ——————————————

It may waive the election of an auditor when : ————————————————

1. the Company is not subject to an ordinary audit; ——————————————
2. all the shareholders so agree; and ——————————————————————
3. the average annual staff of the Company does not exceed 10 full-time employees. ——————————————————————————————

Once the shareholders have waived a restricted audit, that waiver shall also hold valid for the following years. Each shareholder shall, however be entitled to request a restricted audit and the election of an auditor at the latest 10 days before the General Meeting. In this case, the General Meeting cannot adopt the decisions mentioned in Art. 12(3) and (4) until the auditor's report is available. ——————

Annual accounts and, if necessary, consolidated accounts are to be submitted to an ordinary audit by: ———————————————————————————————

1. companies open to the public, i.e. companies : —————————————————

   a. whose shares are listed on the Stock Exchange, ————————————————

23

b. that are debtors under a debenture loan, ————————————————

c. whose assets or turnover account for at least 20% of the assets or turnover of the consolidated accounts of a company within the meaning of a. and b. above; ————————————————————————————

2. companies which, during two successive financial years, exceed two of the values described in article 727, number 2 CO ————————————————

3. companies which have to produce consolidated accounts. ————————————

An ordinary audit of the accounts is also necessary when shareholders jointly accounting for at least 10% of the share capital so require. ————————————

## Article 32. **Requirements relating to the auditors** ————————————

One or more persons or entities as well as partnerships are eligible as auditors. ——

At least one member of the auditing board must be domiciled, have its head office or a branch entered in the Commercial Register in Switzerland. When the Company has several auditors, one at least must satisfy this requirement. ————————

When the Company is required to submit its annual accounts to an ordinary audit by an auditing board under the terms of : ————————————————————

1. Art. 727(1(2) or (3)) ————————————————————————
2. Art. 727(2) of Swiss Contract Law (Code of Obligations – CO), ——————

the General Meeting shall elect as its auditor an approved chartered accountant within the meaning of the federal Auditors Monitoring Act of 16 December 2005. ——

When the Company is required to submit its annual accounts to a restricted audit by an auditing board, the General Meeting shall elect as its auditor an approved auditor within the meaning of the federal Auditors Monitoring Act of 16 December 2005. This is subject to the auditor election waiver under the terms of Art. 31 above. ————

The auditing board must be independent within the meaning of Art. 728 CO in the event of an ordinary audit and of Art. 729 CO in the event of a restricted audit. ——

The auditing board is elected for a term of one financial year. Its term shall end with the adoption of the final annual accounts. It may be re-elected. The General Meeting may, at any time, dismiss the auditing board with immediate effect. ————————

## Article 33. **Prerogatives** ————————————————————————

In the event of an ordinary audit, the auditing board shall check : ——————

1. That the annual accounts and, if necessary, the consolidated accounts comply with the legal provisions, these Articles and the selected framework of reference.
2. That the proposal by the Board of Directors to the General Meeting concerning the utilisation of profits complies with the legal provisions and these Articles. ——

24

3.   That there exists an internal audit system. —— —————— — —— —————

It shall, for the Board of Directors, draw up a detailed report in accordance with article 728b (1) of the Code of Obligations. ————————————————

It shall, for submission to the General Meeting, in accordance with article 728b (2) of the Code of Obligations, prepare a written report on the result of its audit and it shall recommend the adoption of the annual accounts with or without reservations – or their refusal. ———————————————————————————

If the auditing board notes violations of the law or these Articles or any existing organisational regulations, it shall inform the Board of Directors thereof in writing. In the event of a serious violation of the law or these Articles and should the Board of Directors fail to take adequate remedial measures after a written warning, the auditing board shall inform the General Meeting. ————————————————

It shall inform the courts if the Company becomes manifestly over-indebted and if the Board of Directors fails to do so. ———————————————

The auditors, in the event of an ordinary audit, must be present at the ordinary General Meeting unless the Meeting excuses it by a unanimous decision. —————

In the event of a restricted audit, the auditors shall check to see whether there are any facts that indicate that : ————————————————————

1.   the accounts do not comply with the legal provisions and these Articles; ————
2.   the proposal by the Board of Directors to the General Meeting concerning the utilisation of profits does not comply with the legal provisions and these Articles. –

It shall, for the attention of the General Meeting, prepare a written report summarising the result of the audit in accordance with article 729b of the Code of Obligations. ——

## SECTION VI: ANNUAL ACCOUNTS - RESERVE - DIVIDENDS ————————————

Article 34. **Accounting year** ————————————————————

The accounting year is annual; the Board of Directors decide of the date of its closing. ———————————————————————————

Article 35. **Management report** ————————————————————

Every year, a Management Report shall be prepared in accordance with Articles 957 and following of the Code of Obligations, which shall consists of a Profit and Loss Accounts of the Company, drawn up at the date decided by the Board of Directors as well as Appendix in accordance with Article 959c of the CO, to the Annual Report, and where the Law requires, to the Annual Report and Consolidated Accounts. ——

Article 36. **Assignment of the profit** ————————————————

25

The imperative provisions of article 671 of the Code of obligations dealing with obligatory payments to the general reserve must be respected. ————————————

The balance of the profit resulting from the balance sheet is distributed in accordance with the decisions of the general meeting. -

Article 37. **Payment of the dividend** ————————————————————

The dividend shall be paid at the time set by the Board of Directors. Any dividend which is not claimed within five years of falling due shall automatically revert to the Company. ————————————————————————————

## SECTION VII: LIQUIDATION ————————————————————

Article 38. **Liquidation** ————————————————————————

In the case of dissolution of the company for reasons other than its bankruptcy or a legal decision, the liquidation is carried out by the board of directors, unless there is a decision to the contrary made by the general meeting. ——————————

At least one of the liquidators must be resident in Switzerland and be empowered to represent the company. ————————————————————

Article 39. **Powers of the liquidators – allocation** ————————————

During the liquidation, the powers of corporate bodies are restricted to deeds which are necessary to this operation and which, by their very nature, do not fall within the competence of the liquidators. ————————————————

The general shareholders meeting retains the right to approve the accounts for the liquidation and to release them. ————————————————

Registered preference shares known as type "A" shares shall enjoy preference as regards the proceeds of liquidation, in that, in the event of liquidation, the shareholders holding type "A" registered preference shares shall be entitled, prior to any distribution to the other shareholders, to a preferential share of the proceeds of liquidation equivalent to the totality of the payments made by shareholders owning type "A" registered preference shares for the subscription of the said shares, including share premium, less dividends received. If payments have been made in foreign currency, the average rate ruling on the date of implementation of the increase of share capital giving rise to the present privileges shall be adopted. Any surplus proceeds of liquidation shall be shared exclusively between shareholders holding ordinary registered shares, in proportion to the numbers of ordinary registered shares held. ————————————————————

## SECTION VIII: PUBLICATION - JURISDICTION ————————————

Article 40. **Publications** ————————————————————

26

The company's publications are validly published in the Feuille Officielle Suisse du Commerce (Swiss Trade Bulletin). ————————————————————————————

The company's communications to shareholders are sent by registered letter, to the address of each shareholder as recorded on the register of shares. ——————————

<u>Article 41</u>. **Jurisdiction** ————————————————————————————

Any disputes which may arise during the life of the company or its liquidation, either between shareholders and the company or members of the board of directors and auditors, or between shareholders themselves due to the company's affairs, shall be subject to the courts of the canton in which the headquarters are located. ————————

ARTICLES OF INCORPORATION MODIFIED on ..., the ..., 2013. ——————————

L'atteste :

In case of difference between the French and the English versions ; the French one will be sole applicable. ————————————————————————————

27

APPENDIX    3 3

Mediterra Holdings SA - Use of proceeds

| ($ in 000's) | SOURCES | | USES |
|---|---|---|---|
| Series A Investment | $2'000 | Branding Agency Fees | $180 |
| Gross Profit from Operations | 934 | Sales and Merchandising | 915 |
| | | Marketing and Advertising | 413 |
| | | General and Administrative | 882 |
| | | Working Capital and Reserves | 544 |
| **Sources of Capital** | **$2'934** | **Uses of Capital** | **$2'934** |

APPENDIX 4.1(

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ———————————————

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ————————

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ———

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ————————————
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ————————

**Libération** : en espèces. ————————————————

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ————

**Souscripteur** : Re Gotham LLC, société dont le siège est à New-York (Etats-Unis d'Amérique) ————

qui souscrit 7'143 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ————————————————————————

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 500'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ———

- CHF 7'143.00 pour les nouvelles actions de CHF 1.00 chacune, ————————
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ————————————————

Lausanne, le ... 2013. ————————————————————————

Pour Re Gotham LLC,
*Monsieur Olivier Cherpillod*

...........................................

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ——————————————————

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ——————

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ————

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ————————————
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ——————

**Libération** : en espèces. ——————————————

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ——————

**Souscripteur** : Pour Demergon Funds on behalf Demergon Private Equity Fund, société dont le siège est à Luxembourg (Luxembourg) ——————

qui souscrit 7'143 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ——————————————————

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 500'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ——

- CHF 7'143.00 pour les nouvelles actions de CHF 1.00 chacune, ——————————
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ——————————————————

Lausanne, le ... 2013. ————————————————————————————

**Pour Demergon Funds on behalf Demergon Private Equity Fund,**
*Monsieur Olivier Cherpillod*                                    ....................................

Appendix 4.1

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ————————————

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ————————

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ————

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ————————————
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ————————

**Libération** : en espèces. ——————————————

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ————

**Souscripteur** : Monsieur Yannis Valambous, domicilié à Londres (Royaume-Uni de Grande-Bretagne et d'Irlande du Nord) ————————————

qui souscrit 5'714 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ——————————————————————

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 400'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ——

- CHF 5'714.00 pour les nouvelles actions de CHF 1.00 chacune, ——————
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ——————————————

Lausanne, le ... 2013. ————————————————

Pour Monsieur Yannis Valambous,
*Monsieur Olivier Cherpillod*

......................................

APPENDIX 4 1 (d)

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ——————————

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ——————

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ———

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ——————————
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ———————

**Libération** : en espèces. ——————————

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ———

**Souscripteur** : Monsieur David Steinhardt, domicilié à New-York (Etats-Unis d'Amérique) ——————

qui souscrit 4'286 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ——————————————————

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 300'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ———

- CHF 4'286.00 pour les nouvelles actions de CHF 1.00 chacune, ——————
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ——————————

Lausanne, le ... 2013. ——————————

Pour Monsieur David Steinhardt,

*Monsieur Olivier Cherpillod*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

APPENDIX 4.1 (e)

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ——————————————

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ——————

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ——

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ——————————
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ——————————

**Libération** : en espèces. ————————————————

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ————

**Souscripteur** : Monsieur Ioannis Pipilis, domicilié à Londres (Royaume-Uni de Grande-Bretagne et d'Irlande du Nord) ——————————

qui souscrit 2'857 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ——————————————————————————

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 200'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ——

- CHF 2'857.00 pour les nouvelles actions de CHF 1.00 chacune, ——————————
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ——————————————————

Lausanne, le ... 2013. ————————————————————

Pour Monsieur Ioannis Pipilis,

*Monsieur Olivier Cherpillod*

....................................

APPENDIX 4.1.(f)

## BULLETIN DE SOUSCRIPTION

### Mediterra Holdings SA à Lausanne

L'assemblée générale extraordinaire des actionnaires tenue le ... 2013 en l'Etude des notaires Patrick de Preux, Laurent Besso & Jean Schmidt à Lausanne a décidé une augmentation autorisée de son capital-actions aux conditions suivantes :

**Montant de l'augmentation** : CHF 28'571.00. ⸺⸺⸺⸺⸺⸺

**Genre d'actions émises** : 28'571 actions nominatives privilégiées quant au produit de liquidation dites de type « A » de CHF 1.00 nominal chacune. ⸺⸺

**Prix d'émission** : environ CHF ..., soit une contre-valeur en dollars américains d'environ $ ..., soit : ⸺⸺

- CHF 1.00 pour les nouvelles actions de CHF 1.00 chacune, ⸺⸺⸺⸺
- environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ..., par action nouvelle représentant le montant de l'agio, soit un agio total d'environ $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... ⸺⸺

**Libération** : en espèces. ⸺⸺⸺⸺⸺⸺

Les nouvelles actions émises donneront droit pour la première fois au dividende éventuel de l'exercice clos à la date décidée par le Conseil d'administration. ⸺⸺

**Souscripteur** : Hellas Geniki Investments SA, société dont le siège est à Panama (République du Panama) –

qui souscrit 1'429 actions nouvelles de CHF 1.00 nominal chacune, aux conditions décrites ci-dessus. ⸺⸺⸺⸺⸺⸺

Le souscripteur soussigné prend l'engagement inconditionnel d'effectuer un apport correspondant au prix total d'émission, par le versement de $ 100'000.00, représentant une contre-valeur en francs suisse de CHF ..., en espèces, soit : ⸺⸺

- CHF 1'429.00 pour les nouvelles actions de CHF 1.00 chacune, ⸺⸺⸺⸺
- $ ..., représentant une contre-valeur en francs suisse d'environ CHF ... représentant le montant global de l'agio. ⸺⸺⸺⸺

Lausanne, le ... 2013. ⸺⸺⸺⸺⸺⸺

Pour Hellas Geniki Investments SA,
*Monsieur Olivier Cherpillod*

...................................

**Mediterra Holdings SA - Cap Table**

| | Current Shares | | Investment August 2013 | | | Post Investment – ND | | | Post Investment – FD | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Total shares | % | USD | Total shares | % | Total shares | | % | Total shares | | % |
| | Common Shares | | | Pref. A Shares | | Common Sh. | Pref. A Shares | | Common Sh. | Pref. A Shares | |
| **Founder Shareholder** | | | | | | | | | | | |
| T&A Holdings Luxembourg Sàrl | 99'000 | 99.00% | | | | 99'000 | | 77.00% | 99'000 | | 65.45% |
| Spyros Foteinos | 1'000 | 1.00% | | | | 1'000 | | 0.78% | 1'000 | | 0.66% |
| | | | | | | | | | | | |
| **Investors Shareholders Series A** | | | | | | | | | | | |
| Re Gotham LLC, 767 Fifth Avenue, 40th floor, C/O Lisa Somar, New York, NY 10015 | | 0.00% | $ 500'000 | 7'143 | 25.00% | | 7'143 | 5.56% | | 7'143 | 4.72% |
| Demergon Funds SA, 28-32, Place de la Gare, L – 1616 Luxembourg, Grand Duchy of Luxembourg | | 0.00% | $ 500'000 | 7'143 | 25.00% | | 7'143 | 5.56% | | 7'143 | 4.72% |
| Yarnis Valambous, Flat 9 Greycoat House, 27 Greycoat Street, London SW1P 2QF | | 0.00% | $ 400'000 | 5'714 | 20.00% | | 5'714 | 4.44% | | 5'714 | 3.78% |
| David Steinhardt, 104 Wooster St apt 2s, New York, NY 10012 | | 0.00% | $ 300'000 | 4'286 | 15.00% | | 4'286 | 3.33% | | 4'286 | 2.83% |
| Ioannis Pipilis, 8 Hollywood Road, London, SW10 9HY, UK | | 0.00% | $ 200'000 | 2'857 | 10.00% | | 2'857 | 2.22% | | 2'857 | 1.89% |
| Hellas Geniki Investments SA, Calle 52 y Elvira Mendez, P.O. Box 0816-06805, Panama, R.P. | | 0.00% | $ 100'000 | 1'429 | 5.00% | | 1'429 | 1.11% | | 1'429 | 0.94% |
| | | | | | | | | | | | |
| **Dilution** | | | | | | | | | | | |
| SOP | | | | | | | | | 22'689 | | 15.00% |
| | | | | | | | | | | | |
| **Total** | 100'000 | 100.00% | $ 2'000'000 | 28'571 | 100.00% | *100'000* | *28'571* | | *122'689* | *28'571* | |
| | | | | | | | TOTAL 128'571 | 100.00% | | TOTAL 151'261 | 100.00% |

| Series A Investment | |
| --- | --- |
| Subscription price per share | $ 70 |
| Total investment Series A | $ 2'000'000 |

APPENDIX 5

APPENDIX 731

## PROCURATION

La soussignée, ————————————————————————————————————

<u>Re Gotham LLC</u>, société dont le siège est à New-York (Etats-Unis d'Amérique), ————

donne procuration, avec pouvoir de substitution, à ——————————————————————

---- <u>**Monsieur Olivier CHERPILLOD, domicilié à Savigny**</u> ----

aux fins de pour elle et en son nom, participer, en qualité d'invitée, à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ——————————————————————————————

Le mandataire peut notamment : ——————————————————————————

- signer pour son compte tout bulletin de souscription à l'augmentation du capital-actions de dite société. ——————————————————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ————————————————————————————

New-York, le 9 septembre 2013. ————————————————————————————

Re Gotham LLC

By:

*Lisa M. Somar*
Lisa M. Somar
President
ReGotham LLC

## PROCURATION

La soussignée, —————————————————————————————————————

**Demergon Funds on behalf of Demergon Private Equity Fund**, société dont le siège est à Luxembourg (Grand-Duché du Luxembourg), ———————————————————————

donne procuration, avec pouvoir de substitution, à ——————————————————

#### —— **Monsieur Olivier CHERPILLOD, domicilié à Savigny** ————

aux fins de pour elle et en son nom, participer, en qualité d'invitée, à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ————————————————————————————

Le mandataire peut notamment : ————————————————————————

- signer pour son compte tout bulletin de souscription à l'augmentation du capital-actions de dite société. ———————————————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ——————————————————————

Luxembourg, le 9 septembre 2013. ——————————————————————

Demergon Funds on behalf of
Demergon Private Equity Fund

## P R O C U R A T I O N

Le soussigné —————————————— . . . —. . —. . ———— ——————————————— .

