**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,             )

       vs.                   )

                          )  Case No.: 19-cr-00716 (DLC)

GEORGIOS NIKAS et al.,          )

                          )

          Defendants.     )

**DEFENDANT TELEMAQUE LAVIDAS'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>HIS MOTION FOR A BILL OF PARTICULARS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................................... 6

I.       Applicable Law ................................................................................................................. 6

II.     A Bill of Particulars Is Necessary to Enable Mr. Lavidas to
Prepare his Defense and To Avoid Unfair Surprise at Trial ............................................. 7

III.    The Government Must Provide Particulars with Respect
to the Manner and Means of the Alleged Criminal Conduct ............................................ 9

        A.    The Government Must Specify the Means and Methods of the Conspiracy.............. 9

        B.    The Government Must Specify the Particulars of the Alleged
Trades and Wires Serving as the Basis for the Substantive Counts. ......................... 11

IV.    The Government Must Identify Mr. Lavidas's Co-Conspirators..................................... 14

        A.    Applicable Law ......................................................................................................... 14

        B.    Mr. Lavidas's Need for the Identity of His Alleged
Co-conspirators Outweighs Any Competing Government Interest. ......................... 15

V.     Mr. Lavidas's Request for Particulars is Narrowly Tailored ........................................ 16

VI.    The Government's Discovery Does Not Relieve it
Of Its Duty to Identify the Particulars of its Charges. .................................................... 17

CONCLUSION ......................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Brady* v. *Maryland*,
  373 U.S. 83 (1963)....................................................................................3, 12

*Chiarella v. United States*,
  445 U.S. 222 (1980)........................................................................................10

*Dirks v. SEC*,
  463 U.S. 646 (1983)........................................................................................10

*United States v. Barnes*,
  158 F.3d 662 (2d Cir.1998)...............................................................................7

*United States v. Bin Laden*,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd sub nom.*,
  *In re Terrorist Bombings of U.S. Embassies in E. Africa*,
  552 F.3d 93 (2d Cir. 2008)..............................................................................17

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir.1987)...............................................................6, 16, 17

*United States v. Contorinis*,
  09 Cr. 1083 (RJS), 2010 U.S. Dist. LEXIS 74739
  (S.D.N.Y. May 5, 2010)....................................................................................6

*United States v. Gupta*,
  11 Cr. 907 (JSR) (S.D.N.Y. April 9, 2012) .....................................................6

*United States v. Kaplan*,
  No. 02 Cr. 883 (DAB),
  2003 WL 22880914 (S.D.N.Y. Dec. 5, 2003) ...............................................17

*United States v. Nacchio*,
  No. 05 Cr. 545 (EWN),
  2006 WL 2475282 (D. Colo. Aug. 25, 2006) ...................................................7

*United States v. Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000)..................................................11, 14, 16

*United States v. O'Hagan*,
  521 U.S. 642 (1997)........................................................................................10

*United States v. Pinto-Thomaz*,
  352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018)................................................14, 15

*United States v. Rajaratnam*,
　No. 09 Cr. 1184 (RJH),
　2010 WL 2788168 (S.D.N.Y. July 13, 2010) ...............................................................6, 14, 17

*United States v. Savin*,
　No. 00 Cr. 45 (RWS),
　2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...............................................................7, 11, 17

*United States v. Silver*,
　117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015)...........................................................................12

*United States v. Stein*,
　424 F. Supp. 2d 720 (S.D.N.Y. 2006)......................................................................................7

*United States v. Stewart*,
　No. 15 Cr. 287 (LTS) (S.D.N.Y. Jan. 19, 2016) ...................................................................11

*United States v. Trie*,
　21 F. Supp. 2d 7 (D.D.C. 1998) .............................................................................................11

## OTHER AUTHORITIES

Fed. R. Crim. P. 7(f) .......................................................................................................................6

## PRELIMINARY STATEMENT

The Indictment in this case charges Telemaque Lavidas with nine counts of conspiracy, securities fraud and wire fraud in connection with his alleged participation in an insider trading scheme involving the securities of Ariad Pharmaceuticals ("Ariad").  The Indictment alleges that Mr. Lavidas provided his codefendant, George Nikas, with material non-public information ("MNPI") about Ariad on four occasions over a three-year period.  We submit this motion for a bill of particulars in order to enable him to prepare for trial and to prevent unfair surprise at trial.

