UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
UNITED STATES OF AMERICA,             :        19cr716 (DLC)
                                      :
            -v-                       :        OPINION AND ORDER
                                      :
GEORGIOS NIKAS, a/k/a "George Nikas," :
And TELEMAQUE LAVIDAS,                :
                    Defendants.       :
                                      :
--------------------------------------X

APPEARANCES:

For the Government:
Daniel M. Tracer
Richard A. Cooper
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-1087

For defendant Lavidas:
Jonathan R. Streeter
Siobham M. Namazi
Dechert LLP
1095 Ave. of the Americas
New York, NY 10036
(212) 314-3826

Eric H. Sussman
Jennifer Achilles
Reed Smith LLP
10 S. Wacker Drive, Ste. 4000
Chicago, IL 60606
(312) 207-2504

DENISE COTE, District Judge:

     On October 7, 2019, defendant Telemaque Lavidas ("Lavidas")

was indicted for conspiracy, securities fraud, and wire fraud in

connection with his alleged participation in an insider trading

scheme involving the securities of Ariad Pharmaceuticals
("Ariad").  On November 22, Lavidas filed a motion for a bill of
particulars.  On November 29, Lavidas moved for disclosure of
grand jury minutes and Brady material.  These motions became
fully submitted on December 6.  For the reasons that follow,
Lavidas's motion for a bill of particulars is granted in part.
Lavidas's motion for grand jury minutes and Brady material is
denied.

## Background

A superseding indictment of November 25, 2019 describes two
separate schemes: the "Ariad Scheme" and the "Corporate
Acquisitions Insider Trading Scheme."[1]  Lavidas's co-defendant,
Georgios Nikas ("Nikas"), is named in counts relating to both
the Ariad Scheme and the Corporate Acquisitions Insider Trading
Scheme, while Lavidas is named only in counts relating to the
Ariad Scheme.

The Ariad Scheme concerns trading that occurred in three
separate sets of transactions in 2013 related to actions by
either the European Commission or the U.S. Food and Drug

---

[1] On November 22, 2019, Lavidas moved to dismiss two wire fraud
counts of the October 7 indictment, Counts Six and Seven, as
barred by the statute of limitations.  On November 25, 2019, a
grand jury returned a superseding indictment that consolidates
Counts Six, Seven, and Eight of the October 7 indictment into a
single count, mooting Lavidas's motion to dismiss on statute of
limitations grounds.

Administration ("FDA") in connection with Iclusig, a drug that treats leukemia. The Ariad Scheme also concerns trading that occurred in summer 2015 in connection with Baxalta, Inc.'s ("Baxalta") potential acquisition of Ariad.

The Corporate Acquisitions Insider Trading Scheme concerns trading that occurred between 2012 and 2017. The superseding indictment alleges that, during this time period, Nikas "participated in a large-scale, international insider trading ring," in which Nikas received material non-public information concerning acquisitions and potential acquisitions of publicly traded companies. The material non-public information is alleged to have come from employees at three different investment banks. The superseding indictment refers to one of these banks as "Investment Bank B" and to the employee of Investment Bank B as "CC-2."

The Government began producing discovery to the defense on October 25, 2019. Among the records provided by the Government were trading records produced by E*Trade, images taken during a search of Nikas's apartment, telephone records, and records from Lavidas's email account. On November 21, the Government provided proposed stipulations reflecting the account owner for each set of trading records, and the individual associated with each set of telephone records.

Also on November 21, the Government disclosed that it had received records from Investment Bank B, reflecting that a co-conspirator listed in the indictment as CC-2 had accessed files related to Baxalta on the bank's computer systems on about twelve occasions between April and July 2015. This included records indicating that CC-2 had accessed files in July 2015 relating to Baxalta's potential acquisition of Ariad.[2] The Government produced the underlying bank records reflecting these facts, identified the names of Investment Bank B and CC-2, and referred the defense to an indictment charging CC-2 and setting forth CC-2's criminal conduct in greater detail.

On November 26, following requests from Lavidas, the Government provided a letter that identified the co-conspirators in the Corporate Acquisitions Insider Trading Scheme. The letter also summarized witness statements by two of the co-conspirators regarding their understanding of CC-2 as a source of inside information and how that information was passed to others in the tipping chain.

On November 27, the Government provided the defense with approximately 84,000 documents it obtained from Investment Bank B. The Government also has agreed to conduct a search identifying communications among CC-2 and other members of the

---

[2] The Government is unaware that CC-2 provided information about Baxalta to anyone else.

4

tipping chain in the Corporate Acquisitions Insider Trading Scheme for the period from July 1, 2015 through August 30, 2015. On December 4, 2019, the Government also provided Lavidas with a list of Lavidas's alleged co-conspirators. Trial is scheduled to begin on January 6, 2020.

