UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| - v. - | : | S1 19 Cr. 716 (DLC) |
| | : | |
| TELEMAQUE LAVIDAS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

AUDREY STRAUSS
United States Attorney
Acting Under Authority Conferred by
28 U.S.C. § 515

Richard Cooper
Daniel Tracer
Assistant United States Attorneys
        - *Of Counsel* -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 1

   I.   The Nikas-█████ Statement is Admissible ............................................................. 1

      A.     The Nikas-███████ Statement is Admissible as a Co-Conspirator Statement . 2

      B.     The Nikas-████████ Statement is Admissible as a Statement Against Interest . 5

   II.    Trading Records of the Tippee Traders is Admissible ........................................... 7

   III.   The Government Does Not Intend to Rely on any Privileged Materials at Trial . 10

      A.     Relevant Facts and Discussion ......................................................................... 10

      B.     The Defendant Should Disclose Whether He Will Waive the Attorney-Client Privilege Prior to Trial .............................................................................................. 11

CONCLUSION .............................................................................................................. 12

## **TABLE OF AUTHORITIES**

CASES

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987)---------------------------------------------------------11

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)-----------------------------------------11

*United States v. Carpenter*, 791 F.2d 1024 (2d Cir. 1986) -------------------------------------- 2

*United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012) --------------------------------------- 8

*United States v. Dove*, 884 F.3d 138 (2d Cir. 2018)----------------------------------------------- 3

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017)---------------------------------------------- 2

*United States v. Geibel*, 369 F.3d 682 (2d Cir. 2004) ------------------------------------------- 2, 4

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) -------------------------------------------- 4, 5

*United States v. Hatfield*, No. 06 Cr. 0550, 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010)-----------11

*United States v. Marcus Schloss & Co.*, 710 F. Supp. 944 (S.D.N.Y. 1989)------------------------ 9

*United States v. Martoma*, 894 F.3d 64 (2d Cir. 2017) ------------------------------------------- 3

*United States v. McDermott*, 245 F.3d 133 (2d Cir. 2001) ------------------------------------- 2, 3

*United States v. Netschi*, 511 Fed. App'x 58 (2d Cir. 2013) ------------------------------------- 7

*United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ------11

*United States v. Sharma*, 18 Cr. 340 (LGS) (Dkt. No. 140)---------------------------------------12

*Williamson v. United States*, 512 U.S. 594 (1994) --------------------------------------------- 5

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* to (a) exclude a statement made by co-defendant Georgios Nikas ("Nikas") to ███████████████ about the source of Nikas's Ariad-related material, non-public information ("MNPI") (the "Nikas-████ Statement") (Dkt. No. 55 ("Def. Mot.") at 6); (b) exclude trading records of certain downstream tippees of Nikas (the "Tippee Traders") who also traded based on Ariad-related MNPI (*id.* at 15); and (c) exclude attorney-client privileged materials (Dkt. No. 52 ("Def. Priv. Mot.")).

These motions are meritless. As set forth in the Government's motions *in limine*, the Nikas-████ Statement is admissible as both a co-conspirator statement and as a statement against interest, and the Tippee Traders' trading records are admissible due to their high probative value in this case. (Dkt. No. 57 ("Gov. Mot.") at 1, 13). In arguing to the contrary, the defendant's motion omits critical facts and misapplies the relevant legal standards. Accordingly, the defendant's first two motions *in limine* should be denied. Moreover, the Government does not intend to rely on privileged materials at trial, thereby rendering the defendant's third motion *in limine* moot.

## I.   The Nikas-████ Statement is Admissible

The defendant first moves to exclude the Nikas-████ Statement, Nikas's statement to ████ about Nikas's receipt of MNPI regarding Ariad from the defendant and his father.[1] As set forth in the Government's motions *in limine*, however, the Nikas-████ Statement is admissible on two separate, independent bases. First, it is a co-conspirator statement in furtherance of the conspiracy inasmuch as under the circumstances of this case "it was 'reasonably

---

[1] In the same vein, ████████████████ Nikas told ████ that Nikas provided payments to the defendant and his father for this MNPI.

fores[eeable], as a necessary or natural consequence of the unlawful agreement' that the MNPI would be shared with Nikas's other close friends and associates." (Gov. Mot. at 8 (quoting *United States v. Geibel*, 369 F.3d 682, 690 (2d Cir. 2004))). Second, the Nikas-███ Statement is admissible because it would tend to expose Nikas to criminal liability, regardless of whether the statement would have been "'sufficient, standing alone, to convict [the declarant] of any crime.'" (Gov. Mot. at 7 (quoting *United States v. Dupree*, 870 F.3d 62, 80 (2d Cir. 2017))).

