**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,                )

           v.                )

                            )   Case No.: S1 19-cr-00716 (DLC)

GEORGIOS NIKAS et al.,                )

                            )

            Defendants.                )

**DEFENDANT TELEMAQUE LAVIDAS'S**
**<u>MEMORANDUM IN SUPPORT OF HIS REQUESTS TO CHARGE</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND..........................................................................................2

ARGUMENT .................................................................................................................5

I.     This Court Should Instruct the Jury that the Definition of a Scheme to Defraud is the Same Under the Title 15 Securities Fraud, Title 18 Wire Fraud, and Title 18 Securities Fraud Statutes .........................................................5

     1.     The Statutory Language ...........................................................................5

     2.     The Supreme Court's Law on How Insider Trading is a Scheme to Defraud ................................................................................................6

     3.     Title 15 Securities Fraud, Title 18 Wire Fraud, and Title 18 Securities Fraud All Require a Scheme to Defraud ................................11

          a.     Title 15 Securities Fraud ............................................................11

          b.     Title 18 Wire Fraud.....................................................................12

          c.     Title 18 Securities Fraud ............................................................14

     4.     Requiring the Government to Prove Insider Trading Fraud Does Not Add Extra Elements To the Title 18 Counts ....................................16

II.     Other Objections to the Government's Requests to Charge.................................19

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carpenter v. United States*,
    484 U.S. 19 (1987) ................................................................................................. 1, 12, 13

*Chiarella* v. *United States*,
    445 U.S. 222 (1980) .....................................................................................................passim

*Dirks v. SEC*,
    463 U.S. 646 (1983) ................................................................................................. 1, 8, 15

*Neder v. United States*,
    527 U.S. 1 (1999) ......................................................................................................... 11, 14

*Salman v. United States*,
    137 S. Ct. 420 (2016) .................................................................................................. 9, 15

*SEC* v. *Dorozhko*,
    574 F.3d 42 (2d Cir. 2009) ............................................................................................. 18

*Sekhar v. United States*,
    570 U.S. 729 (2013) ........................................................................................................ 14

*United States v. Blaszczak et al.*,
    No. 18-2811-cr (2d Cir., *argued* Nov. 21, 2019) .................................................................1

*United States v. Briggs*,
    939 F.2d 222 (5th Cir. 1991) ......................................................................................... 18

*United States v. Chestman*,
    947 F.2d 551 (2d Cir. 1991) .................................................................................... 13, 15

*United States v. Martoma*,
    894 F.3d 64 (2d Cir. 2017) ............................................................................................. 10

*United States v. Melvin*,
    143 F. Supp. 3d 1354 (N.D. Ga. 2015)............................................................................1

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014) ....................................................................................... 1, 10

*United States v. Rodriguez*,
    140 F.3d 163 (2d Cir. 1998) ......................................................................................... 18

*United States v. Slawson*,
No. 14 Cr. 186, 2014 WL 5804191 (N.D. Ga. 2014) .............................................................1

*Untied States* v. *O'Hagan*,
521 U.S. 642 (1997) ..................................................................................................passim

*Yates v. United States*,
135 S. Ct. 1074 (2015) ........................................................................................................14

STATUTES

15 U.S.C. § 78j..............................................................................................................passim

18 U.S.C. § 1343......................................................................................................6, 11, 12, 18

18 U.S.C. § 1348.............................................................................................................passim

Sarbanes-Oxley Act ............................................................................................................14

Securities Exchange Act of 1934 ........................................................................................20

OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ...........................................................................................5-6, 11, 15, 19

66 DOJ J. Fed. L. & Prac., No. 5 (Oct. 2018) ...................................................................16, 19

Sand, *et al.*, *Model Federal Jury Instructions* (2019) ........................................................18-22

U.S. Attorneys' Bulletin, Vol. 51, No. 3, at 11 (May 2003), *available* at
HTTPS://WWW.JUSTICE.GOV/SITES/DEFAULT/FILES/USAO/LEGACY/2006/02/14/US
AB5103.PDF .....................................................................................................................15-16

## PRELIMINARY STATEMENT

The Requests to Charge submitted by both the Government and the defendant Mr. Telemaque Lavidas are somewhat similar with respect to the law under Title 15 securities fraud;[1] yet differ dramatically regarding what the Government must prove to convict the defendant of wire fraud and Title 18 securities fraud.  The defendant's proposed charges are correct.  When insider trading forms the only basis for wire fraud and Title 18 securities fraud, as it does in this case, the Government must prove the "scheme to defraud" element under each of those two statutes according to the same requirements for a "scheme to defraud" under Title 15 insider trading fraud.  In its proposed jury charges, the Government contends that it may instead prove wire fraud and Title 18 securities fraud by showing theft or conversion, thereby dispensing with the requirements to show an actual fraud.  But the Supreme Court has set forth in detail, over a forty-year line of cases, how a "scheme to defraud" must be proved when the alleged fraud is insider trading.  Each of the three fraud statutes the Government has charged require a scheme to defraud, and the Government cannot avoid that line of Supreme Court law simply because it charged insider trading also as wire fraud and Title 18 securities fraud.  Mr. Lavidas submits this Memorandum in support of his Requests to Charge which provide that the first element of wire fraud, Title 18 securities fraud, and Title 15 securities fraud – namely a "scheme to defraud" – be instructed and proved in the same manner.

