UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
UNITED STATES OF AMERICA,                :         19cr716 (DLC)
                                         :
            -v-                          :         OPINION AND ORDER
                                         :
GEORGIOS NIKAS, a/k/a "George Nikas,"    :
and TELEMAQUE LAVIDAS,                    :
                       Defendants.       :
                                         :
----------------------------------------X

APPEARANCES:

For the Government:
Daniel M. Tracer
Richard A. Cooper
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-1087

For defendant Lavidas:
Jonathan R. Streeter
Siobham M. Namazi
Dechert LLP
1095 Ave. of the Americas
New York, NY 10036
(212) 314-3826

Eric H. Sussman
Jennifer Achilles
Reed Smith LLP
10 S. Wacker Drive, Ste. 4000
Chicago, IL 60606
(312) 207-2504

DENISE COTE, District Judge:

     On October 7, 2019, defendant Telemaque Lavidas ("Lavidas")

was indicted for conspiracy, securities fraud, and wire fraud in

connection with his alleged participation in an insider trading

scheme involving the securities of Ariad Pharmaceuticals, Inc. ("Ariad"). The indictment charges Lavidas with committing these crimes with his close friend Georgios Nikas ("Nikas").[1] Nikas, a Greek citizen, remains at large.

Through a motion in limine filed on December 11, 2019, Lavidas seeks to exclude statements made by Nikas to his close friend and their alleged co-conspirator, Marc Demane Debih ("Demane"). Demane will be a Government witness at the trial, which is scheduled to begin on January 6, 2020. The Government cross-moved on December 11 to admit these statements by Nikas to Demane. The motions were fully submitted on December 16.[2] Through an Order of December 20, the Court ruled that the statements would be admitted pursuant to Rule 804(b)(3), Fed. R. Evid. ("Rule 804(b)(3)"). The reasons for that ruling are set forth below.

## Background

The indictment alleges that Lavidas provided Nikas with material nonpublic information about Ariad on three occasions in

---

[1] A superseding indictment was returned on November 25, 2019. Nikas also is charged with crimes related to an additional insider scheme in which Lavidas is not alleged to have participated.

[2] Both Lavidas and the Government filed other motions in limine, as well. These motions were ruled on at a December 19, 2019 final pretrial conference. The grounds for those rulings were stated on the record. At the conference, the Court heard the parties' arguments on the instant motion and reserved judgment.

2013 and on one occasion in 2015, and that Nikas profitably trade on these tips. The first time that Nikas allegedly traded on inside information about Ariad was in late June 2013. Lavidas's father was a corporate director of Ariad and, according to the indictment, the source of Lavidas's tips to Nikas.

To establish that Lavidas was the source of Nikas's Ariad-related inside information, the Government seeks to elicit testimony at trial from Demane. Demane was a Swiss trader who had been providing Nikas with inside information since 2010 or 2011. The Government expects Demane to testify that, in 2011, Nikas told Demane that Nikas was privy to inside information about Ariad from Lavidas and Lavidas's father.

An F.B.I. 302 report, which was provided to the defense as Jencks Act material pursuant to 18 U.S.C. § 3500, relates the substance of the Government's October 31, 2019 interview with Demane (the "302"). As reflected in the 302, Demane, Nikas, and Lavidas attended the same dinner party with eight or nine others in 2011. At this dinner, Nikas introduced Demane to Lavidas. This may be the only time that Demane met Lavidas.

At some point that same evening, but after the dinner, Nikas told Demane that Nikas "was calling" both Lavidas and Lavidas's father to get information about Ariad. Nikas added that "if there was something happening at Ariad, they would know

because [] Lavidas's father was on the board of directors of Ariad." Demane also stated that Nikas told him that Nikas "gave money" to Lavidas, but he did not mention an amount.[3]

According to the Government, while Demane tipped Nikas about many stocks, Ariad is the only company about which Nikas provided Demane with inside information. The Government alleges that Demane traded in Ariad securities on two occasions using inside information that he received from Nikas. At trial, the Government intends to present evidence of Demane's trading records, as well as the trading records of eight other sets of traders who are alleged to have profitably traded in Ariad after receiving tips from Nikas on one or more of the four occasions on which it asserts that Lavidas tipped Nikas about Ariad.

