UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

                                     :

  UNITED STATES OF AMERICA,

                                      :

         - v. -

                                      :

  TELEMAQUE LAVIDAS

                                      :        S1 19 Cr. 716 (DLC)

                        Defendant.

                                      :

                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S REQUESTS TO CHARGE

AUDREY STRAUSS
Attorney for the United States Acting Under
Authority of 28 U.S.C. 515
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Richard Cooper
Daniel Tracer
Assistant United States Attorneys
    *-Of Counsel-*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the memorandum of defendant Telemaque Lavidas (the "defendant"), filed on December 30, 2019, in support of his requests to charge (the "RTC Memorandum" or "Mem.").   As set forth below, the defendant's main challenge to the Government's proposed jury instructions ("Gov't RTC") on Title 18 wire fraud and Title 18 securities fraud has been rendered moot by a decision of the United States Court of Appeals for the Second Circuit, issued the same day the RTC Memorandum was filed.   *See United States v. Blaszczak, et al.*, No. 18-2811 (2d Cir. Dec. 30, 2019) (attached hereto as Exhibit A).   The defendant's remaining challenges should either be rejected on their face or should await the evidence in this case.

## DISCUSSION

**I.      THE COURT SHOULD DENY THE DEFENDANT'S REQUESTS TO CHARGE REGARDING WIRE FRAUD AND TITLE 18 SECURITIES FRAUD**

The core of the RTC Memorandum requests that the Court instruct the jury that the definition of a scheme to defraud as applied to an insider trading scheme is the same under 15 U.S.C. § 78j(b) ("Title 15 Securities Fraud"), 18 U.S.C. § 1348 ("Title 18 Securities Fraud"), and 18 U.S.C. § 1343 ("Title 18 Wire Fraud").   Specifically, the defendant has requested that the Court instruct the jury that certain requirements of Title 15 Securities Fraud, including that the corporate insider breached a duty of trust and confidence in exchange for a personal benefit; that a tippee must have been aware of that benefit; and that a tippee must have traded or tipped others knowing that they would trade, also are requirements of Title 18 Securities Fraud and Title 18 Wire Fraud.   *See* Mem. at 5-18.

1

On December 30, 2019, the same day the defendant filed the RTC Memorandum, the Second Circuit decided this precise issue in *Blaszczak*.   At trial in that insider trading case, the Hobnorable Lewis A. Kaplan declined the defense's request to instruct the jury that it had to find that the insider disclosed information in exchange for a personal benefit for purposes of counts charging Title 18 Securities Fraud and Title 18 Wire Fraud (the exact argument the defendant makes here).   (*See* Exhibit A at 13).   Instead, Judge Kaplan instructed the jury that Title 18 Wire Fraud "includes the act of embezzlement, which is . . . the fraudulent appropriation to one's own use of the money or property entrusted to one's care by someone else."   (*Id*.).   Judge Kaplan further instructed the jury that, for Title 18 Securities Fraud, it could find the existence of a scheme to defraud if a defendant "participated in a scheme to embezzle or convert confidential information from [the source of the information] by wrongfully taking that information and transferring it to his own use or the use of someone else."   (*Id*.).

The defendants in that case appealed, claiming among other things that the district court committed instructional error and arguing that the term "defraud" should be construed to have the same meaning across the Title 18 fraud provisions and Title 15 Securities Fraud.   (*Id*. at 27). The Second Circuit unambiguously rejected that challenge, holding that "the personal-benefit test does not apply to the wire fraud and Title 18 securities fraud statutes, and thus the district court did not err by refusing to instruct the jury on the personal-benefit test for those offenses." (*Id*. at 33).

The Government respectfully submits that this holding disposes of the defendant's first contention in the RTC Memorandum, and the jury instructions proposed by the Government with respect to Title 18 Wire Fraud and Title 18 Securities Fraud are appropriate under *Blaszczak*.

The Government's proposed requests to charge adequately convey the law as set forth in *Blaszczak* and should be included in the Court's charge to the jury.

## II.   THE DEFENDANT'S REMAINING CHALLENGES SHOULD EITHER BE REJECTED OR SHOULD AWAIT THE EVIDENCE

In the remainder of the RTC Memorandum, the defendant raises additional challenges to seven of the Government's requests to charge.   Each of those challenges should either be rejected or should await the evidence in this case.   Each challenge is discussed below.

