**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :        SUPERSEDING INDICTMENT
                                    :
          - v. -                    :
                                    :        S1 19 Cr. 716 (DLC)
GEORGIOS NIKAS,                     :
     a/k/a "George Nikas," and      :
TELEMAQUE LAVIDAS,                  :
                                    :
          Defendants.               :
                                    :
- - - - - - - - - - - - - - - X

## COUNT ONE
### (Conspiracy to Commit Securities Fraud – The Ariad Scheme)

The Grand Jury charges:

### Relevant Individuals and Entities

1.    At all times relevant to this Indictment, GEORGIOS
NIKAS, a/k/a "George Nikas," the defendant, was a citizen of
Greece who resided in Greece and Manhattan, New York.  NIKAS was
the owner of various business interests in Europe and the United
States, including a chain of Greek restaurants in New York, a
food distribution company in Athens, Greece, and fast food
franchises across Europe.  NIKAS was also an active securities
trader who traded through online brokerage accounts in his own
name and through funds that NIKAS helped establish.

2.    At certain times relevant to this Indictment,
TELEMAQUE LAVIDAS, the defendant, resided in Manhattan, New
York, and was the son of a member of the board of directors

("Director-1") of Ariad Pharmaceuticals, Inc. ("Ariad").

3.     At all times relevant to this Indictment, Ariad was a biotechnology company with headquarters in Boston, Massachusetts.  Ariad's securities traded under the symbol "ARIA" on the NASDAQ Stock Exchange ("NASDAQ").

4.     At all times relevant to this Indictment, Investment Bank A was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

5.     At all times relevant to this Indictment, Investment Bank B was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

6.     At all times relevant to this Indictment, Investment Bank C was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

7.     From in or about 2010, up to and including in or about 2015, a co-conspirator not named as a defendant herein ("CC-1") was employed in the investment banking division of Investment Bank A.

8.     From at least 2012, up to and including in or about 2016, a co-conspirator not named as a defendant herein ("CC-2") was employed in the investment banking division of Investment

Bank B.  At certain times relevant to this Indictment, CC-1 and CC-2 were involved in a romantic relationship and resided together in London.

9.  At certain times relevant to this Indictment, an individual not named herein was employed in the investment banking division of Investment Bank C (the "Investment Bank C Insider").

10.  At certain times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-3") was a friend of CC-1 and CC-2, residing in Europe.

11.  At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-4") was a securities trader residing in Switzerland and was a friend and business associate of GEORGIOS NIKAS, a/k/a "George Nikas," the defendant.

12.  At all times relevant to this Indictment:

a.  Reliance Steel & Aluminum Co. ("Reliance") was a metals services center operator with headquarters in Los Angeles, California.  Reliance's securities traded under the symbol "RS" on the New York Stock Exchange ("NYSE").  During this time period, Reliance was a client of Investment Bank A.

b.  Metals USA Holdings Corp. ("Metals") was a metals processing and inventory management company with headquarters in Florida.  Metals' securities traded under the symbol "MUSA" on

3

the NYSE.  During this time period, Metals was the target of an acquisition by Reliance.

      c.   Life Technologies Corporation ("Life") was a biotechnology company with headquarters in Carlsbad, California. Life's securities traded under the symbol "LIFE" on the NASDAQ. During this time period, Life was a client of Investment Bank A.

      d.   AmerisourceBergen Corporation ("ABC") was a pharmaceutical wholesale company with headquarters in Chesterbook, Pennsylvania.  ABC's securities traded under the symbol "ABC" on the NYSE.  During this time period, ABC was involved in negotiations regarding a strategic alliance with a company that was a client of Investment Bank B.

      e.   Onyx Pharmaceuticals Inc. ("Onyx") was a biopharmaceutical company with headquarters in San Francisco, California.  Onyx's securities traded under the symbol "ONXX" on the NASDAQ.  During this time period, Onyx was a client of Investment Bank B.

