# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

GEORGIOS NIKAS,
    a/k/a "George Nikas," and
TELEMAQUE LAVIDAS,

            Defendants.

- - - - - - - - - - - - - - - X

SUPERSEDING INDICTMENT

S1 19 Cr. 716 (DLC)

## COUNT ONE
(Conspiracy to Commit Securities Fraud - The Ariad Scheme)

The Grand Jury charges:

### Relevant Individuals and Entities

1.  At all times relevant to this Indictment, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, was a citizen of Greece who resided in Greece and Manhattan, New York.  NIKAS was the owner of various business interests in Europe and the United States, including a chain of Greek restaurants in New York, a food distribution company in Athens, Greece, and fast food franchises across Europe.  NIKAS was also an active securities trader who traded through online brokerage accounts in his own name and through funds that NIKAS helped establish.

2.  At certain times relevant to this Indictment, TELEMAQUE LAVIDAS, the defendant, resided in Manhattan, New York, and was the son of a member of the board of directors

("Director-1") of Ariad Pharmaceuticals, Inc. ("Ariad").

3. At all times relevant to this Indictment, Ariad was a biotechnology company with headquarters in Boston, Massachusetts. Ariad's securities traded under the symbol "ARIA" on the NASDAQ Stock Exchange ("NASDAQ").

4. At all times relevant to this Indictment, Investment Bank A was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

5. At all times relevant to this Indictment, Investment Bank B was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

6. At all times relevant to this Indictment, Investment Bank C was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

7. From in or about 2010, up to and including in or about 2015, a co-conspirator not named as a defendant herein ("CC-1") was employed in the investment banking division of Investment Bank A.

8. From at least 2012, up to and including in or about 2016, a co-conspirator not named as a defendant herein ("CC-2") was employed in the investment banking division of Investment

Bank B. At certain times relevant to this Indictment, CC-1 and CC-2 were involved in a romantic relationship and resided together in London.

9. At certain times relevant to this Indictment, an individual not named herein was employed in the investment banking division of Investment Bank C (the "Investment Bank C Insider").

10. At certain times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-3") was a friend of CC-1 and CC-2, residing in Europe.

11. At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-4") was a securities trader residing in Switzerland and was a friend and business associate of GEORGIOS NIKAS, a/k/a "George Nikas," the defendant.

12. At all times relevant to this Indictment:

    a. Reliance Steel & Aluminum Co. ("Reliance") was a metals services center operator with headquarters in Los Angeles, California. Reliance's securities traded under the symbol "RS" on the New York Stock Exchange ("NYSE"). During this time period, Reliance was a client of Investment Bank A.

    b. Metals USA Holdings Corp. ("Metals") was a metals processing and inventory management company with headquarters in Florida. Metals' securities traded under the symbol "MUSA" on

3

## Overview of the Ariad Scheme

13.   From in or about 2013 up to and including in or about 2015, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, engaged in a scheme to steal confidential inside information from Ariad for their personal use.  NIKAS and LAVIDAS were friends, and NIKAS also had a personal relationship with Director-1, a member of the board of directors of Ariad and LAVIDAS's father.  The goal of their scheme was to place securities trades based on material, non-public information ("MNPI") and then profit from those securities trades after the MNPI was made public.  LAVIDAS used his connection to Director-1 to learn MNPI about Ariad, and then provided that information to NIKAS, who reaped millions of dollars in profits by trading based on that information.  NIKAS also passed the Ariad-related MNPI to CC-4, who also reaped substantial profits by trading on the information.  During the course of the conspiracy, NIKAS paid LAVIDAS in exchange for the MNPI.

## The Ariad Scheme –
## Means and Methods of the Conspiracy

**June-July 2013**

14. By at least in or about June 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware that an agency of the European Commission was expected to approve the marketing of Iclusig, a drug for treatment of leukemia that was marketed by Ariad, in or about early July 2013. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

15. On or about June 28, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, purchased approximately 14,000 shares of Ariad common stock. These were the first purchases of Ariad shares in NIKAS's brokerage account.

