Exhibit C

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA              SUPERSEDING INDICTMENT
                              :
        - v. -
                              :   S1 19 Cr. 716 (DLC)
                              :
TELEMAQUE LAVIDAS,
                              :
        Defendant
                              :
- - - - - - - - - - - - - - - X
```

**COUNT ONE**
**(Conspiracy to Commit Securities Fraud – The Ariad Scheme)**

The Grand Jury charges:

## Relevant Individuals and Entities

1.    At all times relevant to this Indictment, GEORGIOS

NIKAS, a/k/a "George Nikas,"                    was a citizen of

Greece who resided in Greece and Manhattan, New York. NIKAS was

the owner of various business interests in Europe and the United

States, including a chain of Greek restaurants in New York, a

food distribution company in Athens, Greece, and fast food

franchises across Europe. NIKAS was also an active securities

trader who traded through online brokerage accounts in his own

name and through funds that NIKAS helped establish.

2.    At certain times relevant to this Indictment,

TELEMAQUE LAVIDAS, the defendant, resided in Manhattan, New

York, and was the son of a member of the board of directors

("Director-1") of Ariad Pharmaceuticals, Inc. ("Ariad").

3.   At all times relevant to this Indictment, Ariad was a biotechnology company with headquarters in Boston, Massachusetts. Ariad's securities traded under the symbol "ARIA" on the NASDAQ Stock Exchange ("NASDAQ").

11.    At all times relevant to this Indictment, a co-
conspirator not named as a defendant herein ("CC-4") was a
securities trader residing in Switzerland and was a friend and
business associate of GEORGIOS NIKAS, a/k/a "George Nikas,"

## Overview of the Ariad Scheme

13.  From in or about 2013 up to and including in or about
2015,                                                   TELEMAQUE
LAVIDAS, the defendant  engaged in a scheme to steal
confidential inside information from Ariad for the. personal
use.  NIKAS and LAVIDAS were friends, and NIKAS also had a
personal relationship with Director-1, a member of the board of
directors of Ariad and LAVIDAS's father.  The goal of their
scheme was to place securities trades based on material, non-
public information ("MNPI") and then profit from those
securities trades after the MNPI was made public.  LAVIDAS used
his connection to Director-1 to learn MNPI about Ariad, and then
provided that information to NIKAS, who reaped millions of
dollars in profits by trading based on that information.  NIKAS
also passed the Ariad-related MNPI to CC-4, who also reaped
substantial profits by trading on the information.  During the
course of the conspiracy, NIKAS paid LAVIDAS in exchange for the
MNPI.

## The Ariad Scheme -
## Means and Methods of the Conspiracy

### June-July 2013

14. By at least in or about June 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware that an agency of the European Commission was expected to approve the marketing of Iclusig, a drug for treatment of leukemia that was marketed by Ariad, in or about early July 2013. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas," so that NIKAS could trade on it.

15. On or about June 28, 2013, GEORGIOS NIKAS, a/k/a "George Nikas," purchased approximately 14,000 shares of Ariad common stock. These were the first purchases of Ariad shares in NIKAS's brokerage account.

16. On or about July 1, 2013, Ariad announced that it received authorization from the European Commission to market Iclusig. Ariad's share price increased by approximately 12% after the announcement.

**September-October 2013**

18. By at least in or about late September and early October 2013, various executives and members of the board of directors of Ariad, including Director-1, became aware of concerns raised by the U.S. Food and Drug Administration ("FDA") regarding clinical trials for Iclusig. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas,"                                    so that NIKAS could trade on it.

19. From on or about October 4, 2013, up to and including on or about October 8, 2013, GEORGIOS NIKAS, a/k/a "George Nikas,"                            sold Ariad common stock, established a short position in Ariad stock, and also bought Ariad put options.

20. On or about October 9, 2013, Ariad announced certain adverse information relating to clinical trials of Iclusig, and further announced that the FDA had placed a partial hold on the trials. Ariad's share price fell by approximately 67% after the announcement.