Yannis VALAMBOUS domicilié a Londres (Royaume-Uni de Grande-Bretagne et d'Irlande du Nord) ————————————————————————— . . . —. ——————————— .

donne procuration avec pouvoir de substitution. à — · ————— ———— —— ——————

### — Monsieur Olivier CHERPILLOD, domicilié à Savigny —-

aux fins de pour lui et en son nom participer en qualité d'invité. à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment a l'ordre du jour l'augmentation du capital-actions la modification du but social l'adoption d'un capital-actions conditionnel et des modifications statutaires. ————— . . . . ————— ————— . ——————— .

Le mandataire peut notamment · ————— ——————————————

- signer pour son compte tout bulletin de souscription a l'augmentation du capital-actions de dite société ——————— . . —— ————— . —————— ——————————

Aux effets ci-dessus. passer et signer tous actes pièces procès-verbaux et. en général faire tout ce qui sera nécessaire ou utile pour l'execution du présent contrat en donnant d'ores et déjà ratification et décharge —— — ·· —————— ———————————

Londres. le 9 septembre 2013 —— ————— ————— ————— ——— ——————

Yannis VALAMBOUS

## P R O C U R A T I O N

Le soussigné, ————————————————————————————————

David STEINHARDT, domicilié à New-York (Etats-Unis d'Amérique), ——————————

donne procuration, avec pouvoir de substitution, à ——————————————————————

#### —— Monsieur Olivier CHERPILLOD, domicilié à Savigny ——

aux fins de pour lui et en son nom, participer, en qualité d'invité, à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ——————————————————————————————

Le mandataire peut notamment : ——————————————————————————————

- signer pour son compte tout bulletin de souscription à l'augmentation du capital-actions de dite société. ————————————————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ——————————————————————————

New-York, le 9 septembre 2013. ————————————————————————————

David STEINHARDT

## P R O C U R A T I O N

Le soussigné, ——————————————————————————————————————

Ioannis PIPILIS, domicilié à Londres (Royaume-Uni de Grande-Bretagne et d'Irlande du Nord), ————————————————————————————————————————————

donne procuration, avec pouvoir de substitution, à ——————————————————

#### ---- **Monsieur Olivier CHERPILLOD, domicilié à Savigny** ----

aux fins de pour lui et en son nom, participer, en qualité d'invité, à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ————————————————————————————————

Le mandataire peut notamment : ——————————————————————————————

- signer pour son compte tout bulletin de souscription à l'augmentation du capital-actions de dite société. ——————————————————————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ————————————————————————————

Londres, le 9 septembre 2013. ——————————————————————————————

Ioannis PIPILIS

P R O C U R A T I O N

La soussignée, ———————————————————————————————————

Hellas Geniki Investments SA, société dont le siège est à Panama (République du Panama),

donne procuration, avec pouvoir de substitution, à ——————————————————

---- Monsieur Olivier CHERPILLOD, domicilié à Savigny ----

aux fins de pour elle et en son nom, participer, en qualité d'invitée, à l'assemblée générale extraordinaire des actionnaires de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ——————————————————————————

Le mandataire peut notamment : ——————————————————————

- signer pour son compte tout bulletin de souscription à l'augmentation du capital-actions de dite société. ——————————————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ——————————————————————

Panama, le 9 septembre 2013. ————————————————————————

Hellas Geniki Investments SA

## P R O C U R A T I O N

La soussignée, ————————————————————————————————————

T&A Holdings Luxembourg Sàrl, société dont le siège est à Luxembourg (Luxembourg), ——

en sa qualité de propriétaire de 99'000 actions de la société « Mediterra Holding SA », société anonyme dont le siège est à Lausanne, au capital-actions de CHF 100'000.00, divisé en 100'000 actions nominatives de CHF 1.00, entièrement libéré. ——————

donne procuration, avec pouvoir de substitution, à ——————————————————

#### ---- Monsieur Olivier CHERPILLOD, domicilié à Savigny ----

aux fins de pour elle et en son nom, participer à l'assemblée générale extraordinaire de la société anonyme « Mediterra Holdings SA » dont le siège est à Lausanne et qui aura notamment à l'ordre du jour l'augmentation du capital-actions, la modification du but social, l'adoption d'un capital-actions conditionnel et des modifications statutaires. ——————

Le mandataire peut notamment : ———————————————————————

- signer pour son compte tout bulletin de souscription ou de renonciation à l'augmentation du capital-actions de dite société. ——————————————————————

Aux effets ci-dessus, passer et signer tous actes, pièces, procès-verbaux et, en général, faire tout ce qui sera nécessaire ou utile pour l'exécution du présent contrat en donnant d'ores et déjà ratification et décharge. ————————————————————————

Luxembourg, le 9 septembre 2013. ——————————————————————

T&A Holdings Luxembourg S.àr.l

APPENDIX 7.3.1

## Réquisition pour le Registre du commerce

No Féd. : CH-550.1.125.485-5
No IDE : CHE-300.400.513

(FOSC

**Mediterra Holdings SA,** société anonyme dont le siège est à Lausanne

**Statuts modifiés** : le ... 2013

**Nouveau but** :

La société a pour but le développement, la promotion et la distribution de barres nutritionnelles, de suppléments nutritionnels, de produits alimentaires sains et d'autres produits touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participation dans des entreprises de toute nature en Suisse et à l'étranger.

La société peut :

- exercer toute activité financière, commerciale et industrielle en rapport direct ou indirect avec son but,
- créer des succursales ou des filiales en Suisse et à l'étranger,
- participer à toutes entreprises ayant un rapport direct ou indirect avec son but,
- accorder des prêts ou des garanties à des actionnaires ou des tiers, si cela favorise ses intérêts,
- détenir et gérer des droits de propriété intellectuelle.

## Augmentation ordinaire du capital-actions :

Le capital-actions a été augmenté de CHF 28'571.00 par l'émission de 28'571 nouvelles actions nominatives privilégiées quant au produit de liquidation dites de type « A » d'une valeur nominale de CHF 1.00 chacune, émises au prix de CHF 1.00 chacune plus un agio global et total d'environ € ..., représentant une contre-valeur en francs suisse de CHF ..., toutes entièrement libérées en espèces et soumises aux restrictions statutaires de transmissibilité.

## Nouveau capital-actions :

Le capital-actions est fixé à la somme de CHF 128'571.00.

Il est divisé en :

a) 100'000 actions nominatives ordinaires de CHF 1.00, valeur nominale chacune, et
b) 28'571 actions privilégiées dites de type « A » de CHF 1.00, valeur nominale chacune,

entièrement libéré.

## Modification des statuts :

L'article 5 des statuts est modifié en conséquence.

L'assemblée générale a introduit une nouvelle clause statutaire relative à une augmentation conditionnelle du capital par décision du ... 2013.

Pour les détails, voir les statuts. Les statuts sont donc modifiés sur un point non soumis à publication.

Les statuts sont également modifiés sur des points non soumis à publication.

## Mediterra Holdings SA

Monsieur Olivier CHERPILLOD, administrateur          ......................................

APPENDIX 7.3.1. (c)

# Mediterra Holdings SA
# (Mediterra Holdings AG)
# (Mediterra Holdings LTD)

Board Resolution by way of circular of Mediterra Holdings SA (Mediterra Holdings AG) (Mediterra Holdings Ltd), a company incorporated and validly existing under the laws of Switzerland and having its registered seat at Lausanne (the "Company").

---

WHEREAS, T&A HOLDINGS (LUXEMBOURG) SARL and the Company have entered on [date] into a certain Investment and Subscription Agreement with investors according to which, and subject to the terms and conditions of that Investment and Subscription Agreement,

- Re Gotham LLC will subscribe and become a shareholder of the Company, holding 7'143 Preferred A registered shares with all voting rights associated therewith;

- Demergon Funds on behalf of Demergon Private Equity Fund will subscribe and become a shareholder of the Company, holding 7'143 Preferred A registered shares with all voting rights associated therewith;

- Yannis Valambous will subscribe and become a shareholder of the Company, holding 5'714 Preferred A registered shares with all voting rights associated therewith;

- David Steinhardt will subscribe and become a shareholder of the Company, holding 4'286 Preferred A registered shares with all voting rights associated therewith;

- Ioannis Pipilis will subscribe and become a shareholder of the Company, holding 2'857 Preferred A registered shares with all voting rights associated therewith; and

- Hellas Geniki Investments SA will subscribe and become a shareholder of the Company, holding 1'429 Preferred A registered shares with all voting rights associated therewith

IT IS UNANIMOUSLY RESOLVED:

1. Subject to Full Consummation, as defined in that Investment and Subscription Agreement, each of the above mentioned investor is recognized as a shareholder owning the number of shares set forth next to its/his name..

2. The share register shall be updated accordingly.

This board resolution shall enter into force when signed by all members.

_____

Telemaque Lavidas

date: _____

_____

Olivier Cherpillod

date : _____

## PROCES-VERBAL

L'AN DEUX MILLE TREIZE, ce ..., en mon Etude, ———————

je soussigné LAURENT BESSO, notaire à Lausanne pour le canton de Vaud, ———————

agissant à la réquisition du conseil d'administration de la société anonyme ———————

#### ---- Mediterra Holdings SA ----

dont le siège est à Lausanne, ———————

dresse comme suit le procès-verbal de l'assemblée générale extraordinaire des actionnaires de dite société, assemblée réunie en cet instant. ——

L'assemblée est présidée par Monsieur Olivier Cherpillod, domicilié à Savigny. ———————

Le notaire soussigné fonctionne en qualité de secrétaire. ———————

Il n'est pas désigné de scrutateur. ———————

Le Président fait constater que : ———————

1) sur la base d'un extrait du Registre des actions faisant office de liste des présences et de deux procurations, tous les actionnaires sont représentés, détenteurs de la totalité du capital-actions de cent mille francs suisses (CHF 100'000.00), divisé en 100'000 actions nominatives de un franc suisse (CHF 1.00), valeur nominale chacune, entièrement libéré. ———————

Il n'y a pas de représentation par un membre des organes de la société ou une personne dépendant d'elle au sens de l'article 689c du code des obligations ni par un représentant dépositaire au sens de l'article 689d du même code; ———————

2) dans ces conditions et vu l'article 701 du Code des obligations, l'assemblée est régulièrement constituée. Dès lors, elle est en droit de délibérer et de statuer valablement sur les objets formant l'ordre du jour ci-dessous, aucune objection n'étant formulée. ———————

**Ordre du jour** : ———————

I.   Modification du but ———————

II.  Augmentation ordinaire du capital-actions ———————

III. Adoption d'un capital-actions conditionnel ⸻

IV. Modification des statuts ⸻

V. Divers ⸻

VI. Constatations ⸻

Il est dès lors immédiatement passé à l'ordre du jour : ⸻

### I. Modification du but ⸻

Le Président propose à l'assemblée de modifier le but social afin que celui-ci corresponde mieux à l'activité de la société, but dont la teneur pourrait être la suivante : ⸻

*« La société a pour but le développement, la promotion et la distribution de barres nutritionnelles, de suppléments nutritionnels, de produits alimentaires sains et d'autres produits touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participation dans des entreprises de toute nature en Suisse et à l'étranger.* ⸻

*La société peut :* ⸻

- *exercer toute activité financière, commerciale et industrielle en rapport direct ou indirect avec son but,* ⸻

- *créer des succursales ou des filiales en Suisse et à l'étranger,* ⸻

- *participer à toutes entreprises ayant un rapport direct ou indirect avec son but,* ⸻

- *accorder des prêts ou des garanties à des actionnaires ou des tiers, si cela favorise ses intérêts,* ⸻

- *détenir et gérer des droits de propriété intellectuelle. »* ⸻

A l'unanimité, l'assemblée approuve cette proposition. ⸻

### II. Augmentation ordinaire du capital-actions ⸻

Le Président soumet à l'assemblée les propositions suivantes du Conseil d'administration : ⸻

1) le capital-actions sera porté de cent mille francs suisses (CHF 100'000.00) à cent vingt-huit mille cinq cent septante et un francs suisses (CHF 128'571.00) par l'émission de 28'571 nouvelles actions nominatives privilégiées quant au produit de liquidation dites de type « A » de un franc suisse (CHF 1.00), valeur nominale chacune au prix total de vingt-huit mille cinq cent septante et un francs suisses (CHF 28'571.00) plus un agio global d'environ ... ($

2

...), soit la contre-valeur en francs suisses d'environ ... (CHF ...), le cours pris en considération étant un dollar américain ($ 1.00) pour ... (CHF ...) valeur au ... 2013, soit un agio d'environ ... ($ ...), soit la contre-valeur en francs suisse d'environ ... (CHF ...) par action. Les nouvelles actions sont soumises aux restrictions statutaires de transmissibilité. ⸻

En conséquence, l'augmentation s'élève à vingt-huit mille cinq cent septante et un francs suisses (CHF 28'571.00). ⸻

La libération s'effectuera en espèce. ⸻

En conséquence, le nouveau capital-actions de cent vingt-huit mille cinq cent septante et un francs suisses (CHF 128'571.00) est divisé en : ⸻

a) 100'000 actions nominatives ordinaires et soumises aux restrictions statutaires de transmissibilité de un franc suisse (CHF 1.00), valeur nominale chacune, et ⸻

b) 28'571 actions privilégiées quant au produit de liquidation dites de type « A » de un franc suisse (CHF 1.00), valeur nominale chacune, également soumises aux restrictions statutaires de transmissibilité, ⸻

entièrement libéré. ⸻

2) Lors de la souscription, le montant de l'augmentation de vingt-huit mille cinq cent septante et un francs suisses (CHF 28'571.00) ainsi que l'agio total d'environ ... ($ ...), soit la contre-valeur en francs suisses d'environ ... (CHF ...) seront entièrement libérés en espèces. ⸻

3) Les actions nouvelles sont émises au prix de un franc suisse (CHF 1.00) chacune représentant leur valeur au pair plus un agio total d'environ ... ($ ...), soit la contre-valeur en francs suisses d'environ ... (CHF ...) qui sera affecté à la réserve. ⸻

4) Le timbre fédéral est à la charge de la société. ⸻

5) Les actions nouvelles auront droit pour la première fois au dividende éventuel de l'exercice qui sera clos à la date décidée par le Conseil d'administration. ⸻

6) Les droits de souscription préférentiels des actionnaires actuels seront respectés. En cas de non exercice, les actions non souscrites seront offertes librement par le conseil d'administration. ⸻

A l'unanimité, l'assemblée accepte ces propositions. ⸻

3

Le Président informe ensuite l'assemblée que la décision qui vient d'être prise d'augmenter le capital, doit être exécutée par le Conseil d'administration qui en requerra l'inscription dans les 3 mois au Registre du commerce. ————————

### III. Adoption d'un capital-actions conditionnel ————————

Le Président expose à l'assemblée les motifs pour lesquels le Conseil d'administration propose l'adoption d'un capital-actions conditionnel d'un maximum de vingt-deux mille six cent huitante-neuf francs suisses (CHF 22'689.00) aux clauses et conditions suivantes : ————————————————

*« Le capital-actions pourra être augmenté à concurrence d'un montant maximum de vingt-deux mille six cent huitante-neuf francs suisses (CHF 22'689.00) par l'émission d'un maximum de 22'689 actions nominatives ordinaires d'une valeur nominale de un franc suisse (CHF 1.00) chacune, devant être intégralement libérées, par l'exercice de droits d'option accordés à certains employés, consultants ou administrateurs de la société ou de ses filiales, étant précisé qu'aucun bénéficiaire ne peut se voir attribuer au total plus de 5% du capital-actions de la société. ————————————————*

*Le droit de souscription préférentiel des actionnaires sera exclu en ce qui concerne ces actions. ————————————————*

*Les conditions d'octroi des options par la société telle que les modalités et le prix d'exercice, la date à compter de laquelle les actions donnent droit au dividende, la nature des apports seront fixés par le conseil d'administration dans le cadre de règles spécifiques (telles que plans d'intéressement). Le prix d'exercice ne pourra pas être inférieur à septante dollars américains ($ 70.00). Ces actions seront soumises aux restrictions prévues aux articles 7 et 8 des statuts. »* ————————

À l'unanimité, l'assemblée adopte cette proposition. ————————

### IV. Modification des statuts ————————————————

En conséquence des décisions prises aux points « I » et « II » ci-dessus, à l'introduction d'actions privilégiées quant au produit de liquidation dites de types « A » et diverses modifications, le Président propose la modification des articles 3, 6, 7, 10, 20, 22 et 39 des statuts et l'adjonction d'un article 5bis aux statuts, comme suit : ————————————————

« Article 3. **But** ————————————————

4

La société a pour but le développement, la promotion et la distribution de barres nutritionnelles, de suppléments nutritionnels, de produits alimentaires sains et d'autres produits touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participation dans des entreprises de toute nature en Suisse et à l'étranger. —————————————————————————————

La société peut : —————————————————————————————

- exercer toute activité financière, commerciale et industrielle en rapport direct ou indirect avec son but, —————————————
- créer des succursales ou des filiales en Suisse et à l'étranger, ———
- participer à toutes entreprises ayant un rapport direct ou indirect avec son but, —————————————————————————————
- accorder des prêts ou des garanties à des actionnaires ou des tiers, si cela favorise ses intérêts, ————————————————————
- détenir et gérer des droits de propriété intellectuelle. » ——————

« Article 5bis. **Capital-actions conditionnel** —————————————

Le capital-actions pourra être augmenté à concurrence d'un montant maximum de vingt-deux mille six cent huitante-neuf francs suisses (CHF 22'689.00) par l'émission d'un maximum de 22'689 actions nominatives ordinaires d'une valeur nominale de un franc suisse (CHF 1.00) chacune, devant être intégralement libérées, par l'exercice de droits d'option accordés à certains employés, consultants ou administrateurs de la société ou de ses filiales, étant précisé qu'aucun bénéficiaire ne peut se voir attribuer au total plus de 5% du capital-actions de la société. —————————————————————————————

Le droit de souscription préférentiel des actionnaires sera exclu en ce qui concerne ces actions. —————————————————————