The Indictment in this case provides a general overview in Count One of an insider trading scheme entitled the "Ariad Scheme."  In addition, it describes, also as part of the conspiracy alleged in Count One, a separate scheme entitled the "Corporate Acquisitions Insider Trading Scheme."  While there are no allegations against Mr. Lavidas related to the Corporate Acquisitions Insider Trading Scheme, the Indictment does not explain why Mr. Lavidas is charged in a single conspiracy that includes this second scheme.  The Indictment describes allegations involving at least four un-named co-conspirators, CC-1, CC-2, CC-3 and CC-4, yet it does not explain whether or not Mr. Lavidas is alleged to have conspired with these individuals, and if so, how.  The Indictment also provides only a broad description of the inside information allegedly shared as part of the Ariad Scheme.  It states that Nikas had a "personal relationship" with Director-1, who is Mr. Lavidas's father and who was on the board of Ariad, but does not provide any more information about that "personal relationship."  It does not even identify the type of duty – whether so-called "Classical" or "Misappropriation" – that was allegedly breached in the Ariad Scheme.  It is silent as to whether Director-1 is alleged to have been a co-conspirator in the scheme, or whether, instead, information was misappropriated from him.  And while the Indictment states in a conclusory paragraph that "as compensation for receiving the MNPI, [Nikas] paid [Lavidas] at various times during the scheme," Indictment ¶ 30, it does not identify

anything more about these payments, including what type of payment was made (cash, wire transfer, etc.) as well as when or how in the three-year span they were made.

Moreover, the Indictment alleges that at least one person other than Nikas traded on the Ariad information allegedly provided by Mr. Lavidas, but fails to identify known co-conspirators or other individuals who allegedly traded.  It provides no information about whether the Government alleges Mr. Lavidas had knowledge about the existence of these other traders or co-conspirators, or whether it alleges he had any knowledge of their trading.  Finally, while the Indictment generally describes certain trades, it does not identify with any specificity the particular trades, dates and locations of the trades charged in the substantive securities fraud Counts Three through Five.  Nor does it identify the dates or any transmission information about the wires charged as substantive wire fraud in Counts Six through Eight.

When the defendant asked the Government for the particulars discussed above, it refused, and instead offered various stipulations that it says "organize" some of the evidence it intends to offer at trial.  In other words, the Government suggests its proposed stipulations cure any lack of specificity.  The two stipulations offered do no such thing.  One of those stipulations identifies hundreds of phone records listing thousands of phone calls of Nikas, Mr. Lavidas and Mr. Lavidas's father, and does nothing to identify the particulars requested.  The other identifies thousands of trading records of eighteen different individuals and entities over a multi-year period (all but two of whom are not referenced in the Indictment).  Presumably the Government will argue that all of the Ariad trading in those records is attributable to Mr. Lavidas, even though the Government has provided no information about whether it has a good faith basis to claim that Mr. Lavidas knew about any of that trading or any of those individuals or entities.

But most importantly, the day before the deadline for the filing of this pretrial motion, the Government revealed to the defense, belatedly and for the first time, that it has strong evidence of another tipper who tipped the sprawling participants in the Corporate Acquisitions Insider Trading Scheme about *the exact same* Ariad inside information that the Indictment alleges Mr. Lavidas tipped to Nikas.  This belatedly revealed information is exculpatory material under *Brady* v. *Maryland*, 373 U.S. 83 (1963), because it shows that even under the Government's own understanding of the evidence, Nikas had a different – and almost certainly better – source of inside information about Ariad than Mr. Lavidas.  That source is CC-2 in the Indictment, who worked at an investment bank that was involved in the secret Ariad transaction alleged in paragraphs 26-28, and who the Government just revealed tipped the *same secret information about the same Ariad transaction* to the Corporate Acquisition schemers (including Nikas) that the Indictment alleges Mr. Lavidas tipped Nikas about.  Putting aside the implications that this fact has for the case and the ways in which it undermines the Government's almost purely circumstantial case against Mr. Lavidas, it also means that the Government cannot claim that all of the Ariad trading listed in its proposed stipulation originates from Mr. Lavidas's alleged tips.  The Government is indisputably aware that those eighteen traders had another, much more direct source of inside information about Ariad.  Therefore, its stipulation referring to hundreds of pages of trading records by numerous people and entities does nothing to tell the defense which trades it alleges are attributable to Mr. Lavidas as opposed to CC-2, and does nothing to cure the Government's particularity problem.