## Discussion

### I. Bill of Particulars

Lavidas has moved for a bill of particulars. A bill of particulars may supplement an indictment that is "insufficient to permit the preparation of an adequate defense." United States v. Rigas, 490 F.3d 208, 237 (2d Cir. 2007) (citation omitted). "[T]he bill's purpose is to advise the defendant of the specific acts of which he is accused." Id. (citation omitted). "A bill of particulars enables a defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Ramirez, 609 F.3d 495, 503 (2d Cir. 2010) (citation omitted). A bill of particulars is not, however, intended to allow the defendant to acquire evidentiary detail. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990), abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010). In deciding whether to order a bill of particulars, a court considers not only the indictment but also the discovery provided to the defendant. See id. at 234.

First, Lavidas seeks identification of the specific wires that form the basis of the Government's wire fraud charge in Count Six.[3]  Count Six charges Nikas and Lavidas with engaging in a scheme to commit wire fraud from "in or about July 2013 through in or about 2016."  The documents already provided to Lavidas in discovery are sufficient to permit Lavidas to prepare for trial on this count.  This request is denied.

Second, Lavidas seeks disclosure of the specific payments that Count One alleges he received from Nikas in exchange for providing material nonpublic information about Ariad.  Count One charges Nikas and Lavidas with conspiracy to commit securities fraud.  It alleges, _inter alia_, that Lavidas "received personal benefits, including, among other things, payments" from Nikas at various times during the scheme.  The Government must disclose with reasonable specificity the payments by Nikas to Lavidas on which it will rely at trial to prove that Nikas paid Lavidas for providing the material nonpublic information.  Lavidas has shown that prior identification of these payments will be of substantial assistance in preparing his defense and placing such payments in context.  This is particularly so because "payments"

---

[3] As his reply brief reflects, Lavidas is no longer pursuing his request for a bill of particulars for several items in light of the discovery produced by the Government since Lavidas filed his motion.

on which the Government may rely may be indirect payments, such as payments to Lavidas's relatives.[4]

Third, Lavidas requests that the Government disclose whether he is alleged to have knowledge of "broad downstream [tipping] activity."  In arguing that he is entitled to this information, Lavidas relies on a statement in the Government's opposition brief stating that Lavidas provided insider information to Nikas "so that Nikas could trade on [it] and pass it to others."  But, as Lavidas acknowledges, the superseding indictment alleges that Nikas passed insider information about Ariad to one co-conspirator referred to as "CC-4," and states that Nikas provided material nonpublic information that he obtained from Lavidas "to at least one other securities trader, who placed timely trades."  The Government already has identified CC-4 to Lavidas.  The Government also has provided Lavidas with a list of Lavidas's alleged co-conspirators.  This request is therefore denied.

## II.  Grand Jury Materials

Lavidas also seeks review of grand jury materials.  Under Rule 6(e)(3)(E)(ii), Fed. R. Crim. P., a court may authorize the disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment

---

[4] Lavidas does not seek identification of other benefits he allegedly received from Nikas.

because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Grand jury proceedings are presumptively secret, and a defendant seeking the disclosure of grand jury materials bears a heavy burden. See In re Petition of Craig, 131 F.3d 99, 104 (2d Cir. 1997). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." Torres, 901 F.2d at 233. To require disclosure of grand jury minutes, courts demand "concrete allegations" of Government misconduct. United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994).

Lavidas argues that he is entitled to review grand jury materials because the Government has represented to him that it has no evidence that anyone other than he provided Nikas with inside information about Ariad, while the Government in fact had evidence that CC-2 had accessed records concerning the potential Baxalta merger. Lavidas has not carried his heavy burden to obtain review of grand jury materials. Lavidas provides only speculation that the Government made misleading statements to the grand jury.

## III. **Brady** Materials

Lavidas next argues that, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), he is entitled to immediate disclosure of witness statements related to the Corporate Acquisitions Insider Trading Scheme. To fulfill its Brady obligations, "[t]he

government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that she might furnish." Bellamy v. City of New York, 914 F.3d 727, 768 (2d Cir. 2019) (Jacobs, C.J., dissenting in part) (citation omitted).

The Government has identified not only Lavidas's co-conspirators but also Nikas's co-conspirators in the separate Corporate Acquisitions Insider Trading Scheme. It has also provided the substance of information given by two co-conspirators in that scheme insofar as it relates to their understanding of CC-2 as a source of inside information. Lavidas has not shown that Brady or its progeny require more.

## Conclusion

Lavidas's motion for a bill of particulars is granted in part. The Government shall disclose with reasonable specificity the payments on which it intends to rely to demonstrate that Lavidas benefited from his alleged tipping. Lavidas's motion for grand jury minutes and Brady materials is denied.

Dated:     New York, New York
           December 13, 2019

_____
                DENISE COTE
        United States District Judge