### A.  The Nikas-███ Statement is Admissible as a Co-Conspirator Statement

The defendant tries to argue that the Nikas-███ Statement is not admissible as a co-conspirator statement because the Government cannot show that other individuals were "involved in or necessary to the theft of Ariad MNPI." (Def. Mot. at 8; *see also id.* at 9 (arguing that "no other participants were needed to bring the alleged plan to fruition")). But of course, showing that particular individuals were necessary in order to commit the alleged crime is not a prerequisite to the admission of a co-conspirator statement. *Carpenter*, *McDermott*, and *Geibel* all recognize that remote tippees may be considered part of a single conspiracy where "the conspirators reasonably foresaw, as a necessary *or natural consequence of the unlawful agreement*" that MNPI would be passed to these tippees. *See United States v. Carpenter*, 791 F.2d 1024, 1036 (2d Cir. 1986) (emphasis added); *United States v. McDermott*, 245 F.3d 133 (2d Cir. 2001); *Geibel*, 369 F.3d 682. Under the circumstances of this case it was eminently foreseeable that passing MNPI to Nikas would lead to Nikas's sharing that MNPI with friends and associates. First, and unlike both *McDermott* and *Geibel*, the defendant actually knew some of the downstream tippees (and their relationship with Nikas), including ███ (Gov. Mot. at 9). Second, and unlike *Geibel*, the Government is not aware of any evidence that the defendant took measures to hide the Ariad MNPI from, or prevent it from being passed to, Nikas's friends and associates. (*Id.*). To the contrary,

2

the defendant knew ███████ and other downstream tippees, knew of their friendship with Nikas, and even had their phone numbers.  Surely, Nikas would not have tipped such people if he was trying to keep the tipping hidden from the defendant.  Third, and unlike *McDermott*, the defendant knew that Nikas was an active stock trader who frequently discussed stock trading with others, and that Nikas was engaged in insider trading.  (*Id.* at 9, 18).  Under these circumstances, it was reasonably foreseeable to the defendant that sharing MNPI with Nikas would naturally lead to the sharing of that MNPI with other friends and associates of Nikas.

For substantially the same reasons, it is of no moment whether or not the defendant actually knew about the downstream tipping by Nikas.  (Def. Mot. at 10).  The relevant inquiry is not whether the defendant specifically knew of all the ways in which Nikas was benefiting from the Ariad MNPI and with exactly whom he was sharing it.  Instead, given the circumstances set forth above, it was reasonably foreseeable that Nikas would share the MNPI with friends and associates in order to maximize the benefits of the MNPI, as he did.  Indeed it is black letter law that a defendant, even one charged with insider trading, need not know the identities of all the members of a conspiracy in order to conspire with them.  *See, e.g.*, *United States v. Dove*, 884 F.3d 138, 147 (2d Cir. 2018) ("[I]t is well settled law that an individual need not know the identities of all coconspirators in order to be found guilty of being a member of a conspiracy.") (internal citations and quotations omitted); *United States v. Martoma*, 894 F.3d 64, 75 (2d Cir. 2017) (discussing the potential disclosure of "inside information to a perfect stranger" in violation of §10(b)); *McDermott*, 245 F.3d at 138 (noting the need to prove "an agreement to pass insider information to Gannon and possibly to another person, *even if unknown*" (emphasis added)).  Likewise, the defendant's argument that he did not "get any benefit as a result" of Nikas's tipping is irrelevant. (Def. Mot. at 10).  As the Second Circuit has recognized, for "a coconspirator statement [] in

furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular coconspirator." *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

While the defendant argues that he would not have wanted Nikas to tip others because it would make the conspiracy less likely to succeed (Def. Mot. at 10 (citing *Geibel*, 369 F.3d at 691)), that concern – assuming it was of concern to the defendant – does not mean that Nikas's tipping to a small group friends and associates was not foreseeable.  Clearly, the defendant would not have wanted Nikas to post the MNPI on public forums and thereby risk undermining the whole conspiracy.  However, knowing full well that Nikas was an active securities trader who used inside information to trade (and wanting to benefit Nikas by giving him inside information from Ariad), the defendant could not have been surprised that Nikas sought to maximize the value of the Ariad MNPI by tipping trading friends and associates.