---

[1] The defendant does have objections to the Government's description of what it must prove to show the first element, a "scheme to defraud," under Title 15 insider trading securities fraud. The defendant discusses some of those objections below and reserves any others for the charge conference in this matter.

## FACTUAL BACKGROUND

The Superseding Indictment charges Telemaque Lavidas with conspiracy, securities fraud, and wire fraud in connection with his alleged participation in an insider trading scheme involving the securities of Ariad Pharmaceuticals ("Ariad"). The Superseding Indictment alleges that Mr. Lavidas's father, a board member at Ariad, "tipped" or disclosed material, non-public information ("MNPI") in breach of a duty of trust and confidence to Mr. Lavidas, who then supplied George Nikas with the information knowing that he would trade on it.

Both the Government and the defendant agree that Title 15 securities fraud, Title 18 securities fraud, and wire fraud all require the Government to prove the same first two elements: 1) a scheme or artifice to defraud; and 2) that the defendant knowingly, willfully and with intent to defraud joined that scheme. Gov. Requests to Charge at 8-9, 19, 21; Def.'s Requests to Charge at 23, 30. The statutes differ slightly on their third elements, although not in ways that are important to this case: Title 15 securities fraud requires the use of a national securities exchange; Title 18 securities fraud requires connection to the purchase or sale of a security; and Title 18 wire fraud requires the use of interstate wires. *Id.* Accordingly, all three statutes require first and foremost that the Government prove a scheme or artifice to defraud.

The Government's proposed jury charges for Title 15 securities fraud (Counts Three through Five) recognize that, to prove the first element, a "scheme to defraud," the Government must prove, beyond a reasonable doubt, the following:

> <u>One</u>, that the defendant's father, Anthanasios Lavidas owed a duty of trust and confidence to Ariad;
> <u>Two</u>, that the defendant's father violated that duty of trust and confidence by disclosing material, non-public information to the defendant relating to Ariad;
> <u>Three</u>, that the defendant's father anticipated that the defendant would use the material, non-public information to trade securities or cause others to trade securities and that the defendant did, in fact, trade securities or cause others to trade securities based on this information;

> Four, that the defendant's father, in providing this information to the defendant, anticipated receiving a personal benefit of some kind in return and that the defendant, in providing this information to Nikas, anticipated receiving a personal benefit of some kind in return; and
>
> Five, that the defendant knew that his father disclosed the information in breach of a duty of trust and confidence and in anticipation of a personal benefit.

Gov. Requests to Charge at 10-11.[2]  The Government's Requests to Charge then go on to explain the concepts of breach of a duty, materiality, non-public information, trading on the basis of MNPI, personal benefit and knowledge thereof, and knowledge that Nikas would trade on the information.  *Id.* at 11-13.[3]

However, the Government's proposed jury charges for wire fraud (Count Six), notwithstanding that this count is based on the exact same alleged insider trading conduct noted above (indeed Count Six incorporates the entire alleged conspiracy to violate Title 15 securities

---

[2] The defendant's formulation on scheme to defraud is different because, among other things, it focuses much more on what the Government must prove with respect to the defendant.  Thus the defendant proposes the following and objects to the Government's formulation above:

> One, that Mr. Lavidas's father violated that duty of trust and confidence to Ariad by disclosing material, non-public information relating to Ariad to his son, the defendant;
> Two, that the defendant understood that when his father provided material non-public information to him about Ariad, his father was doing so in violation of a duty of trust and confidence to Ariad;
> Three, that the defendant intentionally provided that material non-public information to Nikas anticipating that Nikas would use it to trade securities;
> Four, that Nikas did, in fact, trade securities based on this information;
> Fifth, that if his father provided the material non-public information to the defendant in breach of a duty, he did so in anticipation of receiving a personal benefit, rather than acting for a legitimate purpose; and
> Sixth, that if the defendant intentionally provided the material non-public information to Nikas, he also anticipated receiving a personal benefit for doing so.

Def.'s Request to Charge at 25.

[3] The defendant's explanation of those terms differs somewhat from the Government's and is a more correct formulation for reasons that will be addressed at the charge conference.  Def.'s Requests to Charge at 25-27.

3

fraud described in Count One by reference), maintain that the Government need not prove those same facts to show Count Six's scheme to defraud, and can prove that element of wire fraud essentially by showing conduct amounting to theft and intent to steal:

> [F]or the purposes of the wire fraud statute, depriving another of money or property by means of false or fraudulent pretenses, representations, or promises includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or property entrusted to one's care by another. … To prove that the defendant acted with specific intent to defraud, the Government must prove that he acted with the intent to deprive Ariad of something of value – for example, material, non-public information – by trading on the basis of that information or converting it to his own use by tipping others with that information for use in their trading.

*Id.* at 19.