## Discussion

The Government argues that Nikas's statements to Demane are admissible pursuant to Rule 804(b)(3).[4] Rule 804(b)(3) provides

---

[3] Lavidas reads the 302 about Demane's statements as indicating that Nikas told Demane at the 2011 dinner that he had previously given money to Lavidas. At the December 19, 2019 final pretrial conference, the Government asserted that Demane had represented that Nikas told Demane after the 2011 dinner that Nikas had given money to Lavidas. This dispute on the timing of the payments does not change the admissibility analysis set forth below.

[4] Because the statements from Nikas to Demane are admissible pursuant to Rule 804(b)(3), it is unnecessary to consider whether they are also admissible as co-conspirator statements, as the Government contends.

that the hearsay rule does not exclude evidence of a statement against an unavailable declarant's penal interest if the statement is one that:

> (A)    a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to . . . criminal liability; and

> (B)    is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).  This Rule is founded on the "commonsense notion" that "reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." United States v. Gupta, 747 F.3d 111, 127 (2d Cir. 2014) (citation omitted).

The "threshold question[]" of a Rule 804(b)(3) analysis is whether the declarant's statement would be "perceived by a reasonable person in the declarant's shoes to be detrimental to his or her own penal interest." United States v. Ojudun, 915 F.3d 875, 885 (2d Cir. 2019) (citation omitted).  This question is to be answered "in light of all the surrounding circumstances." Gupta, 747 F.3d at 127 (citation omitted). "The proffered statement need not have been sufficient, standing alone, to convict the declarant of any crime, so long as it

would have been probative in a criminal case against him." Id. (citation omitted).  Statements are contrary to a person's penal interest if they expose that person to criminal liability "for trading on the basis of inside information." Id. at 128.

If a court finds that the statement is against the declarant's penal interest, "the court must then determine whether there are corroborating circumstances that clearly indicate . . . both the declarant's trustworthiness and the truth of the statement." Ojudun, 915 F.3d at 887 (citation omitted).  "For those conditions to be satisfied, the inference of trustworthiness from the proffered corroborating circumstances must be strong, not merely allowable." Id. (citation omitted).  A declarant may be deemed unreliable if he has made multiple contradictory statements. United States v. Lumpkin, 192 F.3d 280, 287 (2d Cir. 1999).  A declarant's statements may be deemed trustworthy when they are uttered to "a person whom the declarant believe[s] [is] any ally" and when the declarant does not "appear to have been attempting to shift criminal culpability from himself." United States v. Dupree, 870 F.3d 62, 80 (2d Cir. 2017) (citation omitted).  As explained by the Second Circuit,

> a statement incriminating both the declarant and the
> defendant may possess adequate reliability if the
> statement was made to a person whom the declarant
> believes is an ally, and the circumstances indicate
> that those portions of the statement that inculpate

> the defendant are no less reliable than the self-
> inculpatory parts of the statement.

Gupta, 747 F.3d at 127 (citation omitted).  In the context of
insider trading, the Court of Appeals has found that movement in
a stock price constitutes a "corroborating circumstance[]" that
indicates the truth of a statement.  Id. at 128-29.

The 2011 statements by Nikas to Demane regarding Lavidas
are admissible as statements against penal interest.  There is
no serious dispute that Nikas's statements to Demane are
sufficiently inculpatory to be statements against Nikas's penal
interest.  There also is no dispute that Nikas's statements to
Demane that Nikas gave money to Lavidas are against Nikas's
penal interest.[5]  The parties hotly contest, however, whether
there is sufficiently strong corroboration of the truth of these
statements and of Nikas's trustworthiness to allow admission of
the conversation pursuant to Rule 804(b)(3).

The Government's proffer of the corroborating evidence it
will offer at trial satisfies its burden of showing that Nikas's
statements are sufficiently reliable to be admitted.  That
corroboration includes the following.  Nikas and Demane were
close friends, and had been so for years at the time of the
conversation.  At the time of the conversation, they had also

---

[5] Additionally, there is no dispute that Nikas is unavailable.
He remains at large.

been engaged in a criminal insider trading scheme in which Demane provided Nikas with inside information. It is uncontroverted that Lavidas's father was a member of Ariad's board, which gave Lavidas's father access to inside information about Ariad. It also is undisputed that Nikas and Lavidas had been extremely close friends and remained close friends throughout the period of the insider trading scheme described in the indictment. Indeed, Lavidas was staying in Nikas's New York apartment this Fall when he was arrested.