No. 1:   In objecting to the Government's charge concerning Title 15 Securities Fraud, the defendant misstates the governing legal standard.   It is not correct that the defendant must have "knowingly, willfully and intentionally given the allegedly material, non-public information to Georgios Nikas *so that Nikas could trade on it*."   (Mem. at 19 (emphasis added)).

The Government is not required to prove that the defendant intended for Nikas or others to trade securities based on the inside information; the Government need only show that the defendant *anticipated* that Nikas would likely use the inside information to do so.   *See United States v. Libera*, 989 F.2d 596, 600 (2d Cir. 1993) ("Sablone first argues that an essential element of Section 10(b) liability is that tippers must specifically know that their breach of a fiduciary obligation in misappropriating information will lead to trading on the information. This element is not required by our prior cases, and we decline to add it here." (footnote omitted)); *United States v. Gupta*, No. 11 Cr. 907 (JSR), Jury Charge at 17 (S.D.N.Y. 2012) (requiring the Government to prove that the defendant "*anticipated* that [his immediate tippee or that tippee's associates] would trade on the basis of this information and that they then did so by buying or selling the shares specified in the count on the basis of the inside information" (emphasis added)); *Gupta v. United States*, 913 F.3d 81, 88 (2d Cir. 2019) ("[T]he jury could

rationally have found that [tipper-defendant] Gupta *anticipated* that [tippee] Rajaratnam would engage in trading of Goldman shares that would benefit Gupta financially." (emphasis added)); *United States v. Riley*, 638 F. App'x 56, 60 (2d Cir. 2016) ("To prove insider trading as a tipper, the government must demonstrate that a defendant (1) owed a duty of confidentiality respecting material nonpublic information, (2) breached that duty by intentionally or recklessly relating such information to a tippee who could be anticipated to trade thereon, and (3) did so in exchange for personal benefit.").

No. 2:   The Government's instruction on state of mind for Title 15 Securities Fraud is appropriate and the defendant's challenge should be rejected.   The defendant misstates the Government's proposal as suggesting that intent to defraud means "acting with the intent to disclose information."   (Mem. at 20).   Rather, the Government proposes that the jury be instructed that intent to defraud means acting "with the intent to disclose or receive confidential information obtained from Ariad *without its knowledge or approval*."   (Gov't RTC at 16) (emphasis added).   The italicized language renders the Government's proposed charge sufficient to inform the jury that in order to establish this element, the Government must prove that deception was involved.

The defendant also contends that this instruction is infirm because it does not inform the jury that the defendant is not guilty unless he "knowingly, willfully, and intentionally [gave] material, non-public information to Nikas *so that he could trade on it*."   (Mem. at 20) (emphasis added).   As discussed above, this misstates the legal standard; the Government need only establish that the defendant anticipated that Nikas would trade on the information he tipped.

4

No. 3:    The defendant contends that the Government must prove, for purposes of Title 18 Securities Fraud, that the particular transactions in Ariad be in securities that were registered under the Securities Exchange Act of 1934.    (Mem. at 20)[1].    However, the plain language of the statute sets forth that the scheme to defraud must be in connection with "any security of an issuer with a class of securities registered" under the Exchange Act.    18 U.S.C. § 1348.    The statute does *not* contain the element that the defendant attempts to graft on, namely, that the particular transactions were in securities that themselves were registered under the Exchange Act, and the defendant provides no legal authority for his contention.    The defendant does not, and cannot, suggest that Ariad itself did not have securities that were registered under the Exchange Act.[2]    Accordingly, the Government's proposed instruction accords with the statute, and the defendant's challenge should be rejected.

No. 4:    The defendant next suggests that the Government's aiding and abetting charge is infirm because it does not instruct the jury that (a) the defendant cannot be convicted of aiding abetting if no primary violation occurred; and (b) if the defendant inadvertently aids the commission of a crime without knowledge that a crime is being committed, he is not guilty of aiding and abetting.    (Mem. at 20-21).    However, the Government's proposed aiding and

---

[1] There appears to be a typographical error in the defendant's brief, which states that the Title 18 Securities Fraud count in the indictment "does identify a single specific transaction."    (Mem. at 20).