      f.   Amgen Inc. ("Amgen") was a biopharmaceutical company with headquarters in Thousand Oaks, California.  Amgen's securities traded under the symbol "AMGN" on the NASDAQ.  During this time period, Amgen offered to acquire Onyx.

      g.   Idenix Pharmaceuticals, Inc. ("Idenix") was a pharmaceutical company with headquarters in Cambridge, Massachusetts.  Idenix's securities traded under the symbol

"IDIX" on the NASDAQ.  During this time period, Idenix was a client of Investment Bank B.

h.    Merck & Co., Inc. ("Merck") was a pharmaceutical company with headquarters in Kenilworth, New Jersey.  Merck's securities traded under the symbol "MRK" on the NYSE.  During this time period, Merck offered to acquire, and acquired, Idenix.

i.    InterMune, Inc. ("Intermune") was a biotechnology company with headquarters in Brisbane, California.  Intermune's securities traded under the symbol "ITMN" on the NASDAQ.  During this time period, Intermune was a client of Investment Bank B.

j.    Avanir Pharmaceuticals, Inc. ("Avanir") was a pharmaceutical company with headquarters in Aliso Viejo, California.  Avanir's securities traded under the symbol "AVNS" on the NASDAQ.  During this time period, Avanir was a client of Investment Bank B.

k.    Otsuka Pharmaceutical Co., Ltd. ("Otsuka") was a healthcare company with headquarters in Tokyo, Japan.  During this time period, Otsuka offered to acquire, and acquired, Avanir.

l.    Receptos Inc. ("Receptos") was a biotechnology company with headquarters in San Diego, California.  Receptos' securities traded under the symbol "RCPT" on the NASDAQ.  During this time period, Receptos was a client of Investment Bank B.

m.    Celgene Corporation ("Celgene") was a biopharmaceutical company with headquarters in Summit, New Jersey.  Celgene's securities traded under the symbol "CELG" on the NASDAQ.  During this time period, Celgene offered to acquire, and acquired, Receptos.

n.    Omnicare, Inc. ("Omnicare") was a health care company with headquarters in Cincinnati, Ohio.  Omnicare's securities traded under the symbol "OCR" on the NYSE.  During this time period, Omnicare was a client of Investment Bank B.

o.    Syngenta AG ("Syngenta") was a producer of agrochemicals and seeds based in Basel, Switzerland. Syngenta's securities traded under the symbol "SYT" on the NYSE. During the relevant time period, Syngenta was a client of Investment Bank C.

p.    Solera Holdings, Inc. ("Solera") was a digital technology company with headquarters in Westlake, Texas. Solera's securities traded under the symbol "SLH" on the NYSE. During this time period, Solera was a client of Investment Bank B.

q.    Buffalo Wild Wings, Inc. ("Buffalo") was a bar and restaurant chain headquartered in Minneapolis, Minnesota. Buffalo's securities traded under the symbol "BWLD" on the NASDAQ.  During the relevant time period, Buffalo was a client of Investment Bank C.

## Overview of the Ariad Scheme

13.   From in or about 2013 up to and including in or about 2015, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, engaged in a scheme to steal confidential inside information from Ariad for their personal use.   NIKAS and LAVIDAS were friends, and NIKAS also had a personal relationship with Director-1, a member of the board of directors of Ariad and LAVIDAS's father.   The goal of their scheme was to place securities trades based on material, non-public information ("MNPI") and then profit from those securities trades after the MNPI was made public.   LAVIDAS used his connection to Director-1 to learn MNPI about Ariad, and then provided that information to NIKAS, who reaped millions of dollars in profits by trading based on that information.   NIKAS also passed the Ariad-related MNPI to CC-4, who also reaped substantial profits by trading on the information.   During the course of the conspiracy, NIKAS paid LAVIDAS in exchange for the MNPI.