16. On or about July 1, 2013, Ariad announced that it received authorization from the European Commission to market Iclusig. Ariad's share price increased by approximately 12% after the announcement.

17. On or about July 27, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, emailed an acquaintance and wrote "Was trying to find u 3 weeks ago when I had some seriously

8

juicy info for u but nowhere to be found" and further wrote that the information was "Stock market related.  U snooze u lose."

**September-October 2013**

18.  By at least in or about late September and early October 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware of concerns raised by the U.S. Food and Drug Administration ("FDA") regarding clinical trials for Iclusig.  Director-1 was obligated to keep this information confidential.  Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

19.  From on or about October 4, 2013, up to and including on or about October 8, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, sold Ariad common stock, established a short position in Ariad stock, and also bought Ariad put options.

20.  On or about October 9, 2013, Ariad announced certain adverse information relating to clinical trials of Iclusig, and further announced that the FDA had placed a partial hold on the trials.  Ariad's share price fell by approximately 67% after the announcement.

21.  Following the announcement on or about October 9, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant,

exited certain of the positions he took in Ariad securities based on MNPI. As a result of this trading, NIKAS avoided losses and realized profits in excess of $1 million.

**November-December 2013**

22. By at least in or about November 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware that Ariad was discussing with the FDA the resumption of marketing and distribution of Iclusig for certain types of leukemia. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

23. From on or about November 22, 2013, up to and including on or about December 20, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, bought Ariad common stock, Ariad call options, and Ariad contracts for difference ("CFDs").

24. On or about December 20, 2013, Ariad announced the resumption of marketing and distribution of Iclusig in the United States, for certain types of leukemia. Ariad's share price increased by approximately 16% after the announcement.

25. Following the announcement on or about December 20, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, exited certain of the positions he took in Ariad securities

based on MNPI. As a result of this trading, NIKAS realized profits in excess of $800,000.

**Summer 2015**

26. In or about July 2015, the chief executive officer of Baxalta, Inc. ("Baxalta") contacted the chief executive officer of Ariad to discuss Baxalta's interest in acquiring Ariad. Baxalta subsequently sent Ariad a non-binding offer to acquire Ariad. At or around that time, members of the board of directors of Ariad, including Director-1, became aware of the Baxalta offer. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, so that NIKAS could trade on it.

27. From on or about July 28, 2015, up to and including on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, bought Ariad CFDs.

28. On or about August 28, 2015, a news article was published stating that Baxalta was in discussions to acquire Ariad. Ariad's share price increased by approximately 41% after the article's publication.

29. Following the publication of the news article on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, exited certain of the positions he took in Ariad

securities based on MNPI. As a result of this trading, NIKAS realized profits in excess of $150,000.

30. In exchange for providing the MNPI described above, TELEMAQUE LAVIDAS, the defendant, and Director-1, received personal benefits, including, among other things, payments from GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, to LAVIDAS, at various times during the scheme.

31. Based on the timely transactions in Ariad securities placed by GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, which in turn were based on the MNPI that TELEMAQUE LAVIDAS, the defendant, provided, to NIKAS, NIKAS reaped millions of dollars in profits. In addition, NIKAS provided that MNPI to at least one other securities trader, who placed timely trades and reaped substantial profits.

**Overview of the Corporate Acquisitions Insider Trading Scheme**

32. From at least in or about December 2012, up to and including in or about 2017, GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, participated in a large-scale, international insider trading ring. Through the scheme, NIKAS received MNPI concerning acquisitions and potential acquisitions of publicly traded companies from CC-4. As NIKAS well knew, this MNPI was obtained by CC-4 from individuals who were insiders at investment banks that advised publicly traded companies and who were duty-bound to keep that information

12

securities trades that were made in that purported hedge fund.

38. GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, placed trades based on the stolen MNPI provided by CC-4 in the securities of at least Metals, Life, ABC, Onyx, Intermune, Idenix, Avanir, Receptos, Omnicare, Syngenta, Solera, and Buffalo. Those trades reaped NIKAS millions of dollars in profits.