21. Following the announcement on or about October 9, 2013, GEORGIOS NIKAS, a/k/a "George Nikas,"

exited certain of the positions he took in Ariad securities
based on MNPI. As a result of this trading, NIKAS avoided
losses and realized profits in excess of $1 million.

**November-December 2013**

22. By at least in or about November 2013, various
executives and members of the board of directors of Ariad,
including Director-1, became aware that Ariad was discussing
with the FDA the resumption of marketing and distribution of
Iclusig for certain types of leukemia. Director-1 was obligated
to keep this information confidential. Director-1 nonetheless
disclosed the information to TELEMAQUE LAVIDAS, the defendant,
who in turn disclosed the information to GEORGIOS NIKAS, a/k/a
"George Nikas,"                    so that NIKAS could trade on it.

23. From on or about November 22, 2013, up to and
including on or about December 20, 2013, GEORGIOS NIKAS, a/k/a
"George Nikas,"                    bought Ariad common stock, Ariad
call options, and Ariad contracts for difference ("CFDs").

24. On or about December 20, 2013, Ariad announced the
resumption of marketing and distribution of Iclusig in the
United States, for certain types of leukemia. Ariad's share
price increased by approximately 16% after the announcement.

25. Following the announcement on or about December 20,
2013, GEORGIOS NIKAS, a/k/a "George Nikas,"
exited certain of the positions he took in Ariad securities

based on MNPI. As a result of this trading, NIKAS realized profits in excess of $800,000.

**Summer 2015**

26. In or about July 2015, the chief executive officer of Baxalta, Inc. ("Baxalta") contacted the chief executive officer of Ariad to discuss Baxalta's interest in acquiring Ariad. Baxalta subsequently sent Ariad a non-binding offer to acquire Ariad. At or around that time, members of the board of directors of Ariad, including Director-1, became aware of the Baxalta offer. Director-1 was obligated to keep this information confidential. Director-1 nonetheless disclosed the information to TELEMAQUE LAVIDAS, the defendant, who in turn disclosed the information to GEORGIOS NIKAS, a/k/a "George Nikas,"                       so that NIKAS could trade on it.

27. From on or about July 28, 2015, up to and including on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas,"

bought Ariad CFDs.

28. On or about August 28, 2015, a news article was published stating that Baxalta was in discussions to acquire Ariad. Ariad's share price increased by approximately 41% after the article's publication.

29. Following the publication of the news article on or about August 28, 2015, GEORGIOS NIKAS, a/k/a "George Nikas,"

exited certain of the positions he took in Ariad

securities based on MNPI.  As a result of this trading, NIKAS
realized profits in excess of $150,000.

30.   In exchange for providing the MNPI described above,
TELEMAQUE LAVIDAS, the defendant, and Director-1, received
personal benefits, including, among other things, payments from
GEORGIOS NIKAS, a/k/a "George Nikas,"                    to LAVIDAS,
at various times during the scheme.

31.   Based on the timely transactions in Ariad securities
placed by GEORGIOS NIKAS, a/k/a "George Nikas,"
which in turn were based on the MNPI that TELEMAQUE LAVIDAS, the
defendant, provided, to NIKAS, NIKAS reaped millions of dollars
in profits.  In addition, NIKAS provided that MNPI to at least
one other securities trader, who placed timely trades and reaped
substantial profits.

## Statutory Allegations

40.   From at least in or about July 2013 through in or
about 2016, in the Southern District of New York and elsewhere,

TELEMAQUE LAVIDAS, the

defendant    and others known and unknown, willfully and
knowingly combined, conspired, confederated, and agreed together
and with each other to commit an offense against the United
States, to wit, securities fraud, in violation of Title 15,

United States Code, Sections 78j(b) and 78ff, and Title 17, Code
of Federal Regulations, Section 240.10b-5.

41.  It was a part and an object of the conspiracy that

TELEMAQUE LAVIDAS, the

defendant    and others known and unknown, willfully and
knowingly, directly and indirectly, by the use of means and
instrumentalities of interstate commerce, and of the mails, and
of facilities of national securities exchanges, would and did
use and employ, in connection with the purchase and sale of
securities, manipulative and deceptive devices and contrivances
in violation of Title 17, Code of Federal Regulations, Section
240.10b-5 by: (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons.