Les conditions d'octroi des options par la société telle que les modalités et le prix d'exercice, la date à compter de laquelle les actions donnent droit au dividende, la nature des apports seront fixés par le conseil d'administration dans le cadre de règles spécifiques (telles que plans d'intéressement). Le prix d'exercice ne pourra pas être inférieur à septante dollars américains ($ 70.00). Ces actions seront soumises aux restrictions prévues aux articles 7 et 8 des statuts. » ——————

« Article 6. **Actions - certificats - registre des actions** —————————

5

Les actions sont numérotées et signées par un membre du conseil d'administration. ——————————————————

En lieu et place d'actions, il peut être émis des certificats numérotés représentant une ou plusieurs actions. Le conseil d'administration peut décider de remettre aux actionnaires de simples attestations prouvant leurs droits sociaux au lieu d'émettre des papiers-valeurs. ——————————

Les actions nominatives peuvent être converties en actions au porteur et inversement. ——————————————————

La société tient un registre des actions nominatives qui mentionne le nom et l'adresse des propriétaires et des usufruitiers. » ——————————

« Article 7. **Transfert des actions** ——————————————————

La cession des actions s'opère par voie d'endossement, ou à défaut par une déclaration écrite de cession, et est subordonnée à l'approbation du conseil d'administration et à son inscription au registre des actions. ——————

Le conseil d'administration peut refuser le transfert en invoquant un juste motif au sens de l'article 685b alinéa 2 CO notamment si le ou les nouveaux acquéreurs du capital-actions mettent en péril le but social ou l'indépendance économique de l'entreprise par le fait qu'ils exercent en tant que membres du conseil d'administration, directeurs ou propriétaires de sociétés ou d'entreprises, une activité concurrente. ——————————————————

La société peut en outre refuser l'inscription au registre des actions si l'acquéreur n'a pas expressément déclaré qu'il reprenait les actions en son propre nom ou pour son propre compte. ——————————————————

L'approbation peut aussi être refusée sans indication de motif si le conseil d'administration reprend les actions à leur valeur réelle au moment de la demande d'approbation, pour le compte de la société, d'autres actionnaires ou de tiers. ——————————————————

Si les actions ont été acquises par succession, partage successoral, en vertu du régime matrimonial ou dans une procédure d'exécution forcée, la société ne peut refuser son approbation que si elle offre à l'acquéreur de reprendre les actions en cause à leur valeur réelle. ——————————————————

L'approbation de la cession, son refus ou l'offre de reprise doit être notifié par le conseil d'administration au cédant dans les trois mois dès la réception de la requête. ——————————————————

6

Le droit de préemption constitué par l'article 8 ci-après au profit des actionnaires prime le droit du conseil d'administration de reprendre les actions pour le compte de la société ou de tiers. ————————————————

La valeur réelle des actions sera déterminée conformément à l'article 8. » ————————————————

« Article 10. **Augmentation du capital - droit préférentiel de souscription** ————————————————

L'augmentation du capital-actions est décidée par l'assemblée générale; elle doit être exécutée par le conseil d'administration dans les trois mois. —

Il ne peut être émis de nouvelles actions qui primeraient les actions privilégiées existantes qu'avec l'approbation tant d'une assemblée spéciale des actionnaires atteints que d'une assemblée générale de tous les actionnaires. ————

Tout actionnaire a droit à la part d'actions nouvellement émises qui correspond à sa participation antérieure. La décision prise par l'assemblée générale d'augmenter le capital-actions ne peut supprimer ou limiter le droit préférentiel de souscription que pour de justes motifs. » ————————————————

« Article 20. **Délibérations** ————————————————

L'assemblée générale est valablement constituée quel que soit le nombre des actionnaires présents ou représentés. ————————————————

Elle prend ses décisions et procède aux élections à la majorité absolue des voix attribuées aux actions représentées. ————————————————

Si un second tour de scrutin est nécessaire, la majorité relative est suffisante. En cas de partage des voix, celle du président est prépondérante lorsqu'il s'agit de décisions. Pour les élections, c'est le sort qui décide. ————————

En général, les votations se font à main levée, les élections au scrutin secret, à moins que l'assemblée n'en décide autrement. ————————————

Une décision de l'assemblée générale recueillant au moins (i) les deux tiers des voix attribuées aux actions représentées, (ii) la majorité absolue des valeurs nominales représentées et (iii) la majorité des voix attribuées aux actions privilégiées quant au produit de liquidation dites de type « A » est nécessaire pour la modification du but social. ————————————————

7

Une décision de l'assemblée générale recueillant au moins les deux tiers des voix attribuées aux actions représentées et la majorité absolue des valeurs nominales représentées est nécessaire pour :

1.  l'introduction d'actions à droit de vote privilégié,
2.  l'introduction, la suppression ou la limitation de la restriction de la transmissibilité des actions nominatives,
3.  l'augmentation autorisée ou conditionnelle du capital-actions,
4.  l'augmentation du capital-actions au moyen des fonds propres, contre apport en nature ou en vue d'une reprise de biens et l'octroi d'avantages particuliers,
5.  la limitation ou la suppression du droit de souscription préférentiel,
6.  le transfert du siège de la société,
7.  la dissolution de la société,
8.  la conversion des actions nominatives en actions au porteur.

La suppression ou la modification des privilèges accordés aux détenteurs d'actions privilégiées ne peuvent pas s'effectuer sans l'accord de tous les actionnaires concernés, les dispositions de l'article 654 du Code des obligations demeurent réservées. »

« <u>Article 22</u>. **Composition**

La société est administrée par un conseil d'administration composé d'un ou plusieurs membres, nommés par l'assemblée générale.

Les titulaires d'actions privilégiées ont le droit de disposer d'un représentant au conseil d'administration. »

« <u>Article 39</u>. **Pouvoirs des liquidateurs - répartition**

Pendant la liquidation, les pouvoirs des organes sociaux sont restreints aux actes qui sont nécessaires à cette opération et qui, de par leur nature, ne sont point du ressort des liquidateurs.

L'assemblée générale des actionnaires conserve le droit d'approuver les comptes de la liquidation et d'en donner décharge.

Les actions nominatives privilégiées dites de types « A » sont privilégiées quant au produit de liquidation, en ce sens qu'en cas de liquidation, les actionnaires titulaires d'actions nominatives privilégiées dites de types « A » auront droit, préalablement à toute distribution aux autres actionnaires, à une part privilégiée du produit de liquidation équivalent à la totalité des versements opérés

8

par les actionnaires titulaires d'actions nominatives privilégiées dites de types « A » pour la souscription desdites actions, prime d'émission comprise, moins les dividendes perçus. Si des versements ont été effectués en monnaie étrangère, le cours moyen du jour de l'exécution de l'augmentation du capital-actions ayant donné lieu aux présents privilèges sera retenu. L'excédent éventuel du produit de liquidation sera réparti exclusivement entre les actionnaires titulaires d'actions nominatives ordinaires, en proportion du nombre d'actions nominatives ordinaires détenues. » ————————————————————————————————————

A l'exception de l'article 3, les autres modifications sont soumises à la condition de l'introduction d'actions privilégiées quant au bénéfice de liquidation dites de types « A » telles que mentionnées ci-dessus. ————————————————————

A l'unanimité, l'assemblée accepte ces propositions. ——————————————

En conséquence, le texte des nouveaux statuts sera annexé au procès-verbal du Conseil d'administration qui suivra la présente assemblée et qui constatera l'augmentation du capital-actions mentionnée ci-dessus. ————————————————

V. **Divers** ————————————————————————————————————————

Le Conseil d'administration reçoit tous pouvoirs nécessaires pour exécuter les décisions d'augmentation qui précèdent, en particulier pour procéder à la modification statutaire en résultant. ————————————————————————

VI. **Constatations** ————————————————————————————————————

Le notaire atteste que la liste des présences et la procuration lui ont été soumis ainsi qu'à l'assemblée. ——————————————————————————————

L'ordre du jour étant épuisé et personne ne demandant plus la parole, l'assemblée demeurée universelle jusqu'à son terme est levée et le présent procès-verbal est clos, après avoir été lu et approuvé par les signatures du Président et du notaire, les an, mois et jour ci-dessus, à Lausanne. ————————————————————

24

Appendix 9.1

Representations and Warranties of Founder Shareholder

## 1.    Capacity and Title of Founder Shareholder

### 1.1    Authority/Ownership

The Founder Shareholder has the unrestricted right and authority to enter into this Agreement and to perform all undertakings under or in connection with this Agreement. This Agreement constitutes a valid, legal and binding obligation of the Founder Shareholder, enforceable against the Founder in accordance with its terms. The Founder Shareholder is neither over-indebted (*überschuldet; surendetté*), nor insolvent (*insolvent; insolvable*), nor unable to pay its debts as they fall due (*illiquid; non liquide*) and there are no circumstances that indicate any over-indebtedness or insolvency or illiquidity of the Founder Shareholder in the foreseeable future.

### 1.2    Execution and Performance

The execution and the performance of this Agreement by the Founder Shareholder have been authorized by all necessary, if applicable, corporate action of the Founder Shareholder and it will not:

(a)    result in a breach of any provision of the constitutional documents, such as the articles of incorporation or Board Regulations, if any, of the Founder or of the Company; or

(b)    result in a breach, or default under, any term or provision of any agreement, license or other instrument or of any order, judgment or decree of any court, governmental agency or regulatory body to which the Founders Shareholder is a party or by which the Founder Shareholder, the Company or the Subsidiary is bound, if any.

### 1.3    No Consents Required

The Founder Shareholder does not require any notice, consent, waiver, approval or clearance by any governmental agency or regulatory body of any nature or any other person other than mentioned in this Agreement to enter into this Agreement and to consummate the transactions contemplated by this Agreement. There are no proceedings or investigations whatsoever pending or threatened against the Founder or the Company that could compromise the consummation of the transactions contemplated by this Agreement.

### 1.4    Ownership of Existing Shares

The Founder Shareholder is the legal and beneficial owner of ninety nine percent (99%) of the Existing Shares, free and clear of any Encumbrance.

### 1.5    Incorporation and Authority

The Company is a corporation duly incorporated and validly existing under the laws of Switzerland. The Company has the full corporate power and authority to own its property and assets and to carry on its Business as to be conducted. The articles of incorporation and the excerpt of the commercial register relating to the Company contained in **Schedule 1.5 (a)** are complete and correct and reflect the current factual and legal circumstances of the Company. There are no further applications to the commercial register that are not (yet) reflected in the

documents attached in **Schedule 1.5 (a)**. There is no further or more extensive authority to sign on behalf of the Company than those set forth in **Schedule 1.5 (a)**.

The Subsidiary is a corporation duly incorporated and validly existing under the laws of Delaware. The Company has the full corporate power and authority to own its property and assets and to carry on its business as to be conducted. The corporate documents relating ot the Subsidiary contained in **Schedule 1.5 (b)** are complete and correct and reflect the current factual and legal circumstances of the Company. There are no further applications to the commercial register that are not (yet) reflected in the documents attached in **Schedule 1.5 (b)**. There is no further or more extensive authority to sign on behalf of the Company than those set forth in **Schedule 1.5 (b)**.

### 1.6    No Dissolution, Bankruptcy or Insolvency

No measures have been taken for the dissolution and liquidation or declaration of bankruptcy of the Company and/or of the Subsidiary. In particular:

(a)    No order has been made, petition presented, resolution passed or meeting convened for the winding up (or other process whereby the Business is terminated and the assets of the Company and/or of the Subsidiary are distributed amongst the creditors and/or shareholders or other contributors) of the Company (and/or of the Subsidiary as the case may be) and there are no cases or proceedings under applicable insolvency, bankruptcy, composition, moratorium, reorganization, or similar laws and no events have occurred which would justify any such case or proceedings.

(b)    No receiver (including an administrative receiver), liquidator, administrator, commissioner or similar official has been appointed in respect of the Company and/or of the Subsidiary and no step has been taken for or with a view to the appointment of such a person.

(c)    None of the Company and of the Subsidiary is neither over-indebted (*überschuldet; surendettée*), nor insolvent (*insolvent; insolvable*) nor unable to pay its debts as they fall due (*illiquid; non liquide*).

### 1.7    Capital Structure and Existing Shares

The Company has a share capital of CHF 100,000.- divided into 100,000 fully paid up registered shares with a nominal value of CHF 1.- each. The Existing Shares have been validly issued and are fully paid up and constitute the entire issued share capital of the Company. The Preferred A Shares, if issued in accordance with the Investment and Subscription Agreement, will be validly issued and fully paid-up. No rights, contracts, commitments or derivative instruments are outstanding that could require the Company to sell, transfer or issue any of its capital stock. No shares or share certificates have ever been issued by the Company.

The Company owns the entire outstanding share capital of the Subsidiary and no third party has any right to acquire or to be granted or issued any share in the Subsidiary.

### 1.8    Execution and Performance

The execution and the performance by the Company of its obligations under this Agreement and the consummation of the transactions contemplated by this Agreement will not:

26

(a)    result in a breach of any provision of the constitutional documents, such as the articles of incorporation or Board Regulations, if any, of the Company and/or of the Subsidiary; or

(b)    result in a breach, or default under, any term or provision of any agreement, license or other instrument or of any order, judgment or decree of any court, governmental agency or regulatory body to which the Company is a party or by which the Company and/or of the Subsidiary is bound, if any.

## 1.9    Subsidiaries

Company owns 100% of the issued shares of the Subsidiary. The Company has no other subsidiaries.

## 1.10    Existing business

Both the Company and the Subsidiary have been incorporated in July 2013 and have started a full new business. Neither the Company nor the Subsidiary has taken over, or committed to take over, existing activities or an existing business. All liabilities incurred by the Company and/or the Subsidiary prior to Closing Date are related to the set-up of the business and are in the ordinary course of business.

## 2.    Compliance with Laws and Regulations

There is no investigation or enquiry by, or order, decree, decision or judgment of, any court, tribunal, arbitrator, governmental agency or regulatory body regarding any matter against the Company and/or of the Subsidiary, or any person for whose acts or defaults the Company and/or of the Subsidiary may be liable, nor is there any notice or other communication (official or otherwise) from any court, tribunal, arbitrator, governmental agency or regulatory body with respect to an alleged violation and/or failure to comply with any such applicable law, regulation, by-laws or constitutional documents, or requiring them to take or omit any action. In particular, the Board and the Company's management are aware of the Swiss Corruption Penal Code, and especially among others, of article 102 and article 322ter et seqq. of the Swiss Penal Code in connection with article 4a of the Federal Law Against Unfair Competition and article 59 of the Swiss Federal Tax Law concerning the Direct Federal Income Taxes.

## 3.    Intellectual Property

(a)    All Business IP is listed in **Schedule 3(a)** and is (or, where appropriate in the case of pending applications, and/or pending assignments and transfers by the Founder Shareholder to the Company, will be):

(aa)    legally and beneficially owned by the Company or lawfully used with the consent of the owner under a license;

(bb)    not subject to any Encumbrance or any license in favour of another;

(cc)    in the case of rights in such Intellectual Property as are registered or the subject of applications for registration, including without limitation the Business IP listed in **Schedule 3(a)**, are validly registered or applied for in the name of the Company, or under transfer or assignment by the Founder Shareholder to the Company, and all registration or renewal fees which are due have been

paid and all steps which are required for their registration, maintenance and protection have been taken; and

(dd)    in the case of Intellectual Property related to software developed for use with the Company's products, is fully and solely owned by the Company and the Company has the right to sell or distribute such software without restriction.

(b)    To the Founder Shareholder's knowledge, no product or service proposed to be marketed or sold by the Company and/or the Subsidiary will violate any license or infringe any intellectual property rights of any other party. Without prejudice to the foregoing, the Company has not (except as consistent with the ordinary course of business):

(aa)    granted any licenses in respect of any Intellectual Property required by the Business;

(bb)    entered into any charge, mortgage or other Encumbrance in relation to the Intellectual Property required by the Business.

(c)    The Company and the Subsidiary have taken all measures to maintain the confidentiality of its trade secrets and know-how.

RC VD   SA 2013/11346
CH-550-1125485-5
11346 17.07.2013 003 003
756 550 000000395913 00000-2

# S T A T U T S

## TITRE I : RAISON SOCIALE - SIEGE - BUT - DUREE ————————

### Article 1. **Raison sociale** ————————————————

Il est formé sous la raison sociale ——————————————————

---- Mediterra Holdings SA ----
---- (Mediterra Holdings AG) ----
---- (Mediterra Holdings Ltd) ----

une société anonyme qui est régie par les présents statuts et par le titre XXVI du Code des obligations. ——————————————————

### Article 2. **Siège** ——————————————————————

Le siège de la société est à Lausanne. ——————————————

### Article 3. **But** ——————————————————————

La société a pour but le développement, la fabrication, le commerce sous toutes ses formes (achat, vente, import, export, représentation) de produits pharmaceutiques, cosmétiques et touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participations dans des entreprises de toute nature en Suisse et à l'étranger. ——————————————————————

La société peut : ——————————————————————

- exercer toute activité financière, commerciale et industrielle en rapport direct ou indirect avec son but, ——————————————————
- créer des succursales ou des filiales en Suisse et à l'étranger, ——————
- participer à toutes entreprises ayant un rapport direct ou indirect avec son but, ——
- accorder des prêts ou des garanties à des actionnaires ou des tiers, si cela favorise ses intérêts, ——————————————————
- détenir et gérer des droits de propriété intellectuelle. ——————————

### Article 4. **Durée** ——————————————————————

La durée de la société est indéterminée. ——————————————

## TITRE II : CAPITAL-ACTIONS - ACTIONS

### Article 5. Montant nominal - division - nature des titres

Le capital-actions est fixé à la somme de CHF 100'000.00.

Il est divisé en 100'000 actions nominatives de CHF 1.00 chacune, entièrement libérées.

### Article 6. Actions - certificats - registre des actions

Les actions sont numérotées et signées par un membre du conseil d'administration.

En lieu et place d'actions, il peut être émis des certificats numérotés représentant une ou plusieurs actions.

Les actions nominatives peuvent être converties en actions au porteur et inversement.

La société tient un registre des actions nominatives qui mentionne le nom et l'adresse des propriétaires et des usufruitiers.