## **FACTUAL BACKGROUND**

Mr. Lavidas was arrested on October 18, 2019.  The Court has set trial for January 6, 2020.  Over the last several weeks beginning on October 25, 2019, and up to the day before the

filing of this motion, the Government has been producing rolling discovery in the form of millions of pages of documents and more than 700 gigabytes of data.  On November 18, 2019, Mr. Lavidas submitted the attached letter to the Government, requesting, among other things, twelve specific particulars relating to the allegations in the Indictment.  (Streeter Decl. ¶ 3, Ex. A).

In an email late on the afternoon of Thursday, November 21, 2019, (the day before this motion was due) AUSA Richard Cooper informed the defense that the Government would not be providing the requested particulars, but instead would offer certain stipulations that would "organize some of the evidence" the Government intends to offer at trial. (Streeter Decl. ¶ 4, Ex. B).

In an email that same evening, AUSA Cooper provided two proposed stipulations. (Streeter Decl. ¶ 4, Exs. C and D).  Those stipulations list voluminous trading and phone records the Government proposes to enter into evidence at trial.  The trading records stipulation describes trading records of twelve different people, only two of whom (Nikas and CC-4), are mentioned in any way in the Indictment, and six different entities.  The stipulation provides no information about whether these people or entities are alleged to be co-conspirators, or whether Mr. Lavidas is alleged to have had any knowledge of their trading.  The phone records stipulation describes hundreds of pages of phone records of Nikas, Mr. Lavidas, and Director-1, his father, that the Government seeks to admit at trial.  However, neither stipulation identifies, out of literally thousands of trades and thousands of phone calls, any information about which trades and which phone calls the Government alleges are part of the Ariad Scheme.

More troubling, the day before this motion was due, the Government sent a letter to the defense that reveals, for the first time, the following facts that are exculpatory of Mr. Lavidas:

> We wish to advise you that records provided to the Government by Investment Bank B, as identified in the Indictment in this case in connection with the Corporate Acquisitions Insider Trading Scheme, reflect that the individual identified in the Indictment as CC-2 accessed files relating to Baxalta on the computer systems of Investment Bank B on approximately twelve occasions, from approximately April 2015 through July 2015. Those records reflect that on or about July 27, 2015, CC-2 accessed files relating to Baxalta's potential acquisition of Ariad on the computer systems of Investment Bank B.

(Streeter Decl. ¶ 5, Ex. E). This MNPI about Baxalta's potential acquisition of Ariad is the precise MNPI that the Indictment alleges Mr. Lavidas provided to Nikas at precisely the same time. Indictment ¶¶ 26-29.

In the Corporate Acquisitions Insider Trading Scheme portion of the Indictment (that does not include a single allegation about Mr. Lavidas), the Government alleges Nikas received MNPI about potential acquisitions from, among others, CC-2, who worked at and stole information from Investment Bank B by accessing computer systems at that investment bank. Indictment ¶¶ 32-35. The Government alleges that CC-2 was one of the primary sources of inside information to the large group involved in the Corporate Acquisitions Insider Trading Scheme. By its November 21, 2019 letter the Government now acknowledges that Nikas, and the rest of the group involved in the Corporate Acquisitions Scheme, had an alternative source of inside information about Ariad who was not Mr. Lavidas (or his father). Nevertheless, the stipulation proposed by the Government relating to trading records of eighteen people and entities for Ariad securities provides no information or particularity as to which of the those trades are attributable to CC-2's tips on Ariad, and which are allegedly attributable to Mr. Lavidas. Accordingly, the Government's position appears to be that it is incumbent on the defense to guess from the Indictment (which makes no mention of CC-2's tips on Ariad) which trades the Government will argue are attributable to CC-2's tips and which trades are attributable

to Mr. Lavidas.  This is either trial by ambush or the Government itself has no idea which trades,

if any, can be attributable to Mr. Lavidas's alleged tip.