Moreover, contrary to the defendant's argument, the Nikas-███ Statement is not the only evidence of the conspiracy involving continued tipping by Nikas.  (Def. Mot. at 11-12 (citing Federal Rule of Evidence 801(d)).  As set forth in the Government's motions *in limine*, Nikas shared MNPI with ███ another mutual friend of both the defendant and Nikas (Gov. Mot. at 3-4), and the defendant and Nikas also discussed other aspects of Nikas's insider trading that involved other individuals (*id.* at 17-18).  Put simply, there is independent evidence that the defendant was aware of Nikas's broader involvement in insider trading and, therefore, that Nikas would share the Ariad MNPI with others, including ███ through the Nikas-███ Statement.

Finally, the fact that the Superseding Indictment does not spell out the passing of MNPI to all the remote tippees is of no moment.  (*See* Def. Mot. at 9 & n.1).  The Superseding Indictment

4

does allege that Nikas shared the Ariad MNPI with ███ (Superseding Indictment ¶ 13), and the Government has provided the defendant with a list of other individuals that the Government believes to be co-conspirators in this case.

Accordingly, the Court should admit the Nikas-███ Statement as a co-conspirator statement in furtherance of the conspiracy.

**B.  The Nikas-███ Statement is Admissible as a Statement Against Interest**

The defendant next tries to argue that although the Nikas-███ Statement involves an admission that Nikas received MNPI, that statement is not admissible as a statement against interest because it is not "clearly inculpatory" and does not rule out potential defenses to insider trading such as "whether Nikas obtained this information through some negligence or accident." (Def. Mot. at 13).  This argument badly misconstrues the relevant legal standard.  A statement against interest "[need] not have been sufficient, standing alone, to convict [the declarant] of any crime, so long as it would have been probative in a criminal case against him."  *Gupta*, 747 F.3d at 127 (internal quotations and citations omitted).  Moreover, the Court should consider a statement against interest in light of all the surrounding circumstances.  *Id.* (quoting *Williamson v. United States*, 512 U.S. 594, 604 (1994)).  The Nikas-███ Statement easily meets that standard.  One securities trader telling another that he has an inside source of information is plainly "probative" in a criminal case and is the kind of statement that a reasonable person would think is contrary to their penal interest.  While the statement may not encompass all the elements necessary to a conviction, or rule out all potential defenses, the statement certainly contains some of the facts that would support a conviction and, especially when considered in the context of an exchange between two securities traders, would tend to be highly incriminating.

The defendant also argues that the Nikas-█████ Statement lacks independent corroboration because "Nikas had every incentive to exaggerate or puff about the quality of his sources so that █████ would in turn provide him with tips." (Def. Mot. at 14; *see also id.* at 15 (arguing that Nikas had every incentive "to exaggerate and claim to █████ he had inside information" from the defendant)). Nothing, however, could be further from the actual incentives facing Nikas when he shared MNPI with other traders. When Nikas provided █████ (and others) with the Ariad MNPI, including the Nikas-█████ Statement, Nikas well knew that these tippees would take substantial trading positions based on that MNPI. Based on their course of dealing, Nikas understood that millions of dollars could be on the line based on his tips. If Nikas's information was not good and events did not play out as Nikas was forecasting, those traders could have sustained serious losses and/or cut off their insider trading relationships with Nikas. Under those circumstances, Nikas would not have lied or exaggerated about his source. To the contrary, he had every incentive to be as precise as possible about his source so that he and his trading friends could properly calibrate the size of the bet that they would take based on that MNPI, and so that when they profited, they would continue to share tips with Nikas. In sum, the surrounding circumstances here strongly support the veracity of the Nikas-█████ Statements.

Finally, the defendant's argument that the Government "has not disclosed the identity of any other witnesses that corroborate Nikas's statement" is irrelevant. (Def. Mot. at 15). The Government is under no obligation to support the veracity of the statement through witness testimony. As set forth in the Government's motions *in limine*, substantial independent evidence – including Nikas's and others' trading records showing repeated timely, profitable trades in Ariad – provide strong corroboration for Nikas's statement that he received Ariad-related MNPI from

the defendant.  (Gov. Mot. at 13).  The Nikas-███████ Statement is thus more than sufficiently corroborated to merit admission under Rule 804.[2]

 Accordingly, the Court should admit the Nikas-██████ Statement as a statement against interest.[3]

## II. Trading Records of the Tippee Traders is Admissible

 The defendant next moves to exclude evidence of trading by the Tippee Traders who received Araid MNPI either directly or indirectly from Nikas.  The defendant's argument appears to be premised on two points: first, that the Tippee Traders were not co-conspirators of the defendant (Def. Mot. at 16 ("The Indictment does not even allege that Mr. Lavidas knew of the other tippees' existence, or even that he knew facts from which their existence could reasonably be inferred.")); and second, that such evidence is unfairly prejudicial under Rule 403 (*id.* at 18).  The defendant's reliance on these two points is misplaced.