The Government's proposed jury charges for Title 18 securities fraud (Count Seven) are similarly flawed.  There are no circuit court pattern jury instructions for insider trading under 18 U.S.C. § 1348.  Citing only two district court cases from the Northern District of Georgia for support,[4] the Government maintains that it can likewise prove a "scheme to defraud" and "criminal intent," in an insider trading case under Title 18 securities fraud by proving essentially theft or conversion, and an intent to deprive Ariad of property:

> [Y]ou may find that the defendant participated in a scheme to defraud if you find that he participated in a scheme to embezzle or convert confidential information from Ariad by wrongfully taking that information and transferring it, or converting it to his own use, or the use of another person, for the purpose of buying or selling, or causing others to buy or sell, securities on the basis of that information. … To prove that the defendant acted with specific intent to defraud for Count Seven, the Government must prove that he acted with the intent to deprive Ariad of something of value – for example, confidential material, non-

---

[4] The Government relies on *United States v. Melvin*, 143 F. Supp. 3d 1354 (N.D. Ga. 2015) and *United States v. Slawson*, No. 14 Cr. 186, 2014 WL 5804191 (N.D. Ga. 2014).  These two cases have no precedential value here and are contrary to the Supreme Court cases on how insider trading is a fraud.  In any event, those decisions only addressed the sufficiency of the indictment, which simply tracked the statute, to allege a fraudulent scheme under Section 1348.  Both defendants were acquitted at trial, so those district court decisions were never appealed.

public information – by trading on the basis of that information or converting it to his own use by tipping others with that information for use in their trading.

*Id.* at 22-23.[5]

In contrast, the jury charges submitted by the defendant recognize that the jury should be given the same instructions about what the Government must show to prove a "scheme to defraud" under all three fraud statutes where the alleged fraud is insider trading. Def.'s Requests to Charge at 23-31.

## ARGUMENT

**I.    This Court Should Instruct the Jury that the Definition of a Scheme to Defraud is the Same Under the Title 15 Securities Fraud, Title 18 Wire Fraud, and Title 18 Securities Fraud Statutes**

**1.    The Statutory Language**

Traditional Title 15 Securities Fraud is defined under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and prohibits the "use in connection with the purchase or sale of an security … [of] any manipulative device or contrivance in contravention of such rules and regulations as the Commission may prescribe." Pursuant to this section, the SEC promulgated Rule 10b-5, which provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud [or] (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of a security.

---

[5] The Government's description of what it must show to prove Count Two, which is an alleged conspiracy to commit wire fraud and Title 18 securities fraud, contains a similar flaw, when it refers to "converting that information to the defendant's own use in connection with the purchase or sale of securities." Gov. Requests to Charge at 31.

17 C.F.R. § 240.10b-5.  The United States Supreme Court has explained that this is the operative statutory language that prohibits securities fraud and insider trading.  *See Chiarella* v. *United States*, 445 U.S. 222, 225-26 (1980).

The Wire Fraud Statute provides: "Whoever, having devised or intending to devise, any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" uses interstate wires to carry out that scheme, shall be guilty of a crime.  18 U.S.C. § 1343.

The Title 18 Securities Fraud statute, enacted in 2002, provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud any person in connection with [any covered security] or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises any money or property in connection with the purchase or sale of [any covered security]" shall be guilty of a crime. 18 U.S.C. § 1348.

In other words, all three statutes prohibit a scheme to defraud, as acknowledged by both parties' Requests to Charge.  The Government, however, in its Request to Charge, requests that this Court charge the jury that what it must show to prove a "scheme to defraud" under Title 15 securities fraud is very different from what it must prove to show a "scheme to defraud" under wire fraud and Title 18 securities fraud.  The Government is wrong.  This Court should instruct the jury that in order to prove the first element, a scheme to defraud, in an insider trading case brought under all three of these statutes, the Government must prove the same thing.

## 2.  The Supreme Court's Law on How Insider Trading is a Scheme to Defraud

The Supreme Court first addressed whether insider trading qualifies as "scheme to defraud" in *Chiarella*.  In that case, in evaluating what is meant by a "scheme to defraud" under federal securities law Section 10(b), the Court explained: "At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent.  But one who

fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so." 445 U.S. at 227-28.  In *Chiarella*, the defendant had made no representation or misrepresentation to the parties with whom he traded securities.  *Id.* at 226 ("This case concerns the legal effect of the petitioner's silence.").  Moreover, he was not an insider who owed a fiduciary duty to the shareholders of the company to disclose to them any material informational advantage he had before trading with them.  Rather, he was a financial printer who had learned about a forthcoming corporate acquisition and made profitable trades on the basis of that information.[6]  The Supreme Court held that since the printer had made no misrepresentation, and since he was not an insider who had a heightened duty to the shareholders of the company, he could not be convicted of fraud.  *Id.*

The Court went on to explain that, on the other hand, when a corporate insider trades on the basis of inside information, he or she has a heightened or fiduciary duty to the shareholders of the company not to take advantage of them, and therefore is guilty of a fraud by failing to tell them the inside information he or she has (*i.e.* is guilty through "silence"), because an insider has a fiduciary duty to inform shareholders about material information he knows before trading with them.  *Chiarella*, 445 U.S. at 228.  Thus, the *Chiarella* Court established what has come to be known as the "Classical Theory" of insider trading: "such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction.  Application of a duty to disclose prior to trading guarantees that corporate insiders, who have an obligation to place the shareholder's welfare before their own, will not benefit personally

---

[6] The Supreme Court in *Chiarella* explicitly declined to consider whether the printer could be guilty under what is now called the "Misappropriation Theory" of insider trading because the jury had not been instructed on that theory.  *Id.* 235-236.  As will be discussed below, the Supreme Court later reached this issue and endorsed this theory in *Untied States* v. *O'Hagan*, 521 U.S. 642 (1997).

through fraudulent use of material, non-public information." *Id.* at 230.  In other words, the *Chiarella* court explained how, even in the absence of a misrepresentation that is an element of common law fraud, there could be fraud when one has a fiduciary duty to those with whom one is trading (namely a corporate officer trading with shareholders).