There is also no basis to find that Demane, who will testify at trial, was mistaken about who Nikas was referring to as his source of information about Ariad. As just noted, Lavidas's father had access to that information and at least the beginnings of this conversation between Demane and Nikas took place just after a dinner in which Nikas introduced Demane to Lavidas. It appears from the 302 that Demane's telephone contains Lavidas's telephone number.

There will also be strongly corroborating evidence offered at trial that Nikas obtained inside information about Ariad on four separate occasions, and passed inside information about Ariad on to Demane on at least two occasions. The Government intends to show that Nikas tipped at least eight sets of traders about Ariad and that these remote traders benefitted by trading

on that inside information.[6]  While the defense promises to challenge the strength of the inferences of improper knowledge which can be drawn from the patterns of this trading, it remains true that there is probable cause to believe (as reflected in the indictment) that Nikas and others benefitted from trading on Ariad inside information on four separate occasions.

Finally, the circumstances that often undermine the reliability of statements incriminating others are absent here. These are not statements made to government authorities with a motive to curry favor.  These are statements to a friend in the midst of their own insider trading scheme.  Nor are these statements in which Nikas is incriminating Lavidas while exculpating himself.  By these statements, Nikas places himself in the middle of the criminal scheme with Lavidas, promising to pass on tips to Demane.

The defendant principally argues that the conversation is unreliable because it is mere puffery and too much time passed before there was any insider trading allegedly based on Lavidas's tips.  But, neither the possibility of puffery nor the passage of time between the 2011 conversation and the first trading in 2013, over two years later, fatally undermines this corroboration.

_____

[6] The defendant's motion to exclude this trading information has been denied.

It is of course possible that, without Lavidas having agreed to tip Nikas about Ariad's confidential information, Nikas was simply bragging to Demane.  Since Nikas was receiving tips from Demane, Nikas may have been tempted to brag that he had his own access to inside information, which he would share with Demane.  While the defense is free to make such an argument to the jury, there at least two difficulties with passing off the conversation as mere braggadocio.

First, by introducing Demane to his source and explaining that he had access to Ariad's confidential information, Nikas placed himself in a vulnerable position.  Demane would want to know why Nikas did not obtain and share confidential information with him whenever advance knowledge of Ariad's business plans would provide opportunities for profit.  Without a reasonable explanation, Nikas risked losing Demane as a source of information.

Second, Nikas's repeated profitable trading in Ariad is powerful corroborating evidence of the truth of Nikas's statements to Demane and Nikas's own reliability.  The truth of these statements is further confirmed by Nikas's tipping of other traders, including Demane, and their profitable trading in Ariad securities on the basis of these tips.

Similarly, the passage of two years between Nikas's alleged statements to Demane and Nikas's first trading in Ariad does not

render Nikas's statements untrustworthy.  After all, nearly two years passed between Lavidas's alleged third tip to Nikas in December 2013 and his next and final tip in August 2015.  The passage of two years between Nikas's statement and Lavidas's first tip is, in fact, consistent with the pattern of tipping alleged in the indictment.  And once again, this is not a case in which there is an allegation of just a single occasion of insider trading.  If the Government succeeds in proving at trial that Nikas was in possession of and traded on material non-public information about Ariad on four entirely separate occasions, this is strong corroboration that he obtained that information from the very source that he identified to Demane.

For these reasons, Nikas's statements are admissible under Rule 804(b)(3).  The defense is free, of course, to test Nikas's credibility and the inferences that can be drawn from these statements at trial.

## Conclusion

The Government's December 11, 2019 motion to admit Nikas's

statements to Demane is granted.  Lavidas's December 11 motion

to exclude these statements is denied.

Dated:    New York, New York
          December 30, 2019

                                    _____
                                              DENISE COTE
                                    United States District Judge