[2] In addition, as the defendant notes, certain of the transactions that took place in this case involved "contracts for difference" or "CFDs."    (Mem. at 20).    Trading in such instruments is actionable under the federal securities laws.    *See, e.g.*, *SEC v. Maillard*, 13 Civ. 5299 (VEC), 2014 WL 1660024, *2-3 (S.D.N.Y. April 23, 2014) (finding that CFD trading is actionable under *Morrison v. Nat'l Australia Bank*, 130 S.Ct. 2869 (2010), because the trading is "in connection" with U.S. exchange traded securities inasmuch as the selling financial institution is required "to purchase the underlying security traded on NYSE"); *SEC v. Compania Internacional Financiera S.A.*, 11 Civ. 4904 (DLC), 2011 WL 3251813, at *4 (S.D.N.Y. July 29, 2011) (similar).

abetting charge discusses both of these concepts.    (*See* Gov't RTC at 25-26 ("The defendant cannot be convicted of aiding and abetting if nobody committed the underlying crime."); 26 ("In the aiding and abetting context, participation in a crime is willful if action is taken voluntarily and *intentionally*.") (emphasis added)).

The defendant also suggests that the Government's proposal insufficiently advises the jury that the defendant's conduct must be knowing and willful.    This is incorrect; the Government's proposed charge contains sufficient references to the requirement of knowing and willful conduct.    (*See, e.g.*, Gov't RTC at 26 ("To aid and abet another to commit a crime, the defendant must have willfully and knowingly associated himself in some way with the crime, and he must have willfully and knowingly sought by some act to help make the crime succeed."); *id.* ("Did he associate himself with the attempt to commit the crime by other people knowingly and willfully?")).

Accordingly, the defendant's challenges to the Government's proposed aiding and abetting charge should be rejected.

No. 5:    The defendant contends that the Government erred by requesting that the Court instruct the jury that the timeframe charged in Count One, conspiracy to commit securities fraud, is from July 2013 through 2016.    (Mem. at 21).    The defendant is incorrect.    As the superseding indictment clearly sets forth in the statutory allegations covering Count One, the conspiracy as charged lasted "[f]rom at least in or about July 2013 through in or about 2016." (*See* Dkt. No. 39 ¶ 40).

No. 6:    The defendant objects to the Government's proposed conscious avoidance charge.    As an initial matter, the Government respectfully submits that the Court should defer

6

ruling on this request until after the close of the evidence.    However, the Government expects there to be ample evidence from which the jury can conclude that this instruction may be applicable to certain knowledge-based elements of the charged offense; for example, that the defendant was aware of a high probability that George Nikas ("Nikas") would use information relating to Ariad Pharmaceuticals, Inc. ("Ariad") in order to conduct securities transactions, and consciously avoided confirming that fact.   *See United States v. Fofanah*, 765 F.3d 141, 144 (2d Cir. 2014) (per curiam) (internal quotation marks and ellipsis omitted), *cert. denied*, 135 S. Ct. 1449 (2015) (noting that a conscious avoidance charge is properly given where the defendant has asserted "the lack of some specific aspect of knowledge required for conviction" and there is "an appropriate factual predicate for the charge, i.e., the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact"); *accord, e.g.*, *United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013).

At trial in this case, the Government expects that the evidence will establish, among other things, that (a) the defendant well understood that Nikas was an active securities trader; (b) the defendant himself was a sophisticated businessman and as of the start of the charged conspiracy, had already served as an executive at his family's Greek pharmaceutical company, which was publicly traded on the Athens Stock Exchange; and (c) the defendant and Nikas had communicated about Nikas's insider trading in the securities of AmerisourceBergen Corporation. This evidence is more than sufficient to provide the basis for a conscious avoidance instruction.

No. 7:   The defendant's proposed addition of language to the Government's request relating to "Law Enforcement and Government Employee Witnesses" should await the evidence.

The defendant's request may be appropriate to the extent defense counsel has, in fact, attacked the credibility of law enforcement witnesses on the ground that they have a personal or professional interest in the outcome of the case.   *See, e.g.*, *United States v. Steinberg*, 12 Cr. 121 (RJS) (Dkt. No. 365) (instructing the jury that, with respect to law enforcement witnesses, "the defense counsel has tried to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case").

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully submits that the Court should reject the defendant's challenges to the Government's proposed requests to charge.

Dated:  New York, New York
        January 2, 2020

<div style="margin-left: 50%;">

Respectfully submitted,

AUDREY STRAUSS
Attorney for the United States Acting Under
Authority of 28 U.S.C. 515
Southern District of New York

By:     <u>      /s/                          </u>
        Richard Cooper / Daniel Tracer
        Assistant United States Attorneys
        (212) 637-1027/2329

</div>

8