**The Ariad Scheme –**
**Means and Methods of the Conspiracy**

**June-July 2013**

14.  By at least in or about June 2013, various executives
and members of the board of directors of Ariad, including
Director-1, became aware that an agency of the European
Commission was expected to approve the marketing of Iclusig, a
drug for treatment of leukemia that was marketed by Ariad, in or
about early July 2013.  Director-1 was obligated to keep this
information confidential.  Director-1 nonetheless disclosed the
information to TELEMAQUE LAVIDAS, the defendant, who in turn
disclosed the information to GEORGIOS NIKAS, a/k/a "George
Nikas," the defendant, so that NIKAS could trade on it.

15.  On or about June 28, 2013, GEORGIOS NIKAS, a/k/a
"George Nikas," the defendant, purchased approximately 14,000
shares of Ariad common stock.  These were the first purchases of
Ariad shares in NIKAS's brokerage account.

16.  On or about July 1, 2013, Ariad announced that it
received authorization from the European Commission to market
Iclusig.  Ariad's share price increased by approximately 12%
after the announcement.

17.  On or about July 27, 2013, GEORGIOS NIKAS, a/k/a
"George Nikas," the defendant, emailed an acquaintance and wrote
"Was trying to find u 3 weeks ago when I had some seriously

juicy info for u but nowhere to be found" and further wrote that the information was "Stock market related.  U snooze u lose."

**September-October 2013**

18.  By at least in or about late September and early October 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware of concerns raised by the U.S. Food and Drug Administration ("FDA") regarding clinical trials for Iclusig.  Director-1 was obligated to keep this information confidential.  Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

19.  From on or about October 4, 2013, up to and including on or about October 8, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, sold Ariad common stock, established a short position in Ariad stock, and also bought Ariad put options.

20.  On or about October 9, 2013, Ariad announced certain adverse information relating to clinical trials of Iclusig, and further announced that the FDA had placed a partial hold on the trials.  Ariad's share price fell by approximately 67% after the announcement.

21.  Following the announcement on or about October 9, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant,

exited certain of the positions he took in Ariad securities based on MNPI.  As a result of this trading, NIKAS avoided losses and realized profits in excess of $1 million.

**November-December 2013**

22.  By at least in or about November 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware that Ariad was discussing with the FDA the resumption of marketing and distribution of Iclusig for certain types of leukemia.  Director-1 was obligated to keep this information confidential.  Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

23.  From on or about November 22, 2013, up to and including on or about December 20, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, bought Ariad common stock, Ariad call options, and Ariad contracts for difference ("CFDs").

24.  On or about December 20, 2013, Ariad announced the resumption of marketing and distribution of Iclusig in the United States, for certain types of leukemia.  Ariad's share price increased by approximately 16% after the announcement.

25.  Following the announcement on or about December 20, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, exited certain of the positions he took in Ariad securities

based on MNPI.  As a result of this trading, NIKAS realized profits in excess of $800,000.

**Summer 2015**

26.  In or about July 2015, the chief executive officer of Baxalta, Inc. ("Baxalta") contacted the chief executive officer of Ariad to discuss Baxalta's interest in acquiring Ariad. Baxalta subsequently sent Ariad a non-binding offer to acquire Ariad.  At or around that time, members of the board of directors of Ariad, including Director-1, became aware of the Baxalta offer.  Director-1 was obligated to keep this information confidential.  Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

27.  From on or about July 28, 2015, up to and including on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, bought Ariad CFDs.

28.  On or about August 28, 2015, a news article was published stating that Baxalta was in discussions to acquire Ariad.  Ariad's share price increased by approximately 41% after the article's publication.

29.  Following the publication of the news article on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, exited certain of the positions he took in Ariad

11

securities based on MNPI.  As a result of this trading, NIKAS realized profits in excess of $150,000.

30.  In exchange for providing the MNPI described above, TELEMAQUE LAVIDAS, the defendant, and Director-1, received personal benefits, including, among other things, payments from GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, to LAVIDAS, at various times during the scheme.