39. GEORGIOS NIKAS, a/k/a "George Nikas," the defendant, as well as CC-1, CC-2, the Investment Bank C Insider, CC-3, and CC-4, took numerous steps to conceal their unlawful scheme, including the use of multiple unregistered "burner" cellphones to communicate with each other. In addition, the Investment Bank C Insider obtained "burner" cellphones to communicate with other members of the scheme from a restaurant owned and operated by NIKAS.

### Statutory Allegations

40. From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15,

United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

41. It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

Overt Act

42. In furtherance of the conspiracy, and to effect the illegal objects thereof, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, committed the following overt act, among others, in the

Southern District of New York and elsewhere:

   a.   On or about October 8, 2013, while in Manhattan, New York, LAVIDAS spoke by telephone with NIKAS regarding MNPI relating to Ariad.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud and Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

43. The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

44. From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

45. It was a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and

17

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

46. It was further a part and an object of the conspiracy that GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

## COUNTS THREE THROUGH FIVE
(Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

47. The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

48. On or about the dates set forth below, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed in connection with the purchase and sale of securities manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, LAVIDAS supplied NIKAS with MNPI that was obtained in breach of fiduciary and other duties, relating to Ariad, knowing that

NIKAS would use that information to execute timely securities transactions, which NIKAS did, including the securities transactions listed below:

| Count | Transaction Date | Transactions |
|---|---|---|
| 3 | In or about October 2013 | Sales of at least 37,000 Ariad common shares<br><br>Short sales of at least 50,000 Ariad common shares |
| 4 | In or about November and December 2013 | Purchases of at least approximately:<br>• 160,000 Ariad common shares; and<br>• 2,252 Ariad call option contracts |
| 5 | In or about July and August 2015 | Purchases of at least approximately 449,250 Ariad common shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT SIX
(Wire Fraud – The Ariad Scheme)

The Grand Jury further charges:

49. The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

50. From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for

20

obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wires, including interstate and international telephone calls, NIKAS and LAVIDAS participated in a scheme to defraud Ariad of valuable confidential information, obtained, as NIKAS and LAVIDAS well knew, in breach of fiduciary and other duties, by deceptively converting that information to their own use and the use of others for the purpose of committing insider trading and executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT SEVEN
(Securities Fraud - The Ariad Scheme)

The Grand Jury further charges:

51. The allegations contained in paragraphs 1 through 39 and 42 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

52. From at least in or about July 2013 through in or about 2015, in the Southern District of New York and elsewhere, GEORGIOS NIKAS, a/k/a "George Nikas," and TELEMAQUE LAVIDAS, the defendants, willfully and knowingly executed a scheme and

artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, NIKAS and LAVIDAS engaged in a scheme to defraud Ariad of valuable confidential information obtained, as NIKAS and LAVIDAS well knew, in breach of fiduciary and other duties, by deceptively converting that information to their own use and the use of others, using cellular telephones and e-mail communications, for the purpose of executing transactions in the securities of Ariad.

(Title 18, United States Code, Sections 1348 and 2.)

### COUNT EIGHT
(Conspiracy to Commit Securities Fraud and Fraud in Connection With a Tender Offer - The Corporate Acquisitions Insider Trading Scheme)

The Grand Jury further charges:

22

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
Audrey Strauss
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

35

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

- v. -

GEORGIOS NIKAS,
a/k/a "George Nikas," and
TELEMAQUE LAVIDAS,

Defendants.

<u>**SUPERSEDING INDICTMENT**</u>

S1 19 Cr. 716 (DLC)

(Title 18, United States Code, Sections
371, 1343, 1348 and 1349 and Title 19,
United States Code, Sections 78j(b), 78ff,
and 78n(e).)

_____  
Foreperson

AUDREY STRAUSS
Attorney for the
United States
Acting Under
 Authority
Conferred by
28 U.S.C. § 515