## Overt Act

42.  In furtherance of the conspiracy, and to effect the
illegal objects thereof,

TELEMAQUE LAVIDAS, the defendant    and others known and
unknown, committed the following overt act, among others, in the

Southern District of New York and elsewhere:

a.   On or about October 8, 2013, while in Manhattan, New York, LAVIDAS spoke by telephone with NIKAS regarding MNPI relating to Ariad.

(Title 18, United States Code, Section 371.)

## COUNT TWO
## (Conspiracy to Commit Wire Fraud and Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

44.   From at least in or about July 2013 through in or about 2016, in the Southern District of New York and elsewhere,

TELEMAQUE LAVIDAS, the

defendant   and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

45.   It was a part and an object of the conspiracy that

TELEMAQUE LAVIDAS, the

defendant   and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

46.  It was further a part and an object of the conspiracy that                                                    TELEMAQUE LAVIDAS, the defendant    and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

## COUNTS THREE THROUGH FIVE
### (Securities Fraud – The Ariad Scheme)

The Grand Jury further charges:

48. On or about the dates set forth below, in the Southern
District of New York and elsewhere,

TELEMAQUE LAVIDAS, the defendant    willfully
and knowingly, directly and indirectly, by the use of means and
instrumentalities of interstate commerce, and of the mails, and
of facilities of national securities exchanges, used and
employed in connection with the purchase and sale of securities
manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by: (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons, to wit, LAVIDAS
supplied NIKAS with MNPI that was obtained in breach of
fiduciary and other duties, relating to Ariad, knowing that

NIKAS would use that information to execute timely securities

transactions, which NIKAS did, including the securities

transactions listed below:

| Count | Transaction Date | Transactions |
|-------|------------------|--------------|
| 3 | In or about October 2013 | Sales of at least 37,000 Ariad common shares<br><br>Short sales of at least 50,000 Ariad common shares |
| 4 | In or about November and December 2013 | Purchases of at least approximately:<br>• 160,000 Ariad common shares; and<br>• 2,252 Ariad call option contracts |
| 5 | In or about July and August 2015 | Purchases of at least approximately 449,250 Ariad common shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT SIX
### (Wire Fraud - The Ariad Scheme)

The Grand Jury further charges:

50.   From at least in or about July 2013 through in or

about 2016, in the Southern District of New York and elsewhere,

TELEMAQUE LAVIDAS, the

defendant   willfully and knowingly, having devised and

intending to devise a scheme and artifice to defraud, and for

obtaining money and property by means of false and fraudulent
pretenses, representations, and promises, transmitted and caused
to be transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, to wit, through the use of
interstate wires, including interstate and international
telephone calls,            LAVIDAS participated in a scheme to
defraud Ariad of valuable confidential information, obtained, as

LAVIDAS well knew, in breach of fiduciary and other
duties, by deceptively converting that information to        own
use and the use of others for the purpose of committing insider
trading and executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN
## (Securities Fraud - The Ariad Scheme)

The Grand Jury further charges:

52.  From at least in or about July 2013 through in or
about 2015, in the Southern District of New York and elsewhere,

TELEMAQUE LAVIDAS, the

defendant   willfully and knowingly executed a scheme and

artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit,                LAVIDAS engaged in a scheme to defraud Ariad of valuable confidential information obtained, as

LAVIDAS well knew, in breach of fiduciary and other duties, by deceptively converting that information to        own use and the use of others, using cellular telephones and e-mail communications, for the purpose of executing transactions in the securities of Ariad.

(Title 18, United States Code, Sections 1348 and 2.)

FOREPERSON

Audrey Strauss
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

TELEMAQUE LAVIDAS,

Defendant

## SUPERSEDING INDICTMENT

S1 19 Cr. 716 (DLC)

(Title 18, United States Code, Sections
371, 1343, 1348 and 1349 and Title 19,
United States Code, Sections 78j(b), 78ff,
.)

Foreperson

AUDREY STRAUSS
Attorney for the
United States
Acting Under
Authority
Conferred by
28 U.S.C. § 515