### Article 7. Transfert des actions

La cession des actions s'opère par voie d'endossement et est subordonnée à l'approbation du conseil d'administration et à son inscription au registre des actions. –

Le conseil d'administration peut refuser le transfert en invoquant un juste motif au sens de l'article 685b alinéa 2 CO notamment si le ou les nouveaux acquéreurs du capital-actions mettent en péril le but social ou l'indépendance économique de l'entreprise par le fait qu'ils exercent en tant que membres du conseil d'administration, directeurs ou propriétaires de sociétés ou d'entreprises, une activité concurrente.

La société peut en outre refuser l'inscription au registre des actions si l'acquéreur n'a pas expressément déclaré qu'il reprenait les actions en son propre nom ou pour son propre compte.

L'approbation peut aussi être refusée sans indication de motif si le conseil d'administration reprend les actions à leur valeur réelle au moment de la demande d'approbation, pour le compte de la société, d'autres actionnaires ou de tiers.

Si les actions ont été acquises par succession, partage successoral, en vertu du régime matrimonial ou dans une procédure d'exécution forcée, la société ne peut refuser son approbation que si elle offre à l'acquéreur de reprendre les actions en cause à leur valeur réelle.

L'approbation de la cession, son refus ou l'offre de reprise doit être notifié par le conseil d'administration au cédant dans les trois mois dès la réception de la requête.

2



Le droit de préemption constitué par l'article 8 ci-après au profit des actionnaires prime le droit du conseil d'administration de reprendre les actions pour le compte de la société ou de tiers. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

La valeur réelle des actions sera déterminée conformément à l'article 8. ⎯⎯⎯⎯⎯

### Article 8. Droit de préemption ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Si un actionnaire se propose de vendre à un tiers tout ou partie de ses actions, il fera parvenir aux autres actionnaires et au conseil d'administration les conditions d'achat arrêtées avec ce tiers. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Les actionnaires restant auront alors un droit de préemption qui devra s'exercer dans un délai de trente jours dès réception des conditions d'achat, proportionnel au nombre d'actions qu'ils possèdent. Si l'un ou l'autre des actionnaires renonce à son droit, les droits des autres se trouveront augmentés d'autant, proportionnellement au nombre d'actions que chacun possède. L'absence de réponse dans le délai imparti vaut renonciation au droit de préemption. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

En cas de désignation par la société d'un organe de révision, la valeur des actions est fixée par ce dernier. Si l'un ou plusieurs actionnaires contestent le prix fixé par l'organe de révision, le prix des actions sera alors déterminé par une fiduciaire choisie à l'unanimité des actionnaires, laquelle fiduciaire tranchera définitivement. En cas de désaccord des actionnaires quant au choix de la fiduciaire, cette dernière sera désignée par le président du Tribunal de première instance du lieu du siège de la société. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Si la société renonce à la désignation d'un organe de révision, la valeur des actions sera déterminée par la fiduciaire désignée conformément à l'alinéa qui précède. ⎯⎯

Si, dans un délai d'un mois, aucun des actionnaires ne se déclare prêt à acheter les titres aux conditions fixées par l'organe de révision, ou le cas échéant, par une fiduciaire, le cédant pourra, sous réserve du droit de reprise du conseil d'administration, céder les actions à l'acquéreur de son choix. ⎯⎯⎯⎯⎯⎯⎯

### Article 9. Indivisibilité des titres - droits attachés aux actions ⎯⎯⎯⎯⎯⎯

Chaque action est indivisible à l'égard de la société, qui ne reconnaît qu'un propriétaire pour une action. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Chaque action donne droit à une part de bénéfice résultant du bilan et du produit de liquidation en proportion des versements opérés au capital-actions. ⎯⎯⎯⎯⎯⎯

Les actionnaires ne sont tenus que des prestations statutaires et ne répondent pas personnellement des dettes sociales. ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

3

<u>Article 10</u>. **Augmentation du capital - droit préférentiel de souscription** ————

L'augmentation du capital-actions est décidée par l'assemblée générale; elle doit être exécutée par le conseil d'administration dans les trois mois. ————————

Tout actionnaire a droit à la part d'actions nouvellement émises qui correspond à sa participation antérieure. La décision prise par l'assemblée générale d'augmenter le capital-actions ne peut supprimer ou limiter le droit préférentiel de souscription que pour de justes motifs. ——————————



## <u>TITRE III : ASSEMBLEE GENERALE</u> ————————————

### <u>Article 11</u>. **Décisions** ————————————————

L'assemblée générale est le pouvoir suprême de la société. ——————————

Ses décisions sont obligatoires pour tous ses actionnaires, même non présents ou non représentés. ————————————————

Les décisions de l'assemblée générale qui violent la loi ou les statuts peuvent être attaquées par le conseil d'administration ou chaque actionnaire dans les conditions prévues par les articles 706, 706a et 706b du Code des obligations. ——————

### <u>Article 12</u>. **Attributions** ————————————————

L'assemblée générale des actionnaires a le droit intransmissible : ——————

1. d'adopter ou de modifier les statuts, ——————————————
2. de nommer et révoquer les membres du conseil d'administration et l'organe de révision éventuel, ————————————————
3. d'approuver le rapport annuel et les comptes consolidés, ——————————
4. d'approuver les comptes annuels et de déterminer l'emploi du bénéfice résultant du bilan, en particulier de fixer le dividende et les tantièmes, ——————
5. de donner décharge aux membres du conseil d'administration, ——————
6. de prendre toutes les décisions qui lui sont réservées par la loi ou les statuts. ——

### <u>Article 13</u>. **Réunions** ————————————————

L'assemblée générale se tient au siège social ou en tout autre lieu, en Suisse ou à l'étranger, désigné par l'organe qui convoque. ————————————

L'assemblée générale ordinaire se réunit chaque année dans les six mois qui suivent la clôture de l'exercice annuel. ————————————

Une assemblée générale des actionnaires peut être réunie extraordinairement, aussi souvent qu'il est nécessaire. ————————————

Les dispositions qui suivent s'appliquent aux assemblées générales ordinaires et extraordinaires.————————————————

4

<u>Article 14</u>. **Convocations** —————————————————————————

L'assemblée générale est convoquée par le conseil d'administration et, au besoin, par les réviseurs. Les liquidateurs et, le cas échéant, les représentants des obligataires ont également le droit de la convoquer. —————————————

Un ou plusieurs actionnaires, représentant dix pour cent au moins du capital-actions, peuvent aussi requérir la convocation de l'assemblée générale. —————————

<u>Article 15</u>. **Mode de convocation** ————————————————————

L'assemblée générale est convoquée vingt jours au moins avant la date de sa réunion par une seule notification selon la procédure prévue à l'article 40 des présents statuts. ————————————————————————————

Sont mentionnés dans la convocation de l'assemblée générale les objets portés à l'ordre du jour, ainsi que les propositions du conseil d'administration et des actionnaires qui ont demandé la convocation de l'assemblée ou l'inscription d'un objet à l'ordre du jour. ———————————————————————

Les avis de convocation à l'assemblée générale ordinaire doivent informer les actionnaires que le rapport de gestion et le rapport de révision, pour les sociétés ayant l'obligation de faire contrôler leurs comptes annuels, sont mis à leur disposition au siège de la société et des succursales vingt jours au plus tard avant l'assemblée générale. ——————————————————————————

Aucune décision ne peut être prise sur des objets qui n'ont pas été dûment portés à l'ordre du jour à l'exception des propositions de convoquer une assemblée générale extraordinaire, d'instituer un contrôle spécial ou d'élire un organe de révision. ————

Il n'est pas nécessaire d'annoncer à l'avance les propositions entrant dans le cadre des objets portés à l'ordre du jour, ni les délibérations qui ne doivent pas être suivies d'un vote. ——————————————————————————

<u>Article 16</u>. **Assemblées universelles** ——————————————————

Les propriétaires ou les représentants de la totalité des actions peuvent, s'il n'y a pas d'opposition, tenir une assemblée générale sans observer les formes prévues pour sa convocation. ——————————————————————————

Aussi longtemps qu'ils sont tous présents, cette assemblée a le droit de délibérer et de statuer valablement sur tous les objets qui sont du ressort de l'assemblée générale. ——————————————————————————————

<u>Article 17</u>. **Représentation** ——————————————————————

Un actionnaire peut faire représenter ses actions par une personne, actionnaire ou non, munie d'un pouvoir écrit. ——————————————————————

5



## Article 18. **Bureau**

L'assemblée générale est présidée par le président du conseil d'administration ou, à défaut de celui-ci, par un autre membre du conseil désigné par l'assemblée.

S'il n'y a aucun membre du conseil d'administration présent, l'assemblée désigne un président du jour.

Le président désigne le secrétaire et éventuellement un ou plusieurs scrutateurs, qui ne doivent ni l'un ni les autres nécessairement être actionnaires.

## Article 19. **Droit de vote**

Les actionnaires exercent leur droit de vote à l'assemblée générale, proportionnellement à la valeur nominale de toutes les actions qui leur appartiennent.

Chaque actionnaire a droit à une voix au moins, même s'il ne possède qu'une action.

## Article 20. **Délibérations**

L'assemblée générale est valablement constituée quel que soit le nombre des actionnaires présents ou représentés.

Elle prend ses décisions et procède aux élections à la majorité absolue des voix attribuées aux actions représentées.

Si un second tour de scrutin est nécessaire, la majorité relative est suffisante. En cas de partage des voix, celle du président est prépondérante lorsqu'il s'agit de décisions. Pour les élections, c'est le sort qui décide.

En général, les votations se font à main levée, les élections au scrutin secret, à moins que l'assemblée n'en décide autrement.

Une décision de l'assemblée générale recueillant au moins les deux tiers des voix attribuées aux actions représentées et la majorité absolue des valeurs nominales représentées est nécessaire pour :

1. la modification du but social,
2. l'introduction d'actions à droit de vote privilégié,
3. l'introduction, la suppression ou la limitation de la restriction de la transmissibilité des actions nominatives,
4. l'augmentation autorisée ou conditionnelle du capital-actions,
5. l'augmentation du capital-actions au moyen des fonds propres, contre apport en nature ou en vue d'une reprise de biens et l'octroi d'avantages particuliers,
6. la limitation ou la suppression du droit de souscription préférentiel,
7. le transfert du siège de la société,
8. la dissolution de la société,
9. la conversion des actions nominatives en actions au porteur.

6



Article 21. **Procès-verbaux** ———————————————————

Il est dressé procès-verbal des séances de l'assemblée générale qui mentionne les indications sur la représentation des actionnaires, les décisions prises, les nominations, les demandes de renseignements et les réponses données de même que les déclarations dont les actionnaires demandent l'inscription. ———————

Le procès-verbal est signé par le président, par le secrétaire et éventuellement par les scrutateurs. ———————————————————————

Les extraits qui en sont délivrés sont certifiés conformes par un membre du conseil d'administration. ———————————————————————

Demeure réservée la forme authentique des décisions qui modifient les statuts selon l'article 647 du Code des obligations. ———————————————————

## TITRE IV : LE CONSEIL D'ADMINISTRATION ————————————

### Article 22. **Composition** ———————————————————

La société est administrée par un conseil d'administration composé d'un ou plusieurs membres, nommés par l'assemblée générale. ———————————————

### Article 23. **Durée des fonctions - organisation** ————————————

La durée des fonctions des membres du conseil d'administration est d'un an. ————

Ils sont rééligibles. Le membre nommé en remplacement d'un autre demeure en fonction pour la durée du mandat de son prédécesseur. ———————————

En cas de pluralité de membres du conseil d'administration, celui-ci désigne un président et un secrétaire, lequel peut être choisi en dehors de son sein. ————

### Article 24. **Délibérations** ———————————————————

Si le conseil d'administration se compose de plusieurs membres, ses décisions sont prises à la majorité des membres présents, pourvu toutefois que ceux-ci forment la majorité du conseil. ———————————————————————

En cas de partage égal des voix, celle du président est prépondérante. ————————

Le quorum ci-dessus n'est toutefois pas nécessaire lorsqu'il s'agit de constater la libération ultérieure du capital ou l'exécution d'une augmentation de capital et de décider la modification des statuts en résultant. ——————————————

Les décisions du conseil d'administration peuvent également être prises en la forme d'une approbation donnée par écrit à une proposition à moins que la discussion ne soit requise par l'un des membres. ———————————————————

7



## Article 25. **Procès-verbal**

Il est tenu un procès-verbal des décisions du conseil d'administration, même lorsqu'une seule personne est chargée de l'administration.

En cas de pluralité de membres du conseil d'administration, le procès-verbal de chaque séance est signé par le président et le secrétaire. Il doit mentionner les membres présents et les décisions circulaires.

## Article 26. **Convocation - droit aux renseignements**

Le conseil d'administration siège aussi souvent que les affaires l'exigent, sur convocation de son président.

Chaque membre du conseil d'administration peut exiger du président, en indiquant les motifs, la convocation immédiate du conseil d'administration à une séance.

Chaque membre du conseil d'administration a en plus le droit d'obtenir les renseignements conformément à l'article 715 a du Code des obligations.

## Article 27. **Pouvoirs**

Le conseil d'administration a les pouvoirs les plus étendus pour la gestion de la société et représente la société à l'égard des tiers. Il peut prendre des décisions sur toutes les affaires qui ne sont pas attribuées à l'assemblée générale ou aux autres organes sociaux.

Il gère les affaires de la société dans la mesure où il n'en a pas délégué la gestion.

Il a les attributions intransmissibles et inaliénables suivantes :

1. exercer la haute direction de la société et établir les instructions nécessaires,
2. fixer l'organisation,
3. fixer les principes de la comptabilité et du contrôle financier ainsi que le plan financier pour autant que celui-ci soit nécessaire à la gestion de la société,
4. nommer et révoquer les personnes chargées de la gestion et de la représentation,
5. exercer la haute surveillance sur les personnes chargées de la gestion pour s'assurer notamment qu'elles observent la loi, les statuts, les règlements et les instructions données,
6. établir le rapport de gestion, préparer l'assemblée générale et exécuter ses décisions,
7. informer le juge en cas de surendettement.

En outre, il prend les décisions concernant l'appel ultérieur d'apports relatifs à des actions non entièrement libérées ainsi que les décisions relatives à la constatation d'augmentations de capital et aux modifications des statuts qui en résultent.

8



Il peut déléguer à certains de ses membres, pris individuellement ou groupés en comités, la charge de préparer et d'exécuter ses décisions ou de surveiller certaines affaires. ⸺

### Article 28. Délégation de la gestion ⸺

Le conseil d'administration peut déléguer tout ou partie de la gestion à un ou plusieurs de ses membres (délégués) ou à des tiers (directeurs) conformément au règlement d'organisation qu'il établit. ⸺

### Article 29. Représentation ⸺

Le conseil d'administration peut déléguer le pouvoir de représentation à un ou plusieurs de ses membres (délégués) ou à des tiers (directeurs, fondés de procuration, mandataires commerciaux). ⸺

Il fixe le mode de signature. ⸺

La société doit pouvoir être représentée par une personne domiciliée en Suisse, un membre du conseil d'administration ou un directeur doit satisfaire à cette exigence. ⸺

Si la société est représentée par la personne avec laquelle elle conclut un contrat, celui-ci doit être passé en la forme écrite. Cette exigence ne s'applique pas aux opérations courantes pour lesquelles la prestation de la société ne dépasse pas CHF 1'000.00. ⸺

### Article 30. Indemnité ⸺

Chaque membre du conseil d'administration a droit, en sus du remboursement de ses dépenses, à une indemnité fixée par le conseil d'administration en raison de l'activité déployée pour la société. ⸺

## TITRE V : ORGANE DE REVISION ⸺

### Article 31. Révision ⸺

L'assemblée générale élit un organe de révision. ⸺

Elle peut renoncer à l'élection d'un organe de révision lorsque : ⸺

1.  la société n'est pas assujettie au contrôle ordinaire; ⸺
2.  l'ensemble des actionnaires y consent; et ⸺
3.  l'effectif de la société ne dépasse pas 10 emplois à plein temps en moyenne annuelle. ⸺

Lorsque les actionnaires ont renoncé au contrôle restreint, cette renonciation est également valable les années qui suivent. Chaque actionnaire a toutefois le droit d'exiger un contrôle restreint et l'élection d'un organe de révision au plus tard 10 jours avant l'assemblée générale. Dans ce cas, l'assemblée générale ne peut

prendre les décisions mentionnées à l'art. 12 chi. 3 et 4 qu'une fois que le rapport de révision est disponible. ⸻

Sont tenues de soumettre leurs comptes annuels et, le cas échéant, leurs comptes consolidés au contrôle ordinaire : ⸻

1.  les sociétés ouvertes au public, soit les sociétés : ⸻

    a.  qui ont des titres de participation côtés en bourse, ⸻
    b.  qui sont débitrices d'un emprunt par obligations, ⸻
    c.  dont les actifs ou le chiffre d'affaire représentent 20% au moins des actifs ou du chiffre d'affaires des comptes consolidés d'une société au sens des let. a et b; ⸻

2.  les sociétés qui, au cours de deux exercices successifs, dépassent deux des valeurs mentionnées à l'article 727, chiffre 2 CO, ⸻

3.  les sociétés qui ont l'obligation d'établir des comptes consolidés. ⸻

Un contrôle ordinaire des comptes est également requis lorsque des actionnaires représentant ensemble au moins 10% du capital-actions l'exigent. ⸻

<u>Article 32</u>. **Exigences relatives à l'organe de révision** ⸻

Sont éligibles comme organe de révision une ou plusieurs personnes physiques ou morales ainsi que les sociétés de personnes. ⸻

Au moins un membre de l'organe de révision doit avoir en Suisse son domicile, son siège ou une succursale inscrite au registre du commerce. Lorsque la société a plusieurs organes de révision, l'un au moins doit satisfaire à cette exigence. ⸻

Lorsque la société est tenue de soumettre ses comptes annuels au contrôle ordinaire d'un organe de révision en vertu de : ⸻

1.  l'art. 727 al. 1 chi. 2 ou chi. 3 ⸻
2.  l'art. 727 al. 2 CO, ⸻

l'assemblée générale élit un expert-réviseur agréé au sens de la loi fédérale sur la surveillance des réviseurs du 16 décembre 2005 comme organe de révision. ⸻

Lorsque la société est tenue de soumettre ses comptes annuels au contrôle restreint d'un organe de révision, l'assemblée générale élit un réviseur agréé au sens de la loi fédérale sur la surveillance des réviseurs du 16 décembre 2005 comme organe de révision. La renonciation à l'élection d'un organe de révision en vertu de l'art. 31 demeure réservée. ⸻

L'organe de révision doit être indépendant au sens de l'art. 728 CO en cas de contrôle ordinaire et de l'art. 729 CO en cas de contrôle restreint. ⸻



10



L'organe de révision est élu pour une durée d'un exercice. Son mandat prend fin avec l'approbation des derniers comptes annuels. Il peut être reconduit dans ses fonctions. L'assemblée générale peut, en tout temps, révoquer l'organe de révision avec effet immédiat.