Accordingly, Mr. Lavidas now brings this motion for a bill of particulars seeking

specification of the allegations in the Indictment, as set forth below.

## ARGUMENT

### I.  Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of

particulars in order to identify with sufficient particularity the nature of the charge pending

against him, thereby enabling a defendant to prepare for trial, to prevent surprise, and to

interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987).

The merits of an insider trading case "depend heavily on the facts and context." *United*

*States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13,

2010).  Such a fact-intensive analysis requires the defendant to know certain details of the

alleged criminal conduct.  As such, courts have frequently directed the filing of a bill of

particulars in insider trading cases, where "the potential for unfair surprise and the difficulty of

preparing a defense are amplified." *See, e.g.*, *Rajaratnam*, 2010 WL 2788168 at *4-9 (ordering

bill of particulars that specified, among other things, the substance of the alleged inside

information and the dates on which it was provided, in connection with both conspiracy and

substantive counts).  *See also United States v. Contorinis*, 09 Cr. 1083 (RJS), 2010 U.S. Dist.

LEXIS 74739, at *1 (S.D.N.Y. May 5, 2010) (directing the Government to "submit a bill of

particulars with respect to the material, non-public information allegedly disclosed in connection

with" a charged transaction); Bill of Particulars, *United States v. Gupta*, 11 Cr. 907 (JSR)

(S.D.N.Y. April 9, 2012), ECF No. 47 at *2 (government ordered to provide particulars on the financial benefit that defendant received from giving inside information to the tippee); *United States v. Nacchio*, No. 05 Cr. 545 (EWN), 2006 WL 2475282, at *3, *5–*9 (D. Colo. Aug. 25, 2006) (directing the government to provide additional particulars regarding the nature of the inside information).

Particulars specifying the details of allegedly illegal transactions are especially warranted when, as here, the Government has alleged a conspiracy that transpired over a period of several years. *See, e.g.*, *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir.1998) ("a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge"); *United States v. Stein*, 424 F. Supp. 2d 720, 724-25 (S.D.N.Y. 2006); (granting bill of particulars in a complex tax case involving dozens of counts and multiple co-conspirators); *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *5, *7 (S.D.N.Y. Mar. 7, 2001) (granting a bill of particulars where the defendant would have to "attempt to guess" which of the documented transactions the Government would contend were fraudulent).

## II. A Bill of Particulars Is Necessary to Enable Mr. Lavidas to Prepare his Defense and to Avoid Unfair Surprise at Trial

In order to prove that Mr. Lavidas engaged in the crimes charged in the Indictment, the Government will need to prove, among other things, that Mr. Lavidas intentionally provided Nikas with MNPI about Ariad with the intent that Nikas trade on it. Count One of the Indictment alleges that the scheme persisted over a three-year period, but only alleges four instances in which Mr. Lavidas allegedly tipped Nikas. Nowhere in the Indictment does the Government detail the specific Ariad-related MNPI, the content of any communication between Mr. Lavidas and Nikas, the co-conspirators involved, whether Mr. Lavidas had any knowledge

of the other co-conspirators, the alleged payments Nikas made to Mr. Lavidas as compensation

for the Ariad-related MNPI, or the specific dates or geographic locations of the alleged trades or

wires that Nikas or others allegedly made based on the Ariad-related MNPI.  Count Two alleges

a second conspiracy, but simply refers back to Count One for its factual allegations.  Counts

Three through Five allege substantive counts of securities fraud, but do not list the exact trades

alleged.  Counts Six through Eight allege that Mr. Lavidas engaged in a scheme to commit wire

fraud, but do not identify any specific interstate wire communications, much less the dates and

locations of those wires.

       The Government's proposed stipulations do not cure this lack of particularity.  The phone

records stipulation is entirely unhelpful.  It refers to hundreds of pages of phone records of

Nikas, Mr. Lavidas and his father over many years.  It does not provide any information

addressing the twelve particulars that the defense requested in its November 18, 2019 letter.