 First, evidence of the Tippee Traders' trading activity is admissible regardless of whether they were co-conspirators, because evidence of such parallel and profitable trading by others who were friends and associates of Nikas has a strong tendency to show that the trading was based on

---

[2] In addition to the Nikas-██████ Statement, and as set forth in the Government's motions *in limine*, the Government also intends to offer the Nikas-██████ and the Nikas-██████ Statements as statements against interest (and as co-conspirator statements).  The Government also expects that ████████ will testify about conversations he had with certain downstream tippees, when he passed Ariad MNPI to them.  Those statements will not be offered for their truth, but instead will be offered to explain why those downstream tippees subsequently purchased Ariad securities.  In the alternative, those conversations, involving discussions of Ariad MNPI by securities traders, also qualify as statements against interest.

[3] The Nikas-██████ Statement is also admissible as a statement of Nikas's then-existing state of mind under F.R.E. 803(3), including statements related to Nikas's "motive, intent, or plan" to trade in Ariad based on MNPI.  The contents of this statement were made before and during the course of the passing of Ariad MNPI and thus meet the criteria for admission under this basis as well.  *See, e.g.*, *United States v. Netschi*, 511 Fed. App'x 58, 61 (2d Cir. 2013) ("[T]o fall within Rule 803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's state of mind during the various fraudulent transactions.").

MNPI rather than, for example independent research.  As set forth in the Government's motions *in limine*, *United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012), is highly instructive in this regard.  In that case, Judge Sullivan admitted evidence of trading by other tippees even though those tippees were not co-conspirators of the defendant, and the Second Circuit affirmed.  (Gov. Mot. at 16).  The defendant does not even cite *Contorinis*, let alone provide any reason why the Court's analysis in *Contorinis* does not support admission here.

Second, the defendant's Rule 403 argument is wrong.  Rule 403 provides that the "Court may exclude relevant evidence if its probative value *is substantially outweighed* by a danger of . . . unfair prejudice."  Fed. R. Evid. 403 (emphasis added).  As an initial matter, the defendant does not even consider the probative value of the evidence of the Tippee Traders.  That evidence is highly probative because it tends to show that an entire network of traders connected to Nikas traded based on MNPI.  That will be important evidence to rebut any claim by the defendant that he did not pass MNPI to Nikas or that Nikas lacked MNPI altogether.  In sum, the probative value of the evidence is high.

Moreover, admitting evidence of trading by the Tippee Traders will cause no unfair prejudice to the defendant.  While the defendant expresses a concern that this evidence will prejudice the defendant by "running up the numbers" (Def. Mot. at 18), that is not a basis for exclusion, and, even if it were, that concern can be mitigated with a simple limiting instruction.  Nor will the evidence of additional trading confuse the jury about defendant's role in the scheme or suggest (contrary to an appropriate limiting instruction) that the defendant is necessarily legally responsible for the additional trades by the Tippee Traders.  Even if there were some slight potential for confusion or unfair prejudice, it would not substantially outweigh the relevance of

this evidence in demonstrating the existence of trading based on MNPI – part of the core allegation in the case.  Accordingly, the evidence should be admitted.

The defendant's reliance on *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944 (S.D.N.Y. 1989), is misplaced.  In that case, the district court, in ruling on the admission of evidence of trading by co-defendants who had been severed from trial, primarily considered whether the trading in question was part of the same or a different conspiracy.  *Id.* at 951-54.  As *Contorinis* subsequently made clear, however, trading evidence may be admitted whether or not the trading is part of the same conspiracy.  692 F.3d at 144.  Moreover, in considering whether the trading evidence in *Marcus Schloss* should be barred by Rule 403, the district court did not consider the ways in which the trading would be probative to the case against the trial defendants and instead appears to have based its ruling on the fact that there had been little or no probative value proffered by the Government.  710 F. Supp. at 954 (explaining that the Government "has no pressing need for evidence of other defendants' acts").  By contrast, in affirming Judge Sullivan's admission of trading evidence in *Contorinis*, the Second Circuit has made clear that such evidence can be considered probative where trading pattern of other tippees "tended to show that the trades of the tippees were more consistent with the sharing of inside information than with independent investment decisions."  692 F.3d at 141.  That description neatly describes the import of the Tippee Traders evidence here.  More broadly, the Second Circuit in *Contorinis* recognized that *Marcus Schloss* does not set forth a blanket rule against the admissibility of trading evidence.  Instead, these questions should be considered on a case by case basis, and for the reasons set forth above and in the Government's motions *in limine*, the Tippee Traders evidence should be admitted here.