Three years later in *Dirks v. SEC*, the Supreme Court held that not only is a corporate insider guilty of insider trading in the scenario discussed above, but also those who knowingly receive tips from corporate insiders in violation of a fiduciary duty inherit that duty from the insider and can also be guilty of insider trading: "Not only are insiders forbidden by their fiduciary relationship from personally using undisclosed corporate information to their advantage, but they may not give such information to an outsider for the same improper purpose of exploiting the information for their personal gain. … Thus the tippee's duty to disclose or abstain is derivative from that of the insider's duty."  463 U.S. 646, 659-60 (1983) (citation omitted).  The *Dirks* court further held that the test for determining whether the insider breached his fiduciary duty by tipping "is whether the insider personally will benefit, directly or indirectly, from his disclosure.  Absent some personal gain, there has been no breach of duty."  *Id.* at 662.  And the tippee in turn is only liable when he knows of that breach:  "Thus, a tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has a been a breach."  *Id.* at 660.[7]

---

[7]  While appropriate in a civil case brought by the SEC (which *Dirks* was), "should know" does not apply to a criminal insider trading case given the requirement that the defendant acted knowingly, willfully and intentionally.

Subsequently, the Supreme Court in *United States v. O'Hagan*, 521 U.S. 642 (1997),

addressed the question that it explicitly declined to reach in *Chiarella*, 445 U.S. at 235-36,

namely whether it is a "scheme to defraud" under Section 10(b) if a person who is not an insider

at a company, but has a separate duty to keep certain information confidential, nonetheless trades

on that information.  The *O'Hagan* court held that it is, because the outsider who has promised to

keep certain information confidential violates that duty of trust and confidence by trading on that

information, similar to the breach of a fiduciary duty by the corporate insider.  Accordingly the

Supreme Court held in *O'Hagan* that "silence" by the person who misappropriates information

in violation of a duty of trust can also be fraud:  the theory "outlaws trading based on nonpublic

information by a corporate 'outsider' in a breach of a duty owed...to the source of the

information," not necessarily to the corporation whose stocks are traded.  521 U.S. at 652-53.

More recently, the Supreme Court in *Salman v. United States*, reiterated that Title 15 "prohibit[s]

undisclosed trading on inside corporate information by individuals who are under a duty of trust

and confidence that prohibits them from secretly using such information for their personal

advantage."  137 S. Ct. 420, 423 (2016).

Following the reasoning in *Dirks*, *Salman* also clarified that the tipper's breach of duty

alone is insufficient to convict a tippee.  A tippee is exposed to liability only if (1) "the tipper

breached a fiduciary duty by disclosing the information" and (2) the tippee "acquire[d] the

tipper's duty."  *Id.* The tippee only acquires a duty of trust and confidence and breaches it

himself when he trades (or passes it to others who he knows will trade) with full knowledge that

the information was improperly disclosed.  *Id.* at 428.  This means that the Government must

prove that the tippee knew that the tipper received a personal benefit in order for the tippee to be

found guilty of insider trading.  *United States v. Newman*, 773 F.3d 438, 447-50 (2d Cir. 2014).[8] The Second Circuit recently reaffirmed that "the important teaching of *Newman*" is that the "tippee must be aware…that the tipper received a personal benefit."  *United States v. Martoma*, 894 F.3d 64, 76 (2d Cir. 2017).

Accordingly, forty years of Supreme Court precedent has explained why, even in the absence of a typical common law fraud, insider trading can be a "scheme to defraud."  In sum, the Supreme Court has held that to prove fraud through insider trading, the Government must prove there was a fiduciary or other duty of trust and confidence, a breach of that duty in exchange for a personal benefit, that a tippee had knowledge of that breach (in order to inherit it), and that the tippee either traded on the basis of material non-public information himself, or tipped others knowing that they would trade on that information.  Without such proof, there is no fraud.  The Government in this case acknowledges that it must prove these things in order to show a scheme to defraud under Title 15 or 10(b) securities fraud.  *See* Gov. Requests to Charge at 10-14.  But then, when it comes to proving a "scheme to defraud" under the wire fraud statute and the more recently enacted Title 18 securities fraud statute, the Government's Requests to Charge simply dispense with this carefully crafted law, and state that the defendant can be found guilty of fraud if it proves theft or embezzlement of confidential information.  The Government is wrong.  The jury should be instructed that in order to prove fraud under any of these statutes, the same requirements of a "scheme to defraud" must be met.

---

[8] *Salman* abrogated *Newman*'s holding that the personal benefit must be pecuniary or similar but left undisturbed the requirement that the tippee have knowledge of the tipper's personal benefit. 137 St. Ct. at 425 n.1.