31.  Based on the timely transactions in Ariad securities placed by GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, which in turn were based on the MNPI that TELEMAQUE LAVIDAS, the defendant, provided, to NIKAS, NIKAS reaped millions of dollars in profits.  In addition, NIKAS provided that MNPI to at least one other securities trader, who placed timely trades and reaped substantial profits.

**Overview of the Corporate Acquisitions Insider Trading Scheme**

32.  From at least in or about December 2012, up to and including in or about 2017, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, participated in a large-scale, international insider trading ring.  Through the scheme, NIKAS received MNPI concerning acquisitions and potential acquisitions of publicly traded companies from CC-4.  As NIKAS well knew, this MNPI was obtained by CC-4 from individuals who were insiders at investment banks that advised publicly traded companies and who were duty-bound to keep that information

confidential.  Notwithstanding that duty, those insiders, including CC-1, CC-2, and the Investment Bank C Insider, breached their duties and shared stolen MNPI with others, including CC-4, who, in turn, shared that information with NIKAS.  NIKAS then used that MNPI to place timely, profitable securities trades resulting in millions of dollars of profits.

### Corporate Acquisitions Insider Trading Scheme – Means and Methods of the Conspiracy

33.  GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, was a friend and business associate of CC-4.  Beginning in at least in or about 2010, NIKAS and CC-4 began trading together based on MNPI that CC-4 collected from investment banking insiders.

34.  Beginning in or about December 2012, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, obtained MNPI that was stolen from Investment Bank A and Investment Bank B.  Specifically, CC-1 and CC-2 stole MNPI from Investment Bank A and Investment Bank B, respectively, by accessing computer systems at those investment banks.  CC-1 and CC-2 then shared the MNPI with CC-3, in exchange for over $1 million of benefits, including cash, trips and luxury watches.  CC-1 and CC-2 understood that CC-3 would pass the MNPI to securities traders.

35.  After CC-3 obtained the MNPI from CC-1 and CC-2, CC-3 passed the MNPI to CC-4 in exchange for millions of dollars of

payments.  CC-4 then placed timely, profitable trades based on the MNPI both in CC-4's own accounts as well as in accounts of an entity that CC-4 controlled jointly with GEORGIOS NIKAS, a/k/a "George Nikas," the defendant.  Specifically, CC-4 provided NIKAS with the MNPI that CC-1 and CC-2 had stolen from Investment Bank A and Investment Bank B, and NIKAS placed timely, profitable trades in securities based on that MNPI. NIKAS well knew that the MNPI had been stolen by investment bank insiders who were being paid in exchange for providing the MNPI.

36.   In addition, beginning in at least in or about 2015, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, also traded on MNPI that was stolen from Investment Bank C.  This MNPI was obtained by CC-4 from the Investment Bank C Insider, who had access to the MNPI by virtue of his employment, and who agreed to share the MNPI with CC-4 in exchange for cash.  After obtaining MNPI from Investment Bank C, CC-4 shared that MNPI with NIKAS, who well knew that the information had been stolen by an investment bank insider who was being paid in exchange for providing the MNPI to CC-4.

37.   In addition to trading in his own name, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and CC-4 together created a purported hedge fund that NIKAS and CC-4 used to trade based on the stolen MNPI they had obtained.  NIKAS compensated CC-4 by providing CC-4 with a portion of NIKAS's profits from

securities trades that were made in that purported hedge fund.

38. GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, placed trades based on the stolen MNPI provided by CC-4 in the securities of at least Metals, Life, ABC, Onyx, Intermune, Idenix, Avanir, Receptos, Omnicare, Syngenta, Solera, and Buffalo. Those trades reaped NIKAS millions of dollars in profits.

39. GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, as well as CC-1, CC-2, the Investment Bank C Insider, CC-3, and CC-4, took numerous steps to conceal their unlawful scheme, including the use of multiple unregistered "burner" cellphones to communicate with each other. In addition, the Investment Bank C Insider obtained "burner" cellphones to communicate with other members of the scheme from a restaurant owned and operated by NIKAS.