Article 33. **Attributions**

En cas de contrôle ordinaire, l'organe de révision vérifie :

1. Si les comptes annuels, le cas échéant, les comptes consolidés sont conformes aux dispositions légales, aux statuts et au cadre de référence choisi.
2. Si la proposition du conseil d'administration à l'assemblée générale concernant l'emploi du bénéfice est conforme aux dispositions légales et aux statuts.
3. S'il existe un système de contrôle interne.

Il établit à l'intention du conseil d'administration un rapport détaillé conformément à l'article 728b, alinéa 1$^{er}$ du Code des Obligations.

Il établit à l'intention de l'assemblée générale, conformément à l'article 728b, alinéa 2, du Code des Obligations, un rapport écrit sur le résultat de sa vérification et il recommande l'approbation des comptes annuels avec ou sans réserves ou leur refus.

Si l'organe de révision constate des violations de la loi ou des statuts ou d'un éventuel règlement d'organisation, il en avertit par écrit le conseil d'administration. En cas de violation grave de la loi ou des statuts et en cas d'omission du conseil à prendre des mesures adéquates, après un avertissement écrit, l'organe de révision avertit l'assemblée générale.

En cas de surendettement manifeste, il avise le juge, si le conseil d'administration omet de le faire.

L'organe de révision, en cas de contrôle ordinaire, doit être présent à l'assemblée générale ordinaire sauf si celle-ci l'en dispense par une décision unanime.

En cas de contrôle restreint, l'organe de révision vérifie s'il existe des faits dont il résulte que :

1. les comptes annuels ne sont pas conformes aux dispositions légales et aux statuts;
2. la proposition du Conseil d'administration à l'Assemblée générale concernant l'emploi du bénéfice n'est pas conforme aux dispositions légales et aux statuts.

Il établit à l'attention de l'Assemblée générale un rapport écrit qui résume le résultat de la révision conformément à l'article 729b du Code des Obligations.

11

## TITRE VI : COMPTES ANNUELS - RESERVE - DIVIDENDES

### Article 34. Exercice comptable

Les exercices comptables sont annuels. Le Conseil d'administration décide de la date du bouclement.

### Article 35. Rapport de gestion

Il est dressé chaque année, en conformité des articles 957 et suivants du Code des obligations un rapport de gestion qui se compose d'un bilan, d'un compte de résultats de la société, arrêtés à la date décidée par le Conseil d'administration, et d'une annexe selon l'article 959c CO, du rapport annuel ainsi que, lorsque la loi le prescrit, du rapport annuel et des comptes consolidés.

### Article 36. Affectation du bénéfice

Les dispositions impératives de l'article 671 du Code des obligations traitant des versements obligatoires à la réserve générale doivent être respectées.

Le solde du bénéfice résultant du bilan est réparti conformément aux décisions de l'assemblée générale.

### Article 37. Paiement du dividende

Le paiement du dividende a lieu à l'époque fixée par le conseil d'administration. Tout dividende qui n'a pas été réclamé dans les cinq ans dès son exigibilité est acquis de plein droit à la société.

## TITRE VII : LIQUIDATION

### Article 38. Liquidation

En cas de dissolution de la société pour d'autres causes que sa faillite ou une décision judiciaire, la liquidation en est opérée par le conseil d'administration, à moins de décision contraire de l'assemblée générale.

L'un au moins des liquidateurs doit être domicilié en Suisse et avoir qualité pour représenter la société.

### Article 39. Pouvoirs des liquidateurs - répartition

Pendant la liquidation, les pouvoirs des organes sociaux sont restreints aux actes qui sont nécessaires à cette opération et qui, de par leur nature, ne sont point du ressort des liquidateurs.

L'assemblée générale des actionnaires conserve le droit d'approuver les comptes de la liquidation et d'en donner décharge.



12



L'actif disponible, après extinction du passif, est en premier lieu employé à rembourser le capital-actions versé. ———————————————————

Le solde éventuel est réparti suivant décision de l'assemblée générale. ————————

## TITRE VIII : PUBLICATION - FOR ——————————————————

### Article 40. Publications ——————————————————————

Les publications de la société sont valablement faites dans la Feuille Officielle Suisse du Commerce. ————————————————————————————

Les communications de la société aux actionnaires se font par lettre recommandée, à l'adresse de chacun des actionnaires inscrits sur le registre des actions. ——————

### Article 41. For ————————————————————————————

Toutes les contestations qui pourront s'élever pendant la durée de la société ou sa liquidation, soit entre les actionnaires et la société ou les membres du conseil d'administration et réviseurs, soit entre les actionnaires eux-mêmes en raison des affaires de la société, seront soumises aux tribunaux du canton de son siège. ————

STATUTS ADOPTES à l'unanimité lors de l'assemblée constitutive de la société anonyme, à Lausanne, le 2 juillet 2013. ———————————————————

La traduction anglaise des présents statuts est indicative ; en cas de divergence entre les versions, la version française fait foi. ————————————————

# A R T I C L E S

## SECTION I: CORPORATE NAME - HEADQUARTERS - OBJECT - DURATION ——

### Article 1. Corporate name ————————————————————————

A limited company is formed under the following corporate name ——————————

---- Mediterra Holdings SA ----
---- (Mediterra Holdings AG) ----
---- (Mediterra Holdings Ltd) ----

13

It is governed by these articles and by section XXVI of the Code of obligations. ———

Article 2. **Headquarters** ———————————————————

The company's headquarters are at Lausanne. ——————————————



Article 3. **Object** ——————————————————————

The object of the company shall be the development, manufacture and trade in all its forms (purchase, sale, import, export and representation) in and of pharmaceutical and cosmetic products and products relating to health and well-being and the acquisition, management and disposal of participations in undertakings of all kinds in Switzerland and abroad. ————————————————

It may : ——————————————————————————

- Exercise any financial, commercial and industrial activity in direct or indirect relation with its object; ————————————————
- Create any branches or subsidiaries in Switzerland or overseas; ——————
- Own holdings in any companies which have a direct or indirect relationship with its object; ———————————————————————
- Grant loans or guarantees to shareholders or to third parties, if this is in the company's interest, ————————————————————
- Hold and manage intellectual property rights. ———————————

Article 4. **Duration** ——————————————————————

The duration of the company is indefinite. ——————————————

## SECTION II : SHARE CAPITAL - SHARES ——————————————

Article 5. **Nominal total – division – nature of securities** ————————

The share capital is set at the sum of CHF 100'000.00. ——————————

It is divided into 100'000 nominal shares of CHF 1.00 each, wholly paid up. ————

Article 6. **Shares - certificates - register of shares** ——————————

The shares are numbered and signed by a member of the board of directors. ———

Instead of shares, numbered certificates may be issued representing one or more shares. ———————————————————————

The nominal shares may be converted into bearer shares and vice versa. ————

The company keeps a register of the nominal shares which mentions the names and the addresses of the owners and the beneficial owners. ————————————

14

Article 7. **Transfer of shares** ———————————————————

The transfer of shares is carried out by means of endorsement and is subject to the approval of the board of directors and to the transaction being recorded on the register of shares. ————————————————————————

The board of directors may refuse the transfer by invoking reasonable grounds under article 685b paragraph 2 CO, in particular if the new owner or owners of the share capital endanger the corporate object or the economic independence of the company due to the fact that they are acting as members of the board of directors, are directors or owners of companies or enterprises which are engaged in a competing activity. ————————————————————————

The company may also refuse to record shares on the register if the purchaser has not expressly declared that he or she is taking over the shares in his or her own name or on his or her own behalf. ————————————————————————

The approval may also be refused with no grounds being given if the board of directors purchases the shares at their true value at the time of the request for approval, on behalf of the company, other shareholders or third parties. —————

If the shares have been acquired by succession, the sharing out of a succession, in virtue of the matrimonial system or in a forced execution procedure, the company may only refuse its approval if it offers to buy the shares in question from the purchaser at their true value. ————————————————————————

The approval of the transfer, its refusal or the purchase offer must be notified by the board of directors to the transferor within three months from the receipt of the request. ————————————————————————

The pre-emptive right constituted by article 8 below in favour of shareholders gives precedence to the right of the board of directors to purchase the shares on behalf of the company or third parties. ————————————————————————

The true value of the shares shall be determined in accordance with article 8. ————

Article 8. **Pre-emptive right** ———————————————————

If a shareholder offers to sell all or some of his or her shares to any third party, he shall send the other shareholders and the board of directors the conditions of purchase with this third party. ————————————————————————

The remaining shareholders shall then have a pre-emptive right which must be exercised within a period of thirty days from receipt of the conditions of purchase, proportional to the number of shares which they own. If one or other of the shareholders waives his or her right, the rights of the others shall thus be increased in proportion to the number which each person owns. The lack of a response within the deadline given shall be equivalent to the waiving of the pre-emptive right. ————

15

The value of the shares is set by the auditors. If one or more shareholders should dispute the price set by the auditors, the price of the shares shall thus be determined by a fiduciary chosen unanimously by the shareholders, this fiduciary shall rule definitively. In the case of any disagreement on the part of the shareholders with regard to the choice of the fiduciary, this latter shall be designated by the president of the civil Court of the district in which the headquarters are located. ─────────



If, within a period of one month, none of the shareholders have declared themselves to be ready to purchase the securities under the conditions set by the auditors or, if need be, by a fiduciary, the transferor may, under reservation of the board of directors' right to purchase, transfer the shares to the purchaser of his or her choice. -

### Article 9 Indivisibility of the securities – rights attached to the shares ─────────

Each share is indivisible with regard to the company, which only recognises one owner per share. ─────────

Each share gives the right to a part of the profits resulting from the balance sheet and the liquidation product in proportion to the payments made to the share capital. –

The shareholders are only bound to the statutory services and are not personally responsible for corporate debts. ─────────

### Article 10. Increase of capital – preferential subscription right ─────────

Any increase in the share capital shall be decided upon by the general meeting, it must be executed by the board of directors within three months. ─────────

Any shareholder has the right to a quota of newly issued shares corresponding to his or her previous holding. Any decision taken by the general meeting to increase the share capital cannot remove or limit the preferential subscription right except for just reasons. ─────────

### SECTION III: GENERAL MEETING ─────────

### Article 11. Decisions ─────────

The general meeting is the company's supreme power. ─────────

Its decisions are binding for all shareholders, even if they are not present or not represented. ─────────

Any decisions taken by the general meeting which breach the law or the statutes may be contested by the board of directors or any of the shareholders under the conditions laid down by articles 706, 706a and 706b of the Code of obligations. ─────

### Article 12. Allocations ─────────

The general shareholders meeting has the inalienable right to do the following : ─────

16



1. To adopt or to modify the statutes. —— ———————————————— ————
2. To appoint or remove members of the board of directors and the auditors. ———
3. To approve the annual report and the consolidated accounts. ——————————
4. To approve the annual accounts and to determine the use to be made of the profit resulting from the balance sheet, in particular to set the dividend and the percentages of profits. ——————————————————————————
5. To discharge members of the board of directors. ——————————————
6. To take any decisions which are reserved to it by law or by the statutes. —————

Article 13. **Meetings** ————————————————————————————

The general meeting is held at the corporate headquarters or in any other place, in Switzerland or overseas, as designated by the body which convenes the meeting. ——

The ordinary general meeting meets every year within the six months following the closure of the financial year. ———————————————————————

A general shareholders meeting may be convened extraordinarily, as often as may be necessary. ———————————————————————————

The provisions which follow apply to both ordinary and extraordinary general meetings. ——————————————————————————————

Article 14. **Notice** ——————————————————————————————

The general meeting is convened by the board of directors and, if need be, by the auditors. The liquidators, and, if need be, the representatives of the holders of redeemable shares also have the right to convene. ——————————————

One or more shareholders, representing at least ten per cent of the share capital, may also require the convening of the general meeting. ——————————————

Article 15. **Form of notice** —————————————————————————

The General Meeting shall be called subject to at least twenty days' prior notice by a single notification according to the procedure envisaged in article 40 below. —————

Notice of the General Meeting shall be accompanied by a list of the items on the agenda and by any proposals by the Board of Directors and any shareholders who asked that the meeting be called or an item be included on the agenda. ——————

Notice of the ordinary General Meeting of companies required to have their annual accounts audited must inform shareholders that the annual report and the auditor's report are being held at their disposal at the head office and branches of the Company twenty days at the latest before the General Meeting. ————————

No decision can be taken on items not duly placed on the agenda save for proposals to convene an extraordinary General Meeting, to conduct a special audit or to elect auditors. ——————————————————————————————

17



Prior notice is not necessary for proposals relating to the items on the agenda, nor for discussions that are not to be followed by a vote. —————————————————

Article 16. **Universal meetings** —————————————————————————

The owners or the representatives of all of the shares may, if there is no opposition, hold a general meeting without observing the precise forms for the convening of the latter. ———————————————————————————————————————————

As long as they are all present, this meeting has the right to deliberate and to validly rule on all items which fall within the competence of the general meeting. —————

Article 17. **Representation** ——————————————————————————

A shareholder may have his shares represented by a person, who may or may not be a shareholder, provided with a written power of proxy. ——————————————

Article 18. **Board** ————————————————————————————————

The general meeting is chaired by the Chair of the board of directors or, failing this, by another member of the board designated by the meeting. ——————————

If there is no member of the board of directors present, the meeting designates a temporary Chair. ————————————————————————————————————

The Chair designates the secretary and, where applicable, one or more scrutineers, who do not necessarily need to be shareholders. ——————————————————

Article 19. **Voting rights** ——————————————————————————

The shareholders exercise their voting rights at the general meeting, in proportion to the nominal value of all of the shares which belong to them. ——————————————

Each shareholder has the right to at least one vote, even if he or she only owns one share. ————————————————————————————————————————

Article 20. **Discussions** ———————————————————————————

The General Meeting shall have a quorum whatever the number of shareholders present or represented. ——————————————————————————————————

It shall adopt its decisions and conduct its elections by an absolute majority of the votes allotted to the shares represented. ————————————————————————

If a second ballot is necessary, a relative majority shall suffice. In the event of a draw, the Chairman shall have the casting vote in the case of decisions. For elections, the decision shall be taken by the drawing of lots. ——————————————

In general, voting shall be by a show of hands and elections by secret ballot, unless the Meeting decide otherwise. ——————————————————————————

18



A General Meeting decision by at least two-thirds of the votes allotted to the shares represented and an absolute majority of the face values represented is necessary to :

1. amend the purpose of the Company,
2. introduce privileged voting shares,
3. abolish or limit the restriction on the transmissibility of registered shares,
4. effect an authorised or conditional increase in share capital,
5. increase the share capital by means of shareholders' equity, by a contribution in kind or by assuming assets and granting particular advantages,
6. limit or abolish preferential subscription rights,
7. transfer the registered office of the Company,
8. wind-up the Company,
9. convert the registered shares into bearer shares.

<u>Article 21</u>. **Minutes**

Minutes are drawn up for sessions of the general meeting which mention the details on the representation of shareholders, the decisions taken, appointments, requests for information and the answers given and declarations made when shareholders request that they be recorded.

The minutes are signed by the chair, by the secretary and, where applicable, by the scrutineers.

The abstracts issued are certified as accurate by a member of the board of directors.

The authentic form of any decisions which modify the statutes is reserved according to article 647 of the Code of obligations.

## <u>SECTION IV: THE BOARD OF DIRECTORS</u>

<u>Article 22</u>. **Composition**

The Company shall be administered by a Board of Directors comprising one or more members, appointed by the General Meeting.

<u>Article 23</u>. **Duration of positions – organisation**

The duration of the positions of the members of the board of directors is one year.

They can be re-elected. Any member appointed to replace another remains in his position for the length of the mandate of his predecessor.

In the case of plurality of members of the board of directors, the latter designates a chair and a secretary, who may be chosen from outside the board.

19



<u>Article 24</u>. **Deliberations**

If the board of directors is made up of various members, its decisions are taken by a majority of the members present, provided that these are the majority of the board.

In the case of a split vote, the chair has the casting vote.

The quorum above is not necessary for the subsequent releasing of the capital or the execution of an increase in capital and deciding on the modification of the statutes resulting from this.

The decisions of the board of directors may also be taken in the form of an approval given in writing to a proposal unless the discussion is required by one of the members.

<u>Article 25</u>. **Minutes**

The minutes of the decisions of the board of directors are taken, even if only one person is in charge of the administration.

In the case of plurality of members of the board of directors, the minutes of each session are signed by the chair and by the secretary. It must mention the members present and any circular decisions.

<u>Article 26</u>. **Convening – right to information**

The board of directors sits as often as business requires, when convened by its chair.

Each member of the board of directors may require from the chair, by giving his or her reasons, the immediate convening of the board of directors to a session.

Each member of the board of directors also has the right to obtain information in accordance with article 715a of the Code of obligations.