Similarly, the trading records stipulation does not solve the problem.  It identifies hundreds of

pages of trading records listing countless trades, performed by twelve different people and six

different entities over a multi-year period.  That stipulation does not identify which, if any, of

these people were co-conspirators;[1] which if any of these people Mr. Lavidas allegedly knew or

had any interaction with; or which, if any of these trades Mr. Lavidas allegedly knew about.

       Nor can the Government simply say "all of the Ariad trading" referred to in its proposed

stipulation is attributable to Mr. Lavidas.  That is so because the day before the filing of this

motion, the Government belatedly (after arguing the strength of its evidence at multiple bail

hearings) revealed to the defense that CC-2 in the Corporate Acquisitions Scheme was an Ariad

tipper to Nikas and the many other participants in that scheme.  And CC-2 tipped about the exact

---

[1] The Indictment does identify Nikas and CC-4 as co-conspirators.

same inside information that the Government alleges Mr. Lavidas tipped to Nikas. Specifically, the Government acknowledged that CC-2, who was an inside source for Nikas and many others, on twelve occasions during the spring and summer of 2015, including on July 27, 2015, accessed secret information from the computer systems at Investment Bank B, where CC-2 worked, about Baxalta's potential acquisition of Ariad. (Streeter Decl. Ex. E). This was at the exact same time that the Indictment alleges (specifically July 2015), through purely circumstantial evidence based on Nikas's trades, Mr. Lavidas provided to Nikas identical information about Baxalta's potential acquisition of Ariad. Indictment ¶¶ 26-28. In other words, the Government's circumstantial claim that Mr. Lavidas was the Ariad tipper, and that all trading in Ariad is attributable to him, which was already weak, has suffered a major blow. Putting aside the implications that this has for the entire case, at a minimum it shows that the Government cannot, in order to satisfy its particularity obligation, simply point to a stipulation about every trade that eighteen traders made in Ariad and claim they are all attributable to Mr. Lavidas. Indeed, the Government has not even provided any information to the defense about how most of these eighteen traders listed in the proposed stipulation are associated with Nikas, much less how their trades are attributable to Mr. Lavidas.

As set forth below, the particulars requested by Mr. Lavidas fall into two general categories: information relating to the manner and means of the alleged criminal conduct, and information relating to individuals involved in the alleged criminal conduct.

## III.   The Government Must Provide Particulars with Respect to the Manner and Means of the Alleged Criminal Conduct

### A.   The Government Must Specify the Means and Methods of the Conspiracy.

The Indictment alleges Mr. Lavidas conspired with Nikas to provide him with MNPI about Ariad. It alleges broadly that "[a]s compensation for receiving the MNPI described above

[Nikas] paid [Lavidas] at various times during the scheme." Indictment ¶ 30. It provides no details about how much was paid, when it was paid, or by what means. The Indictment also contains only one overt act. Indictment ¶ 42a. And the Indictment suggests that the Ariad Scheme expands beyond Mr. Lavidas and Nikas, but gives no details as to the scope of the conspiracy, or how many other co-conspirators were allegedly involved, or what knowledge Mr. Lavidas had of any of those co-conspirators. Rather, the Indictment vaguely refers to "at least one other securities trader" who allegedly received and traded upon Ariad-related MNPI, ¶ 31, but says nothing about when or how. And the Indictment identifies four co-conspirators—CC-1, CC-2, CC-3 and CC-4—but does not clarify whether and how any of them participated in the "Ariad Scheme," in which Mr. Lavidas is alleged to have participated, versus the much larger international "Corporate Acquisitions Insider Trading Scheme," in which Mr. Lavidas is not alleged to have participated.