Accordingly, the Government should be permitted to introduce evidence of the scope and patterns of the Tippee Traders.

**III.     The Government Does Not Intend to Rely on any Privileged Materials at Trial**

    **A.  Relevant Facts and Discussion**

During the course of the long-term investigation that led to the charges in this and other cases, the Government obtained a search warrant for the Google email account of the defendant (the "Entire Mediterra Account").  Previous members of the prosecution team conducted a targeted search of the contents of the Entire Mediterra Account, identified materials that were responsive to the search warrant, and marked those identified materials (the "Identified Mediterra Account Materials").  After the conclusion of that search, neither the previous members of the prosecution team, nor the current members, reviewed or searched the Entire Mediterra Account, except for those emails that had been selected as the Identified Mediterra Account Materials.  In discovery in this case, the Government has produced to the defendant the Identified Mediterra Account Materials (some or all of which the current prosecution team may be offering into evidence), as well as the Entire Mediterra Account, which has not been reviewed since the conclusion of the search.

When the defendant was arrested in October 2019, law enforcement agents seized his cellular telephone and other electronic devices (the "Seized Devices") pursuant to a warrant.  A search of the Seized Devices materials is ongoing.  Although that search is ongoing, the Government has produced in discovery copies of the Seized Devices that the defense is able to review and electronically search the entirety of these devices.[4]

While the Government does intend to offer into evidence certain of the Identified Mediterra Account Materials, as well as certain of the contents of the Seized Devices, the

---

[4] Prior to the filing of their motions *in limine*, defense counsel did not advise the Government of names, email domains, and law firm names for attorneys whose privileged communications may be on the Seized Devices.

Government does not intend to offer any privileged communications, and therefore the defendant's motion should be denied as moot.

### B. The Defendant Should Disclose Whether He Will Waive the Attorney-Client Privilege Prior to Trial

In the defendant's motions *in limine*, defense counsel notes that the defense "explicitly reserves its rights to waive the privilege . . . at a later date and offer [privileged materials] as it sees fit." Def. Priv. Mot. at 6.  While the defendant may elect to waive any privilege that he holds, the Government respectfully submits that he should make any such election prior to trial and provide any associated discovery, and that if he elects to waive privilege, the Government would be entitled to search for and access any otherwise privileged materials on the Seized Devices that fall within the scope of the waiver.

It is well-settled that "the attorney-client privilege cannot at once be used as a shield and a sword."  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)), and a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.  *See von Bulow*, 828 F.2d at 101-02.  In the context of an assertion of an advice-of-counsel defense, courts have required the defendant make such a decision and provide relevant documents to the Government prior to trial.  *See, e.g.*, *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) ("[A] defendant must clearly elect whether it will raise an advice-of-counsel defense before the close of discovery and in time to allow for such discovery.") (internal quotation marks and citation omitted); *United States v. Hatfield*, No. 06 Cr. 0550, 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010) (holding that if defendants "intend to rely on an advice of counsel defense" they must "disclose all documents concerning the [] . . . defense" including "not only those documents which support [their] defense, but also all

11

documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense"). *See also United States v. Sharma*, 18 Cr. 340 (LGS) (Dkt. No. 140) (order requiring the defendants to inform the Court and the Government prior to trial whether they "plan[ned] to rely on an advice of counsel defense, and if so, provide discovery relating to any advice of counsel defense they intend to advance at trial").

Given the proximity to trial, and in order to avoid unnecessary delays during the proceedings, the Government respectfully requests that the Court direct the defense to advise the Government no later than the final pre-trial conference, whether the defendant will be waiving attorney-client privilege and, if so, to provide any necessary discovery promptly.

## CONCLUSION

For the above reasons, the Court should deny the defendant's motions *in limine*.

Dated:  New York, New York
        December 16, 2019

                                            Respectfully submitted,

                                            AUDREY STRAUSS
                                            United States Attorney
                                            Acting Under Authority Conferred by
                                            28 U.S.C. § 515


                                    By:     _____/s/_____
                                            Richard Cooper
                                            Daniel Tracer
                                            Assistant United States Attorneys
                                            (212) 637-1027/2329