**3.     Title 15 Securities Fraud, Title 18 Wire Fraud, and Title 18 Securities Fraud All Require a Scheme to Defraud**

The first reason this Court should reject the Government's proposal to define a "scheme to defraud" differently under each of these statutes is that there is nothing in the statutory text to support drawing the distinction between these statutes that the Government proposes.  All three fraudulent offenses charged in this case – Title 15 securities fraud, Title 18 wire fraud, and Title 18 securities fraud – require proof, beyond a reasonable doubt, of a scheme or artifice to defraud.  The only material differences between the statutes are the non-fraud elements such as the requirement that the fraud must be "in connection with the purchase or sale of a security," 15 U.S.C. §78j, use the interstate wires, 18 U.S.C. §1343, or be "in connection with the purchase or sale of any…security," 18 U.S.C. § 1348.  Nothing in the statutory text of the wire fraud statute or the Title 18 securities fraud statute suggests that the "fraud" described should be given a different meaning than it has been given in the Title 15 securities fraud context.  In fact, "[i]t is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under…the common law, a court must infer, unless the statute dictates otherwise, that Congress means to incorporate the established meaning of those terms."  *Neder v. United States*, 527 U.S. 1, 21 (1999) (internal quotations omitted).

**a.     Title 15 Securities Fraud**

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j, prohibits the use "in connection with the purchase or sale of any security… [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  Pursuant to this section, the SEC promulgated Rule 10b-5, which prohibits employing "any device, scheme or artifice to defraud…in connection with the purchase or sale of any security."  17 C.F.R. §240.10b-5(a), (c); *Chiarella*, 445 U.S. at 225-26.

11

As the Government acknowledges in its Requests to Charge at pages 10-14, in the context of insider trading, proof of a scheme to defraud requires proof of the factors discussed above that have been carefully crafted by the Supreme Court.

      **b.**     **Title 18 Wire Fraud**

Like Section 10(b), the wire fraud statute, 18 U.S.C. §1343, requires a "scheme or artifice to defraud." Specifically, the wire fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire..." 18 U.S.C. §1343. There is no justification in this statutory text to treat a wire fraud "scheme to defraud" any differently from Section 10(b) "scheme to defraud." In the context of insider trading, with respect to both statutes, there is no common law misrepresentation by the tipper or tippee, and the approach of *Chiarella, Dirks* and *O'Hagan* is needed to establish fraud. *See e.g.*, *Chiarella*, 445 U.S. at 227-28 ("At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so.").

The Supreme Court's decisions in *Carpenter v. United States*, 484 U.S. 19 (1987) and *O'Hagan* confirm that fraud does not mean something different in Section 1343 than it does in Section 10(b) under Title 15. *O'Hagan*, 521 U.S. at 654 (quoting *Carpenter*, 484 U.S. at 27) (noting that wire fraud and Title 15 fraud for alleged insider trading are "fraud of the same species"). In *Carpenter*, the government charged a tipping and trading scheme as "mail and wire fraud." 484 U.S. at 22-24. The tipper, a Wall Street Journal reporter, disclosed the contents of articles to traders before they were published, and benefitted personally by sharing profits from the trading. *Id.* at 27. The Court affirmed the convictions based on common law principles governing the "employee[s]'s fiduciary obligation to protect confidential information obtained

during the course of employment." *Id.* Under these "well-established" principles, the Court held that the tipper "knowingly breached a duty" by tipping "for his own personal benefit" and misappropriating information "for his own use." *Id.* at 23-24, 27-28.[9] In other words, the Court relied on the same principles from *Chiarella* and *Dirks* in evaluating insider trading charged under the wire fraud statute.

The Government in this case appears to rely on a snippet of language, taken out of context from *Carpenter*, 484 U.S. at 27, for its proposed jury charge on wire fraud. The proposed charge states that wire fraud can be proven by showing "an act of embezzlement, which is the fraudulent appropriation to one's own use of the money or property entrusted to one's care by another." Gov. Requests to Charge at 19. This is wrong. As *O'Hagan* recognized, the "embezzlement" noted in *Carpenter* was only "akin to fraud" because the Wall Street Journal reporter revealed his employer's confidential information "in violation of a fiduciary duty." *O'Hagan*, 521 U.S. at 654. In fact, the government's own Supreme Court brief in *O'Hagan* acknowledged that "[i]n *Carpenter*… [the Supreme] Court held that an employee's deceptive misuse of confidential business information *for personal gain* in securities trading violated the mail fraud statute." The government's brief further acknowledged that "the task of identifying those relationships in which the improper use of confidential information for personal gain constitutes a deceptive practice under Section 10(b)…parallels the similar inquiry under the mail fraud statute." Brief for Petitioner-Appellant at 24, *O'Hagan*, No. 96–842, 1997 WL 86306, at *24. And the Second Circuit so held in *United States v. Chestman*, 947 F.2d 551, 571

---

[9] The *Carpenter* court was divided 4-4 on whether misappropriation satisfied Section 10(b)'s additional requirement that fraudulent conduct be "in connect with" the purchase or sale of a security. *Id.* at 24. As noted above, the Supreme Court resolved that issue in *O'Hagan*. 521 U.S. at 653-59.

(2d Cir. 1991) ("The fortunes of" mail/wire "fraud convictions are tied closely to…securities fraud convictions" in insider trading cases).