**Statutory Allegations**

40. From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15,

United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

41.     It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

### Overt Act

42.     In furtherance of the conspiracy, and to effect the illegal objects thereof, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, committed the following overt act, among others, in the

16

Southern District of New York and elsewhere:

      a.   On or about October 8, 2013, while in Manhattan, New York, LAVIDAS spoke by telephone with NIKAS regarding MNPI relating to Ariad.

      (Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud and Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

    43.  The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

    44.  From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

    45.  It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

46.  It was further a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

## COUNTS THREE THROUGH FIVE
### (Securities Fraud - The Ariad Scheme)

The Grand Jury further charges:

47.  The allegations contained in paragraphs 1 through 39
and 42 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

48.  On or about the dates set forth below, in the Southern
District of New York and elsewhere, GEORGIOS NIKAS, a/k/a
"George Nikas," and TELEMAQUE LAVIDAS, the defendants, willfully
and knowingly, directly and indirectly, by the use of means and
instrumentalities of interstate commerce, and of the mails, and
of facilities of national securities exchanges, used and
employed in connection with the purchase and sale of securities
manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by: (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons, to wit, LAVIDAS
supplied NIKAS with MNPI that was obtained in breach of
fiduciary and other duties, relating to Ariad, knowing that

19

NIKAS would use that information to execute timely securities

transactions, which NIKAS did, including the securities

transactions listed below:

| Count | Transaction Date | Transactions |
|-------|------------------|--------------|
| 3 | In or about October 2013 | Sales of at least 37,000 Ariad common shares<br><br>Short sales of at least 50,000 Ariad common shares |
| 4 | In or about November and December 2013 | Purchases of at least approximately:<br>• 160,000 Ariad common shares; and<br>• 2,252 Ariad call option contracts |
| 5 | In or about July and August 2015 | Purchases of at least approximately 449,250 Ariad common shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT SIX
### (Wire Fraud – The Ariad Scheme)

The Grand Jury further charges:

49. The allegations contained in paragraphs 1 through 39

and 42 of this Indictment are hereby repeated, realleged, and

incorporated by reference, as if fully set forth herein.

50. From at least in or about July 2013 through in or

about 2016, in the Southern District of New York and elsewhere,

GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the

defendants, willfully and knowingly, having devised and

intending to devise a scheme and artifice to defraud, and for

obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wires, including interstate and international telephone calls, NIKAS and LAVIDAS participated in a scheme to defraud Ariad of valuable confidential information, obtained, as NIKAS and LAVIDAS well knew, in breach of fiduciary and other duties, by deceptively converting that information to their own use and the use of others for the purpose of committing insider trading and executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT SEVEN
### (Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

51.  The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

52.  From at least in or about July 2013 through in or about 2015, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, willfully and knowingly executed a scheme and

21

artifice to (a) defraud persons in connection with securities of
an issuer with a class of securities registered under Section 12
of the Securities Exchange Act of 1934 and that was required to
file reports under Section 15(d) of the Securities Exchange Act
of 1934, and (b) obtain, by means of false and fraudulent
pretenses, representations, and promises, money and property in
connection with the purchase and sale of securities of an issuer
with a class of securities registered under Section 12 of the
Securities Exchange Act of 1934 and that was required to file
reports under Section 15(d) of the Securities Exchange Act of
1934, to wit, NIKAS and LAVIDAS engaged in a scheme to defraud
Ariad of valuable confidential information obtained, as NIKAS
and LAVIDAS well knew, in breach of fiduciary and other duties,
by deceptively converting that information to their own use and
the use of others, using cellular telephones and e-mail
communications, for the purpose of executing transactions in the
securities of Ariad.

(Title 18, United States Code, Sections 1348 and 2.)