<u>Article 27</u>. **Prerogatives**

The Board of Directors shall exercise the fullest powers for the administration of the Company and shall represent the Company in its relations with third parties. It may adopt decisions on all matters not reserved for the General Meeting or the other corporate bodies.

It shall administer the business of the Company insofar as it does not delegate the administration.

It shall exercise the following non-transmissible and inalienable prerogatives :

1.  exercise the overall management of the Company and establish any necessary instructions,

20



2. determine the organisation of the Company, —————————————

3. set the principles of accountancy and financial audit as well as the budget insofar as that be necessary for the management of the Company, —————————

4. appoint and dismiss the people charged with managing and representing the Company, ————————————————————————

5. exercise overall supervision of the people responsible for management to ensure in particular that they observe the law, these Articles and any regulations and instructions given, —————————————————————

6. draft the annual report, prepare the General Meeting and implement its decisions, ————————————————————————

7. inform the courts should the Company overextend itself. —————————

Moreover, it shall take any decisions concerning the calling up of any balances outstanding on partly paid-up shares as well as decisions relating to new capital issues and the consequent amendments to these Articles. ———————————

It may delegate some of its members, individually or grouped in committees, to prepare and implement its decisions or to supervise certain items of business. ———

## Article 28. Delegation of management ———————————————

The board of directors may delegate all or part of the management to one or more of its members (delegates) or to third parties (directors) in accordance with the organisation regulation which it draws up. ——————————————

## Article 29. Representation ———————————————————

The Board of Directors may delegate the power of representation to one or more of its members (managing-directors) or to third parties (managers, authorised clerks, commercial agents). ——————————————————————

It shall determine their signing rights. ———————————————

The Company must be represented by a person domiciled in Switzerland; a member of the Board of Directors or a manager must satisfy this requirement. —————

If the Company is represented by a person with whom it concludes a contract, that contract must be set down in writing. This requirement shall not apply to current operations committing the Company for less than CHF 1'000.00. ——————

## Article 30. Indemnity ———————————————————

Each member of the board of directors has the right, in addition to the reimbursement of his or her expenses, to an indemnity set by the board of directors according to the activity carried out for the company. ——————————

21

## SECTION V: AUDITORS

<u>Article 31</u>. **Audit**

The General Meeting shall elect an external auditor.

It may waive the election of an auditor when :

1. the Company is not subject to an ordinary audit;
2. all the shareholders so agree; and
3. the average annual staff of the Company does not exceed 10 full-time employees.

Once the shareholders have waived a restricted audit, that waiver shall also hold valid for the following years. Each shareholder shall, however be entitled to request a restricted audit and the election of an auditor at the latest 10 days before the General Meeting. In this case, the General Meeting cannot adopt the decisions mentioned in Art. 12(3) and (4) until the auditor's report is available.

Annual accounts and, if necessary, consolidated accounts are to be submitted to an ordinary audit by:

1. companies open to the public, i.e. companies :

   a. whose shares are listed on the Stock Exchange,
   b. that are debtors under a debenture loan,
   c. whose assets or turnover account for at least 20% of the assets or turnover of the consolidated accounts of a company within the meaning of a. and b. above;

2. companies which, during two successive financial years, exceed two of the values described in article 727, number 2 CO

3. companies which have to produce consolidated accounts.

An ordinary audit of the accounts is also necessary when shareholders jointly accounting for at least 10% of the share capital so require.

<u>Article 32</u>. **Requirements relating to the auditors**

One or more persons or entities as well as partnerships are eligible as auditors.

At least one member of the auditing board must be domiciled, have its head office or a branch entered in the Commercial Register in Switzerland. When the Company has several auditors, one at least must satisfy this requirement.

22





When the Company is required to submit its annual accounts to an ordinary audit by an auditing board under the terms of : —————————————————

1.  Art. 727(1(2) or (3)) ————————————————————————————
2.  Art. 727(2) of Swiss Contract Law (Code of Obligations – CO), ——————

the General Meeting shall elect as its auditor an approved chartered accountant within the meaning of the federal Auditors Monitoring Act of 16 December 2005. ——

When the Company is required to submit its annual accounts to a restricted audit by an auditing board, the General Meeting shall elect as its auditor an approved auditor within the meaning of the federal Auditors Monitoring Act of 16 December 2005. This is subject to the auditor election waiver under the terms of Art. 31 above. ————

The auditing board must be independent within the meaning of Art. 728 CO in the event of an ordinary audit and of Art. 729 CO in the event of a restricted audit. ——

The auditing board is elected for a term of one financial year. Its term shall end with the adoption of the final annual accounts. It may be re-elected. The General Meeting may, at any time, dismiss the auditing board with immediate effect. ——————

<u>Article 33</u>. **Prerogatives** ——————————————————————

In the event of an ordinary audit, the auditing board shall check : —————————

1.  That the annual accounts and, if necessary, the consolidated accounts comply with the legal provisions, these Articles and the selected framework of reference.
2.  That the proposal by the Board of Directors to the General Meeting concerning the utilisation of profits complies with the legal provisions and these Articles. ——
3.  That there exists an internal audit system. —————————————————

It shall, for the Board of Directors, draw up a detailed report in accordance with article 728b (1) of the Code of Obligations. ————————————————

It shall, for submission to the General Meeting, in accordance with article 728b (2) of the Code of Obligations, prepare a written report on the result of its audit and it shall recommend the adoption of the annual accounts with or without reservations – or their refusal. ————————————————————————————

If the auditing board notes violations of the law or these Articles or any existing organisational regulations, it shall inform the Board of Directors thereof in writing. In the event of a serious violation of the law or these Articles and should the Board of Directors fail to take adequate remedial measures after a written warning, the auditing board shall inform the General Meeting. —————————————————

It shall inform the courts if the Company becomes manifestly over-indebted and if the Board of Directors fails to do so. ————————————————————

The auditors, in the event of an ordinary audit, must be present at the ordinary General Meeting unless the Meeting excuses it by a unanimous decision. ————

23

In the event of a restricted audit, the auditors shall check to see whether there are any facts that indicate that :

1.  the accounts do not comply with the legal provisions and these Articles;
2.  the proposal by the Board of Directors to the General Meeting concerning the utilisation of profits does not comply with the legal provisions and these Articles.



It shall, for the attention of the General Meeting, prepare a written report summarising the result of the audit in accordance with article 729b of the Code of Obligations.

## SECTION VI: ANNUAL ACCOUNTS - RESERVE - DIVIDENDS

### Article 34. Accounting year

The accounting year is annual; the Board of Directors decide of the date of its closing.

### Article 35. Management report

Every year, a Management Report shall be prepared in accordance with Articles 957 and following of the Code of Obligations, which shall consists of a Profit and Loss Accounts of the Company, drawn up at the date decided by the Board of Directors as well as Appendix in accordance with Article 959c of the CO, to the Annual Report, and where the Law requires, to the Annual Report and Consolidated Accounts.

### Article 36. Assignment of the profit

The imperative provisions of article 671 of the Code of obligations dealing with obligatory payments to the general reserve must be respected.

The balance of the profit resulting from the balance sheet is distributed in accordance with the decisions of the general meeting.

### Article 37. Payment of the dividend

The dividend shall be paid at the time set by the Board of Directors. Any dividend which is not claimed within five years of falling due shall automatically revert to the Company.

## SECTION VII: LIQUIDATION

### Article 38. Liquidation

In the case of dissolution of the company for reasons other than its bankruptcy or a legal decision, the liquidation is carried out by the board of directors, unless there is a decision to the contrary made by the general meeting.



At least one of the liquidators must be resident in Switzerland and be empowered to represent the company. ————————————————————————————

Article 39. **Powers of the liquidators – allocation** ——————————

During the liquidation, the powers of corporate bodies are restricted to deeds which are necessary to this operation and which, by their very nature, do not fall within the competence of the liquidators. ——————————————————

The general shareholders meeting retains the right to approve the accounts for the liquidation and to release them. ——————————————————

The assets available, after extinguishments of the liabilities, is in the first place employed to reimburse the paid-up share capital. ——————————————

The eventual balance is allocated according to the decision taken by the general meeting. ——————————————————————————

## SECTION VIII: PUBLICATION - JURISDICTION ——————————

Article 40. **Publications** ————————————————————

The company's publications are validly published in the Feuille Officielle Suisse du Commerce (Swiss Trade Bulletin). ——————————————————

The company's communications to shareholders are sent by registered letter, to the address of each shareholder as recorded on the register of shares. ——————

Article 41. **Jurisdiction** ————————————————————

Any disputes which may arise during the life of the company or its liquidation, either between shareholders and the company or members of the board of directors and auditors, or between shareholders themselves due to the company's affairs, shall be subject to the courts of the canton in which the headquarters are located. ————

THESE ARTICLES ARE ADOPTED unanimously at the Constitutive Meeting of the limited company, in Lausanne, on 2nd July 2013. ——————————————

In case of difference between the French and the English versions ; the French one will be sole applicable. ——————————————————————

STATUTS APPROUVES ET SIGNES PAR LE FONDATEUR
ET PARTIELLEMENT CONFORMES (sans la signature du fondateur et la légalisation)
à ceux annexés à ma minute No 4'946

L'atteste :

25

SCHEDULE   1.5 (a)

**www.rc.vd.ch**

**Extrait avec radiations**

EXTRAIT INTERNET

No réf.    2013/11346
N° féd.    CH-550.1.125.485-5

## Mediterra Holdings SA
inscrite le 15 juillet 2013
Société anonyme

| Réf. | Raison Sociale |
|---|---|
| 1 | Mediterra Holdings SA<br>(Mediterra Holdings AG)<br>(Meditarra Holdings Ltd) |

| Réf. | Siège |
|---|---|
| 1 | Lausanne |

| Réf. | Adresse |
|---|---|
| 1 | Rue du Grand-Chêne 2, c/o LEXARTISAVOCATS, 1003 Lausanne |

| Réf. | Dates des Statuts |
|---|---|
| 1 | 02.07.2013 |

| Réf. | But, Observations |
|---|---|
| 1 | But:<br>la société a pour but le développement, la fabrication, le commerce sous toutes ses formes (achat, vente, import, export, représentation) de produits pharmaceutiques, cosmétiques et touchants à la santé et au bien-être ainsi que l'acquisition, la gestion et l'aliénation de participations dans des entreprises de toute nature en Suisse et à l'étranger (pour but complet cf. statuts). |
| 1 | Selon déclaration du 2 juillet 2013, la société n'est pas soumise à une révision ordinaire et renonce à une révision restreinte. |

| Réf. | Organe de publication |
|---|---|
| 1 | Communications aux actionnaires: par lettre recommandée à l'adresse de chacun des actionnaires inscrits sur le registre des actions |
| 1 | Feuille officielle suisse du commerce |

| Réf. | Capital-actions | | |
|---|---|---|---|
| | Nominal | Libéré | Actions |
| 1 | CHF 100'000 | CHF 100'000 | 100'000 actions nominatives de CHF 1, avec restrictions quant à la transmissibilité selon statuts. |

| Réf. | | | Administration, organe de révision et personnes ayant qualité pour signer | | |
|---|---|---|---|---|---|
| Inscr | Mod | Rad. | Nom et Prénoms, Origine, Domicile | Fonctions | Mode Signature |
| 1 | | | **Cherpillod** Olivier, de Vucherens, à Savigny | adm. | signature individuelle |
| 2 | | | **Lavidas** Telemaque, des USA, à New York (USA) | adm. président | signature individuelle |

| Réf. | JOURNAL | | PUBLICATION FOSC | | Réf. | JOURNAL | | PUBLICATION FOSC | |
|---|---|---|---|---|---|---|---|---|---|
| | Numéro | Date | Date | Page/Id | | Numéro | Date | Date | Page/Id |
| 1 | 11346 | 17.07.2013 | 22.07.2013 | 0/989367 | 2 | 12313 | 07.08.2013 | 12.08.2013 | 0/1023721 |

Moudon, le 12 août 2013

*Fin de l'extrait*

**Seul un extrait certifié conforme, signé et muni du sceau du registre, a une valeur légale.**

*Schedule 1.5 (1)*

# Delaware

PAGE   1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "MEDITERRA INC.", FILED IN THIS OFFICE ON THE SEVENTEENTH DAY OF JULY, A.D. 2013, AT 7:01 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

5368947   8100

130890636

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION:   0597583

DATE:   07-18-13

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:11 PM 07/17/2013
FILED 07:01 PM 07/17/2013
SRV 130890636 - 5368947 FILE

CERTIFICATE OF INCORPORATION

OF

MEDITERRA INC.

FIRST: The name of the corporation is:

Mediterra Inc. (the "Corporation")

SECOND: The address of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, County of New Castle, Delaware 19808; and the name of the registered agent of the corporation in the State of Delaware at such address is Corporation Service Company.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware.

FOURTH: The Corporation is authorized to issue one class of stock, to be designated "Common Stock," with a par value of $0.0001 per share. The total number of shares of Common Stock that the Corporation shall have authority to issue is 1,000,000.

FIFTH: The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. In addition to the powers and authority expressly conferred upon them by statute or by this Certificate of Incorporation or the Bylaws of the Corporation, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation. Election of directors need not be by written ballot, unless the Bylaws so provide.

SIXTH: The Board of Directors is authorized to make, adopt, amend, alter or repeal the Bylaws of the Corporation. The stockholders shall also have power to make, adopt, amend, alter or repeal the Bylaws of the Corporation.

SEVENTH: The name and mailing address of the incorporator is:

Ramon Bocanegra
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA 94303

EIGHTH: To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or may hereafter be amended, a director of the Corporation shall be indemnified by the Corporation in accordance with the Bylaws and shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. Any repeal or modification of the foregoing provisions of this Article EIGHTH by the stockholders of the Corporation shall not adversely affect any right or protection of a director of

WEST\241607898.1

the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions occurring prior to, such repeal or modification.

THE UNDERSIGNED, being the incorporator named above, for the purpose of forming a corporation pursuant to the General Corporation Law of Delaware, does make this certificate, hereby declaring and certifying that this is my act and deed and the facts herein stated are true, and accordingly have hereunto set my hand this 17th day of July, 2013.

/s/ Ramon Bocanegra
Ramon Bocanegra, Incorporator

WEST\241607898.1

BYLAWS
OF
MEDITERRA INC.

ARTICLE I
STOCKHOLDERS

1.1    Place of Meetings. All meetings of stockholders shall be held at such place within or without the State of Delaware as may be designated from time to time by the Board of Directors, the President.

1.2    Annual Meeting. The annual meeting of stockholders for the election of directors and for the transaction of such other business as may properly be brought before the meeting shall be held on a date to be fixed by the Board of Directors at the time and place to be fixed by the Board of Directors and stated in the notice of the meeting.

1.3    Special Meetings. Special meetings of stockholders may be called at any time by the Board of Directors, the Chairman of the Board or the President or the holders of record of not less than 10% of all shares entitled to cast votes at the meeting, for any purpose or purposes prescribed in the notice of the meeting and shall be held at such place, on such date and at such time as the Board may fix. Business transacted at any special meeting of stockholders shall be confined to the purpose or purposes stated in the notice of meeting.

1.4    Notice of Meetings.

(a)    Written notice of each meeting of stockholders, whether annual or special, shall be given not less than 10 nor more than 60 days before the date on which the meeting is to be held, to each stockholder entitled to vote at such meeting, except as otherwise provided herein or as required by law (meaning here and hereafter, as required from time to time by the Delaware General Corporation Law or the Certificate of Incorporation). The notice of any meeting shall state the place, if any, date and hour of the meeting, and the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting. The notice of a special meeting shall state, in addition, the purpose or purposes for which the meeting is called. If mailed, notice is given when deposited in the United States mail, postage prepaid, directed to the stockholder at his address as it appears on the records of the corporation.

(b)    Notice to stockholders may be given by personal delivery, mail, or, with the consent of the stockholder entitled to receive notice, by facsimile or other means of electronic transmission. If mailed, such notice shall be delivered by postage prepaid envelope directed to each stockholder at such stockholder's address as it appears in the records of the corporation and shall be deemed given when deposited in the United States mail. Notice given by electronic transmission pursuant to this subsection shall be deemed given: (1) if by facsimile telecommunication, when directed to a facsimile telecommunication number at which the stockholder has consented to receive notice; (2) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice; (3) if by posting on an electronic network together with separate notice to the stockholder of such specific

1

WEST\241610056.1

posting, upon the later of (A) such posting and (B) the giving of such separate notice; and (4) if by any other form of electronic transmission, when directed to the stockholder. An affidavit of the secretary or an assistant secretary or of the transfer agent or other agent of the corporation that the notice has been given by personal delivery, by mail, or by a form of electronic transmission shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

(c)    Notice of any meeting of stockholders need not be given to any stockholder if waived by such stockholder either in a writing signed by such stockholder or by electronic transmission, whether such waiver is given before or after such meeting is held. If such a waiver is given by electronic transmission, the electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

1.5    Voting List. The officer who has charge of the stock ledger of the corporation shall prepare, at least 10 days before each meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least 10 days prior to the meeting, in the manner provided by law. The list shall also be produced and kept at the time and place of the meeting during the whole time of the meeting, and may be inspected by any stockholder who is present. This list shall determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

1.6    Quorum. Except as otherwise provided by law or these Bylaws, the holders of a majority of the shares of the capital stock of the corporation entitled to vote at the meeting, present in person or represented by proxy, shall constitute a quorum for the transaction of business. Where a separate class vote by a class or classes or series is required, a majority of the shares of such class or classes or series present in person or represented by proxy shall constitute a quorum entitled to take action with respect to that vote on that matter.

1.7    Adjournments. Any meeting of stockholders may be adjourned to any other time and to any other place at which a meeting of stockholders may be held under these Bylaws by the Chairman of the meeting or, in the absence of such person, by any officer entitled to preside at or to act as Secretary of such meeting, or by the holders of a majority of the shares of stock present or represented at the meeting and entitled to vote, although less than a quorum. When a meeting is adjourned to another place, date or time, written notice need not be given of the adjourned meeting if the date, time and place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting, are announced at the meeting at which the adjournment is taken; provided, however, that if the date of any adjourned meeting is more than 30 days after the date for which the meeting was originally noticed, or if a new record date is fixed for the adjourned meeting in accordance with Section 4.5, written notice of the place, if any, date and time of the adjourned meeting and the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting, shall be given in conformity herewith. At the adjourned meeting, the corporation may transact any business which might have been transacted at the original meeting.