Moreover, the Indictment does not specify the duty Mr. Lavidas is alleged to have breached. Specifically it does not indicate whether the Government plans to prove at trial: 1) that Director-1 (Mr. Lavidas's father) breached a duty to Ariad and its shareholders, and that Mr. Lavidas inherited that duty under so-called "classical" insider trading; *see Chiarella v. United States*, 445 U.S. 222 (1980) (holding that the duty to disclose or abstain from trading arises from the fiduciary relationship between corporate insiders and shareholders); *Dirks v. SEC*, 463 U.S. 646, 651 (1983) (extending the classical theory to "tippees" who knowingly receive material non-public information from corporate insiders in breach of a duty); or 2) whether Mr. Lavidas received information in confidence from his father and breached a duty to his father by "misappropriating" the information and tipping it to Nikas. *See United States v. O'Hagan*, 521 U.S. 642, 652-53 (1997) ("the misappropriation theory outlaws trading on the basis of nonpublic

information by a corporate 'outsider' in breach of a duty owed not to a trading party, but to the source of the information.").  These two theories require the Government to prove different elements, and involve very different factual allegations about Mr. Lavidas's illegal conduct.  In order to defend this case, Mr. Lavidas is entitled to know what he is alleged to have done that is illegal.  The Government has not provided that information.  *Cf.* Opinion and Order, *United States v. Stewart*, No. 15. Cr. 287 (LTS) (S.D.N.Y. Jan. 19, 2016), ECF No. 64 at *22 n.6 (denying request for particulars when Indictment provided "sufficient detail regarding the . . . breach of fiduciary duty", "the character of the personal benefit", and the "meaningfully close personal relationship" that existed between defendant and his father.).

> B.   The Government Must Specify the Particulars of the Alleged
>      Trades and Wires Serving as the Basis for the Substantive Counts.

While the substantive counts of the Indictment broadly reference three sets of Nikas's trades, they provide no detail on the location or specific dates of those trades, and provide no details on the dates and times of the trades of other alleged co-conspirators, including the "other securities trader" and "CC-4" who allegedly also received Ariad-related MNPI from Nikas.  Where, as here, the "government knows precisely the [alleged acts] on which it intends to rely and can easily provide the information," the law requires Mr. Lavidas be provided such information in order to prepare his defense at trial.  *See United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998).  *See also, United States v. Nachamie*, 91 F. Supp. 2d 565, 576 (S.D.N.Y. 2000) (ordering a bill of particulars specifying details of each allegedly false claim submitted as part of a Medicare fraud conspiracy); *Savin*, 2001 WL 243533, at *7 (ordering government to release the dates and times of allegedly fraudulent "intercompany transfers" that occurred over a six-year period.).

Similarly, the Indictment fails to specify the interstate wire communication serving as the basis for the wire fraud alleged in Counts Six through Eight.  Courts have consistently granted defendants' requests for particulars in wire fraud prosecutions when the indictment does not identify the mailing or wire at issue.  *See, e.g.*, *United States v. Silver*, 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015) (ordering the government to provide a bill of particulars "identifying the specific mailings and wire transfers on which it will rely to prove" the mail and wire fraud charges) (internal quotations and citation omitted).  Without particulars regarding the essential element of a wire fraud charge, Mr. Lavidas is left to comb through thousands of pages of records (including those identified in the government's broad proposed stipulations) to try to determine which wire communications the Government may choose to introduce at trial.  This is precisely the purpose and function of a bill of particulars.

Mr. Lavidas therefore respectfully requests that the Court enter an Order requiring the Government to provide the following particulars:

1.      If alleged, particulars of the means and methods by which Mr. Lavidas is alleged to have conspired with CC-1, CC-2, CC-3 and CC-4 identified in the Indictment;

2.      Particulars of which trades are attributable to CC-2's disclosure of Ariad MNPI to Nikas and other participants in the Corporate Acquisitions Insider Trading Scheme and which trades are attributable to Mr. Lavidas's alleged disclosure of MNPI to Nikas.[2]

---

[2] This particular was not included in the defense's November 18, 2019 letter because the Government did not make its *Brady* disclosure that CC-2 was an Ariad tipper until after that letter was sent and the day before this motion was due.