### c.    Title 18 Securities Fraud

Under the same common-law principles, breach of duty, personal benefit, and knowledge requirements likewise apply to Section 1348.  Title 18 securities fraud makes it a crime to knowingly execute a "scheme or artifice (1) to defraud any person in connection with" covered securities or "(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of" covered securities.  18 U.S.C. § 1348.  The statute was enacted as part of the Sarbanes-Oxley Act to address accounting fraud, not to change the well-settled rules that govern insider trading cases. *See Yates v. United States*, 135 S. Ct. 1074, 1081 (2015) (statute "prompted by the exposure of Enron's massive accounting fraud").

The statutory text affords no basis for concluding that Congress intended to alter the established meaning of "scheme or artifice to defraud" in the insider trading context.  Just the opposite.  Congress enacted Section 1348 in 2002, long after the same language in Section 10(b) had been definitively construed by the Supreme Court to require proof of a breach of a duty, a benefit to the tipper, knowledge on the part of the tippee, trading on the basis of material non-public information, and the other factors that the Government fully acknowledges it must prove under Title 15.  Identical language in closely-related statutes should be interpreted *in pari materia*, and the various fraud statutes have indeed been so interpreted.  *See*, *e.g.*, *Neder*, 527 U.S. at 20; *Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("Where Congress borrows terms of art in which are accumulated…legal tradition and meaning…it presumably knows and adopts the cluster of ideas that were attached to them.").  Accordingly, just as "[t]he fortunes of"

14

mail/wire "fraud convictions are tied closely to…securities fraud convictions" in insider trading cases, *Chestman*, 947 F.2d 551 at 571, the same must be true for Section 1348.

Nor would a different result under Section 1348 make sense.  As noted above, what makes insider trading fraudulent is "deception through nondisclosure," and under the common law, the mail/wire fraud statute, and Section 10(b), nondisclosure is not fraudulent absent a duty, a breach of fiduciary duty for personal benefit, knowledge of the personal benefit, etc. *Chiarella*, 445 U.S. at 230; *Dirks*, 463 U.S. at 659; *O'Hagan*, 521 U.S. at 654-55; *Salmon*, 137 S. Ct. at 423.  To hold otherwise under Section 1348 would "depart[] radically from… established doctrine" without any justification, let alone "explicit evidence of congressional intent" anywhere in the statutory language or otherwise.  *Chiarella*, 445 U.S. at 233.

Furthermore, Section 1348's text is actually narrower in scope than Section 10(b) and Rule 10b-5, and thus cannot justify broadening insider trading liability by doing away with the duty, personal benefit, knowledge, trading on the basis in MNPI, etc. requirements set forth by forty years of Supreme Court precedent.  Section 1348 prohibits a "scheme or artifice to defraud," or a "scheme or artifice to obtain" property "by means of false" pretenses.  Rule 10b-5(a) alone covers more ground than that; as it applies to any "*device*, scheme, or artifice to defraud."  17 C.F.R. § 240.10b-5(a) (emphasis added).  And Rule 10b-5(c) goes even further, prohibiting, "*any act, practice, or course of business* which *operates or would operate as a fraud or deceit* upon any person."  17 C.F.R. § 240.10b-5(c) (emphasis added).  Nothing about Section 1348 suggests that it was intended to upend or go beyond controlling precedent establishing the features of insider trading.  Indeed, the Government's own interpretation of Section 1348 after the statute was enacted confirms that Congress did not eliminate the core requirements of insider trading liability.  A bulletin issued by the Department of Justice in May 2003 describes the

technical changes wrought by Section 1348 in certain securities cases, but nowhere does it indicate that it changed what must be proved for insider trading fraud.[10]  It appears that only much more recently, in 2018, the DOJ issued a publication stating that federal prosecutors should use Section 1348 to avoid Title 15 precedent that is "unhelpful to the government."  66 DOJ J. Fed. L. & Prac., No. 5, at 120-21 (Oct. 2018).  The courts should not condone this open attempt by the Government to avoid precedent, unhelpful to it or not.

> ### 4.  Requiring the Government to Prove Insider Trading Fraud Does Not Add Extra Elements To the Title 18 Counts

The Government may argue that the defendant is seeking to "add" elements to the statutes that do not appear in the text.  This is incorrect.  Rather, the defendant is requesting that, when defining a "scheme to defraud" under all three statutes, the Court should give the jury the same instruction.  As an initial matter, fiduciary duty, breach of duty for a personal benefit, tippee knowledge, trading on the basis of material non-public information, etc. do not appear in the text of Section 15 either, and yet the Government fully acknowledges it must prove them for that statute.  Moreover, it is not that these are additional "elements" of the crime, but rather that insider trading fraud (the only fraud charged here, since the Government does not and cannot allege any common law or more traditional misrepresentation by the defendant) requires that the "scheme to defraud" element in all three statutes can be proven only by satisfying these requirements from years of Supreme Court precedent.

If this Court instructs the jury that it can convict Mr. Lavidas of wire fraud if he merely "convert[ed] to his own use" confidential information, Gov. Requests to Charge at 19, without the requirements set forth in *Chiarella, Dirks,* and *O'Hagan,* it will be allowing him to be

---

[10] U.S. Attorneys' Bulletin, Vol. 51, No. 3, at 11 (May 2003), *available* at https://www.justice.gov/sites/default/files/usao/legacy/2006/02/14/usab5103.pdf

convicted of wire fraud without any fraud proven.  The same is true if the Court instructs the jury

that it can convict Mr. Lavidas of Title 18 securities fraud if it finds that he "embezzled or

converted Ariad's confidential information to his own use or the use of someone else," Gov.