### COUNT EIGHT
**(Conspiracy to Commit Securities Fraud and Fraud in Connection
With a Tender Offer — The Corporate Acquisitions
Insider Trading Scheme)**

The Grand Jury further charges:

53.   The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

54.   From at least in or about December 2012 through in or about 2017, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

55.   It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by:

(a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

56.   It was a further part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, NIKAS, while in possession of material information relating to such tender offer, which information he knew and had reason to know was non-public, and which he knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought, and to be sought, by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely

result in the purchase and sale of such securities and
securities convertible into and exchangeable for such securities
and options and right to obtain and to dispose of such
securities and options, without such information and its source
having been publicly disclosed by press release and otherwise
within a reasonable time prior to such purchase and sale, in
violation of Title 15, United States Code, Sections 78n(e) and
78ff; and Title 17, Code of Federal Regulations, Sections
240.14e-3(a) and 240.14e-3(d).

Overt Acts

57.   In furtherance of the conspiracy, and to effect the
illegal objects thereof, GEORGIOS NIKAS, a/k/a "George Nikas,"
the defendant, and others known and unknown, committed the
following overt acts, among others, in the Southern District of
New York and elsewhere:

a.   In or about December 2012, CC-1, while employed
as an analyst at Investment Bank A, accessed files on Investment
Bank A's computer network relating to the potential acquisition
of Metals.

b.   In or about June 2013, NIKAS purchased 70,500
common shares of Onyx, using an online brokerage account.

c.   In or about September 2017, the Investment Bank C
Insider arranged to pick up an unregistered phone from a
business in Manhattan, New York.

d.    In or about October 2017, NIKAS purchased 22,000 common shares of Buffalo, using an online brokerage account.

(Title 18, United States Code, Section 371.)

## COUNT NINE
### (Conspiracy to Commit Wire Fraud and Securities Fraud – The Corporate Acquisitions Insider Trading Scheme)

The Grand Jury further charges:

58.   The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

59.   From at least in or about December 2012 through in or about 2017, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

60.   It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and

26

television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

61.   It was further a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

### COUNTS TEN THROUGH SEVENTEEN
**(Securities Fraud – The Corporate Acquisitions Insider Trading Scheme)**

The Grand Jury further charges:

27

62.  The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

.63.  On or about the dates set forth below, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, NIKAS executed and caused to be executed timely securities transactions, based on MNPI supplied, as NIKAS well knew, in breach of fiduciary and other duties, including the securities transactions listed below on or about the dates listed below:

28

| Count | Transaction Date | Company | Transactions |
|-------|------------------|---------|--------------|
| 10 | In or about July and August 2014 | Intermune | Purchases of at least approximately:<br>• 13,000 common shares; and<br>• 100 call option contracts |
| 11 | In or about May and June 2014 | Idenix | Purchases of at least approximately 70,000 common shares |
| 12 | In or about November and December 2014 | Avanir | Purchases of at least approximately 25,000 common shares |
| 13 | In or about April 2015 | Receptos | Purchases of at least approximately 13,000 common shares |
| 14 | In or about May 2015 | Omnicare | Purchases of at least approximately 62,000 common shares |
| 15 | In or about May through November 2015 | Syngenta | Purchases of at least approximately 57,000 American Depositary Receipts ("ADRs") |
| 16 | In or about August and September 2015 | Solera | Purchases of at least approximately 124,888 common shares |
| 17 | In or about October and November 2017 | Buffalo | Purchases of at least approximately 91,000 common shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNTS EIGHTEEN THROUGH TWENTY
### (Fraud in Connection with Tender Offers –
### The Corporate Acquisitions Insider Trading Scheme)

The Grand Jury further charges:

64.    The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

65.    On or about the dates set forth below, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, willfully and knowingly engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, NIKAS, while in possession of material information relating to such tender offer, which information he knew and had reason to know was non-public and which he knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought, and to be sought, by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible

into and exchangeable for such securities and options and right

to obtain and to dispose of such securities and options, without

such information and its source having been publicly disclosed

by press release and otherwise within a reasonable time prior to

such purchase and sale, to wit, NIKAS executed and caused to be

executed securities transactions, based on MNPI, including the

securities transactions listed below on or about the dates

listed below:

| Count | Transaction Date | Company | Transactions |
|-------|------------------|---------|--------------|
| 18 | In or about May and June 2014 | Idenix | Purchases of at least approximately 70,000 common shares |
| 19 | In or about November and December 2014 | Avanir | Purchases of at least approximately 25,000 common shares |
| 20 | In or about April 2015 | Receptos | Purchases of at least approximately 13,000 common shares |

(Title 15, United States Code, Sections 78n(e) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.14e-3(a) &
240.14e-3(d); and Title 18, United States Code, Section 2.)

## COUNT TWENTY-ONE
**(Wire Fraud – The Corporate Acquisitions Insider Trading Scheme)**

The Grand Jury further charges:

66.  The allegations contained in paragraphs 1 through 39

and 42 of this Indictment are hereby repeated, realleged, and

incorporated by reference, as if fully set forth herein.

67.  From at least in or about December 2012 through in or

about 2017, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wires, including interstate and international telephone calls, NIKAS participated in a scheme to defraud at least Investment Bank B, Investment Bank C, Intermune, Idenix, Avanir, Receptos, Omnicare, Syngenta, Solera, and Buffalo of valuable confidential information, obtained, as NIKAS well knew, in breach of fiduciary and other duties owed to the subject companies, by deceptively converting that information to his own use and the use of others for the purpose of committing insider trading and executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT TWENTY-TWO**
**(Securities Fraud- The Corporate Acquisitions Insider Trading**
**Scheme)**

The Grand Jury further charges:

68.    The allegations contained in paragraphs 1 through 39
and 42 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

69.    From at least in or about December 2012 through in or
about November 2017, in the Southern District of New York and
elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant,
willfully and knowingly executed a scheme and artifice to (a)
defraud persons in connection with securities of an issuer with
a class of securities registered under Section 12 of the
Securities Exchange Act of 1934 and that was required to file
reports under Section 15(d) of the Securities Exchange Act of
1934, and (b) obtain, by means of false and fraudulent
pretenses, representations, and promises, money and property in
connection with the purchase and sale of securities of an issuer
with a class of securities registered under Section 12 of the
Securities Exchange Act of 1934 and that was required to file
reports under Section 15(d) of the Securities Exchange Act of
1934, to wit, NIKAS engaged in a scheme to defraud at least
Reliance, Life, ABC, Onyx, Intermune, Idenix, Avanir, Receptos,
Omnicare, Syngenta, Solera, and Buffalo of valuable confidential
information obtained, as NIKAS well knew, in breach of fiduciary

33

and other duties owed to the subject companies, by deceptively converting that information to his own use and the use of others, using cellular telephones and e-mail communications, for the purpose of executing transactions in the securities of Metals, Life, ABC, Onyx, Intermune, Idenix, Avanir, Receptos, Omnicare, Syngenta, Solera, and Buffalo.

(Title 18, United States Code, Sections 1348 and 2.)

## FORFEITURE ALLEGATIONS

70.  As a result of committing one or more of the offenses alleged in Counts One through Twenty-Two of this Indictment, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Thirty-One of this Indictment, that the defendants personally obtained.

## Substitute Assets Provision

71.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

    (Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

Audrey Strauss
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

GEORGIOS NIKAS,
a/k/a "George Nikas," and
TELEMAQUE LAVIDAS,

Defendants.

## SUPERSEDING INDICTMENT

S1 19 Cr. 716 (DLC)

(Title 18, United States Code, Sections
371, 1343, 1348 and 1349 and Title 19,
United States Code, Sections 78j(b), 78ff,
and 78n(e).)

_____          _____
Foreperson                               AUDREY STRAUSS
                                         Attorney for the
                                         United States
                                         Acting Under
                                          Authority
                                         Conferred by
                                         28 U.S.C. § 515