1.8    Voting and Proxies. Each stockholder shall have one vote for each share of stock entitled to vote held of record by such stockholder and a proportionate vote for each fractional share so held, unless otherwise provided by law or in the Certificate of Incorporation. Each stockholder of record entitled to vote at a meeting of stockholders may vote in person or may authorize any other person or persons to vote or act for him by written proxy executed by the stockholder or his authorized agent or by a transmission permitted by law and delivered to the Secretary of the corporation. No stockholder may authorize more than one proxy for his shares. Any copy, facsimile transmission or other reliable reproduction of the writing or transmission created pursuant to this section may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used, provided that such copy, facsimile transmission or other reproduction shall be a complete reproduction of the entire original writing or transmission.

1.9    Action at Meeting.

(a)    At any meeting of stockholders for the election of one or more directors at which a quorum is present, the election shall be determined by a plurality of the votes cast by the stockholders entitled to vote at the election.

(b)    All other matters shall be determined by a majority in voting power of the shares present in person or represented by proxy and entitled to vote on the matter (or if there are two or more classes of stock entitled to vote as separate classes, then in the case of each such class, a majority of the shares of each such class present in person or represented by proxy and entitled to vote on the matter shall decide such matter), provided that a quorum is present, except when a different vote is required by express provision of law, the Certificate of Incorporation or these Bylaws.

(c)    All voting, including on the election of directors, but excepting where otherwise required by law, may be by a voice vote; provided, however, that upon demand therefor by a stockholder entitled to vote or his proxy, a vote by ballot shall be taken. Each ballot shall state the name of the stockholder or proxy voting and such other information as may be required under the procedure established for the meeting. The corporation may, and to the extent required by law, shall, in advance of any meeting of stockholders, appoint one or more inspectors to act at the meeting and make a written report thereof. The corporation may designate one or more persons as an alternate inspector to replace any inspector who fails to act. If no inspector or alternate is able to act at a meeting of stockholders, the person presiding at the meeting may, and to the extent required by law, shall, appoint one or more inspectors to act at the meeting. Each inspector, before entering upon the discharge of his duties, shall take and sign an oath to faithfully execute the duties of inspector with strict impartiality and according to the best of his ability.

1.10    Conduct of Business. At every meeting of the stockholders, the Chairman of the Board, or, in his absence, the President, or, in his absence, such other person as may be appointed by the Board of Directors, shall act as chairman. The Secretary of the corporation or a person designated by the chairman of the meeting shall act as secretary of the meeting. Unless otherwise approved by the chairman of the meeting, attendance at the stockholders' meeting is

3

WEST\241610056.1

restricted to stockholders of record, persons authorized in accordance with Section 1.8 of these Bylaws to act by proxy, and officers of the corporation.

The chairman of the meeting shall call the meeting to order, establish the agenda, and conduct the business of the meeting in accordance therewith or, at the chairman's discretion, it may be conducted otherwise in accordance with the wishes of the stockholders in attendance. The date and time of the opening and closing of the polls for each matter upon which the stockholders will vote at the meeting shall be announced at the meeting.

1.11    Stockholder Action Without Meeting.  Any action which may be taken at any annual or special meeting of stockholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the actions so taken, is signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.  All such consents shall be filed with the Secretary of the corporation and shall be maintained in the corporate records.  Prompt notice of the taking of a corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

An electronic transmission consenting to an action to be taken and transmitted by a stockholder, or by a proxy holder or other person authorized to act for a stockholder, shall be deemed to be written, signed and dated for the purpose of this Section 1.11, provided that such electronic transmission sets forth or is delivered with information from which the corporation can determine (a) that the electronic transmission was transmitted by the stockholder or by a person authorized to act for the stockholder and (b) the date on which such stockholder or authorized person transmitted such electronic transmission.  The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed.  No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and until such paper form shall be delivered to the corporation by delivery to its principal place of business or an officer or agent of the corporation having custody of the books in which proceedings of meetings of stockholders are recorded.

1.12    Meetings by Remote Communication.  If authorized by the Board of Directors, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxy holders not physically present at a meeting of stockholders may, by means of remote communication, participate in the meeting and be deemed present in person and vote at the meeting, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (a) the corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxy holder, (b) the corporation shall implement reasonable measures to provide such stockholders and proxy holders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (c) if any stockholder or proxy holder votes or takes other action at the meeting by means of remote communication, a record of such vote or other action shall be maintained by the corporation.

## ARTICLE II
## BOARD OF DIRECTORS

2.1    General Powers.  The business and affairs of the corporation shall be managed by or under the direction of a Board of Directors, who may exercise all of the powers of the corporation except as otherwise provided by law or the Certificate of Incorporation.  In the event of a vacancy on the Board of Directors, the remaining directors, except as otherwise provided by law, may exercise the powers of the full Board until the vacancy is filled.

2.2    Number and Term of Office.  Subject to the rights of the holders of any series of Preferred Stock to elect directors under specified circumstances, the number of directors shall initially be one (1) and, thereafter, shall be fixed from time to time exclusively by the Board of Directors pursuant to a resolution adopted by a majority of the total number of authorized directors (whether or not there exist any vacancies in previously authorized directorships at the time any such resolution is presented to the Board for adoption).  All directors shall hold office until the next annual meeting of stockholders and until their respective successors are elected, except in the case of the death, resignation or removal of any director.

2.3    Vacancies and Newly Created Directorships.  Subject to the rights of the holders of any series of Preferred Stock then outstanding, newly created directorships resulting from any increase in the authorized number of directors or any vacancies in the Board of Directors resulting from death, resignation, retirement, disqualification or other cause (other than removal from office by a vote of the stockholders) may be filled only by a majority vote of the directors then in office, though less than a quorum, or by the sole remaining director, and directors so chosen shall hold office for a term expiring at the next annual meeting of stockholders.  No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.

2.4    Resignation.  Any director may resign by delivering notice in writing or by electronic transmission to the President, Chairman of the Board or Secretary.  Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

2.5    Removal.  Subject to the rights of the holders of any series of Preferred Stock then outstanding, any directors, or the entire Board of Directors, may be removed from office at any time, with or without cause, by the affirmative vote of the holders of a majority of the voting power of all of the outstanding shares of capital stock entitled to vote generally in the election of directors, voting together as a single class.  Vacancies in the Board of Directors resulting from such removal may be filled by a majority of the directors then in office, though less than a quorum, by the sole remaining director, or by the stockholders at the next annual meeting or at a special meeting called in accordance with Section 1.3 above.  Directors so chosen shall hold office until the next annual meeting of stockholders.

2.6    Regular Meetings.  Regular meetings of the Board of Directors may be held without notice at such time and place, either within or without the State of Delaware, as shall be determined from time to time by the Board of Directors; provided that any director who is absent

5

WEST\241610056.1

when such a determination is made shall be given notice of the determination. A regular meeting of the Board of Directors may be held without notice immediately after and at the same place as the annual meeting of stockholders.

2.7    Special Meetings. Special meetings of the Board of Directors may be called by the Chairman of the Board, the President or two or more directors and may be held at any time and place, within or without the State of Delaware.

2.8    Notice of Special Meetings. Notice of any special meeting of directors shall be given to each director by the Secretary or by the officer or one of the directors calling the meeting. Notice shall be duly given to each director by whom it is not waived by (a) giving notice to such director in person or by telephone, electronic transmission or voice message system at least 24 hours in advance of the meeting, (b) sending a facsimile to his last known facsimile number, or delivering written notice by hand to his last known business or home address, at least 24 hours in advance of the meeting, or (c) mailing written notice to his last known business or home address at least three days in advance of the meeting. A notice or waiver of notice of a meeting of the Board of Directors need not specify the purposes of the meeting. Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting.

2.9    Participation in Meetings by Telephone Conference Calls or Other Methods of Communication. Directors or any members of any committee designated by the directors may participate in a meeting of the Board of Directors or such committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation by such means shall constitute presence in person at such meeting.

2.10    Quorum. A majority of the total number of authorized directors shall constitute a quorum at any meeting of the Board of Directors. In the absence of a quorum at any such meeting, a majority of the directors present may adjourn the meeting from time to time without further notice other than announcement at the meeting, until a quorum shall be present. Interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or at a meeting of a committee which authorizes a particular contract or transaction.

2.11    Action at Meeting. At any meeting of the Board of Directors at which a quorum is present, the vote of a majority of those present shall be sufficient to take any action, unless a different vote is specified by law, the Certificate of Incorporation or these Bylaws.

2.12    Action by Written Consent. Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee of the Board of Directors may be taken without a meeting if all members of the Board or committee, as the case may be, consent to the action in writing or by electronic transmission, and the writings or electronic transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

WEST\241610056.1

2.13    Committees.  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the corporation, with such lawfully delegated powers and duties as it therefor confers, to serve at the pleasure of the Board.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members of the committee present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors and subject to the provisions of the Delaware General Corporation Law, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the corporation and may authorize the seal of the corporation to be affixed to all papers which may require it.  Each such committee shall keep minutes and make such reports as the Board of Directors may from time to time request.  Except as the Board of Directors may otherwise determine, any committee may make rules for the conduct of its business, but unless otherwise provided by such rules, its business shall be conducted as nearly as possible in the same manner as is provided in these Bylaws for the Board of Directors.

2.14    Compensation of Directors.  Directors may be paid such compensation for their services and such reimbursement for expenses of attendance at meetings as the Board of Directors may from time to time determine.  No such payment shall preclude any director from serving the corporation or any of its parent or subsidiary corporations in any other capacity and receiving compensation for such service.

2.15    Nomination of Director Candidates.  Subject to the rights of holders of any class or series of Preferred Stock then outstanding, nominations for the election of Directors may be made by (a) the Board of Directors or a duly authorized committee thereof or (b) any stockholder entitled to vote in the election of Directors.

**ARTICLE III**
**OFFICERS**

3.1    Enumeration.  The officers of the corporation shall consist of a President, a Secretary, a Treasurer, a Chief Financial Officer and such other officers with such other titles as the Board of Directors shall determine, including, at the discretion of the Board of Directors, a Chairman of the Board and one or more Vice Presidents and Assistant Secretaries.  The Board of Directors may appoint such other officers as it may deem appropriate.

3.2    Election.  Officers shall be elected annually by the Board of Directors at its first meeting following the annual meeting of stockholders.  Officers may be appointed by the Board of Directors at any other meeting.

3.3    Qualification.  No officer need be a stockholder.  Any two or more offices may be held by the same person.

WEST\241610056.1

3.4    Tenure.  Except as otherwise provided by law, by the Certificate of Incorporation or by these Bylaws, each officer shall hold office until his successor is elected and qualified, unless a different term is specified in the vote appointing the officer, or until his earlier death, resignation or removal.

3.5    Resignation and Removal.  Any officer may resign by delivering his written resignation to the corporation at its principal office or to the President or Secretary.  Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.  Any officer elected by the Board of Directors may be removed at any time, with or without cause, by the Board of Directors.

3.6    Chairman of the Board.  The Board of Directors may appoint a Chairman of the Board.  If the Board of Directors appoints a Chairman of the Board, he shall perform such duties and possess such powers as are assigned to the Chairman by the Board of Directors.  Unless otherwise provided by the Board of Directors, he shall preside at all meetings of the Board of Directors.

3.7    President.  Subject to the direction of the Board of Directors and such supervisory powers as may be given by these Bylaws or the Board of Directors to the Chairman of the Board, if such titles be held by other officers, the President shall have general supervision, direction and control of the business and supervision of other officers of the corporation.  Unless otherwise designated by the Board of Directors, the President shall be the Chief Executive Officer of the corporation.  The President shall have such other powers and duties as may be prescribed by the Board of Directors or these Bylaws.  He shall have power to sign stock certificates, contracts and other instruments of the corporation which are authorized and shall have general supervision and direction of all of the other officers, employees and agents of the corporation, other than the Chairman of the Board.

3.8    Vice Presidents.  Any Vice President shall perform such duties and possess such powers as the Board of Directors or the President may from time to time prescribe.  In the event of the absence, inability or refusal to act of the President, the Vice President (or if there shall be more than one, the Vice Presidents in the order determined by the Board of Directors) shall perform the duties of the President and when so performing shall have all the powers of and be subject to all the restrictions upon the President.  The Board of Directors may assign to any Vice President the title of Executive Vice President, Senior Vice President or any other title selected by the Board of Directors.

3.9    Secretary and Assistant Secretaries.  The Secretary shall perform such duties and shall have such powers as the Board of Directors or the President may from time to time prescribe.  In addition, the Secretary shall perform such duties and have such powers as are set forth in these Bylaws and as are incident to the office of the Secretary, including, without limitation, the duty and power to give notices of all meetings of stockholders and special meetings of the Board of Directors, to keep a record of the proceedings of all meetings of stockholders and the Board of Directors, to maintain a stock ledger and prepare lists of stockholders and their addresses as required, to be custodian of corporate records and the corporate seal and to affix and attest to the same on documents.

WEST\241610056.1

8

Any Assistant Secretary shall perform such duties and possess such powers as the Board of Directors, the President or the Secretary may from time to time prescribe. In the event of the absence, inability or refusal to act of the Secretary, the Assistant Secretary (or if there shall be more than one, the Assistant Secretaries in the order determined by the Board of Directors) shall perform the duties and exercise the powers of the Secretary.

In the absence of the Secretary or any Assistant Secretary at any meeting of stockholders or directors, the person presiding at the meeting shall designate a temporary secretary to keep a record of the meeting.

3.10    Treasurer. The Treasurer shall perform such duties and have such powers as are incident to the office of treasurer, including without limitation, the duty and power to keep and be responsible for all funds and securities of the corporation, to maintain the financial records of the corporation, to deposit funds of the corporation in depositories as authorized, to disburse such funds as authorized, to make proper accounts of such funds, and to render as required by the Board of Directors accounts of all such transactions and of the financial condition of the corporation.

3.11    Chief Financial Officer. The Chief Financial Officer shall perform such duties and shall have such powers as may from time to time be assigned to the Chief Financial Officer by the Board of Directors or the President. Unless otherwise designated by the Board of Directors, the Chief Financial Officer shall be the Treasurer of the corporation.

3.12    Salaries. Officers of the corporation shall be entitled to such salaries, compensation or reimbursement as shall be fixed or allowed from time to time by the Board of Directors.

3.13    Delegation of Authority. The Board of Directors may from time to time delegate the powers or duties of any officer to any other officers or agents, notwithstanding any provision hereof.

## ARTICLE IV
## CAPITAL STOCK

4.1    Issuance of Stock. Subject to the provisions of the Certificate of Incorporation, the whole or any part of any unissued balance of the authorized capital stock of the corporation or the whole or any part of any unissued balance of the authorized capital stock of the corporation held in its treasury may be issued, sold, transferred or otherwise disposed of by vote of the Board of Directors in such manner, for such consideration and on such terms as the Board of Directors may determine.

4.2    Certificates of Stock. Every holder of stock of the corporation shall be entitled to have a certificate, in such form as may be prescribed by law and by the Board of Directors, certifying the number and class of shares of stock owned by such stockholder in the corporation. Each such certificate shall be signed by, or in the name of the corporation by, the Chairman or Vice Chairman, if any, of the Board of Directors, or the President or a Vice President, and the

9

WEST\241610056.1

Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the corporation. Any or all of the signatures on the certificate may be a facsimile.

Each certificate for shares of stock which are subject to any restriction on transfer pursuant to the Certificate of Incorporation, the Bylaws, applicable securities laws or any agreement among any number of stockholders or among such holders and the corporation shall have conspicuously noted on the face or back of the certificate either the full text of the restriction or a statement of the existence of such restriction.

4.3    Transfers. Except as otherwise established by rules and regulations adopted by the Board of Directors, and subject to applicable law, shares of stock may be transferred on the books of the corporation by the surrender to the corporation or its transfer agent of the certificate representing such shares properly endorsed or accompanied by a written assignment or power of attorney properly executed, and with such proof of authority or authenticity of signature as the corporation or its transfer agent may reasonably require. Except as may be otherwise required by law, the Certificate of Incorporation or the Bylaws, the corporation shall be entitled to treat the record holder of stock as shown on its books as the owner of such stock for all purposes, including the payment of dividends and the right to vote with respect to such stock, regardless of any transfer, pledge or other disposition of such stock until the shares have been transferred on the books of the corporation in accordance with the requirements of these Bylaws.

4.4    Lost, Stolen or Destroyed Certificates. The corporation may issue a new certificate of stock in place of any previously issued certificate alleged to have been lost, stolen, or destroyed, upon such terms and conditions as the Board of Directors may prescribe, including the presentation of reasonable evidence of such loss, theft or destruction and the giving of such indemnity as the Board of Directors may require for the protection of the corporation or any transfer agent or registrar.

4.5    Record Date. The Board of Directors may fix in advance a record date for the determination of the stockholders entitled to notice of or to vote at any meeting of stockholders or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights in respect of any change, concession or exchange of stock, or for the purpose of any other lawful action. Such record date shall not precede the date on which the resolution fixing the record date is adopted and shall not be more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action to which such record date relates.