3.      Particulars of the "personal relationship" alleged between Nikas and Director-1 in Paragraph 13 of the Indictment, including but not limited to the dates and subject matter of any alleged communications between them;

4.      Particulars of the payments that Nikas allegedly made to Mr. Lavidas as compensation for material non-public information alleged in paragraphs 13 and 30 of the Indictment, including but not limited to the dates, amounts and methods of those payments;

5.      Particulars of the alleged knowledge, if any, that Mr. Lavidas had that "Nikas also passed the Ariad-related MNPI to CC-4" or of Mr. Lavidas's alleged knowledge, if any, that CC-4 "also reaped substantial profits by trading on that information" as alleged in Paragraph 13 of the Indictment;

6.      Particulars about the manner in which the statements alleged in Paragraph 17 of the Indictment were related to Ariad, were in furtherance of the alleged "Ariad Scheme," or were in furtherance of any alleged conspiracy between Nikas and Mr. Lavidas;

7.      Particulars of the specific trades alleged in Counts 3 through 5 of the Indictment, including the date, time and geographic location in which those trades took place;

8.      Particulars of the wires alleged in Counts 6 through 8 of the Indictment, including the date, time and geographic location in which those wires took place;

9.      Particulars of Mr. Lavidas's alleged knowledge, if any, that Nikas provided Ariad MNPI to any "other securities trader, who placed timely trades and reaped substantial profits" referred to in paragraph 31 of the Indictment, or of Mr. Lavidas's alleged knowledge of those trades; and

13

10.     Particulars about whether the Government alleges that Mr. Lavidas misappropriated the MNPI from Director-1 (his father) in breach of a duty (so-called "Misappropriation" Insider Trading) or whether it alleges that Director-1 breached a duty to Ariad and its shareholders by providing that information to Mr. Lavidas (so-called "Classical" Insider Trading).

## IV.   The Government Must Identify Mr. Lavidas's Co-Conspirators

A.     <u>Applicable Law</u>

In determining whether a defendant is entitled to a bill of particulars revealing the identities of his co-conspirators, courts consider: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.  *Nachamie*, 91 F. Supp. 2d at 572 (ordering government to provide names of known co-conspirators).

District courts have routinely compelled such information in insider trading cases, particularly in the Southern District of New York. *See United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (granting motion for a bill of particulars as to the identities of co-conspirators.); *United States v. Martoma*, 12 Cr. 973 (PGG), 2013 WL 2435082, at *7 (S.D.N.Y. June 5, 2013) (court order required the government to identify all known co-conspirators); *Rajaratnam*, 2010 WL 2788168, at *1 n.1 (court order noted that the government provided a list of additional known co-conspirators for each count).

B.     Mr. Lavidas's Need for the Identity of His Alleged
       Co-conspirators Outweighs Any Competing Government Interest.

Under *Nachamie*'s balancing test, it is clear that the Government does not have a compelling reason to keep the identity of any co-conspirators a secret in this case.  First, the conspiracy is alleged to have occurred over a three-year time span, with the alleged criminal conduct beginning more than six years ago.  This weighs heavily in favor of disclosing the identity of co-conspirators.  *United States v. Pinto-Thomaz* is instructive.  In that case, the court noted that the Government's allegations presented a fairly straightforward insider trading case with only one named co-conspirator and no allegation of a long-running conspiracy.  However the court ordered that the Government disclose the identity of any additional known co-conspirators, holding that were the Government to reveal additional co-conspirators involved in the alleged scheme other than the known codefendant, "it would meaningfully alter the nature of the charges and, accordingly, [defendant's] preparation for trial." *See* 352 F. Supp. 3d at 303. This is decidedly true in this case.  It is highly material to his defense for Mr. Lavidas to know whether he is alleged to have conspired only with Nikas, or also with others.  Second, as discussed throughout this submission, the Government has largely avoided providing particulars regarding the crimes.  Third, as addressed herein, the large volume of discovery provided by the Government and its proposed stipulations do not give Mr. Lavidas any information about who is alleged to be a co-conspirator with him and who is just alleged to be a trader.  Fourth, this is an insider trading case and not a crime of violence.  Mr. Lavidas is detained, and while he would never do so, has no opportunity to approach much less intimidate any potential co-conspirators or witnesses.  Fifth, having publicly filed four different indictments in this case, the Government has not made a showing (or even suggested) that there would be any risk of compromising a continued investigation by identifying unindicted co-conspirators.  Mr. Lavidas can only

adequately prepare a defense if he is provided with the identities of those other individuals with whom he allegedly conspired. *See Nachamie*, 91 F. Supp. 2d at 572-73. Finally, given that the Indictment is not clear (since both schemes are charged in Count One) as to which co-conspirators from the alleged "Corporate Acquisitions Insider Trading Scheme" are also alleged to be Mr. Lavidas's co-conspirators, he is certainly entitled to know which, if any, of these co-conspirators, as well as which other people, are also allegedly involved in the "Ariad Scheme."