Requests to Charge at 22.  As discussed above, the whole purpose of those Supreme Court cases

was to set forth how trading in the securities markets without making any affirmative common

law misrepresentation can still amount to fraud.[11]  The Government cannot ignore that body of

law.  It must still prove "fraud," and *Chiarella, Dirks*, and *O'Hagan* instruct precisely how that

must done when it comes to insider trading.

   The Government's Requests to Charge on wire fraud and Title 18 securities fraud

repeatedly attempt to equate theft with "fraud."  In its definition of a wire fraud "scheme to

defraud," the Government proposes the following language: "the defendant participated in a

scheme to defraud Ariad of confidential information by obtaining that confidential information

and then converting it to his own use…[and] the Government must prove that he acted with

intent to deprive Ariad of something of value."  Gov. Request to Charge at 19.  With respect to

Title 18 securities fraud, the Government proposes the following language:  "I instruct you that

you may find that the defendant participated in a scheme to defraud if you find that he

participated in a scheme to embezzle or convert confidential information….To prove that the

---

[11] Such an instruction would assume just the kind of general duty of all market participants to forgo actions based on confidential information that the Supreme Court rejected in *Chiarella*. 445 U.S. at 235.  Similarly, if the Government's proposed charges are given without any requirement that the jury also find a breach of duty for personal benefit, those charges will run afoul of *Dirks* and *O'Hagan*.  *Dirks*, 463 U.S. at 662 (disclosure without personal benefit is not enough); *O'Hagan*, 521 U.S. at 655 (same in misappropriation case).  Finally, if the Government's proposed charges for wire fraud and Title 18 securities fraud are given without a requirement that the jury also find knowledge of a personal benefit, the instructions would violate *Newman*, 773 F.3d 447-51 ("[A] tippee's knowledge of the insider's breach necessarily requires knowledge that the insider disclosed confidential information in exchange for personal benefit.").

defendant acted with specific intent to defraud for Count Seven, the Government must prove that he acted with the intent to deprive Ariad of something of value – for example confidential material, non-public information…" *Id.* at 22-23.  These instructions are describing simple acts of theft.  But the law is clear that simple theft is not fraud.  *See* Sand *et al.*, *Model Federal Jury Instructions*, Instr. 44-4 (cmt.) (citations omitted) (it is "well-accepted that a scheme to defraud must include some false statement, representation, or promise."); *see also United States v. Rodriguez*, 140 F.3d 163, 167-68 (2d Cir. 1998) ("A course of conduct consisting of simply depositing checks into a bank account where the depositor knows that he/she is not entitled to the funds does not alone constitute false or fraudulent pretenses or representations."); *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991) ("The mere act of ordering or causing to be ordered a wire transfer does not of itself necessarily constitute a misrepresentation in all circumstances. To hold otherwise would effectively eliminate the requirement that the Government prove misrepresentation….We will not lightly excise an essential element from a criminal statute."); *SEC* v. *Dorozhko*, 574 F.3d 42, 49-51 (2d Cir. 2009) (holding that hacking material non-public information from a computer system in order to trade on it is only Section 10(b) securities fraud if it involves deception; mere theft is not fraud).

In short, the Government cannot equate theft with fraud and dispense with the well-developed body of law that sets forth exactly how trading or tipping on inside information amounts to fraud.  No appellate court has condoned the Government's view, [12] and nothing in the statutory text of 18 U.S.C. § 1343 or § 1348 provides a basis to conclude that Congress intended

---

[12] The issue whether a district court committed reversible error in an insider trading case on instructions similar to those proposed by the Government in this case is currently before the United States Court of Appeals for the Second Circuit. *United States v. Blaszczak et al.*, No. 18-2811-cr (2d Cir., *argued* Nov. 21, 2019).

to alter the established meaning of a "scheme or artifice to defraud" in the insider trading context.  Allowing the Government to do so would wipe out decades of carefully crafted rules on what constitutes fraud in insider trading cases.  Indeed, the Government would likely never again charge insider trading under Title 15 if it could charge the exact same conduct under Title 18 and thereby obviate the need to follow precedent that is "unhelpful to the government."  66 DOJ J. Fed. L. & Prac., No. 5, at 120-21.  And, if the Government's view prevails, it would result in the DOJ being able to prosecute insider trading criminally in instances where the SEC could not proceed civilly, since the SEC only has authority to sue under Section 10(b) and Rule 10b-5. Such an outcome illustrates that the Government cannot expand insider trading liability simply by charging it under other statutes that have the same "scheme to defraud" element. Accordingly, this Court should instruct the jury that that term means the same thing under all three statutes charged in this case.

## II.     Other Objections to the Government's Requests to Charge

While the defendant reserves his rights to object to other aspects of the charge in this case (including at a charge conference), the defendant notes at this time the following additional objections to the Government's Request to Charge:

1.     With respect to the Government's Request No. 5, "Title 15 Securities Fraud," "The First Element: The Insider Trading Scheme" (Gov. Requests to Charge at 11), the Government does not adequately explain that defendant must have knowingly, willfully and intentionally given the allegedly material, non-public information to Georgios Nikas so that Nikas could trade on it.  *See* Sand *et al.*, Modern Federal Jury Instructions, Instr. 57-14, 57-14A, 57-20 (2019).