If no record date is fixed by the Board of Directors, the record date for determining the stockholders entitled to notice of or to vote at a meeting of stockholders shall be the close of business on the day before the day on which notice is given, or, if notice is waived, the close of business on the day before the day on which the meeting is held. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed. The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating to such purpose.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

## ARTICLE V
## RIGHT OF FIRST REFUSAL

5.1     Right of First Refusal; Definition of Holders; Transfer Notice. If any stockholder of the corporation proposes to sell, pledge or otherwise transfer any shares of the common stock or preferred stock of the corporation (the "Stock"), which term includes all stock subscription rights, liquidating dividends, stock dividends, stock splits, new, substituted or additional securities of any type whatsoever, or any other property which the stockholder is or may be entitled to receive as a result of the stockholder's ownership of such shares of Stock), the corporation in the first instance, and then the relevant holders of the corporation's outstanding voting stock (the "Holders"), as provided in this Section 5.1, shall have a right of first refusal (the "Right of First Refusal") with respect to such shares of the Stock. If the stockholder proposes to transfer common stock of the corporation, then the Holders, for purposes of this Article V, shall be deemed to include the holders of common stock and of preferred stock of the corporation. If the stockholder proposes to transfer any shares of preferred stock of the corporation, then the Holders, for purposes of this Article V, shall be deemed to include only the holders of preferred stock of the corporation. Before effecting any proposed transfer, the stockholder shall give written notice (the "Transfer Notice") to the corporation describing fully the proposed transfer, including the number of shares of the Stock proposed to be transferred, the proposed bona fide transfer price and the name and address of the proposed transferee. In the case of a proposed gift transfer, the bona fide transfer price for purposes of this Right of First Refusal shall be determined in good faith by the Board of Directors promptly upon the corporation's receipt of, and as of the date of, the Transfer Notice.

5.2     Corporation's Right. The corporation shall have the right, for a period of thirty (30) days after the date the Transfer Notice is delivered to the corporation, to purchase all, but not less than all, of such shares of Stock on the terms set forth in the Transfer Notice by delivery to the stockholder of a notice of exercise of the corporation's Right of First Refusal. The corporation's rights under this Section 5.2 shall not be assignable.

5.3     Holders' Right. If the corporation fails to timely exercise its Right of First Refusal, or determines not to exercise such right, the corporation shall immediately notify all Holders in writing of the terms of the proposed transfer and the number of shares of the Stock available for purchase by the Holders upon exercise by them of their Right of First Refusal. The Holders shall have the right for a period of thirty (30) days as a group, to purchase all, but not less than all, of the Stock so available, each Holder having the right to purchase such Holder's pro rata portion of such shares of such Stock on the terms set forth in the corporation's notice, by delivery to the corporation and the proposed transferring stockholder of a notice of exercise of the Holder's Right of First Refusal. Each Holder's pro rata portion shall be equal to the total of the number of shares of common stock of the corporation held by such Holder plus the number of shares of common stock of the corporation into which any shares of preferred stock held by the Holder are convertible on the date of the Transfer Notice, as a percentage of the total number

WEST\241610056.1

of shares of common stock of the corporation held by all Holders plus the number of shares of common stock of the corporation into which all shares of preferred stock held by all Holders are convertible on the date of the Transfer Notice. A Holder's rights under this Section 5.3 shall be assignable to any person controlling, controlled by, or under common control with such Holder. Each Holder may, in its notice of exercise of such Holder's Right of First Refusal, subscribe for any number of shares of Stock of the corporation subject to the Right of First Refusal. Any shares of Stock of the corporation subject to the Right of First Refusal which are not purchased by a Holder exercising such Holder's pro rata Right of First Refusal may be purchased by any Holders ("Oversubscribing Holders") who indicated the desire to purchase more (specifying the number of shares) than their pro rata share of such Stock in their respective notices of exercise ("Oversubscription Right"). If not enough shares of Stock of the stockholder are offered for sale to satisfy all properly exercised Oversubscription Rights, the offered Stock shall be sold to and purchased by Holders exercising Oversubscription Rights pro rata, as next determined. For the purpose of Oversubscription Rights each Oversubscribing Holder's pro rata portion shall be equal to the total of the number of shares of common stock of the corporation held by such Oversubscribing Holder plus the number of shares of common stock of the corporation into which all shares of Preferred Stock held by such Oversubscribing Holder are convertible on the date of the Transfer Notice, as a percentage of the total number of shares of common stock of the corporation held by all Oversubscribing Holders plus the number of shares of common stock of the corporation into which all shares of Preferred Stock held by all Oversubscribing Holders are convertible on the date of the Transfer Notice.

      5.4    Completion of Transaction. If the corporation and the Holders fail to give notice of exercise of their respective Rights of First Refusal within a total of sixty (60) days after the date the Transfer Notice is delivered to the corporation, the stockholder may, not later than one hundred twenty (120) days following delivery to the corporation of the Transfer Notice, conclude a transfer of the shares of Stock subject to the Transfer Notice which have not been purchased by the corporation or the Holders pursuant to the exercise of a Right of First Refusal on the terms and conditions described in the Transfer Notice. Any proposed transfer on the terms and conditions different from those described in the transfer Notice, as well as any subsequent proposed transfer by the stockholder, shall again be subject to the Right of First Refusal and shall require compliance by the stockholder with the procedure described in this Article V. If the corporation or the Holders exercise the Right of First Refusal, the parties shall consummate the sale of shares of Stock on the terms set forth in the Transfer Notice within ninety (90) days after delivery of the Transfer Notice to the corporation; provided, however, that if the Transfer Notice provides for the payment for the shares of Stock other than in cash, the corporation or the Holders (as the case may be) shall have the option of paying for the shares of Stock by the discounted cash equivalent of the consideration described in the Transfer Notice, as the discounted cash equivalent is reasonably determined by the Board of Directors.

      5.5    Agreement by Transferees. All transferees of shares of Stock or any interest therein shall be required as a condition of such transfer to agree in writing (in a form reasonably satisfactory to the corporation) that they shall receive and hold such shares of Stock or interest subject to the provisions of this Right of First Refusal. Any sale or other transfer of any shares of Stock by any stockholder shall be void unless the provisions of this Article V are met.

      5.6    Termination of Right of First Refusal. The Right of First Refusal, as to both the

WEST\241610056.1

12

corporation and the Holders, shall terminate at such time as a public market exists for the corporation's common stock (or any other stock issued by the corporation or any successor, in exchange for the common stock of the corporation), or upon a merger of the corporation in which the corporation is not the surviving corporation, or upon a sale of all or substantially all of the assets of the corporation. For purposes hereof, a "public market" shall be deemed to exist if (a) there has been consummated a public offering of such Stock registered under the Securities Act of 1933, or (b) such Stock is listed on a national securities exchange (as that term is used in the Securities Exchange Act of 1934), or (c) such Stock is traded on the over-the-counter market and prices therefor are published daily and regularly on business days in a recognized financial journal.

5.7    Exceptions. The Right of First Refusal shall not apply (a) to a transfer to the stockholder's ancestors (including step-parents, descendants (including step-children), spouse or to a trustee for the benefit of such ancestors, descendants or spouse, or (b) to a transfer to any transferee of Preferred Stock (or of the common stock into which such preferred stock is converted) who is controlled by, controlling or under common control with the transferor of such preferred stock or common stock into which converted, or (c) any transfer by any institutional investor, such as but not limited to a venture capital fund, to such investor's limited partners, or other general partners; provided that in each case each such transferee shall take such Stock subject to all of the provisions of this Right of First Refusal, or (d) to any repurchase by the corporation or its assignees of shares of common stock or preferred stock from Directors, officers or employees of, or consultants or advisors to, the corporation pursuant to written agreements under which the corporation and/or its assignees has the option to repurchase such shares upon the termination of employment with, or service to, the corporation for any reason.

## ARTICLE VI
## GENERAL PROVISIONS

6.1    Fiscal Year. The fiscal year of the corporation shall be as fixed by the Board of Directors.

6.2    Corporate Seal. The corporate seal shall be in such form as shall be approved by the Board of Directors.

6.3    Waiver of Notice. Whenever any notice whatsoever is required to be given by law, by the Certificate of Incorporation or by these Bylaws, a waiver of such notice either in writing signed by the person entitled to such notice or such person's duly authorized attorney, or by electronic transmission or any other method permitted under the Delaware General Corporation Law, whether before, at or after the time stated in such waiver, or the appearance of such person or persons at such meeting in person or by proxy, shall be deemed equivalent to such notice. Neither the business nor the purpose of any meeting need be specified in such a waiver. Attendance at any meeting shall constitute waiver of notice except attendance for the sole purpose of objecting to the timeliness or manner of notice.

6.4    Actions with Respect to Securities of Other Corporations. Except as the Board of Directors may otherwise designate or President or any officer of the corporation authorized by

13

WEST\241610056.1

the President shall have the power to vote and otherwise act on behalf of the corporation, in person or by proxy, and may waive notice of, and act as, or appoint any person or persons to act as, proxy or attorney-in-fact to this corporation (with or without power of substitution) at any meeting of stockholders or stockholders (or with respect to any action of stockholders) of any other corporation or organization, the securities of which may be held by this corporation and otherwise to exercise any and all rights and powers that this corporation may possess by reason of this corporation's ownership of securities in such other corporation or other organization.

6.5     Evidence of Authority. A certificate by the Secretary, or an Assistant Secretary, or a temporary Secretary, as to any action taken by the stockholders, directors, a committee or any officer or representative of the corporation shall as to all persons who rely on the certificate in good faith be conclusive evidence of such action.

6.6     Certificate of Incorporation. All references in these Bylaws to the Certificate of Incorporation shall be deemed to refer to the Certificate of Incorporation of the corporation, as amended and in effect from time to time.

6.7     Severability. Any determination that any provision of these Bylaws is for any reason inapplicable, illegal or ineffective shall not affect or invalidate any other provision of these Bylaws.

6.8     Pronouns. All pronouns used in these Bylaws shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require.

6.9     Notices. Except as otherwise specifically provided herein or required by law, all notices required to be given to any stockholder, director, officer, employee or agent of the corporation shall be in writing and may in every instance be effectively given by hand delivery to the recipient thereof, by depositing such notice in the mails, postage paid, or by sending such notice by commercial courier service, or by facsimile or other electronic transmission, provided that notice to stockholders by electronic transmission shall be given in the manner provided in Section 232 of the Delaware General Corporation Law. Any such notice shall be addressed to such stockholder, director, officer, employee or agent at his last known address as the same appears on the books of the corporation. The time when such notice shall be deemed to be given shall be the time such notice is received by such stockholder, director, officer, employee or agent, or by any person accepting such notice on behalf of such person, if delivered by hand, facsimile, other electronic transmission or commercial courier service, or the time such notice is dispatched, if delivered through the mails. Without limiting the manner by which notice otherwise may be given effectively, notice to any stockholder shall be deemed given: (a) if by facsimile, when directed to a number at which the stockholder has consented to receive notice; (b) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice; (c) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (i) such posting and (ii) the giving of such separate notice; (d) if by any other form of electronic transmission, when directed to the stockholder; and (e) if by mail, when deposited in the mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the corporation.

14

6.10    Reliance Upon Books, Reports and Records. Each director, each member of any committee designated by the Board of Directors, and each officer of the corporation shall, in the performance of his duties, be fully protected in relying in good faith upon the books of account or other records of the corporation, including reports made to the corporation by any of its officers, by an independent certified public accountant, or by an appraiser selected with reasonable care.

6.11    Time Periods. In applying any provision of these Bylaws which require that an act be done or not done a specified number of days prior to an event or that an act be done during a period of a specified number of days prior to an event, calendar days shall be used, the day of the doing of the act shall be excluded, and the day of the event shall be included.

6.12    Facsimile Signatures. In addition to the provisions for use of facsimile signatures elsewhere specifically authorized in these Bylaws, facsimile signatures of any officer or officers of the corporation may be used whenever and as authorized by the Board of Directors or a committee thereof.

6.13    Annual Report. For so long as the corporation has fewer than 100 holders of record of its shares, the mandatory requirement of an annual report under Section 1501 of the California Corporations Code is hereby expressly waived.

## ARTICLE VII
## AMENDMENTS

7.1    By the Board of Directors. Except as is otherwise set forth in these Bylaws, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of a majority of the directors present at any regular or special meeting of the Board of Directors at which a quorum is present.

7.2    By the Stockholders. Except as otherwise set forth in these Bylaws, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of the holders of at least sixty percent (60%) of the voting power of all of the shares of capital stock of the corporation issued and outstanding and entitled to vote generally in any election of directors, voting together as a single class. Such vote may be held at any annual meeting of stockholders, or at any special meeting of stockholders provided that notice of such alteration, amendment, repeal or adoption of new Bylaws shall have been stated in the notice of such special meeting.

## ARTICLE VIII
## INDEMNIFICATION OF DIRECTORS AND OFFICERS

8.1    Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative ("proceeding"), by reason of the fact that he or a person of whom he is the legal representative, is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director or officer of another corporation, or as

15

WEST\241610056.1

a controlling person of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director or officer, or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than such law permitted the corporation to provide prior to such amendment) against all expenses, liability and loss reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director or officer and shall inure to the benefit of his heirs, executors and administrators; provided, however, that except as provided in Section 8.2 of this Article VIII, the corporation shall indemnify any such person seeking indemnity in connection with a proceeding (or part thereof) initiated by such person only if (a) such indemnification is expressly required to be made by law, (b) the proceeding (or part thereof) was authorized by the Board of Directors of the corporation, (c) such indemnification is provided by the corporation, in its sole discretion, pursuant to the powers vested in the corporation under the Delaware General Corporation Law, or (d) the proceeding (or part thereof) is brought to establish or enforce a right to indemnification or advancement under an indemnity agreement or any other statute or law or otherwise as required under Section 145 of the Delaware General Corporation Law. The rights hereunder shall be contract rights and shall include the right to be paid expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that the payment of such expenses incurred by a director or officer of the corporation in his capacity as a director or officer (and not in any other capacity in which service was or is tendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of such proceeding, shall be made only upon delivery to the corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it should be determined ultimately by final judicial decision from which there is no further right to appeal that such director or officer is not entitled to be indemnified under this section or otherwise.

     8.2    Right of Claimant to Bring Suit. If a claim under Section 8.1 is not paid in full by the corporation within 60 days after a written claim has been received by the corporation, or 20 days in the case of a claim for advancement of expenses, the claimant may at any time thereafter bring suit against the corporation to recover the unpaid amount of the claim and, if such suit is not frivolous or brought in bad faith, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any, has been tendered to this corporation) that the claimant has not met the standards of conduct which make it permissible under the Delaware General Corporation Law for the corporation to indemnify the claimant for the amount claimed. Neither the failure of the corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicable standard of

WEST\241610056 1

16

conduct. In any suit brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the corporation shall be entitled to recover such expenses upon a final judicial decision from which there is no further right to appeal that the indemnitee has not met any applicable standard for indemnification set forth in the Delaware General Corporation Law. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or brought by the corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, shall be on the corporation.

8.3    Indemnification of Employees and Agents. The corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification, and to the advancement of related expenses, to any employee or agent of the corporation to the fullest extent of the provisions of this Article VIII with respect to the indemnification of and advancement of expenses to directors and officers of the corporation.

8.4    Non-Exclusivity of Rights. The rights conferred on any person in this Article VIII shall not be exclusive of any other right which such persons may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, Bylaw, agreement, vote of stockholders or disinterested directors or otherwise.

8.5    Indemnification Contracts. The Board of Directors is authorized to enter into a contract with any director, officer, employee or agent of the corporation, or any person serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including employee benefit plans, providing for indemnification rights equivalent to or, if the Board of Directors so determines, greater than, those provided for in this Article VIII.

8.6    Insurance. The corporation may maintain insurance to the extent reasonably available, at its expense, to protect itself and any such director, officer, employee or agent of the corporation or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the corporation would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

8.7    Effect of Amendment. Any amendment, repeal or modification of any provision of this Article VIII shall not adversely affect any right or protection of an indemnitee or his successor in respect of any act or omission occurring prior to such amendment, repeal or modification.

WEST\241610056 1

28

**Appendix 9.2**

## Representations, Warranties, Covenants and Acknowledgements of Investors Shareholders

**1.    Capacity of Investors Shareholders**

**1.1    Authority**

Each of the Investors Shareholders has the unrestricted right and authority to enter into this Agreement and to perform all undertakings under or in connection with this Agreement. This Agreement constitutes a valid, legal and binding obligation of the Investors Shareholders, enforceable against the Investors Shareholders in accordance with its terms. Neither of the Investors Shareholders is over-indebted (*überschuldet; surendetté*), insolvent (*insolvent; insolvable*) or unable to pay its debts as they fall due (*illiquid; non liquide*) and there are no circumstances that indicate any over-indebtedness or insolvency or illiquidity of the Investors Shareholders in the foreseeable future.

**1.2    Execution and Performance**

The execution and the performance of this Agreement by the Investors Shareholders have been authorized by all necessary corporate action, if any, of each of the Investors Shareholders and it will not:

(a)    result in a breach of any provision of the constitutional documents, such as the articles of incorporation or board regulations, of any of the Investors Shareholders; or

(b)    result in a breach, or default under, any term or provision of any agreement, license or other instrument or of any order, judgment or decree of any court, governmental agency or regulatory body to which any of the Investors Shareholders is a party or by which any of the Investors Shareholders is bound.

**1.3    No Consents Required**

None of the Investors Shareholders requires any notice, consent, waiver, approval or clearance by any governmental agency or regulatory body of any nature other than mentioned in this Agreement to enter into this Agreement and to consummate the transactions contemplated by this Agreement. There are no proceedings or investigations whatsoever pending or threatened against any of the Investors Shareholders that could compromise the consummation of the transactions contemplated by this Agreement.

2.    **Purchase for Own Account**

The Preferred A Shares are being purchased for Investor Shareholder's own account, or the account of an Affiliate of said Investor Shareholder, for long-term investment purposes and not for the interest of any other person or for resale, distribution or transfer to others.

3.    **High Degree of Risk**

Investor Shareholder understands and acknowledges that the Preferred A Shares involve a high degree of risk which may result in the complete loss of Investor Shareholder's investment in the Preferred A Shares. Risks include, but are not limited to, uncertainties as to the demand for the Company's products or services and the lack of any established market for the Preferred A Shares.

4.    **Limitations on Disposition**

Investor Shareholder shall not make any disposition of any Preferred A Shares except in compliance with the terms of the Shareholders Agreement.