Accordingly, because all of the *Nachamie* factors weigh in favor of disclosure, the Government should be ordered promptly to furnish a bill of particulars detailing:

1.  The identity of all alleged co-conspirators of Mr. Lavidas;

2.  The identity of the "other securities trader(s), who placed timely trades and reaped substantial profits" referred to in Paragraph 31 of the Indictment to whom Nikas allegedly provided the Ariad MNPI from Mr. Lavidas, including but not limited to the identity of those individuals and the dates and times of those trades;

3.  Any alleged relationship between Mr. Lavidas and CC-4, including the dates of any interactions between them and the subject matter of any communications; and

4.  Any "others known" to have allegedly received Ariad MNPI from Mr. Lavidas, as opposed to CC-2, whom the Government now acknowledges was an Ariad tipper.

## V.    Mr. Lavidas's Request for Particulars is Narrowly Tailored

Although the need for a bill of particulars is clear in this case, Mr. Lavidas's requests are tailored to obtain information that will shed light on the nature and scope of the alleged criminal conspiracy, which will aid in the preparation of his defense and avoid unfair surprise at trial. *See Bortnovsky*, 820 F.2d at 574 (stating that a defendant may seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial."). Moreover, courts in the Southern District have granted

16

bills of particulars in cases where the Government has provided much more detail than it has here.  For example, in *Rajaratnam*, the court granted further particulars even when the Government had already identified the securities at issue in each count of the indictment; the charged and uncharged co-conspirators, the sources of MNPI, and the trades at issue in the substantive counts.  2010 WL 2788168, at *2.

## VI.   The Government's Discovery Does Not Relieve it of its Duty to Identify the Particulars of its Charges

The Government has produced extensive discovery in this case.  However, it is well-settled that the Government cannot rely solely on its production of hundreds of thousands (or millions) of documents and expect to be relieved of its specificity and notice obligations.  *See, e.g.*, *Bortnovsky*, 820 F.2d at 575 (not enough for Government to "provid[e] mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *Savin*, 2001 WL 243533, at *3 (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," that the defendant would have had to "comb through" to "attempt to guess at" which transactions were allegedly improper).

As in many cases in which courts ordered particulars, the voluminous discovery does not provide Mr. Lavidas the answers to his requested particulars.  And Mr. Lavidas "is not required to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial."  *United States v. Kaplan*, No. 02 Cr. 883 (DAB), 2003 WL 22880914, at *16 (S.D.N.Y. Dec. 5, 2003) (quoting *Trie*, 21 F.Supp.2d at 21.).  Thus, "the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), *aff'd sub nom.*, *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008).

17

## **CONCLUSION**

For all of the aforementioned reasons, Mr. Lavidas respectfully requests that the Court

order the Government to provide a bill of particulars in accordance with the requests herein.

Dated:  New York, New York
       November 22, 2019

Respectfully submitted,

DECHERT LLP

By: /s/ Jonathan R. Streeter
Jonathan R. Streeter
Siobhan M. Namazi
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
Jonathan.streeter@dechert.com
Siobhan.namazi@dechert.com
Tel.: (212) 698-3826
Fax: (212) 314-0046

Eric H. Sussman
Jennifer L. Achilles
599 Lexington Ave., Floor 22
New York, NY 10022
Telephone: (212) 521-5400
esussman@reedsmith.com
jachilles@reedsmith.com

*Attorneys for Defendant*
*Telemaque Lavidas*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 22nd day of November, 2019, I electronically filed this Memorandum of Law in Support of Defendant Telemaque Lavidas's Motion for a Bill of Particulars, along with the accompanying Notice of Motion, Declaration by Jonathan R. Streeter and the exhibits annexed thereto, using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

<u>/s/ Jonathan R. Streeter            </u>
Jonathan R. Streeter

*Attorney for Defendant Telemaque Lavidas*