2.     With respect to the Government's Request No. 6, "Securities Fraud," "The Second Element: State of Mind" (Gov. Requests to Charge at 16-17), the Government states that

"[i]ntent to defraud in the context of this alleged insider trading scheme means to act with the intent to disclose or receive confidential information obtained from Ariad without its knowledge or approval." *Id.* at 16.  Intent to defraud, however, requires more than acting with the intent to disclose information.  Rather, intent to defraud, in the context of securities fraud, means to act knowingly and with the intent to deceive.  *See* Sand *et al.*, Federal Model Jury Instructions, Instr. 3A-4, 57-24 (2019).  Therefore, the Government's instruction on intent to defraud is inadequate.  In addition, the Government's state of mind instruction does not adequately address the concept that, if defendant did not knowingly, willfully, and intentionally give material, non-public information to Nikas so that he could trade on it, then the defendant is not guilty of this offense.  *See* Gov. Requests to Charge at 17.

3.      With respect to the Government's Request No. 12 concerning Count Seven, "Title 18 Securities Fraud," "The Third Element: Nexus to the Purchase or Sale of Securities" (Gov. Requests to Charge at 24), the Government requests that the Court instruct the jury as follows: "I instruct you as a matter of law that the Ariad transactions charged in Count Seven are, if established beyond a reasonable doubt, purchases or sales of securities of a company with a class of securities registered under the Securities Exchange Act of 1934."  Count Seven of the Superseding Indictment does identify a single specific transaction, therefore it is not possible for the Court to instruct the jury that the securities at issue are registered under the 34 Act.  Indeed, there are many transactions alleged in this case that took place outside the United States and that involve instruments such as "contracts for difference" that are not clearly covered securities under the 34 Act.

4.      With respect to the Government's Request No. 13, "Aiding and Abetting" (Gov. Requests to Charge at 25-27), the Government's request on aiding and abetting differs

significantly from Sand's Model Federal Jury Instructions.  *See* Sand *et al.*, *Model Federal Jury Instructions*, Instr. 11-2 (2019).  For example, the Government omits the instructions from Sand that: (i) "Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place;" and (ii) "One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of the crime is not an aider and abettor."  *Id.*  The Government also omits Sand's explanations on knowingly and willfully in this Section.  *Id.*

5.     With respect to the Government's Request No. 14 concerning Count One, "Conspiracy to Commit Securities Fraud" (Gov. Requests to Charge at 28-30), the Government states that "[t]he Indictment charges that this conspiracy lasted from approximately July 2013 to 2016."  *Id.* at 29.  This is incorrect.  Count One of the Superseding Indictment alleges a conspiracy only from 2013 to 2015.

6.     With respect to the Government's Request No. 16, "Conscious Avoidance" (Gov. Requests to Charge at 34), the defendant objects to the entirety of this requested charge.  There is no evidence in this case that the defendant "took action to avoid learning the truth" of any fact. *See id.*  There must be some evidence of actual conscious avoidance or an effort on the part of the defendant to "put his head in the sand" in order to instruct the jury on this requested charge. Otherwise, giving a conscious avoidance charge will confuse the jury, and potentially turn the "knowingly" standard that the Government must prove beyond a reasonable doubt, into a recklessness standard.  Since there is no such evidence of conscious avoidance in this case, this requested charge should be rejected in its entirety.

7.     With respect to the Government's Request No. 21, "Law Enforcement and Government Employee Witnesses" (Gov. Requests to Charge at 39), the Government omits part

of Sand's Model Federal Jury Instructions with respect to this charge. *See* Sand *et al.*, *Model Federal Jury Instructions*, Instr. 7-16 (2019). Sand also includes the following: "At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case." *Id.* This part of the model instruction is included in Defendant's Requests to Charge because it appropriately addresses the issue of potential bias by law enforcement or Government witnesses. *See* Def.'s Requests to Charge at 10. It therefore should be included in any instructions given to the jury.

The Defendant respectfully reserves the right to raise additional objections at a charging conference and based on the evidence that is adduced at trial.

## CONCLUSION

For all of the aforementioned reasons, Mr. Lavidas respectfully requests that the Court adopt his Requests to Charge at the conclusion of the trial and reject the Government's Requests to Charge.

Dated: December 30, 2019                    Respectfully submitted,

                                            DECHERT LLP

                                            By: /s/ Jonathan R. Streeter
                                            Jonathan R. Streeter
                                            Jillian Taylor
                                            Three Bryant Park
                                            1095 Avenue of the Americas
                                            New York, New York 10036-6797
                                            Jonathan.streeter@dechert.com
                                            Tel.: (212) 698-3826
                                            Fax: (212) 314-0046

                                            Eric H. Sussman
                                            Jennifer L. Achilles
                                            599 Lexington Ave., Floor 22
                                            New York, NY 10022
                                            Telephone: (212) 521-5400
                                            esussman@reedsmith.com
                                            jachilles@reedsmith.com

                                            *Attorneys for Defendant*
                                            *Telemaque Lavidas*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 30 day of December 2019, I electronically filed Defendant Telemaque Lavidas's Memorandum in Support of His Requests to Charge using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

<u>*/s/ Jonathan R. Streeter*</u>
Jonathan R. Streeter

*Attorney for Defendant Telemaque Lavidas*